# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PRISM TECHNOLOGIES LLC, | |
| Plaintiff, | C.A. No. 05-214-JJF |
| v. | **JURY TRIAL DEMANDED** |
| VERISIGN, INC., RSA SECURITY, INC., NETEGRITY, INC., COMPUTER ASSOCIATES INTERNATIONAL, INC. and JOHNSON AND JOHNSON, | |
| Defendants. | |

## DEFENDANT VERISIGN, INC.'S FIRST SET OF INTERROGATORIES TO PLAINTIFF PRISM TECHNOLOGIES LLC (NOS. 1 - 10)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, defendant VeriSign, Inc. ("VeriSign") requests that Plaintiff Prism Technologies LLC ("Prism") answer the following interrogatories fully and separately in writing under oath by an officer or other agent of Prism authorized to give answers on its behalf. Answers to these interrogatories must be served within the time prescribed by the Federal Rules of Civil Procedure. The following definitions and instructions apply.

## DEFINITIONS

1.     The term "Prism" means and includes Plaintiff Prism Technologies LLC, and any of its present and former parents, partners, subsidiaries, divisions, branches, affiliates, predecessors or successors in business, and wholly or partially owned entities of Prism and any entities acting or purporting to act for or on behalf of the foregoing or who are subject to the direction or control of the foregoing, including any present or former agents, employees, officers, directors, insurance companies, attorneys, accountants, investigators, and consultants of the foregoing.

2.     The term "VeriSign" means and includes Defendant VeriSign, Inc., and any of its present and former parents, partners, subsidiaries, divisions, branches, affiliates, predecessors or successors in business, and wholly or partially owned entities of VeriSign and any entities acting or purporting to act for or on behalf of the foregoing or who are subject to the direction or control of the foregoing, including any present or former agents, employees, officers, directors, insurance companies, attorneys, accountants, investigators, and consultants of the foregoing.

3.     The term "Plaintiff," "you," or "your" means Prism.

4.     The term "Defendant" or "Defendants" means and includes any defendant in this litigation, including without limitation VeriSign, any third-party defendant, any former defendant, and/or any future defendant.

5.     "Patent application" means all patent applications including all parent, continuation, continuing, continuation-in-part, divisional, reissue or reexamination and other applications, including applications from which an issued patent claims priority, regardless of whether the patent application issued as a patent, is currently pending, or was abandoned, and

regardless of whether the patent application was filed in the Unites States Patent and Trademark Office or a foreign patent office.

6.    "Foreign counterpart patent application" means any patent application filed in a country or territory other than the United States or before an Examining Agency or Authority other than the United States Patent and Trademark Office that claims priority from a U.S. filed patent application and/or which a U.S. filed patent application claims to derive priority from.

7.    "Foreign counterpart patent" means any patent published or issued in a country or territory other than the United States or by an Examining Agency or Authority other than the United States Patent and Trademark Office that claims priority from a U.S. filed patent application and/or which is based on a foreign patent application for which a U.S. filed patent application claims to derive priority from.

8.    The term "related patents" means all parent, continuation, continuing, continuation-in-part, divisional, reexamination, reissue and other patents or patent applications claiming priority to the patent-in-suit, including applications from which an issued patent claims priority, regardless of whether the patent application issued as a patent, is currently pending, or was abandoned, and regardless of whether the patent or patent application was issued or filed, respectively, in the Unites States Patent and Trademark Office or a foreign patent office.

9.    The term "'416 patent" means U.S. Patent No. 6,516,416.

10.    The term "patent-in-suit" means U.S. Patent No. 6,516,416.

11.    The term "subject matter disclosed or claimed in the '416 patent" means all information relating to the disclosure of the '416 patent.

12.    The term "document" or "record" shall have its customary broad meaning within the full range allowed by F. Rule Civ. P. 33 and 34, and shall include without limitation, any

written, printed, typed, recorded, filmed or graphic matter, however produced or reproduced, and any written or original, master, duplicate, or copy. The term "document" shall include electronic data, any record of all or any portions of any discussion, communication, agreement, conversation, interview, meeting, conference, conclusion, fact, impression, occurrence, opinion, report, or other similar matter, and also shall include, without limitation, all correspondence, papers, cablegrams, mailgrams, telegrams, notes, memoranda, summaries, abstracts, worksheets, books, manuals, publications, engineering reports and notebooks, charts, plans, diagrams, sketches or drawings, photographs, reports and/or summaries of investigations and/or surveys, opinions and reports of appraisers or consultants, projections, corporate records, minutes of board of directors or committee meetings, desk calendars, appointment books, diaries, diary entries and notes, newspapers, magazines, or periodical articles, and other records of any kind. A draft or non-identical copy is a separate document within the meaning of this term. Included in the definition of documents as used herein are files, file folders, books, and their contents, which should be produced together with the documents they contain.

13.    The term "electronic data" includes, but is not limited to, originals and all copies of electronic mail ("e-mail"); activity listings of e-mail receipts and/or transmittals; voice-mail; audio or video recordings of any kind; computer programs (whether private, commercial, or a work-in-progress); programming notes or instructions; output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs, and outlines; operating systems; source code of all types; batch files; ASCII files; and all miscellaneous electronic files and/or file fragments, regardless of the media on which they are stored and regardless of whether the data resides in an active file, deleted file, or file fragment. Electronic data includes any and all information stored in hard disks, floppy disks, CD-ROM

disks, B ernoulli d isks a nd t heir e quivalents, m agnetic t apes o f a ll k inds, a nd c omputer c hips. Electronic data also includes the file, folder tabs, containers or labels appended to any storage device containing electronic data.

14.    "Things" shall mean any tangible object other than a document and includes objects of every kind and nature, including, but not limited to, prototypes, models and specimens.

15.    A document or communication "referring to," "related to," or "concerning" a given subject means any and all documents or communications that constitute, contain, embody, comprise, reflect, identify, state, refer to, connect with, deal with, comment on, respond to, describe, involve, or are in any way pertinent to that subject.

16.    The term "person" or "persons" shall include any and/or all natural persons, individuals, corporations, partnerships, unincorporated associations, joint ventures, sole proprietorships, or any and/or all other organization of individuals or other legal or business entities, or functional division thereof.

17.    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise)

18.    "Concerning" means relating to, referring to, describing, evidencing, constituting, or mentioning in any way.

19.    The use of the singular form of any word includes the plural and visa versa.

20.    The terms "he," "his," or "him" are generic terms that mean any person as defined herein, whether natural or otherwise, and whether masculine, feminine, or neuter.

5

21.    The term "prior art" shall mean all things, patents, publications, disclosures, sales, or other acts or occurrences included within the broadest meaning of 35 U.S.C. § 102 (or any subpart thereof) and 35 U.S.C. § 103.

