# EXHIBIT I

RECEIVED

UCT 3 1 2005

Richard D. Kirk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| PRISM TECHNOLOGIES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C. A. No. 05-214-JJF |
| VERISIGN, INC., RSA SECURITY, INC., | ) | |
| NETEGRITY, INC., COMPUTER ASSOCIATES | ) | |
| INTERNATIONAL, INC., and JOHNSON & | ) | |
| JOHNSON SERVICES, INC., | ) | |
| | ) | |
| Defendants | ) | |

### DEFENDANT COMPUTER ASSOCIATES' ANSWERS AND OBJECTIONS TO
### PLAINTIFF'S REVISED FIRST SET OF INTERROGATORIES

Pursuant to Federal Rule of Civil Procedure 33, Defendant Computer Associates International, Inc. ("CA") provides the following answers and objections to Plaintiff's Revised First Set of Interrogatories to Defendant Computer Associates International, Inc.

### GENERAL OBJECTIONS

CA specifically incorporates each of the following General Objections into its answer to each of Plaintiff's interrogatories, whether or not CA expressly refers to each General Objection in its answer to each specific interrogatory.

1.     CA incorporates its General Objections in Defendant Computer Associates' Response to Plaintiff's Revised First Set of Rule 34 Requests for Production of Documents and Things, including, but not limited to, CA's objections to Plaintiff's definitions in its Revised First Set of Rule 34 Requests for Production of Documents and Things to Computer Associates.

2.     CA objects to Prism's instructions, definitions, and interrogatories to the extent that they purport to impose any discovery obligation on CA other than as set forth in the Federal Rules of Civil Procedure and the applicable rules of this Court.

3.     CA objects to each interrogatory to the extent each interrogatory seeks information protected from discovery by the attorney/client privilege, the attorney work-product doctrine, consulting expert privilege, or any other privilege or exemption from discovery.

4.     CA objects to producing documents subject to a confidentiality agreement with a third party without complying with the requirements of such agreement.

5.     CA objects to each interrogatory to the extent each interrogatory is not limited to a time period relevant to this lawsuit.

6.     CA objects to each interrogatory to the extent that each interrogatory requires CA to identify, without limitation, all documents, persons, or things that refer or relate to a particular subject or to support a particular contention.  CA objects to such identification as overbroad and unduly burdensome.  Subject to and without waiving any objections, CA may answer each interrogatory by producing documents in accordance with Fed. R. Civ. P. 33(d).

7.     CA objects to Plaintiff's definition of "Identity and Access Management" as vague, ambiguous, overbroad, and unduly burdensome.  In particular, CA objects that the definition is vague and ambiguous in its use of the terms "advanced authentication" and "strong authentication," as these terms are undefined.  CA further objects to the definition as overbroad and unduly burdensome to the extent it encompasses products that are not conceivably covered by the patent-in-suit.  Plaintiff's definition of "Identity and Access Management" enlarges the scope of Plaintiff's Rule 33 interrogatories beyond any reasonable realm of relevance and places undue and unreasonable burden on CA.

2

8.    CA objects to Plaintiff's instructions as overbroad, unduly burdensome, harassing, and exceeding the scope of CA's duty to respond to these interrogatories pursuant to the Federal Rules of Civil Procedure.  In particular, the instructions are overbroad and unduly burdensome to the extent that they request that CA "describe in detail all facts that support the claim assertion, allegation or contention," "identify all documents, persons and other evidence that form any part of the source for and on you rely to support your claim, assertion, allegation or contention," "identify each person possessing information relating to the response to the Interrogatory," "identify each and every communication which forms any part of the source of Defendant's information regarding the alleged facts or legal conclusions referred to by the Interrogatory," "state separately the acts or omissions to act on the part of any person (identifying the acts or omissions to act by stating their nature, time and place, and identifying the person or persons involved), which form any part of Defendant's information regarding the alleged facts or legal conclusions referred to in the Interrogatory," and "state separately any other fact or facts that forms [sic] the basis of Defendant's information regarding the alleged facts or legal conclusions referred to in the interrogatory and identify all documents concerning those facts and all persons possessing information about those facts."

9.    CA's discovery and investigation of facts relevant to this lawsuit are ongoing. CA reserves the right to amend and/or supplement these responses as discovery proceeds and facts are uncovered.

## ANSWERS AND OBJECTIONS

<u>**INTERROGATORY NO. 1:**</u>

For each of the following categories (a) – (e), identify the three (3) most knowledgeable individuals (from the timeframe of 1996 to present) and describe the nature of the information possessed by each such individual:

(a)    the design of the products identified in Prism's Rule 34 Request No. 1 to Computer Associates, including but not limited to the system architecture and source code;

(b)    the development of the products identified in Prism's Rule 34 Request No. 1 to Computer Associates, including but not limited to the system architecture and source code;

(c)    the operation and implementation of the products identified in Prism's Rule 34 Request No. 1 to Computer Associates, including but not limited to the system architecture and source code;

(d)    sales by unit and revenue, both in the U.S. and internationally, of the products identified in Prism's Rule 34 Request No. 1 to Computer Associates;

(e)    the profit, both gross and net, generated by sales of the products identified in Prism's Rule 34 Request No. 1 to Computer Associates.

