# EXHIBIT A

```
                                                              1

 1                  IN THE UNITED STATES DISTRICT COURT

 2                  IN AND FOR THE DISTRICT OF DELAWARE

 3                              - - -

 4   CORNING INCORPORATED, and ARTIFICIAL  :  CIVIL ACTION
     SENSING INSTRUMENTS ASI AG,           :
 5                                         :
              Plaintiffs,                  :
 6                                         :
     v.                                    :
 7                                         :
     SRU BIOSYSTEMS, LLC,                  :
 8   SRU BIOSYSTEMS, INC., and             :
     SRU BIOSYSTEMS HOLDINGS, LLC,         :
 9                                         :
              Defendants.                  :  NO. 03-633 (JJF)
10
                                - - -
11
                           Wilmington, Delaware
12               Wednesday, August 13, 2003 at 2:50 p.m.
                         TELEPHONE CONFERENCE
13
                                - - -
14
     BEFORE:      HONORABLE JOSEPH J. FARNAN, JR., U.S.D.C.J.
15
                                - - -
16   APPEARANCES:

17
               POTTER ANDERSON & CORROON, LLP
18             BY:  DAVID E. MOORE, ESQ.

19                  and

20             FOLEY & LARDNER
               BY:  KENNETH E. KROSIN, ESQ.
21                  (Washington, District of Columbia)

22                       Counsel for Corning Incorporated and
                         Artificial Sensing Instruments ASI AG
23

24
                                        Brian P. Gaffigan
25                                      Official Court Reporter
```

```
 1   APPEARANCES: (Continued)

 2

 3              ASHBY & GEDDES
                BY:  STEVEN J. BALICK, ESQ.
 4
                     and
 5
                McDONNELL BOEHNEN HULBERT & BURGHOFF
 6              BY:  JOHN J. McDONNELL, ESQ.
                     (Chicago, Illinois)
 7
                     Counsel for SRU Biosystems, LLC,
 8                   SRU Biosystems, Inc., and
                     SRU Biosystems Holdings, LLC
 9

10

11                         - oOo -

12              P R O C E E D I N G S

13         (Telephone conference began at 2:50 p.m.)

14         THE COURT:  Good afternoon, Judge Farnan here.

15         MR. KROSIN:  Good afternoon, your Honor.

16         THE COURT:  We're here on the Rule 16 conference

17   in 03-633.

18         MR. KROSIN:  Yes, your Honor.

19         MR. McDONNELL:  Yes, your Honor.

20         THE COURT:  We had a proposed scheduling order

21   sent over by Mr. Horwitz with the August 8th letter.  So it

22   looks like you have already talked a bit about the dates.

23   When I looked through the order, I saw that you have a few

24   disagreements.  Do they still exist on bifurcation and the

25   reliance of counsel issue?
```

3

```
1                MR. McDONNELL: Yes. Yes, your Honor.
2                MR. KROSIN: Yes, your Honor.
3                THE COURT: Can you give me some background? For
4     instance, who issued the opinion?
5                MR. McDONNELL: Your Honor, this is John McDonnell
6     talking. I issued the opinion of counsel.
7                THE COURT: Good. In this case, you are
8     representing?
9                MR. McDONNELL: Yes, we represent SRU.
10               THE COURT: SRU Biosystems, LLC?
11               MR. McDONNELL: Yes.
12               THE COURT: The opinion that you issued was issued
13    prior to the commencement of litigation?
14               MR. McDONNELL: Yes.
15               THE COURT: Give me an idea of the time frame.
16               MR. McDONNELL: Oh, it was a fair time, probably
17    a year or so, over a year or so before the commencement of the
18    litigation, long before we commenced litigation.
19               THE COURT: What I understand from looking at
20    the proposal that you have placed in front of me is that
21    defendants would rely on the opinion as evidence rebutting
22    any assertion of willfulness?
23               MR. McDONNELL: That is correct, your Honor.
24               THE COURT: Does the plaintiff have anything they
25    want to tell me?
```