22.    "Identify" with respect to persons means to give, to the extent known, the person's full name, present or last known address, and, with respect to a natural person, the present or last known place of employment. "Identify" with respect to documents means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s), and recipient(s), and the production number(s) where produced. "Identify" with respect to an entity means to give, to the extent known, the entity's present full name, business name and/or trade name, any former names used such entity, and its present or last known address.

23.    In construing these Interrogatories, the plural shall include the singular, the singular shall include the plural, and a masculine, feminine, or neuter term shall include all other genders. The words "and" and "or" mean "and/or" and should be read both ways so as to encompass both constructions and call for answers to be provided to both constructions. The word "each" includes the word "every," and the word "every" includes the word "each." The word "any" shall be understood to include and encompass "all," and "all " should be interpreted to include and encompass "any."

## INSTRUCTIONS

1.    Each Interrogatory shall be answered fully unless it is in good faith objected to, in which event the reasons for your objection shall be stated in detail. If an objection pertains only to a portion of a Interrogatory, or a word phrase, or clause contained within it, you are required

6

to state your objection to that portion only and to respond to the remainder of the Interrogatory, using your best efforts to do so.

2.    If Plaintiff contends that any information concerning any document, communication, or other information is withheld under a claim of attorney-client privilege, the work product doctrine or other ground of privilege, then Prism shall identify for each such document:

(a)    the date of the document, communication or other information;

(b)    the name (title or position of the authors) of the document, communication or other information;

(c)    the name and title or position of all persons designated as addressees or otherwise receiving copies of the document, communication or other information;

(d)    the general subject matter of the document, communication or other information;

(e)    the number of pages in the document, communication or other information;

(f)    the type of document (e.g., memorandum, letter or report), communication or other information;

(g)    the specific grounds for withholding the document, communication or other information, including the specific facts upon which Plaintiff will rely to establish the asserted attorney-client privilege, work product doctrine, or other ground of privilege; and

(h)    the specific Interrogatory to which information concerning the document, communication or other information is responsive.

3.    If any document identified in response to any of these Interrogatories was, but is no longer in the possession, custody or subject to the control of Plaintiff, or is no longer in existence, state whether it:

(a)    Is missing or lost;

(b)    Has been destroyed;

(c)    Has been transferred, voluntarily or involuntarily, to others and state the identity of those persons to whom it has been transferred;

(d)    Has been otherwise disposed of, and in each instance, explain the circumstances surrounding such disposition, state the date or approximate date thereof, and the identity of the persons with knowledge of such circumstances; or

(e)    Identify the writings that are missing, lost, destroyed, transferred, or otherwise disposed of, by author, date, subject matter, addressee and the number of pages.

4.    Pursuant to Rule 26(e), Fed. R. Civ. P., these requests are deemed to be continuing in nature to the full extent required by the Federal Rules of Civil Procedure. If further responsive documents come into the possession or to the attention of Plaintiff or its attorneys at any time during the course of this litigation, such documents must be produced as required by the Federal Rules of Civil Procedure.

8

## INTERROGATORIES

### INTERROGATORY NO. 1.

With reference to the claim charts attached as Exh. A, in which the first column lists the claim elements and/or steps of independent claims 1, 19 and 24 of the '416 patent, complete the second column by stating Plaintiff's claim interpretation contentions for each element and/or step (set forth in each row of Exh. A), as a whole, as well as for each specifically bolded and quoted word and/or phrase, and complete the third column by stating all basis and support for those contentions, including citing all portions of the specification and prosecution history, and identifying and describing all other evidence, if any, that Plaintiff believes supports its contentions. If Plaintiff contends that any of the claim elements are means-plus-function elements construed pursuant to 35 U.S.C. §112 paragraph 6, so state and provide plaintiff's contention as to the function to be performed and the identity of the corresponding structure in the specification for performing it, and the scope of equivalents, if any. If Plaintiffs contend that any claim element that includes the word "means" is *not* means-plus-function (as it is presumed to be under the law), state all basis and evidence for this contention.

### INTERROGATORY NO. 2.

For each claim of the '416 patent that Plaintiff contends is infringed by VeriSign, identify each activity, product, device, part, or system manufactured, imported, used or sold by VeriSign that, according to Plaintiff, embodies, is covered by, makes use of, or otherwise practices any claim of the patent-in-suit and, with reference to Plaintiff's claim interpretation contentions provided in response to Interrogatory No. 1, state with particularity the basis for each of Plaintiff's contentions as to how each asserted claim of the patent-in-suit is infringed, either

literally o r u nder t he d octrine o f e quivalents, d irectly ( under 3 5 U .S.C. § 271(a)) o r i ndirectly (under 35 U.S.C. §271(b) or §271(c)) by VeriSign.

**INTERROGATORY NO. 3.**

Describe in detail when Plaintiff first became aware of and/or first had knowledge of each activity, product, device, system and/or equipment identified in response to Interrogatory No. 2; identify each person who had such knowledge; describe the circumstances under which each such person first became aware of and acquired such knowledge; and describe all facts, documents and things that refer and/or relate to this knowledge.

**INTERROGATORY NO. 4.**

For each asserted claim of the '416 patent, (a) state Plaintiff's contentions regarding date(s) of the invention, including the date(s) of conception and reduction to practice, (b) identify each person involved in its conception and each person involved in its reduction to practice, (c) describe in detail all circumstances regarding conception, reduction to practice and any diligence exercised from the date of conception to the date of reduction to practice and identify each person involved in any such diligence, (d) identify the specific location of each such conception and reduction to practice, and (e) identify all documents and things referring to, relating to, or concerning the conception, reduction to practice, and any diligence from the date of conception to the date of reduction to practice.

**INTERROGATORY NO. 5.**

Excluding the "references cited" on the face of the '416 patent, identify all prior art, including w ithout l imitation p ublications a nd a cts, o f w hich P laintiff i s aware w ith r espect t o each of the patent-in-suit and related patents, including prior art located in any prior art search or

otherwise brought to the attention of Plaintiff, and state how and when each item of prior art identified came to Plaintiff's attention.

## INTERROGATORY NO. 6.

If Plaintiff is seeking an award of any sum of money, whether by damages or otherwise, state the amount of money Plaintiff seeks and describe the manner in which the amount was calculated, including each element of damage or component of recovery that Plaintiff seeks, the amount sought for each element or component, the manner in which each element or component was calculated or determined, and should identify the source of each number used in the calculation, and identify the person or persons who is most knowledgeable with respect to the subject matter of this Interrogatory.

## INTERROGATORY NO. 7.

Describe in detail the business of Prism and all predecessor companies, from its inception until present, identify all directors, officers and employees of such companies over that time period, and identify all financial records relating to costs and revenues from the '416 patent.

## INTERROGATORY NO. 8.

Identify and describe in detail any attempt to license, sell or otherwise commercialize or transfer rights to the '416 patent, and identify and describe the terms of any such agreements, including licensing and sales agreements.