<u>**RESPONSE TO INTERROGATORY NO. 1:**</u>

CA objects that the reference to "products identified in Prism's Rule 34 Request No. 1 to Computer Associates" is vague, ambiguous, overbroad, and unduly burdensome for all the reasons described in CA's objections to Request No. 1 in Defendant Computer Associates' Response to Plaintiff's Revised First Set of Rule 34 Requests for Production of Documents and Things. Accordingly, CA incorporates all of its objections to Request No. 1 in Defendant Computer Associates' Response to Plaintiff's Revised First Set of Rule 34 Requests for Production of Documents and Things. CA further objects that the interrogatory is vague and ambiguous because Prism's Rule 34 Request No. 1 to Computer Associates does not identify any

4

products.  For these reasons, CA limits its response to the "SiteMinder software solutions" that Plaintiff specifically accuses of infringing the patent-in-suit.

CA further objects that this interrogatory is vague and ambiguous to the extent it requests identification of "the three (3) most knowledgeable individuals" because that term is entirely subjective and CA has no way to judge or compare the degree of knowledge about a topic possessed by its entire workforce.  CA objects that the interrogatory is overbroad and unduly burdensome to the extent it would require CA to engage in an exercise to search through its entire employee base (both present and past), determine the extent of each person's knowledge with respect to the identified topic, and compare the knowledge held by each individual to identify the three most knowledgeable individuals.

CA further objects that the interrogatory is overbroad and unduly burdensome in that it requests information for the "timeframe of 1996 to present."  CA limits its answer to (i) the "SiteMinder software solutions" that Plaintiff specifically accuses of infringing the patent-in-suit and that CA made or sold after the issue date of the patent-in-suit, February 4, 2003, and (ii) SiteMinder 1.0 which qualifies as prior art.

Subject to and without waiving the foregoing general and specific objections, CA provides the following answer according to its best understanding of this interrogatory.

The following individuals have knowledge relating to the design, development, operation, and implementation of SiteMinder:

- Timothy Carruthers, Vice President Development.

- Shirley H. Carter, Principal Software Engineer.

- Sharon Chang, Senior Manager, Development.

- Christopher Johnson, Senior Architect.

- Leonid Korogodski, Senior Software Engineer.

5

- Vadim Lander, Chief eTrust® Architect.

- Eli Matison, Principal Software Engineer.

- David Mary, Principal Software Engineer.

- Manoj Varghese, Senior Manager, Development.

- Jie Yin, Director, Product Management.

Peter Tawadros, Director, Financial Planning and Analysis, has knowledge relating to sales of SiteMinder and profits generated by sales of SiteMinder.

## INTERROGATORY NO. 2:

Identify each Identity and Access Management software or hardware product that Defendant made, used, sold, offered for sale, or imported into the United States since 1996.

## RESPONSE TO INTERROGATORY NO. 2:

CA objects that the request is vague, ambiguous, overbroad, and unduly burdensome in its use of the defined terms "Identity and Access Management" for the reasons described in CA's general objections to Plaintiff's definition of that term.

CA further objects that the interrogatory is overbroad and unduly burdensome in that it requests CA to identify products that CA "made, used, sold, offered for sale, or imported into the United States since 1996." CA limits its answer to (i) products that CA made or sold after the issue date of the patent-in-suit, February 4, 2003, and (ii) SiteMinder 1.0 which qualifies as prior art.

Subject to and without waiving the foregoing general and specific objections and based on CA's best understanding of Interrogatory No. 2, CA identifies eTrust® SiteMinder as the only product that Plaintiff has accused of infringement.

6

**INTERROGATORY NO. 3:**

To the extent that you contend that any product identified in Prism's Rule 34 Request No. 1 to Computer Associates does not infringe either claim 1 or claim 24 of the '416 patent, state the basis for that contention and provide a detailed claim chart specifically identifying what claim element(s) you contend is (are) not met, and provide Computer Associates' contentions regarding the interpretation of each claim element that you assert is not met, including an identification of all intrinsic or extrinsic evidence upon which Computer Associates relies to support such claim interpretations.

**RESPONSE TO INTERROGATORY NO. 3:**

CA objects that the reference to "any product identified in Prism's Rule 34 Request No. 1 to Computer Associates" is vague, ambiguous, overbroad, and unduly burdensome for all the reasons described in CA's objections to Request No. 1 in Defendant Computer Associates' Response to Plaintiff's Revised First Set of Rule 34 Requests for Production of Documents and Things. Accordingly, CA incorporates all of its objections to Request No. 1 in Defendant Computer Associates' Response to Plaintiff's Revised First Set of Rule 34 Requests for Production of Documents and Things. CA further objects that the interrogatory is vague and ambiguous because Prism's Rule 34 Request No. 1 to Computer Associates does not identify any product. For these reasons, CA limits its response to the "SiteMinder software solutions" that Plaintiff specifically accuses of infringing the patent-in-suit.