4

```
 1              MR. KROSIN:  Well, your Honor, we oppose the
 2   concept of bifurcation.  We don't think it's necessary in this
 3   case.  It's a fairly simple case in the sense that there is
 4   one defendant.  There are two plaintiffs:  one the patent
 5   owner, one the exclusive licensee.  There is only one patent
 6   involved.  There are 30 claims in the patent but I'm sure
 7   they're going to be narrowed down long before we get to
 8   trial.  So it's really a very simple case in terms of the
 9   damages discovery.  We don't think that there is going to be
10   a whole lot because defendants are fairly new into the market
11   with the accused product so it's about as simple a patent
12   case as I think you can get.
13              THE COURT:  Now, the answer is due, I've forgotten
14   the date but in the future here, near future.
15              MR. KROSIN:  29th of August, I believe, your
16   Honor.
17              THE COURT:  Does the defendant have invalidity
18   counterclaims?
19              MR. McDONNELL:  Yes, we do, your Honor.  We
20   will.
21              THE COURT:  I'm sorry.
22              MR. McDONNELL:  We will.  Yes, your Honor.
23              THE COURT:  What we're going to do then is
24   the willfulness issue will be separated from what will be
25   anticipated infringement and invalidity issues for purposes of
```

5

```
1    discovery but damages won't be.  You can do damages discovery
2    while you are doing infringement and invalidity discovery, but
3    there will be no discovery of willfulness.  As you know, my
4    view is that once an opinion is relied upon, the discovery can
5    be pretty deep.  Because counsel that issued the opinion is
6    involved in this litigation, and having heard what each side
7    had to say, I'm going to separate that issue for willfulness
8    and the opinions of counsel for discovery also.  Those matters
9    won't come up until after we have a verdict on the other
10   issues.
11              With regard to the scheduling order that has
12   been proposed, essentially, the important thing to me is
13   that you are seeking a November 2004 trial date; is that
14   correct?
15              MR. KROSIN:  Yes, your Honor.
16              THE COURT:  You can be available throughout
17   that month, I assume, so how about if we schedule it for
18   November the 15th of 2004?  Is that a problem for anyone?
19              MR. McDONNELL:  No, that's fine with the
20   defendants, your Honor.
21              MR. KROSIN:  That's fine with plaintiffs, your
22   Honor.  By the way, this is Ken Krosin.  I forgot to introduce
23   myself before.  I apologize.
24              THE COURT:  That means we would have a pretrial
25   conference in October.  The October 2004 date for pretrial
```

6

```
1    conference is Thursday, October the 7th.  Does that present
2    a problem for anybody?  I'll give you a time of 2:00 p.m.,
3    but if that is an inconvenient date for some reason, we can
4    move it to some other date that week or into the next week.
5              MR. KROSIN:  That's fine with plaintiffs, your
6    Honor.
7              MR. McDONNELL:  That's fine with defendants, your
8    Honor.
9              THE COURT:  October 7th at 2:00 p.m. will be your
10   pretrial date.  And then as I look through it, the next note I
11   guess you resolved by depositions.
12             The next thing I noted was in paragraph 7, you
13   would like to have a Markman hearing on July the 2nd, 2004.
14   You probably didn't realize that was the Friday of a long 4th
15   of July weekend.
16             MR. KROSIN:  We forgot about that.
17             MR. McDONNELL:  We forgot about that, your Honor.
18             THE COURT:  See?  I have to save your vacations
19   for your friend and family.
20             MR. McDONNELL:  Thank you, your Honor.
21             MR. KROSIN:  Thank you, your Honor.  It's also my
22   wife's birthday.
23             THE COURT:  See?  There are all sorts of things,
24   you get so caught up in the practice.  It's lucky I am here.
25   I do have a role.  I'm happy to give you a Markman hearing in
```