## INTERROGATORY NO. 9.

Identify all entities and/or person that now or in the past have held rights (*e.g.*, ownership, right-to-sue, right-to-recovery, etc.) to the '416 patent and any patent claiming priority to the '416 patent, and state the nature of rights held (including, where appropriate, the quantity held by each entity or person).

**INTERROGATORY NO. 10.**

Identify and describe the specifics of any pre-complaint infringement analysis.

Dated: September 15, 2005

*Of Counsel*

Edward F. Mannino
Jason A. Snyderman
AKIN GUMP STRAUSS HAUER & FELD LLP
One Commerce Square, Suite 2200
2005 Market Street
Philadelphia, PA 19103
Telephone: (215) 965-1200
Fax: (215) 965-1210

Frank C. Cimino
Jin-Suk Park
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, NW
Washington, DC 20036-1564
Telephone: (202) 887-4000
Fax: (202) 887-4288

By: *Patricia S Rogowski*

Patricia Smink Rogowski
Delaware Bar ID 2632
The Nemours Building
1007 North Orange Street
PO Box 2207
Wilmington DE 19899
Telephone : (302) 658-9141
Fax: (302) 658-5614

*Attorneys for Defendant, VeriSign, Inc.*

Exhibit A

Plaintiff's Response To VeriSign's Interrogatory No. 1

| Claim 1 of the '416 Patent | Plaintiff's Claim Interpretation | Plaintiff's Support and Evidence |
|---|---|---|
| A "system" for controlling the operation of and access to "selected computer resources" of a "first server computer" by at least one "subscriber client computer" via an "untrusted network" in an "operating session", "without necessarily controlling access to other computer resources" provided by the first server computer and by "other server computers" and "nonsubscriber client computers", comprising: | | |
| "clearinghouse means" for "storing" "identity data of said first server computer" and the "identity data of each of said subscriber client computers"; | | |
| "server software means" installed on said first server computer "adapted to forward its identity data and identity data of each subscriber client computer to said clearinghouse means" at the "beginning of an operating session" in which "access to" "selected computer resources" of said first server computer is requested; | | |
| "client software means" installed on each of said "subscriber client computers" "adapted to forward its identity data to said first server computer" at the "beginning of an operating session" in which "access to" "selected computer resources" is requested; | | |
| at least one "hardware key" "connected to" the "subscriber client computer" said key being "adapted to generate" a "predetermined" "digital identification", which "identification is part of said identity data"; | | |
| said "server software means" installed on the first server computer being "adapted to selectively request" the "subscriber client computer", "to forward" said "predetermined" "digital identification" to the first server computer "to thereby confirm" that said hardware key is "connected" to said subscriber client | | |

1

Exhibit A
Plaintiff's Response To VeriSign's Interrogatory No. 1

| | | | |
|---|---|---|---|
| computer; | | | |
| said "clearinghouse means" being "adapted to authenticate the identity of said subscriber client computer" responsive to a request for selected computer resources of said first server computer by a "subscriber client computer"; | | | |
| said "clearinghouse means" being "adapted to authenticate the identity of said first server computer" responsive to said "subscriber client computer" making the request for selected computer resources of said first server computer; and | | | |
| said "clearinghouse means" being "adapted to permit access" to said selected computer resources responsive to "successful initial authentication" of said first server computer and of "said subscriber client computer making first request". | | | |

Exhibit A
Plaintiff's Response To VeriSign's Interrogatory No. 1

| Claim 19 of the '416 Patent | Plaintiff's Claim Interpretation Position | Plaintiff's Support and Evidence |
|---|---|---|
| A "system" for controlling the operation of and access to "selected computer resources" of at least one "first server computer" by at least one "subscriber client computer" via an "untrusted network" in an "operating session", "without necessarily controlling access to other computer resources" provided by the first server computer and by "other server computers" and "nonsubscriber client computers", and each of said subscriber client computers has a "standard browser application" for "browsing" the untrusted network, comprising; | | |
| "clearinghouse means" for "storing" "identity data of said first server computer" and the "identify data of each of said subscriber client computers"; | | |
| "server software means" installed on said first server computer "adapted to forward its identity data and identify data of each subscriber client computer to said clearinghouse means" at the "beginning of an operating session" in which "access to" "selected computer resources" of said first server computer is requested; and, | | |
| "client software means" installed on each of said "subscriber client computers" "adapted to forward its identity data to said first server computer" at the "beginning of an operating session" in which "access to" "selected computer resources" is requested; | | |
| said "clearinghouse means" being "adapted to authenticate the identity of said subscriber client computer" responsive to a request for selected computer resources of said first server computer by a "subscriber client computer"; | | |

3

**Exhibit A**

**Plaintiff's Response To VeriSign's Interrogatory No. 1**

| | | |
|---|---|---|
| said "clearinghouse means" being "adapted to authenticate the identify of said first server computer" responsive to said "subscriber client computer" making the request for selected computer resources of said first server computer. | | |
| said "clearinghouse means" being "adapted to permit access" to said selected computer resources responsive to "successful initial authentication" of said first server computer and of "said subscriber client computer making said request"; | | |
| said "server software means" installed on the first server computer being "adapted to designate specific resource content as being protected and to provide predetermined protection data identifying said resource content as being protected" when said data is transmitted to one of said "subscriber client computers" responsive to a request for said resource content; | | |
| said "client software means" installed on each of said "subscriber client computers" being "adapted to monitor" said data defining a "hierarchical system of protection" and "selectively" "disable" "predetermined" "application functions" of the "standard browser application" "previously installed" on said "subscriber client computer" for said "designated specific resources content". | | |

4

Exhibit A
Plaintiff's Response To VeriSign's Interrogatory No. 1

| Claim 24 of the '416 Patent | Plaintiff's Claim Interpretation Position | Plaintiff's Support and Evidence |
|---|---|---|
| A "method" of controlling access to "selected computer resources" of at least a "first server computer" by at least one "subscriber client computer" via an "untrusted network" during an "operating session", "without necessarily controlling access to other computer resources" provided by the first server computer and by "other server computers" and "nonsubscriber client computers", comprising the steps of: | | |
| "registering identity data of said first server computer and the identity data of each of said subscriber client computers" and "storing the registered identity data" in a "clearinghouse means" "associated with" said first server computer and said "subscriber client computers"; | | |
| requiring a "subscriber client computer" to forward "its identity data" to said "clearinghouse means" at the "beginning an operating session" in which access to "selected computer resources" is requested; | | |
| requiring a "subscriber client computer" to forward a "pre-determined" "digital identification" to said first server computer "to thereby confirm" that a "hardware key" is "connected" to said "subscriber client computer"; | | |
| attempting to "authenticate" the identity of said "subscriber client computer" from said "clearinghouse means" "responsive" to a request for "selected computer resources" of said first server computer by a "subscriber client computer"; | | |
| attempting to "authenticate" the "identity of said first server computer" from said "clearinghouse means" responsive to said "subscriber client computer" making the request for "selected computer resources"; and, | | |
| "permitting access" to said "selected computer resources" "responsive" to "successful initial authentication" of said "first server computer" and of said "subscriber | | |

5

Exhibit
Plaintiff's Response To VeriSi:

Interrogatory No. 1

client computer" making said request.