CA further objects that the interrogatory is overbroad and unduly burdensome in that it is not limited to a relevant time period. CA objects to providing an answer to this interrogatory for products that were not made, used, sold, offered for sale, or imported into the United States after February 4, 2003, because such products are neither relevant to any claim or defense in the pending action nor reasonably calculated to lead to the discovery of admissible evidence. For this reason, CA limits its response to the "SiteMinder software solutions" that Plaintiff

7

specifically accuses of infringing the patent-in-suit and that CA made or sold after the issue date

of the patent-in-suit, February 4, 2003.

CA further objects that the interrogatory seeks information protected from discovery by

the attorney/client privilege and/or the attorney work-product doctrine.

CA further objects that the interrogatory is premature with respect to its request for

"Computer Associates' contentions regarding the interpretation of each claim element that you

assert is not met, including an identification of all intrinsic or extrinsic evidence upon which

Computer Associates relies to support such claim interpretations."  CA will provide such

information at the appropriate date as required by the Court's Scheduling Order.  CA continues

to investigate the patent-in-suit and will update its answer to this interrogatory as it learns new

information.

As described above in CA's general objections, CA objects to Plaintiff's instructions

related to the phrase "state the basis" because the instructions are vague, ambiguous, overbroad,

unduly burdensome, harassing, and exceed the scope of CA's duty to respond to these requests

pursuant to the Federal Rules of Civil Procedure.  CA further objects that this request is

overbroad and unduly burdensome in that it requests "an identification of all intrinsic or extrinsic

evidence upon which Computer Associates relies to support such claim interpretations."

Subject to and without waiving the foregoing general and specific objections, CA

provides the following answer based on CA's best understanding of Interrogatory No. 3.

**A.    Claim 1**

Claim 1 is a system claim.  The claimed system is comprised of a combination of

components.  Such a combination claim protects only against an operable assembly of the whole

and not the individual parts.  A combination claim can be infringed only by making, using,

8

offering to sell, or selling the whole patented combination in the United States or importing the whole patented combination into the United States. Thus, in order to be a direct infringer, CA would have had to have made, used, offered for sale, or sold in the United States or imported into the United States the complete operable system as recited in Claim 1. As reflected in Plaintiff Prism's response to CA's Interrogatory No. 1, CA does not sell the whole operable system recited in Claim 1. In particular, Prism's response recognizes that, at a minimum, CA does not sell the required "hardware key" or the required "client software means."

In Prism's claim chart entitled "Computer Associates eTrust® SiteMinder with Aladdin USB Token or Smart Card," Prism states with regard to the Claim 1 limitation "client software means installed on each of said subscriber client computers adapted to forward its identity data to said first server computer at the beginning of an operating session in which access to selected computer resources is requested":

> Aladdin eToken Run Time Environment (RTE) software is the client software means installed on each of said subscriber client computers.

CA has not made, used, offered for sale, or sold in the United States or imported into the United States the Aladdin eToken Run Time Environment, either separately or as part of a system including CA's SiteMinder product.

In the same claim chart, Prism states with regard to the Claim 1 limitation "at least one hardware key connected to the subscriber client computer, said key being adapted to generate a predetermined digital identification, which identification is part of said identity data":

> The Aladdin eToken Pro or eToken R2 (USB Tokens) or eToken Pro Smart Card is the hardware key which is connected to the subscriber client computer's USB port or by a Smart Card reader.

Computer Associates has not made, used, offered for sale, or sold in the United States or imported into the United States the Aladdin eToken Pro or eToken R2 (USB Tokens) or eToken Pro Smart Card, either separately or as part of a system including CA's SiteMinder product.

Likewise, in Prism's '416 claim chart entitled, "Computer Associates eTrust® SiteMinder with SafeNet iKey USB Token," Prism states with regard to the Claim 1 limitation "client software means installed on each of said subscriber client computers adapted to forward its identity data to said first server computer at the beginning of an operating session in which access to selected computer resources is requested":

> SafeNet iKey 2000 CIP (Cryptographic Interface Provider) Software is the client software means installed on each of said subscriber client computers.

CA has not made, used, offered for sale, or sold in the United States or imported into the United States the SafeNet iKey 2000 CIP (Cryptographic Interface Provider) Software, either separately or as part of a system including CA's SiteMinder product.

In the same claim chart, Prism states with regard to the Claim 1 limitation "at least one hardware key connected to the subscriber client computer, said key being adapted to generate a predetermined digital identification, which identification is part of said identity data":

> The SafeNet iKey USB Token is the hardware key which is connected to the subscriber client computer's USB port.

CA has not made, used, offered for sale, or sold in the United States or imported into the United States the SafeNet iKey USB Token, either separately or as part of a system including CA's SiteMinder product.