1   July, but let's move it off that day so that you can have a
2   little bit of party time. Of course, you all are probably
3   going anyway. It was associates that were stuck, come to
4   think of it, right? But anyway, what would you like to do?
5   The next week we can do it, like on the 8th, which gets you
6   off of the 4th of July and you get some time to recover and
7   come home.
8             MR. KROSIN: That's fine with us, your Honor.
9             MR. McDONNELL: Yes, your Honor.
10            THE COURT: Why don't we put it on Thursday,
11  July the 8th? I already have a hearing schedule at 11:00 so
12  I'll put you on for 1:00 o'clock. We'll give you a chance to
13  travel in, hopefully get out by the end of the day.
14            MR. McDONNELL: Thank you.
15            THE COURT: 1:00 p.m. on Thursday, July the 8th,
16  2004 for the Markman. And then under other matters, we've
17  taken care of the notes that you had there. So from what
18  I know from the papers you gave me, that pretty much will
19  complete the order.
20            Is there anything additional we should talk
21  about that the plaintiff would like to offer?
22            MR. KROSIN: Your Honor, this is Ken Krosin
23  again. We were talking before we came on the line about the
24  fact our proposed order did not include a discovery cutoff
25  or expert discovery. We were throwing around some proposed

8

1    dates for the completion of expert discovery.  I'm sure we
2    can probably work together to come up with something that
3    would be satisfactory to both sides.
4              MR. McDONNELL:  I think that is right, your
5    Honor.
6              THE COURT:  I'll leave that open.  You can work
7    on it, and then when you get that nailed down, you can then
8    submit with the dates I have given you and the dates you put
9    in a revised proposed order.
10             MR. KROSIN:  Okay.
11             MR. McDONNELL:  Thank you, your Honor.
12             THE COURT:  Is there anything else?
13             MR. KROSIN:  Your Honor, one question or
14   clarification.  You're bifurcating discovery --
15             THE COURT:  I like to use the word "separating."
16             MR. KROSIN:  -- separating discovery with respect
17   to willfulness and not separating discovery on damages.  As to
18   the trial of those two issues, will the willfulness trial be
19   bifurcated and will the damages trial --
20             THE COURT:  Yes.  Actually, what will happen is
21   when we get ready for trial here and we've all gotten to know
22   each other real well, your infringement will be separated for
23   trial from invalidity and then the question will be when will
24   damages be tried?  Will it be tried with the infringement or
25   will it be held back and tried at a later time with willful-

9

1   ness?
2              So the short answer is there is going to be
3   separation of issues for trial, at a minimum, infringement
4   from any invalidity claims. Infringement will go first and
5   then invalidity. Depending on the time that I estimate you
6   will be allotted, you may have time to get it all done in a
7   two-week period or we may come back for the willfulness and
8   damages, but we'll know more about that when we get to the
9   pretrial conference. I don't know if that helps you but
10  that's the general plan.
11             MR. KROSIN: I'm assuming the same jury, your
12  Honor?
13             THE COURT: No. In fact, infringement and
14  invalidity would be tried to separate juries. We impanel
15  separate juries. It's done, though, consecutively. In other
16  words, an infringement jury is selected on Monday and we go
17  maybe until Thursday. They give us a verdict. Then you get
18  a day off, and we'll come back the following Monday, pick a
19  new jury. Then, depending on how we need to handle the first
20  verdict, the jury impaneled and instructed and then the
21  invalidity case goes forward.
22             It takes a lot of the prejudice out of both.
23  We've done it about four or five times now. The most recent,
24  if you wanted to talk to lawyers -- well, some of the lawyers
25  are on the phone here. Rich, you've been in it, haven't

1   you?