6

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2005, a true and correct copy of the foregoing DEFENDANT VERISIGN, INC.'S FIRST SET OF INTERROGATORIES TO PLAINTIFF PRISM TECHNOLOGIES LLC (NOS.1 - 10) was caused to be served on the following by Hand or via First Class Mail:

Richard D. Kirk (By Hand)
The Bayard Firm
22 Delaware Avenue
Suite 900
Wilmington, DE 19899

Dirk D. Thomas (First Class Mail)
Robins, Kaplan, Miller & Ciresi, LLP
1801 K Street, N.W.
Suite 1200
Washington, D.C. 20006-1307

Gregory P. Teran (First Class Mail)
Wilmer Cutler Pickering Hale & Dorr LLP
60 State Street
Boston, MA 02109

David M. Schlitz (First Class Mail)
Baker Botts LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2450

John DiMatteo (First Class Mail)
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019-6099

Frederick L. Cottrell, III (By Hand)
Richards Layton & Finger
One Rodney Square
920 North King Street,
Wilmington, DE 19801

Richard L. Horwitz (By Hand)
Potter Anderson & Corroon
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899.

Steven J. Balick (By Hand)
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899.

By: _____
Patricia Smink Rogowski
Bar ID 2632

# EXHIBIT D

<div align="center">

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

</div>

| | |
|---|---|
| PRISM TECHNOLOGIES LLC<br><br>          Plaintiff,<br><br>     v.<br><br>VERISIGN, INC., RSA SECURITY, INC.,<br>NETEGRITY, INC., COMPUTER<br>ASSOCIATES INTERNATIONAL, INC.,<br>and JOHNSON & JOHNSON SERVICES,<br>INC.,<br><br>          Defendants. | Civil Action No. 05-214 JJF |

<div align="center">

**PLAINTIFF PRISM TECHNOLOGIES LLC'S OBJECTIONS AND RESPONSES TO**
**DEFENDANT VERISIGN, INC.'S FIRST SET OF INTERROGATORIES (Nos. 1-10)**

</div>

Plaintiff Prism Technologies LLC ("Prism") provides the following responses and objections to VeriSign, Inc.'s ("VeriSign") First Set of Interrogatories. Prism will supplement these responses as required by the Federal Rules of Civil Procedure and the Local Rules and Orders of this Court.

<div align="center">

**GENERAL OBJECTIONS**

</div>

For its General Objections, Prism objects to VeriSign's interrogatories, instructions and definitions as follows. Prism hereby incorporates its definitions as set forth in its Revised First Set of Document Requests to VeriSign.

A.     Prism objects to these interrogatories to the extent they impose obligations or requirements beyond those imposed by the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Delaware, or the Orders of this Court. Prism does not consider itself bound by VeriSign's instructions and definitions.

B.    Prism objects to these interrogatories as vague, overly broad, unduly burdensome to the extent that they request information not relevant to a claim or defense of any party, not reasonably calculated to lead to the discovery of admissible evidence, or as otherwise exceeding the scope of permissible discovery.

C.    Prism objects to these interrogatories to the extent they seek information or documents that are protected from discovery by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.  No part of Prism's response constitutes a waiver of any privilege or immunity.

D.    Prism objects to these interrogatories to the extent they seek information that is not in its possession, custody or control or that is publicly available or has already been provided to the Defendants.

E.    Prism objects to these interrogatories to the extent that they comprise sub-parts or compound questions and, therefore, exceed or may exceed the number of interrogatories permitted in this action.

F.    Prism objects to the definition of "Prism," "YOU," and "YOUR" as overly broad to the extent those terms request information from legal entities not within the scope of this litigation or within the possession, custody or control of Prism or not subject to Prism's legal recourse and/or otherwise outside the enforceable scope of the laws of the United States of America.

G.    Prism objects to these interrogatories to the extent they assume incorrect facts.

H.    Prism objects to these interrogatories as premature to the extent that they call for construction of the claims of the patent-in-suit and there has not yet been a determination of

claim construction by the Court in this case. Therefore, Prism specifically reserves its right to change, modify, or otherwise supplement the claim constructions presently asserted.

I.      Prism objects to these interrogatories on the grounds that discovery has just begun and Prism has not completed its investigation of all facts relating to Defendants' infringement of the patent-in-suit or its formulation of its contentions with respect to such issues. Therefore, Prism specifically reserves its right to change, modify, or otherwise supplement its allegations based on discovery to be obtained from the Defendants or its own investigation.

J.      Prism objects to these interrogatories to the extent that they call for premature expert discovery.

K.      To the extent not objected above, Prism incorporates by reference its objections to VeriSign's First Set of Document Requests.

## RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1:

With reference to the claim charts attached as Exh. A, in which the first column lists the claim elements and/or steps of independent claims 1, 19 and 24 of the '416 patent, complete the second column by stating the Plaintiff's claim interpretation contentions for each element and/or step (set forth in each row of Exh. A), as a whole, as well as for each specifically bolded and quoted word and/or phrase, and complete the third column by stating all basis and support for those contentions, including citing all portions of the specification and prosecution history, and identifying and describing all other evidence, if any, that Plaintiff believes supports its contentions. If Plaintiff contends that any of the claim elements are means-plus-function elements construed pursuant to 35 U.S.C. § 112 paragraph 6, so state and provide plaintiff's contention as to the function to be performed and the identity of the corresponding structure in the specification for performing it, and the scope of equivalents, if any. If Plaintiffs contend that any claim element that includes the word "means" is *not* means-plus-function (as it is presumed to be under the law), state all basis and evidence for this contention.

### RESPONSE TO INTERROGATORY NO. 1:

Prism incorporates its general objections, and specifically its General Objections A, C, E, H, I, and J. Prism specifically objects to the "scope of equivalents" inasmuch as Defendants'

have not yet responded to discovery and the potential scope of equivalents is dependent, in part,

on the structure and operation of the accused devices. At present, Prism asserts that the asserted

claims read literally on the accused products and services, but reserves its rights to allege

infringement by equivalent as discovery or the Court's claim constructions may require. Prism

objects to this interrogatory as a premature contention interrogatory. Prism has not completed its

investigation of all facts or its formulation of all contentions with respect to such issues. Prism

objects to this interrogatory as overly broad and unduly burdensome to the extent it seeks

information regarding claims that are not asserted or at issue in this case, specifically claim 19.

Prism objects to this interrogatory to the extent it calls for subject matter not relevant to a claim

or defense of any party, not reasonably calculated to lead to the discovery of admissible

evidence, or as otherwise imposing obligations or requirements beyond those imposed by the

Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the

District of Delaware, or the Orders of this Court.