Furthermore, Computer Associates' SiteMinder products do not include the "clearinghouse means," "at least one subscriber client computer," "first server computer," or "an

untrusted network," as recited in Claim 1.  Moreover, the SiteMinder software does not perform

the functions recited in Claim 1.

| Claim 1 | SiteMinder |
|---|---|
| A system for controlling the operation of and access to selected computer resources of at least a first server computer by at least one subscriber client computer via an untrusted network in an operating session, without necessarily controlling access to other computer resources provided by the first server computer and by other server computers and nonsubscriber client computers, comprising: | CA's SiteMinder product does not include at least "a first server computer," "at least one subscriber client computer," or "an untrusted network," as recited in this preamble. |
| clearinghouse means for storing identity data of said first server computer and the identity data of each of said subscriber client computers; | CA's SiteMinder products do not include the "clearinghouse means."<br><br>In Plaintiff's infringement contentions provided in response to CA's Interrogatory No. 1, Plaintiff stated, "The clearinghouse means consists of the Computer Associates SiteMinder Policy Server and its associated database.  The identity data of the Computer Associates SiteMinder Agent (first server) and each subscriber client are stored in the Policy Server database."<br><br>SiteMinder and, in particular, the Policy Server of SiteMinder do not include a database. |
| server software means installed on said first server computer adapted to forward its identity data and identity data of each subscriber client computer to said clearinghouse means at the beginning of an operating session in which access to selected computer resources of said first server computer is requested; | CA's SiteMinder products are not sold "installed on said first server computer server," and they are not "adapted to forward its identity data and identity data of each subscriber client computer to said clearinghouse means at the beginning of an operating session in which access to selected computer resources of said first server computer is requested."<br><br>More particularly, the SiteMinder Web Agent does not forward its identity data "at the beginning of an operating session in which access to selected computer resources of said first server computer is requested." |

11

| Claim 1 | SiteMinder |
|---|---|
| | Prism contends, "The identity data of the first server is a public/private key pair." This is not correct. SiteMinder does not forward a public/private key to the Policy Sever "at the beginning of an operating session in which access to selected computer resources of said first server computer is requested." |
| client software means installed on each of said subscriber client computers adapted to forward its identity data to said first server computer at the beginning of an operating session in which access to selected computer resources is requested; | CA's SiteMinder products do not include "client software means" or the "subscriber client computers." <br><br> In Plaintiff's infringement contentions provided in response to CA's Interrogatory No. 1, Plaintiff identified "Aladdin eToken Run Time Environment (RTE) software" and "SafeNet iKey 200 CIP (Cryptographic Interface Provider) Software" as the recited client software means. CA has not made, used, offered for sale, or sold in the United States or imported into the United States these software applications, either separately or as part of a system including CA's SiteMinder product. |
| at least one hardware key connected to the subscriber client computer, said key being adapted to generate a predetermined digital identification, which identification is part of said identity data; | CA's SiteMinder products do not include "at least one hardware key." <br><br> In Plaintiff's infringement contentions provided in response to CA's Interrogatory No. 1, Plaintiff identified "Aladdin eToken Pro or eToken R2 (USB Tokens) or eToken Pro Smart Card" and "SafeNet iKey USB Token" as the recited hardware key. CA has not made, used, offered for sale, or sold in the United States or imported into the United States these devices, either separately or as part of a system including CA's SiteMinder product. |
| said server software means installed on the first server computer being adapted to selectively request the subscriber client computer to forward said predetermined digital identification to the first server computer to thereby confirm that said hardware key is connected to said subscriber client computer; | CA's SiteMinder products are not sold "installed on said first server computer server," and they are not "adapted to selectively request the subscriber client computer to forward said predetermined digital identification to the first server computer" or to "confirm that said hardware key is connected to said subscriber |

| Claim 1 | SiteMinder |
|---|---|
|  | client computer." |
|  | The SiteMinder Web Agent has no knowledge of whether a client computer is using a hardware key and has no way to confirm whether a hardware key is connected. |
|  | In Plaintiff's infringement contentions provided in response to CA's Interrogatory No. 1, Plaintiff incorrectly stated, "If the Agent detects that the cookie timeout has expired, the Agent will request the identity data of the subscriber client computer." When a cookie has expired, which signifies the end of an operating session, SiteMinder's Web Agent denies a subsequent request and re-directs the client software to a particular URL. The SiteMinder Web Agent does not request the subscriber client computer to forward predetermined digital identification to confirm that a hardware key is connected. |
| said clearinghouse means being adapted to authenticate the identity of said subscriber client computer responsive to a request for selected computer resources of said first server computer by a subscriber client computer; | CA's SiteMinder products do not include the "clearinghouse means." |
| said clearinghouse means being adapted to authenticate the identity of said first server computer responsive to said subscriber client computer making the request for selected computer resources of said first server computer; and, | CA's SiteMinder products do not include the "clearinghouse means." CA's SiteMinder product does not "authenticate the identity of said first server computer responsive to said subscriber client computer making the request for selected computer resources of said first server computer." SiteMinder does not authenticate the "first server computer." It does perform a handshake process with the Web Agent, but it does not perform this handshake process "responsive to said subscriber client computer making the request for selected computer resources of said first server computer." |
| said clearinghouse means being adapted to permit access to said selected computer | CA's SiteMinder products do not include the "clearinghouse means." |

13

| Claim 1 | SiteMinder |
|---|---|
| resources responsive to successful initial authentication of said first server computer and of said subscriber client computer making first request. | SiteMinder does not "permit access to said selected computer resources responsive to successful initial authentication of said first server computer and of said subscriber client computer making first request." More specifically, the Policy Server does not permit access to selected computer resources "responsive to successful initial authentication of said first server computer." |

In addition to the reasons set forth above, CA has not practiced the claimed invention because CA has not used SiteMinder with any connected hardware key.