2              MR. BALICK:  He is not on the phone.  Somebody
3   else from Potter Anderson is.

4              MR. MOORE:  It's David Moore sitting in for
5   Rich.

6              THE COURT:  Mr. Moore, your firm has been in one,
7   haven't they?

8              MR. MOORE:  I believe they have.  Rich is
9   definitely familiar with the process.

10             THE COURT:  A lot of lawyers don't like it, and
11  a lot of lawyers like it.  But it's an effort that was talked
12  about by Chief Judge Markey back in the '80s.  Now, the one
13  wrinkle, the wrinkle you raised, Chief Judge Markey thought
14  you just have the same jury sit around and do the next trial,
15  but in today's world, juries can't sit that long.  That's why
16  we allot time here.

17             I think the most recent case I've done that was
18  pretty substantial was St. Clair v Sony.  You could talk to
19  the lawyers in that case and how they felt it went.  And
20  then there was Ciena v Corvis.  But if it's a new experience
21  for you, you won't like it at all.  And then after you get
22  through it, then you will really have an ability to have an
23  opinion about it.  The second jury is what wrankles most
24  lawyers, but it's really necessary we do that.

25             MR. KROSIN:  The damages testimony would go in

1   before Jury I or Jury II, your Honor?

2              THE COURT:  Well, the damages would go, if I
3   separated, it would go when they hear willfulness and you
4   would make a separate presentation.  If I don't do it, then
5   the first jury would hear damages when you present the
6   infringement case.

7              MR. KROSIN:  If you do separate willfulness,
8   what would that go to?

9              THE COURT:  That would go to a jury after you
10  complete all your post-trial motions on the first two
11  verdicts and we would then -- willfulness doesn't take that
12  long once you get by the first two verdicts, and in the time
13  that I'm deciding your post-trial motions you could conduct
14  your 30 to 45 days of discovery on willfulness.  Then we're
15  ready for the trial.

16             MR. McDONNELL:  I understand.

17             MR. KROSIN:  And damages would come in.

18             THE COURT:  Sometimes they ask to stay the will-
19  fulness while they go appeal, but that's up to the parties.

20             MR. KROSIN:  Again, your Honor, damages would be
21  where?

22             THE COURT:  Damages, if it's not separated from
23  the first two phases, would be in the infringement phase.

24             MR. KROSIN:  The first phase is infringement, the
25  second phase is invalidity.

12

```
1              THE COURT:  The first phase is infringement.
2    If damages is held in one of the first two phases, it goes
3    in the first phase infringement.  So you would put on an
4    infringement and damages case, the defendant would answer it,
5    we would get a verdict.  And then we would go to invalidity.
6              MR. KROSIN:  If it's not included in the infringe-
7    ment phase, where would it be?
8              THE COURT:  It would go at the willfulness stage
9    which is a little bit cumbersome.  It probably won't be there
10   but it could.  I don't know enough about your case yet to
11   know where I would put it, but if I was guessing, I'd say it
12   will be in the infringement phase, not in the willfulness
13   phase.
14             MR. KROSIN:  We haven't seen defendants' answer
15   at this point, but if they're asserting unenforceability of
16   our patent, where would that go?
17             THE COURT:  After the invalidity trial, I give
18   you a day or so, because of course that is my issue.  I would
19   give you a day or so to put additional evidence in that
20   hasn't gone on in the case.  Then I decide it at the same
21   time I decide your post-trial motions.
22             MR. McDONNELL:  I think we understand.
23             MR. KROSIN:  Thank you, your Honor.
24             THE COURT:  It sounds confusing but it's not that
25   confusing once you get through it.  And to a jury, they love
```

13

1   it because they don't have to be here three weeks. That's
2   our concern, mostly.
3           Did you ever read the Markey article you can
4   get on the Internet? He thinks it takes away a lot of
5   prejudice and wasted time in the courtroom because if there
6   is no infringement, why would anybody want to have a patent
7   declared invalid; okay?
8           MR. McDONNELL: Thank you, your Honor.
9           MR. KROSIN: Thank you, your Honor.
10          THE COURT: Thank you.
11          (Telephone conference ends at 3:13 p.m.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25