Subject to and without waiving these objections, Prism responds as follows. The terms of

at least claims 1 and/or 24 of the '416 patent should be given their plain and ordinary meaning.

Prism incorporates herein its response to Interrogatory No. 2 to provide its disclosure of how the

plain and ordinary meaning of the claim terms read on the presently accused products. The

following means plus function elements of claims 1 and 24 have the functions specifically

recited in the claim for that means plus function element. The structure embodying the means

plus function element is identified below. Prism reserves its right to change, modify, or

otherwise supplement its contentions regarding the structure that embodies each means clause.

606362v1

- 4 -

**Clearinghouse Means**

The corresponding structure of the claimed "clearinghouse means" is the clearinghouse database server 56 and the user authentication daemon 58. *See* '416 patent, col. 6, line 66 to col. 7, line 9.

**Server Software Means**

The corresponding structure of the claimed "server software means" is that portion of the session manager 52, *see* '416, patent col. 7, lines 49-50, that operates in conjunction with the user authentication daemon 58 to forward the identity data of the first server computer and the subscriber client computer to said clearinghouse means. The server software means also includes the "access key validator" block (as shown in Fig. 3, at reference number 34) which requests the subscriber client computer to forward its digital identification to the first server to confirm the presence of a hardware key.

**Client Software Means**

The corresponding structure of the "client software means" includes that portion of the subscriber software 36 that is adapted to forward the identity data of the client computer to said first server computer at the beginning of an operating session.

**INTERROGATORY NO. 2:**

For each claim of the '416 patent that Plaintiff contends is infringed by VeriSign, identify each activity, product, device, part, or system manufactured, imported, used or sold by VeriSign that, according to Plaintiff, embodies, is covered by, makes use of, or otherwise practices any claim of the patent-in-suit and, with reference to Plaintiff's claim interpretation contentions provided in response to Interrogatory No. 1, state with particularity the basis for each of Plaintiff's contentions as to how each asserted claim of the patent-in-suit is infringed, either literally or under the doctrine of equivalents, directly (under 35 U.S.C. § 271(a)) or indirectly (under 35 U.S.C. § 271 (b) or § 271 (c)) by VeriSign.

## RESPONSE TO INTERROGATORY NO. 2:

Prism incorporates its general objections, and specifically its General Objections A, C, E, H, I, and J. Prism objects to this interrogatory as a premature contention interrogatory. Prism has not, as yet, had the opportunity to conduct meaningful discovery to determine the full extent of products made, used, sold, and/or offered for sale by VeriSign that infringe the '416 patent. Since discovery is ongoing and VeriSign has not yet responded to Prism's discovery requests, Prism reserves the right to change, modify, or otherwise supplement its current infringement contentions, including identifying additional products and/or services offered by VeriSign that infringe one or more claims of the '416 patent.

Subject to and without waiving these objections, Prism responds as follows. Prism alleges, to date, that the VeriSign's Unified Authentication Solution meets all the elements of at least claims 1 and/or 24.

| US Patent #6,516,416 | VeriSign's Solution |
|---|---|
| **1.)** A system for controlling the operation of and access to selected computer resources of at least a first server computer by at least one subscriber client computer via an untrusted network in an operating session, without necessarily controlling access to other computer resources provided by the first server computer and by other server computers and nonsubscriber client computers, comprising: | The VeriSign Certificate Validation Module (CVM) installed on a Web Server provides the functions of the first server. The CVM communicates with the subscriber client computer (an operating session) using the Internet (an untrusted network) to control access to selected computer resources. A subscriber client computer is used to access computer resources controlled by the CVM. Both subscriber client computers and nonsubscriber client computers can also access resources not controlled by the CVM on the Web Server (first server). Both subscriber client computers and nonsubscriber client computers can also access other Web Servers (e.g., www.yahoo.com).[1,2] |
| **1a.)** clearinghouse means for storing identity data | The clearinghouse means consists of the |

---

[1] *VeriSign Authentication Services*, VeriSign, Inc, 2000 (P 032680-032708).
[2] *VeriSign Unified Authentication - The Next Generation of Strong Authentication*, VeriSign, Inc., 2004 (P 032709-032726).

| US Patent #6,516,416 | VeriSign's Solution |
|---|---|
| of said first server computer and the identity data of each of said subscriber client computers; | VeriSign hosted ATLAS OCSP Responder and the ATLAS Central Authoritative Database.[3] The identity data of the CVM (first server) and each subscriber client are stored in the ATLAS Central Authoritative Database. The identity data of the first server is an X.509 digital certificate. The identity data of the subscriber client is a X.509 digital certificate stored on the hardware key (VeriSign Unified Authentication USB Token or third party Smart Card). |
| **1b.)** server software means installed on said first server computer adapted to forward its identity data and identity data of each subscriber client computer to said clearinghouse means at the beginning of an operating session in which access to selected computer resources of said first server computer is requested; | The CVM (first server) signs an OCSP request with its identity data and forwards the OCSP request containing the subscriber client computer identity data to the ATLAS OCSP Responder (clearinghouse means) at the beginning of an operating session when resources controlled by the CVM are requested by the subscriber client computer.[4,5] |
| **1c.)** client software means installed on each of said subscriber client computers adapted to forward its identity data to said first server computer at the beginning of an operating session in which access to selected computer resources is requested; | VeriSign Personal Trust Agent (PTA) software is the client software means installed on each of said subscriber client computers.[6] The PTA software forwards the identity data (X.509 digital certificate) stored on the USB Token or Smart Card to the CVM at the beginning of an operating session when computer resources controlled by the CVM are requested by the subscriber client computer.[7] |
| **1d.)** at least one hardware key connected to the subscriber client computer, said key being adapted to generate a predetermined digital identification, which identification is part of said identity data; | The VeriSign Unified Authentication USB Token or third party Smart Card is the hardware key which is connected to the subscriber client computer's USB port or by a Smart Card reader. A X.509 digital certificate (predetermined digital identification) can be stored on Token or Smart Card. The digital certificate comprises the subscriber identity data.[8,9] |

---

[3] *ATLAS – The Advanced Transaction Look-up and Signaling Platform*, VeriSign, Inc., January 23, 2003 (P 032727-032742).
[4] *Managed PKI Certificate Validation and Parsing Guide*, VeriSign, Inc., 2002, pp. 73-76 (P 032823-032826).
[5] *RFC 2560 – X.509 Internet Public Key Infrastructure Online Certificate Status Protocol – OCSP*, IETF, June 1999, pg. 7 (P 032851).
[6] *Mobile Notebook Security*, Alex Deacon, Trust Services Architect, Verisign, Inc., Intel Corporation, September 9-12, 2002, pp. 11-17 (P 032876-032882).
[7] *Certificate Validation Module (CVM) User's Guide*, VeriSign, Inc., 2000 (P 032893-032970).
[8] *VeriSign Authentication Services*, VeriSign, Inc, 2000 (P 032680-032708).