**B.    Claim 24**

Claim 24 is a method claim.  A method claim can only be directly infringed by use of the method.  For the reasons set forth with regard to Claim 1 above, CA's SiteMinder software is not used to practice the claimed method as specified in the claim chart which is incorporated herein by reference.  But even if it could be so used, sale of equipment to practice a method is not direct infringement.   Therefore, CA's sale of SiteMinder software cannot directly infringe method claim 24 as a matter of law.

Furthermore, CA has never practiced the method of Claim 24.  In addition to the reasons set forth in the claim chart regarding Claim 1, CA has not practiced the claimed method because CA has not used SiteMinder with any connected hardware key.


**INTERROGATORY NO. 4:**

To the extent that you contend that any claim of the '416 patent is invalid for failure to comply with one or more of the provisions of 35 U.S.C. §§ 101, 102, 103 and/or 112, or for any other reason, state the basis for your contention, including at least the following:

14

(i)   For each claim of the '416 patent that you contend or may contend is invalid, identify the exact prior art reference or references on which you rely to support such contention and state the facts and basis on which you contend that such reference constitutes prior art to the '416 patent;

(ii)  For each claim of the '416 patent that you contend is invalid as anticipated under 35 U.S.C. § 102, provide a claim chart identifying the exact structure or step disclosed in the allegedly invalidating prior art reference, or allegedly invalidating prior art knowledge and/or activity, that you contend meets each element or limitation of the allegedly invalid patent claim(s);

(iii) For each claim of the '416 patent that you contend is invalid for obviousness under 35 U.S.C. §103, identify the exact combination of prior art references (or single reference) that you contend renders the claim obvious, identify where each element or limitation of the patent claim appears in the cited combination of prior art references, and identify any evidence or facts upon which you may rely to show a motivation to combine the prior art references in the manner you assert.

(iv)  For each claim of the '416 patent that you contend is invalid under 35 U.S.C. § 102(g), identify the inventor, the date of conception, the date of reduction to practice, and all facts and evidence on which you will rely to establish diligence under § 102(g) by the alleged prior inventor(s).

(v)   For each claim of the '416 patent that you contend is invalid under 35 U.S.C. § 112, state the term(s) or element(s) that you contend are indefinite or fail to find support in the '416 patent disclosure and state the statutory basis for your contention and identify any facts or evidence on which you may rely to provide any such contention.

## RESPONSE TO INTERROGATORY NO. 4:

CA objects that the interrogatory seeks information protected from discovery by the attorney/client privilege and/or the attorney work-product doctrine.

As described above in CA's general objections, CA objects to Plaintiff's instructions related to the phrase "state the basis" because the instructions are vague, ambiguous, overbroad, unduly burdensome, harassing, and exceed the scope of CA's duty to respond to these requests pursuant to the Federal Rules of Civil Procedure. CA further objects that this interrogatory is overbroad and unduly burdensome in that it requests that CA "identify any evidence or facts

upon which you may rely to show a motivation to combine the prior art references in the manner

you assert," "identify . . . facts and evidence on which you will rely to establish diligence under

§ 102(g) by the alleged prior inventor(s)," and "identify any facts or evidence on which you may

rely to provide any such contention."

CA further objects that the interrogatory's multiple subparts exceed the reasonable scope

of a single interrogatory and thus count as separate interrogatories for purpose of the discovery

limits in this case.

CA further objects that the interrogatory is overbroad and unduly burdensome to the

extent the language "any claim of the '416 patent" requires CA to answer this interrogatory for

claims that Plaintiff is not asserting against CA.  Plaintiff has accused CA of infringing only

Claims 1 and 24 of the '416 patent.  Accordingly, CA limits its answer to those same claims.

The Court has not yet construed the claims of the '416 patent.  As a result, the following

preliminary invalidity contentions are based on the claim constructions that Prism may be using

to attempt to read Claims 1 and 24 on CA's SiteMinder product.  CA reserves the right to argue

that the claims should be construed more narrowly.

CA continues to investigate invalidity and will update its answer to this interrogatory as it

learns new information.

Subject to and without waiving the foregoing general and specific objections, CA

provides the following answer based on CA's best understanding of Interrogatory No. 4.

A.    U.S. Patent No. 4,694,496 (Wirstrom)

Claims 1 and 24 are invalid under 35 U.S.C. § 103 as obvious in light of U.S. Patent No.