| US Patent #6,516,416 | VeriSign's Solution |
|---|---|
| **1e.)** said server software means installed on the first server computer being adapted to selectively request the subscriber client computer to forward said predetermined digital identification to the first server computer to thereby confirm that said hardware key is connected to said subscriber client computer; | The CVM (first server) can selectively request the identity data from the subscriber client computer. This is accomplished by setting a session timeout in the Web Server. The CVM monitors the Web Server timeout event. Upon the firing of the timeout event, the CVM request the identity data from the subscriber client computer.[10] |
| **1f.)** said clearinghouse means being adapted to authenticate the identity of said subscriber client computer responsive to a request for selected computer resources of said first server computer by a subscriber client computer; | The ATLAS OCSP Responder (clearinghouse) is adapted to authenticate the identity of said subscriber client computer responsive to a request for selected computer resources controlled by the CVM (first server) by a subscriber client computer.[11] |
| **1g.)** said clearinghouse means being adapted to authenticate the identity of said first server computer responsive to said subscriber client computer making the request for selected computer resources of said first server computer; and, | Upon receiving the signed OCSP request message from the CVM, the ATLAS OCSP Responder decrypts the OCSP request message using the identity data of the first server stored in the ATLAS Central Authoritative Database thereby authenticating the identity of the first server.[12] |
| **1h.)** said clearinghouse means being adapted to permit access to said selected computer resources responsive to successful initial authentication of said first server computer and of said subscriber client computer making first request. | The ATLAS OCSP Responder (clearinghouse) permits access to computer resources controlled by the CVM (first server) upon successful initial authentication of both the CVM (first server) and the subscriber client computer. |
| **24.)** A method of controlling access to selected computer resources of at least a first server computer by at least one subscriber client computer via an untrusted network during an operating session, without necessarily controlling access to other computer resources provided by the first server computer and by other server computers and nonsubscriber client computers, comprising the steps of: | The VeriSign Certificate Validation Module (CVM) installed on a Web Server provides the functions of the first server. The CVM communicates with the subscriber client computer (an operating session) using the Internet (an untrusted network) to control access to selected computer resources. A subscriber client computer is used to access computer resources controlled by the CVM. Both subscriber client computers and nonsubscriber client computers can also access resources not |

[9] *VeriSign Unified Authentication - The Next Generation of Strong Authentication*, VeriSign, Inc., 2004 (P 032709-032726).

[10] *E-Mail from Mike Olsen (VeriSign) to Rick Gregg*, VeriSign, Inc., January 26, 2005 (P 032971).

[11] *Managed PKI Certificate Validation and Parsing Guide*, VeriSign, Inc., 2002, pp. 73-76 (P 032823-032826).

[12] *E-Mail from Mike Olsen (VeriSign) to Rick Gregg*, VeriSign, Inc., January 26, 2005 (P 032971).

| US Patent #6,516,416 | VeriSign's Solution |
|---|---|
| | controlled by the CVM on the Web Server (first server). Both subscriber client computers and nonsubscriber client computers can also access other Web Servers (e.g. www.yahoo.com).[13,14] |
| **24a.)** registering identity data of said first server computer and the identity data of each of said subscriber client computers and storing the registered identity data in a clearinghouse means associated with said first server computer and said subscriber client computers; | The clearinghouse means consists of the VeriSign hosted ATLAS OCSP Responder and the ATLAS Central Authoritative Database.[15] The identity data of the CVM (first server) and each subscriber client are stored in the ATLAS Central Authoritative Database. The identity data of the first server is an X.509 digital certificate. The identity data of the subscriber client is a X.509 digital certificate stored on the hardware key (VeriSign Unified Authentication USB Token or third party Smart Card). |
| **24b.)** requiring a subscriber client computer to forward its identity data to said clearinghouse means at the beginning of an operating session in which access to selected computer resources is requested; | VeriSign Personal Trust Agent (PTA) software is the client software means installed on each of said subscriber client computers.[16] The PTA software forwards the identity data (X.509 digital certificate) stored on the USB Token or Smart Card to the CVM at the beginning of an operating session when computer resources controlled by the CVM are requested by the subscriber client computer.[17] |
| **24c.)** requiring a subscriber client computer to forward a predetermined digital identification to said first server computer to thereby confirm that a hardware key is connected to said subscriber client computer; | The VeriSign Unified Authentication USB Token or third party Smart Card is the hardware key, which is connected to the subscriber client computer's USB port or by a Smart Card reader. A X.509 digital certificate (predetermined digital identification) can be stored on Token or Smart Card. The digital certificate comprises the subscriber identity data.[18,19] The Personal Trust Agent (PTA) software is installed on the |

---

[13] *VeriSign Authentication Services*, VeriSign, Inc, 2000 (P 032680-032708).
[14] *VeriSign Unified Authentication - The Next Generation of Strong Authentication*, VeriSign, Inc., 2004 (P 032709-032726).
[15] *ATLAS – The Advanced Transaction Look-up and Signaling Platform*, VeriSign, Inc., January 23, 2003 (P 032727-032742).
[16] *Mobile Notebook Security*, Alex Deacon, Trust Services Architect, Verisign, Inc., Intel Corporation, September 9-12, 2002, pp. 11-17 (P032876-032882).
[17] *Certificate Validation Module (CVM) User's Guide*, VeriSign, Inc., 2000 (P 032893-032970).
[18] *VeriSign Authentication Services*, VeriSign, Inc, 2000 (P 032680-032708).
[19] *VeriSign Unified Authentication - The Next Generation of Strong Authentication*, VeriSign, Inc., 2004 (P 032709-032726).

| US Patent #6,516,416 | VeriSign's Solution |
|---|---|
| | subscriber client computer and forwards the digital certificate to the CVM (first server). The CVM confirms that the hardware key is connected.[20] |
| **24d.)** Attempting to authenticate the identity of said subscriber client computer from said clearinghouse means responsive to a request for selected computer resources of said first server computer by a subscriber client computer; | The VeriSign hosted ATLAS OCSP Responder (clearinghouse) authenticates the identity of the subscriber client computer responsive to a request for selected computer resources of the CVM (first server) by a subscriber client computer.[21] |
| **24e.)** attempting to authenticate the identity of said first server computer from said clearinghouse means responsive to said subscriber client computer making the request for selected computer resources; and, | Upon receiving the signed OCSP request message from the CVM, the ATLAS OCSP Responder decrypts the OCSP request message using the identity data of the first server stored in the ATLAS Central Authoritative Database thereby authenticating the identity of the first server.[22,23] |
| **24f.)** permitting access to said selected computer resources responsive to successful initial authentication of said first server computer and of said subscriber client computer making said request. | The ATLAS OCSP Responder (clearinghouse) permits access to computer resources controlled by the CVM (first server) upon successful initial authentication of both the CVM (first server) and the subscriber client computer. |

**INTERROGATORY NO. 3:**

Describe in detail when Plaintiff first became aware of and/or first had knowledge of each activity, product, device, system and/or equipment identified in response to Interrogatory No. 2; identify each person who had such knowledge; describe the circumstances under which each such person first became aware of and acquired such knowledge; and describe all facts, documents and things that refer and/or relate to this knowledge.