4,694,496 (Wirstrom) and U.S. Patent 5,841,970 (Tabuki).  Wirstrom qualifies as prior art under

35 U.S.C. § 102(b) because it issued more than a year before the filing date of the '416 patent.

16

Tabuki qualifies as prior art under 35 U.S.C. § 102(e) because it was filed before the earliest date of invention for the '416 patent established by the Plaintiff.

During prosecution of the '416 patent, the PTO allowed Claims 1 and 24 and stated its reason for allowance was that the prior art failed to disclose "the server requesting digital identification information from the client during an operating session and using the information to confirm that the hardware key associated with the client computer is connected to the subscriber's client computer." Wirstrom discloses this feature of Claims 1 and 24.

Figure 1 illustrates a system 10 including a host computer 20 and terminals 30, 40, and 50. (Col. 6, ll. 18-26). Terminal 30, 40, and 50 are connected to security units 34, 44, and 54, respectively. (Col. 4, ll. 40-41). Although Figure 1 illustrates security units 34, 44, and 54 as separate from their associated terminals, security units 34, 44, and 54 can be attached to or incorporated within the structure of the terminals 30, 40, and 50. (Col. 7, ll. 16-21). The security units 34, 44, and 54 include ports 36, 46, and 56 which receive encryption devices 38, 48, and 58. (Col. 6, ll. 38-59). Figure 2 illustrates security unit 34 and encryption device 38.

System 10 controls access to selected computer resources stored on host computer 20. A user who seeks to access host computer 20 inserts his or her encryption device 38 into port 36 of security unit 34 associated with terminal 30. (Col. 8, ll. 46-50). Security unit 34 and host computer 20 engage in a dialog to establish the identification and/or authorization of the user so that the user can access host computer 20. (Col. 6, ll. 52-59; col. 8, ll. 61-64). A program that is resident within the host computer 20 sends one or a series of authentication query signals to security unit 34. Encryption device 38 and security unit 34 generate an authenticating signal for responding to the authentication query signal. (Col. 6, ll. 48-59; col. 9-17). The authenticating response signal includes a portion that is representative of the identification of the encryption

17

device 38 and a portion that is representative of the security unit 34. (Col. 9, l. 61 - col. 10, l. 2). The authenticating response signal is sent to the host computer 20 to notify the host computer that an appropriate user encryption device 38 is in place at terminal 30 and to permit access to the host computer 20. (Col. 10, ll. 3-11). Wirstrom further states, "By programming the host computer 20 so that authentication query signals are sent along the communications link 32 at periodic intervals during communication sessions, a check can continually be made of the presence of an authorized user's encryption device 38 in the port 36 of the security unit 30 so that the host computer 20 will be reassured that such communication as is being maintained with the terminal 30 is being supervised by an authorized user." (Col. 11, ll. 28-37; *see also* col. 4, ll. 58 - col. 5, ll. 3).

Furthermore, it would have been obvious to a person having ordinary skill in the art at the time of the invention of the '416 patent that host computer 20 could use an external verification server to manage a database of users' authentication data and verify a particular user's authentication data. For example, U.S. Patent 5,841,970 (Tabuki) describes such a verification server 30. Tabuki describes several benefits of verification server 30 that would have motivated a person skilled in the art to use such a server. (Col. 2, ll. 10-15; col. 3, ll. 40-65; col. 8, ll. 16-31). Such motivation to combine also comes from the knowledge of one of ordinary skill in the art and the nature of the problem to be solved.

The combination of Wirstrom's host computer 20 and Tabuki's verification server 30 make obvious the clearinghouse means and server software means of Claim 1 and their associated functions recited in Claim 24. Wirstrom's terminal 30 and security unit 34 disclose the client software means of Claim 1 and its associated functions in Claim 24. Wirstrom's

encryption device 38 discloses the hardware key of Claim 1 and its associated function in Claim 24.

### B.     SiteMinder 1.0

SiteMinder 1.0 qualifies as prior art at least under 35 U.S.C. § 102(a) because it was sold or in public use before the earliest date of invention for the '416 patent established by the Plaintiff.  To the extent Plaintiff argues that Claims 1 and 24 of the '416 patent can be read on CA's SiteMinder product, the same claims can be read on SiteMinder 1.0.  As a result, SiteMinder 1.0 anticipates Claims 1 and 24 of the '416 patent under § 102 or may be combined with other prior art (including the other prior art identified in response to this interrogatory) to invalidate Claims 1 and 24 of the '416 patent as obvious under § 103.

### C.     35 U.S.C. § 112

In addition, Claim 1 and 24 of the '416 patent are invalid for failure to meet the written description and/or enablement requirements under 35 U.S.C. § 112.  In particular, the written description does not support or enable the Claim 1 limitations "client software means installed on each of said subscriber client computers adapted to forward its identity data to said first server computer at the beginning of an operating session in which access to selected computer resources is requested" and "said clearinghouse means being adapted to authenticate the identity of said subscriber client computer responsive to a request for selected computer resources of said first server computer by a subscriber client computer."  Similarly, the written description does not support or enable the Claim 24 limitations "requiring a subscriber client computer to forward its identity data to said clearinghouse means at the beginning of an operating session in which access to selected computer resources is requested" and "attempting to authenticate the identity of said subscriber client computer from said clearinghouse means responsive to a request for selected computer resources of said first server computer by a subscriber client computer."