**RESPONSE TO INTERROGATORY NO. 3:**

Prism incorporates its general objections, and specifically its General Objections A, B, C,

D, E, and I. Subject to and without waiving these objections, Prism responds that Richard L.

---

[20] *Mobile Notebook Security*, Alex Deacon, Trust Services Architect, Verisign, Inc., Intel Corporation, September 9-12, 2002, pp. 11-17 (P 032876-032882).

[21] *Managed PKI Certificate Validation and Parsing Guide*, VeriSign, Inc., 2002, pp. 73-76 (P 032823-032826).

[22] *E-Mail from Mike Olsen (VeriSign) to Rick Gregg*, VeriSign, Inc., January 26, 2005 (P 032971).

[23] *RFC 2560 – X.509 Internet Public Key Infrastructure Online Certificate Status Protocol – OCSP*, IETF, June 1999, pg. 7 (P 032851).

Gregg and Gerald C. Korth had knowledge of VeriSign's Solution (VeriSign Unified

Authentication) as early as October 27, 2004. Richard L. Gregg and Gerald C. Korth first gained

knowledge of VeriSign's Solution through VeriSign's press release of September 21, 2004.

Documents relating to Prism's knowledge of VeriSign's Solution will be produced in response to

VeriSign's First Set of Requests for the Production of Documents and Things to Plaintiff Prism

Technologies LLC Nos. (1-40). Further, pursuant to Fed. R. Civ. Pro. 33(d), Prism states that the

information sought is contained within Prism's document production and the burden of

extracting the requested information is substantially equal for VeriSign as it is for Prism.

## INTERROGATORY NO. 4:

For each asserted claim of the '416 patent, (a) state Plaintiff's contentions regarding date(s) of the invention, including the date(s) of conception and reduction to practice, (b) identify each person involved in its conception and each person involved in its reduction to practice, (c) describe in detail all circumstances regarding conception, reduction to practice and any diligence exercised from the date of conception to the date of reduction to practice and identify each person involved in any such diligence, (d) identify the specific location of each such conception and reduction to practice, and (e) identify all documents and things referring to, relating to, or concerning the conception, reduction to practice, and any diligence from the date of conception to the date of reduction to practice.

## RESPONSE TO INTERROGATORY NO. 4:

Prism incorporates its general objections, and specifically its General Objections A, B, C,

D, E, and I. Subject to and without waiving these objections, Prism responds as follows.

Starting around March 1996, Richard L. Gregg began the process that led to the conception of

the subject matter in the asserted claims of the '416 patent when a potential customer, Data

Transmission Network Corp. (DTN), asked Mr. Gregg if he could develop a system using the

Internet that would replace DTN's existing satellite-based transmission network. Upon

undertaking that challenge, Mr. Gregg conceived of the '416 patented invention and directed its

development and approved the software design and system architecture as well as managed the

606362v1

- 11 -

design project and performed system tests. The subject matter of the asserted claims of the '416

patent was described in a Functional Specification no later than May 6, 1996. Sandeep Giri and

Timothy C. Goeke participated in the development of the system along with Mr. Gregg and,

under Mr. Gregg's supervision, coded the software for the project. In July 1996, Prism

performed a confidential demonstration of the prototype system for DTN personnel. Richard L.

Gregg performed the demonstration at DTN's offices, while Sandeep Giri and Timothy C. Goeke

managed the computer servers at Prism Resources. That prototype system and its demonstration

to DTN constitutes an actual reduction to practice of the invention defined by the asserted claims

of the '416 patent.

Documents relating to the conception and reduction to practice will be produced in

response to VeriSign's First Set of Requests for the Production of Documents and Things to

Plaintiff Prism Technologies LLC Nos. (1-40). Further, pursuant to Fed. R. Civ. Pro. 33(d),

Prism states that the information sought is contained within Prism's document production and

the burden of extracting the requested information is substantially equal for VeriSign as it is for

Prism.

**INTERROGATORY NO. 5:**

Excluding the "references cited" on the face of the '416 patent, identify all prior art,
including without limitation publications and acts, of which Plaintiff is aware with respect to
each of the patent-in-suit and related patents, including prior art located in any prior art search or
otherwise brought to the attention of Plaintiff, and state how and when each item of prior art
identified came to Plaintiff's attention.

**RESPONSE TO INTERROGATORY NO. 5:**

Prism incorporates its general objections, and specifically its General Objections A, B, C,

D, and E. This interrogatory, on its face, requests the identification of any and all information

that preceded the conception of the invention claimed in the '416 patent. It is therefore objected

606362v1

- 12 -

to as seeking information not relevant to any issue in this case. Subject to and without waiving these objections, Prism responds as follows.

All known, relevant, non-cumulative prior art to the '416 patent has been identified in the related, pending U.S. Patent Application No. 10/230,638. Any such prior art not identified on the face of the '416 patent or its certificate of correction did not become known, to the best of Prism's knowledge, to any person having any obligation under 37 C.F.R. 1.56 until after the issuance of the '416 patent. Further, pursuant to Fed. R. Civ. Pro. 33(d), Prism states that the information sought is contained within Prism's document production and the burden of extracting the requested information is substantially equal for VeriSign as it is for Prism.

**INTERROGATORY NO. 6:**

If Plaintiff is seeking an award of any sum of money, whether by damages or otherwise, state the amount of money Plaintiff seeks and describe the manner in which the amount was calculated, including each element of damage or component of recovery that Plaintiff seeks, the amount sought for each element or component, the manner in which each element or component was calculated or determined, and should identify the source of each number used in the calculation, and identify the person or persons who is most knowledgeable with respect to the subject matter of this Interrogatory.

**RESPONSE TO INTERROGATORY NO. 6:**

Prism incorporates its general objections, and specifically its General Objections A, E, I, and J. Prism objects to this interrogatory as a premature contention interrogatory. Prism has not completed its investigation of all facts or its formulation of all contentions with respect to such issues. Prism objects to this interrogatory seeking "an amount of money" as such request seeks information that is solely in the possession or custody of VeriSign. Subject to and without waiving these objections, Prism responds as follows. Pursuant to 35 U.S.C. § 284, Prism seeks "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." Prism's contention regarding the amount of that "reasonably royalty" has not yet been determined.

Richard L. Gregg, Gerald C. Korth, and Gregory Duman are the persons within Prism most knowledgeable with respect to the subject matter of this interrogatory. Prism anticipates using at least one damages expert to opine on the amount of damages owed to it by VeriSign, which expert will also have knowledge or information sought by this interrogatory.