19

Claims 1 and 24 are also invalid under 35 U.S.C. § 112 for failing to particularly point out and distinctly claim the invention. In particular, the term "said identity data" at column 35, line 50 is indefinite because it is unclear whether the term refers to the identity data of the first server computer or the identity data of each subscriber client computer.

**INTERROGATORY NO. 5:**

If you contend that the '416 patent is unenforceable for any reason, please state the basis for that contention and identify any facts that support that contention.

**RESPONSE TO INTERROGATORY NO. 5:**

As described above in CA's general objections, CA objects to Plaintiff's instructions related to the phrase "state the basis" because the instructions are vague, ambiguous, compound, overbroad, unduly burdensome, harassing, and exceed the scope of CA's duty to respond to these requests pursuant to the Federal Rules of Civil Procedure. CA further objects that this request is overbroad and unduly burdensome to the extent that the language "identify any facts that support that contention" requires CA to identify all facts that support CA's unenforceability contentions. CA further objects that the interrogatory seeks information protected from discovery by the attorney/client privilege and/or the attorney work-product doctrine. CA further objects that the interrogatory is premature as the parties have just begun discovery. CA reserves the right to amend and/or supplement its answer as it discovers additional information.

Subject to and without waiving the foregoing general and specific objections, CA provides the following answer based on CA's best understanding of Interrogatory No. 5. CA is not currently asserting as a defense in this action that Plaintiff's patent is unenforceable. If CA asserts such a defense in the future, CA will update this interrogatory response accordingly.

20

### INTERROGATORY NO. 6:

If you assert as a defense in this action that Plaintiff's damages are limited by any theory of laches or equitable estoppel, please state the basis for that contention and identify any facts that support such contention.

### RESPONSE TO INTERROGATORY NO. 6:

As described above in CA's general objections, CA objects to Plaintiff's instructions related to the phrase "state the basis" because the instructions are vague, ambiguous, overbroad, unduly burdensome, harassing, and exceed the scope of CA's duty to respond to these requests pursuant to the Federal Rules of Civil Procedure. CA further objects that this request is overbroad and unduly burdensome to the extent that the language "identify any facts that support such contention" requires CA to identify all facts that support CA's contentions. CA further objects that the interrogatory seeks information protected from discovery by the attorney/client privilege and/or the attorney work-product doctrine. CA further objects that the interrogatory is premature as the parties have just begun discovery. CA reserves the right to amend and/or supplement its answer as it discovers additional information.

Subject to and without waiving the foregoing general and specific objections, CA provides the following answer based on CA's best understanding of Interrogatory No. 6. CA is not currently asserting as a defense in this action that Plaintiff's damages are limited by any theory of laches or equitable estoppel. If CA asserts such a defense in the future, CA will update this interrogatory response accordingly.

21

**INTERROGATORY NO. 7:**

If you contend that your infringement, if any, has not been willful or does not continue to be willful, state the basis for your contention and (i) state the date on which Computer Associates first became aware of the '416 patent (or any foreign or United States patent application or patent related thereto), and state the date on which Computer Associates first became aware of Prism Resources, Inc. or Prism Technologies LLC, and (ii) identify all documents, persons and other evidence on which you rely to establish the date on which you first became aware of the '416 patent (or any United States patent application or patent related thereto) and the date on which you first became aware of Prism Resources, Inc. or Prism Technologies LLC.

**RESPONSE TO INTERROGATORY NO. 7:**

As described above in CA's general objections, CA objects to Plaintiff's instructions related to the phrase "state the basis" because the instructions are vague, ambiguous, overbroad, unduly burdensome, harassing, and exceed the scope of CA's duty to respond to these requests pursuant to the Federal Rules of Civil Procedure. CA further objects that this interrogatory is overbroad and unduly burdensome in its request that CA "identify all documents, persons and other evidence on which you rely to establish the date on which you first became aware of the '416 patent (or any United States patent application or patent related thereto) and the date on which you first became aware of Prism Resources, Inc. or Prism Technologies LLC."

CA further objects that the interrogatory seeks information protected from discovery by the attorney/client privilege and/or the attorney work-product doctrine. CA further objects that the interrogatory is premature as the parties have just begun discovery. CA reserves the right to amend and/or supplement its answer as it discovers additional information.

Subject to and without waiving the foregoing general and specific objections, CA provides the following answer based on CA's best understanding of Interrogatory No. 7. CA has not infringed Plaintiff's '416 patent. Even if the Court were to find infringement, that infringement would not be willful. Plaintiff bears the burden of proving willfulness, and to date,

22

Plaintiff has not produced any evidence that CA infringed the '416 patent, much less evidence that any alleged infringement was willful.  On that basis, CA contends that Plaintiff has not carried its burden of proof.  If Prism presents evidence intended to show that any alleged infringement by CA was willful, CA reserves the right to present rebuttal evidence at that time.