**INTERROGATORY NO. 7:**

Describe in detail the business of Prism and all predecessor companies, from its inception until present, identify all directors, officers and employees of such companies over that time period, and identify all financial records relating to costs and revenues from the '416 patent.

**RESPONSE TO INTERROGATORY NO. 7:**

Prism incorporates its general objections, and specifically its General Objections A, B, E, and F. Subject to and without waiving these objections, Prism responds as follows.

In 1997, and since the company's inception, Richard L. Gregg was Prism Resources, Inc.'s President and sole Director.

606362v1

- 14 -

In 1998 Prism Resources, Inc.'s officers and directors were Richard L. Gregg, President/Director; Brad Mellott, Director; and Drew Miller, Director. From 1998-2000, at various times, Prism Resources, Inc.'s officers and directors were Richard L. Gregg (President/Director), Mark Weiss (Chief Technology Officer), Gary Bunjer (Chief Financial Officer and Chief Operating Officer), Rick Kingsbury (Vice President of Sales), Brad Mellott (Director), and Drew Miller (Director). In 2001, Richard L. Gregg executed a shareholders buyout of certain other shareholders. From 2001 to present (October 24, 2005), Richard L. Gregg and family closely-hold all shares of Prism Resources, Inc., which is a 43% owner in Prism Technologies LLC.

In August 2003, Prism Technologies LLC purchased Prism Resources Inc.'s equipment, product software, the '416 patent, and rights to the related continuation-in-part application (U.S. Patent Application 10/230,638), and assumed certain of Prism Resources, Inc.'s debt and accounts payable. Currently (October 24, 2005), Prism Technologies LLC's managing members are Gregory J. Duman (President), Richard L. Gregg (Vice President and Chief Technology Officer), Gerald C. Korth (Vice President of Business Development and Licensing), David P. Stokes (Vice President and Chief Legal Officer), and William E. Fisher (Manager).

Prism Resources, Inc. conducted business in the field of custom software development and the related commercialization of such software until around May 2001. From then until August 2003, Prism Resources was engaged in winding down its business. Since August 2003, Prism Technologies LLC has been conducting business regarding the licensing and management of intellectual property in the field of computer security.

606362v1

- 15 -

**FINANCIAL RECORDS**

In 1997 the expenses for the '416 patent related to the patent application and its

prosecution, and research and development of commercial embodiments of that patent. The '416

patent has not been licensed to any entity.

Documents identifying Prism Resources, Inc.'s and Prism Technologies LLC's

employees and financial records will be produced in response to VeriSign's First Set of Requests

for the Production of Documents and Things to Plaintiff Prism Technologies LLC Nos. (1-40).

Further, pursuant to Fed. R. Civ. Pro. 33(d), Prism states that the information sought is contained

within Prism's document production and the burden of extracting the requested information is

substantially equal for VeriSign as it is for Prism.

**INTERROGATORY NO. 8:**

Identify and describe in detail any attempt to license, sell or otherwise commercialize or
transfer rights to the '416 patent, and identify and describe the terms of any such agreements,
including licensing and sales agreements.

**RESPONSE TO INTERROGATORY NO. 8:**

Prism incorporates its general objections, and specifically its General Objections A, C, E,

and I. Subject to and without waiving these objections, Prism responds as follows.

Prism developed commercial embodiments of at least some of the subject matter

described in the '416 patent for American Business Information, Inc. ("ABI"), Securities

America, Inc. ("SAI"), and Construction Network Services, Inc. ("CNS").

To the extent they exist, non-privileged documents describing any attempt to license, sell,

transfer, or otherwise commercialize the '416 patent will be produced in response to VeriSign's

First Set of Requests for the Production of Documents and Things to Plaintiff Prism

Technologies LLC Nos. (1-40). Pursuant to Fed. R. Civ. Pro. 33(d), Prism states that the

information sought is contained within Prism's document production and the burden of

extracting the requested information is substantially equal for VeriSign as it is for Prism.

**INTERROGATORY NO. 9:**

Identify all entities and/or person that now or in the past have held rights (*e.g.*, ownership, right-to-sue, right-to-recovery, etc.) to the '416 patent and any patent claiming priority to the '416 patent, and state the nature of rights held (including, whether appropriate, the quantity held by each entity or person).

**RESPONSE TO INTERROGATORY NO. 9:**

Prism incorporates its general objections, and specifically its General Objections A, B, E,

and F. Subject to and without waiving these objections, Prism responds as follows. As

inventors, Richard L. Gregg, Sandeep Giri, and Timothy C. Goeke initially held the rights to the

relevant subject matter of the '416 patent. Richard L. Gregg, Sandeep Giri, and Timothy C.

Goeke assigned their rights Prism Resources, Inc. Prism Resources, Inc. subsequently

transferred its rights in the '416 patent to Prism Technologies LLC. Ownership rights in the

continuing prosecution application No. 10/230,638 transferred along with ownership rights to the

'416 patent.

**INTERROGATORY NO. 10:**

Identify and describe the specifics of any pre-complaint infringement analysis.

**RESPONSE TO INTERROGATORY NO. 10:**

Prism incorporates its general objections, and specifically its General Objections A, B, C,

and I. Subject to and without waiving these objections, Prism responds as follows. Prism

reviewed and evaluated publicly available documents regarding VeriSign, Inc.'s; RSA Security,

Inc.'s; Computer Associates, Inc.'s; Netegrity, Inc.'s; and Johnson & Johnson Services Inc.'s

(JJSI) infringing products. The claim chart provided in the response to Interrogatory No. 2

606362v1

- 17 -

herein provides a cross-reference to certain of the documents reviewed by Prism in conducting

its pre-filing infringement analysis.  Likewise, the responses to RSA and Computer

Associates/Netegrity's interrogatories include a claim chart with cross-references to the

documents used to conduct the pre-filing infringement analyses for those infringing products.

October 24, 2005

<div style="margin-left:40%">

THE BAYARD FIRM

*Richard D. Kirk*

Richard D. Kirk (rk0922)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899-5130
(302) 655-5000
ATTORNEYS FOR PLAINTIFF PRISM
TECHNOLOGIES LLC

</div>

OF COUNSEL:
Dirk D. Thomas, Esq.
Robert A. Auchter, Esq.
Kenneth A. Freeling, Esq.
Jason R. Buratti, Esq.
André J. Bahou, Esq.
Robins, Kaplan, Miller & Ciresi, L.L.P.
1801 K Street, N.W., Suite 1200
Washington, D.C.  20006
(202) 775-0725

606362v1

## VERIFICATION

I hereby declare on the basis of knowledge and belief, or information otherwise provided and believed by me to be true and correct, under penalty of perjury under the laws of the United States of America, that the foregoing answers to these interrogatories are true and correct.

Executed on  October 24, 2005

Mr. Richard L. Gregg
Vice President and Chief Technology Officer
Prism Technologies LLC
14707 California Street
Suite 5
Omaha, Nebraska 68154-1952