CA first became aware of the '416 patent (or any foreign or United States patent application or patent related thereto), Prism Resources, Inc., and Prism Technologies LLC after CA reviewed Plaintiff's Complaint, which was filed on April 11, 2005.

## INTERROGATORY NO. 8:

State your basis for the allegations in paragraphs 30 and 32 of Computer Associates' Counterclaim on the date that Counterclaim was filed.

## RESPONSE TO INTERROGATORY NO. 8:

CA objects that the interrogatory seeks information protected from discovery by the attorney/client privilege and/or the attorney work-product doctrine.  As described above in CA's general objections, CA objects to Plaintiff's instructions related to the phrase "state the basis" because the instructions are vague, ambiguous, overbroad, unduly burdensome, harassing, and exceed the scope of CA's duty to respond to these requests pursuant to the Federal Rules of Civil Procedure.  CA further objects that the interrogatory is unintelligible because it references "the allegations in paragraphs 30 and 32 of Computer Associates' Counterclaim" and the identified paragraphs 30 and 32 of Computer Associates' counterclaims do not include factual allegations. Paragraphs 30 and 32 are merely requests for declaratory relief.

Subject to and without waiving the foregoing general and specific objections, CA provides the following answer based on CA's best understanding of Interrogatory No. 8.  The

bases for the declaratory relief request in paragraph 30 are provided in CA's response to Interrogatory No. 3, and the bases for the declaratory relief request in paragraph 32 is provided in CA's response to Interrogatory No 4.

## INTERROGATORY NO. 9:

Identify each witness you expect to testify at trial and the substance of each witness's anticipated testimony.

## RESPONSE TO INTERROGATORY NO. 9:

CA objects that the phrase is overbroad and unduly burdensome to the extent it requires CA to describe anything more than the general subject matter of each witness's anticipated testimony. CA further objects that the interrogatory seeks information protected from discovery by the attorney/client privilege and/or the attorney work-product doctrine. CA further objects that the interrogatory is premature.

Subject to and without waiving the foregoing general and specific objections, CA will identify its trial witnesses at an appropriate time as provided by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, and the Court's scheduling order.

**INTERROGATORY NO. 10:**

Assuming that Computer Associates is found liable for infringing the '416 patent, please state your contentions regarding the amount of damages to which Plaintiff is entitled under 35 U.S.C. § 284.

**RESPONSE TO INTERROGATORY NO. 10:**

CA objects that the interrogatory seeks information protected from discovery by the attorney/client privilege and/or the attorney work-product doctrine. CA further objects that the interrogatory is premature. The Court's scheduling order provides a deadline for expert disclosure. Subject to and without waiving the foregoing general and specific objections, CA contends that Plaintiff is not entitled to any damages.

OF COUNSEL

David M. Schlitz
Stephen M. Silver
BAKER BOTTS L.L.P.
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2400
Tel. 202-639-7700

Samir A. Bhavsar
Jeffrey D. Baxter
BAKER BOTTS L.L.P.
2001 Ross Avenue
Dallas, TX 75201-2980
Tel: 214-953-6500

Dated: October 28, 2005
705483 / 29074

POTTER ANDERSON & CORROON LLP

By: _____
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    P.O. Box 951
    Wilmington, DE 19899-0951
    Tel: 302-984-6000

*Attorneys for Defendant Computer Associates International, Inc.*

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on October 28, 2005, a true and correct copy of the within document was caused to be served on the attorney of record at the following addresses as indicated:

### VIA HAND DELIVERY

Richard D. Kirk
The Bayard Firm
222 Delaware Avenue, Suite 900
P. O. Box 25130
Wilmington, DE 19899-5130

Frederick L. Cottrell, III
Alyssa M. Schwartz
Richards, Layton & Finger
One Rodney Square
P. O. Box 551
Wilmington, DE 19899-0551

Patricia Smink Rogowski
Connolly, Bove, Lodge & Hutz
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

Steven Balick
John G. Day
Ashby & Geddes
222 Delaware Avenue
P. O. Box 1150
Wilmington, DE 19899

### VIA FEDERAL EXPRESS

Dirk D. Thomas
Robert A. Auchter
Kenneth A. Freeling
Jason R. Buratti
André J. Bahou
Robins, Kaplan, Miller & Ciresi, L.L.P.
1801 K Street, Suite 1200
Washington, DC 20006

William F. Lee
David B. Bassett
Mark D. Selwyn
Gregory P. Teran
Wilmer Cutler Pickering Hale & Dorr
60 State Street
Boston, MA 02109

Edward F. Mannino
Jason A Snyderman
Akin Gump Strauss Hauer & Feld LLP
One Commerce Square, Suite 2200
2005 Market Street
Philadelphia, PA 19103

John DiMatteo
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019-6099