# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PRISM TECHNOLOGIES LLC

          Plaintiff,

      v

VERISIGN, INC , RSA SECURITY, INC ,
NETEGRITY, INC , COMPUTER
ASSOCIATES INTERNATIONAL, INC ,
and JOHNSON & JOHNSON SERVICES,
INC ,

          Defendants.

C.A. No  05-214-JJF

## PLAINTIFF PRISM TECHNOLOGIES LLC'S OBJECTIONS AND RESPONSES TO DEFENDANT JOHNSON & JOHNSON SERVICES, INC.'S FIRST SET OF INTERROGATORIES (NOS. 1-14)

Plaintiff Prism Technologies LLC ("Prism") provides the following objections and responses to Johnson & Johnson Services, Inc 's ("JJSI") First Set of Interrogatories  Prism will supplement these responses as required by the Federal Rules of Civil Procedure and the Local Rules and Orders of this Court

### GENERAL OBJECTIONS

For its General Objections, Prism objects to JJSI's interrogatories, instructions and definitions as follows  Prism hereby incorporates its definitions as set forth in its Revised First Set of Document Requests to JJSI.

A.    Prism objects to these interrogatories to the extent they impose obligations or requirements beyond those imposed by the Federal Rules of Civil Procedure and the Local Rules

of the United States District Court for the District of Delaware, or the Orders of this Court

Prism does not consider itself bound by JJSI's instructions and definitions.

B.    Prism objects to these interrogatories as vague, overly broad, unduly burdensome

to the extent that they request information not relevant to a claim or defense of any party, not

reasonably calculated to lead to the discovery of admissible evidence, or as otherwise exceeding

the scope of permissible discovery.

C.    Prism objects to these interrogatories to the extent they seek information or

documents that are protected from discovery by the attorney-client privilege, the work-product

doctrine, or any other applicable privilege or immunity. No part of Prism's response constitutes

a waiver of any privilege or immunity.

D.    Prism objects to these interrogatories to the extent they seek information that is

not in its possession, custody or control or that is publicly available or has already been provided

to the Defendants.

E.    Prism objects to these interrogatories to the extent that they comprise sub-parts or

compound questions and, therefore, exceed or may exceed the number of interrogatories

permitted in this action.

F.    Prism objects to the definition of "Prism" as overly broad to the extent that term

request information from legal entities not within the scope of this litigation or within the

possession, custody or control of Prism or not subject to Prism's legal recourse and/or otherwise

outside the enforceable scope of the laws of the United States of America

G.    Prism objects to these interrogatories to the extent they assume incorrect facts.

H.    Prism objects to these interrogatories as premature to the extent that they call for

construction of the claims of the patent-in-suit and there has not yet been a determination of

610338v1

- 2 -

claim construction by the Court in this case. Therefore, Prism specifically reserves its right to change, modify, or otherwise supplement the claim constructions presently asserted.

I.    Prism objects to these interrogatories on the grounds that discovery has just begun and Prism has not completed its investigation of all facts relating to Defendants' infringement of the patent-in-suit or its formulation of its contentions with respect to such issues. Therefore, Prism specifically reserves its right to change, modify, or otherwise supplement its allegations based on discovery to be obtained from the Defendants or its own investigation.

J.    Prism objects to these interrogatories to the extent that they call for premature expert discovery.

K.    To the extent not objected above, Prism incorporates by reference its objections to JJSI's First Set of Document Requests.

## RESPONSE TO INTERROGATORIES

### INTERROGATORY NO. 1:

State Prism's damages contentions in detail and for each element of damages alleged, state the total amount of damages alleged, and state with specificity the method by which each amount was calculated or determined (e.g., established royalty, reasonable royalty, or lost profits), and identify all evidence on which Prism relies in support of its damages contentions, including all expert testimony, third-party discovery, publications, or printed matter (e.g., treatises, industry reports, slide presentations).

### RESPONSE TO INTERROGATORY NO. 1:

Prism incorporates its general objections, and specifically its General Objections A, E, I, and J. Prism objects to this interrogatory as a premature contention interrogatory. Prism has not completed its investigation of all facts or its formulation of all contentions with respect to such issues. Prism objects to this interrogatory to the extent that it seeks information that is solely in the possession or custody of JJSI. Subject to and without waiving these objections, Prism responds as follows. Pursuant to 35 U.S.C. § 284, Prism seeks "damages adequate to

610338v1

compensate for the infringement, but in no event less than a reasonable royalty for the use made

of the invention by the infringer, together with interest and costs as fixed by the court." Prism's

contention regarding the amount of that "reasonably royalty" has not yet been determined.

Prism anticipates using at least one damages expert to opine on the amount of damages

owed to it by JJSI, which expert will also have knowledge or information sought by this

interrogatory.

## INTERROGATORY NO. 2:

For each claim of the '416 Patent that Prism asserts JJSI has infringed or is infringing,
describe in full detail (including in a claim chart) how Prism contends each element of each
asserted claim should be construed and identify all statements in the specification of the '416
Patent that Prism contends support its proposed construction of the claim element, including, but
not limited to, citations to column and line numbers of the specification; identify all statements in
the prosecution history of the '416 Patent that Prism contends support its proposed construction
of the claim, including, but not limited to, citations to document title, date, page numbers and
specific statements; identify all other support for Prism's proposed claim construction, including
any dictionary definitions or other publications; and for each claim element that Prism contends
is governed by 35 U.S.C. § 112(6), identify the structures or acts disclosed in the '416 Patent that
correspond to the claimed function or step.

## RESPONSE TO INTERROGATORY NO. 2

Prism incorporates its general objections, and specifically its General Objections A, B, C,

E, H, I, and J. Prism objects to this interrogatory as a premature contention interrogatory. Prism

has not completed its investigation of all facts or its formulation of all contentions with respect to

such issues.

Subject to and without waiving these objections, Prism responds as follows. The terms of

at least claims 1 and/or 24 of the '416 patent should be given their plain and ordinary meaning.

Prism incorporates herein its response to Interrogatory No. 3 to provide its disclosure of how the

plain and ordinary meaning of the claim terms read on the presently accused products. The

following means plus function elements of claims 1 and 24 have the functions specifically

610338v1

- 4 -

recited in the claim for that means plus function element. The structure embodying the means plus function element is identified below. Prism reserves its right to change, modify, or otherwise supplement its contentions regarding the structure that embodies each means clause.

### Clearinghouse Means

The corresponding structure of the claimed "clearinghouse means" is the clearinghouse database server 56 and the user authentication daemon 58. *See* '416 patent, col. 6, line 66 to col 7, line 9.

### Server Software Means

The corresponding structure of the claimed "server software means" is that portion of the session manager 52, *see* '416, patent col. 7, lines 49-50, that operates in conjunction with the user authentication daemon 58 to forward the identity data of the first server computer and the subscriber client computer to said clearinghouse means. The server software means also includes the "access key validator" block (as shown in Fig. 3, at reference number 34) which requests the subscriber client computer to forward its digital identification to the first server to confirm the presence of a hardware key.

### Client Software Means

The corresponding structure of the "client software means" includes that portion of the subscriber software 36 that is adapted to forward the identity data of the client computer to said first server computer at the beginning of an operating session.

### INTERROGATORY NO. 3

For each claim of the '416 Patent that Prism asserts JJSI has infringed or is infringing, describe in detail (including in an infringement claim chart) the basis for Prism's contention that JJSI has infringed and is continuing to infringe the '416 Patent, including a description, element-by-element, of how each limitation of the asserted claim is met, with specific citations to documents or any other supporting evidence; and for each claim element, whether Prism

610338v1

contends that the element is satisfied literally or by the doctrine of equivalents.

## RESPONSE TO INTERROGATORY NO. 3

Prism incorporates its general objections, and specifically its General Objections A, C, E, H, I, and J. Prism objects to this interrogatory as a premature contention interrogatory. Prism has not, as yet, had the opportunity to conduct meaningful discovery to determine the full extent of products made, used, sold, and/or offered for sale by JJSI that infringe the '416 patent. Since discovery is ongoing, Prism reserves the right to change, modify, or otherwise supplement its current infringement contentions, including identifying additional products and/or services offered by JJSI that infringe one or more claims of the '416 patent.

Subject to and without waiving these objections, Prism responds as follows. Prism alleges, to date, that the JJSI's Identity and Access Management Solution literally meets all the elements of at least claims 1 and/or 24.

| US Patent #6,516,416 | JJSI's Solution |
|---|---|
| 1.) A system for controlling the operation of and access to selected computer resources of at least a first server computer by at least one subscriber client computer via an untrusted network in an operating session, without necessarily controlling access to other computer resources provided by the first server computer and by other server computers and nonsubscriber client computers, comprising: | The Johnson & Johnson IIS Web Server Agent installed on a Web Server provides the functions of the first server. The Agent communicates with the subscriber client computer (an operating session) using the Internet (an untrusted network) to control access to selected computer resources. A subscriber client computer is used to access computer resources controlled by the Agent. Both subscriber client computers and nonsubscriber client computers can also access resources not controlled by the Agent on the Web Server (first server). Both subscriber client computers and nonsubscriber client computers can also access other Web Servers (i.e. www.yahoo.com).[1] |

---

[1] *Johnson & Johnson Use of Public Key Technology*, Rich Guida and Rajesh Shah, Johnson & Johnson, Inc., 2003 (P 132114-132130).

610338v1

| | |
|---|---|
| **1a.)** clearinghouse means for storing identity data of said first server computer and the identity data of each of said subscriber client computers; | The clearinghouse means consists of the Johnson & Johnson Clearinghouse based on an Oracle Database Server 8.1.7 with the Oracle Advanced Security Option (ASO). The Oracle ASO allows for the integration of any IETF RFC 2138 compatible RADIUS Authentication Server.[2,3] The identity data of the Johnson & Johnson IIS Web Server Agent (first server) and each subscriber client are stored in the Johnson & Johnson Clearinghouse database. The identity data of the first server is an X.509 digital certificate (Oracle Wallet). The identity data of the subscriber client is a X.509 digital certificate stored on the SafeNet iKey 2032 USB Token.[4] |
| **1b.)** server software means installed on said first server computer adapted to forward its identity data and identity data of each subscriber client computer to said clearinghouse means at the beginning of an operating session in which access to selected computer resources of said first server computer is requested; | The Johnson & Johnson IIS Web Server Agent (first server) forwards the digital certificate read from the USB Token attached to the subscriber client computer (subscriber client identity data) to the Johnson & Johnson Clearinghouse at the beginning of an operating session when resources controlled by the Agent are requested by the subscriber client computer.[5,6] |
| **1c.)** client software means installed on each of said subscriber client computers adapted to forward its identity data to said first server computer at the beginning of an operating session in which access to selected computer resources is requested; | SafeNet iKey 2000 CIP Software is the client software means installed on each of said subscriber client computers.[7] The CIP software forwards the identity data (X.509 digital certificate) stored on the USB Token to the Johnson & Johnson IIS Web Server Agent at the beginning of an operating session when computer resources controlled by the Agent are requested by the subscriber client computer.[8] |

---

[2] *Johnson & Johnson Use of Public Key Technology*, Rich Guida and Rajesh Shah, Johnson & Johnson, Inc., 2003 (P 132114-132130).

[3] *Oracle Advanced Security*, Oracle Corporation, January 2002, pp. 7-8 (P 132137-132138).

[4] *Johnson & Johnson's Public Key Infrastructure*, Bob Stahl, Johnson & Johnson, Inc., November 2004 (P 132149-132150)

[5] *Oracle Advanced Security*, Oracle Corporation, January 2002, pp. 7-8 (P 132137-132138).

[6] *Johnson & Johnson Use of Public Key Technology*, Rich Guida and Rajesh Shah, Johnson & Johnson, Inc., 2003 (P 132114-132130).

[7] *iKey 2000 Series User's Guide*, Rainbow Technologies, December 2000 (P 032160-032251).

[8] *Johnson & Johnson Use of Public Key Technology*, Rich Guida and Rajesh Shah, Johnson & Johnson, Inc., 2003 (P 132114-132130).

610338v1

| | |
|---|---|
| **1d.)** at least one hardware key connected to the subscriber client computer, said key being adapted to generate a predetermined digital identification, which identification is part of said identity data; | The SafeNet iKey 2032 USB Token is the hardware key which is connected to the subscriber client computer's USB port. A X.509 digital certificate (predetermined digital identification) is stored on the USB Token. The digital certificate comprises the subscriber identity data.[9] |
| **1e.)** said server software means installed on the first server computer being adapted to selectively request the subscriber client computer to forward said predetermined digital identification to the first server computer to thereby confirm that said hardware key is connected to said subscriber client computer; | The Agent (first server) can selectively request the identity data from the subscriber client computer. The Agent accomplishes this by sending the subscriber client a cookie with a set expiration time upon successful authentication. This cookie is sent to the Agent by the subscriber client during each request for computer resources. If the Agent detects that the cookie timeout has expired, the Agent will request the identity data of the subscriber client computer.[10] |
| **1f.)** said clearinghouse means being adapted to authenticate the identity of said subscriber client computer responsive to a request for selected computer resources of said first server computer by a subscriber client computer; | The Johnson & Johnson Clearinghouse contains a RADIUS Authentication Server task that is adapted to authenticate the identity of said subscriber client computer responsive to a request for selected computer resources controlled by the Agent (first server) on behalf of a subscriber client computer.[11,12] The authentication task compares the digital certificate received from the subscriber client computer hardware key forwarded via the Agent with the subscriber's digital certificate stored in the Clearinghouse database. If the certificates successfully compare, the subscriber client is authenticated. |

---

[9] *iKey 2000 Series User's Guide*, Rainbow Technologies, December 2000 (P 032160-032251).

[10] *Oracle Advanced Security*, Oracle Corporation, January 2002 (P 132131-132148).

[11] *Oracle Advanced Security*, Oracle Corporation, January 2002 (P 132131-132148).

[12] *Configuring RADIUS Authentication*, Oracle Corporation, 2003 (P 132252-132268).

610338v1

| | |
|---|---|
| 1g.) said clearinghouse means being adapted to authenticate the identity of said first server computer responsive to said subscriber client computer making the request for selected computer resources of said first server computer; and, | The Johnson & Johnson Clearinghouse uses two-way SSL to authenticate the identity data of the first server.[13] The Johnson & Johnson Clearinghouse sends a certificate request message to the Johnson & Johnson IIS Web Server Agent (first server) requesting its identity data. The Johnson & Johnson IIS Web Server Agent responds with a certificate message sending its identity data to the clearinghouse.[14] The identity data is a X.509 digital certificate. |
| 1h.) said clearinghouse means being adapted to permit access to said selected computer resources responsive to successful initial authentication of said first server computer and of said subscriber client computer making first request. | The Johnson & Johnson Clearinghouse permits access to computer resources controlled by the Johnson & Johnson IIS Web Server Agent (first server) upon successful initial authentication of both the Agent (first server) and the subscriber client computer. |
| 24.) A method of controlling access to selected computer resources of at least a first server computer by at least one subscriber client computer via an untrusted network during an operating session, without necessarily controlling access to other computer resources provided by the first server computer and by other server computers and nonsubscriber client computers, comprising the steps of: | The Johnson & Johnson IIS Web Server Agent installed on a Web Server provides the functions of the first server. The Agent communicates with the subscriber client computer (an operating session) using the Internet (an untrusted network) to control access to selected computer resources. A subscriber client computer is used to access computer resources controlled by the Agent. Both subscriber client computers and nonsubscriber client computers can also access resources not controlled by the Agent on the Web Server (first server) Both subscriber client computers and nonsubscriber client computers can also access other Web Servers (i.e. www.yahoo.com).[15] |

[13] *Johnson & Johnson: Use of Public Key Technology*, Rich Guida and Rajesh Shah, Johnson & Johnson, Inc., 2003 (P 132114-132130)
[14] *RFC 2246 – The TLS Protocol Version 1 0*, IETF, January 1999 (P 132269-132340).
[15] *Johnson & Johnson: Use of Public Key Technology*, Rich Guida and Rajesh Shah, Johnson & Johnson, Inc., 2003 (P 132114-132130).
610338v1

| | |
|---|---|
| **24a.)** registering identity data of said first server computer and the identity data of each of said subscriber client computers and storing the registered identity data in a clearinghouse means associated with said first server computer and said subscriber client computers; | The clearinghouse means consists of the Johnson & Johnson Clearinghouse based on an Oracle Database Server 8.1.7 with the Oracle Advanced Security Option (ASO)  The Oracle ASO allows for the integration of any IETF RFC 2138 compatible RADIUS Authentication Server.[16,17] The identity data of the Johnson & Johnson IIS Web Server Agent (first server) and each subscriber client are registered in the Johnson & Johnson Clearinghouse database  The identity data of the first server is an X.509 digital certificate (Oracle Wallet). The identity data of the subscriber client is a X.509 digital certificate stored on the SafeNet iKey 2032 USB Token.[18] |
| **24b.)** requiring a subscriber client computer to forward its identity data to said clearinghouse means at the beginning of an operating session in which access to selected computer resources is requested; | The Johnson & Johnson IIS Web Server Agent (first server) forwards the digital certificate read from the USB Token attached to the subscriber client computer (subscriber client identity data) to the Johnson & Johnson Clearinghouse at the beginning of an operating session when resources controlled by the Agent are requested by the subscriber client computer.[19,20] |
| **24c.)** requiring a subscriber client computer to forward a predetermined digital identification to said first server computer to thereby confirm that a hardware key is connected to said subscriber client computer; | The SafeNet iKey 2032 USB Token is the hardware key which is connected to the subscriber client computer's USB port. A X.509 digital certificate (predetermined digital identification) is stored on the USB Token.[21] The X.509 digital certificate is sent to the Johnson & Johnson IIS Web Server Agent at the beginning of an operating session to confirm that a hardware key is connected to the subscriber client.[22] |

---

[16] *Johnson & Johnson: Use of Public Key Technology*, Rich Guida and Rajesh Shah, Johnson & Johnson, Inc., 2003 (P 132114-132130)
[17] *Oracle Advanced Security*, Oracle Corporation, January 2002, pp. 7-8 (P 132137-132138).
[18] *Johnson & Johnson's Public Key Infrastructure*, Bob Stahl, Johnson & Johnson, Inc., November 2004 (P 132149-132159)
[19] *Oracle Advanced Security*, Oracle Corporation, January 2002, pp. 7-8 (P 132137-132138).
[20] *Johnson & Johnson: Use of Public Key Technology*, Rich Guida and Rajesh Shah, Johnson & Johnson, Inc., 2003 (P 132114-132130)
[21] *iKey 2000 Series User's Guide*, Rainbow Technologies, December 2000 (P 132150-132251)
[22] *Johnson & Johnson: Use of Public Key Technology*, Rich Guida and Rajesh Shah, Johnson & Johnson, Inc., 2003 (P 132114-132130)

610338v1

| | |
|---|---|
| **24d.)** attempting to authenticate the identity of said subscriber client computer from said clearinghouse means responsive to a request for selected computer resources of said first server computer by a subscriber client computer; | The Johnson & Johnson Clearinghouse contains a RADIUS Authentication Server task that is adapted to authenticate the identity of said subscriber client computer responsive to a request for selected computer resources controlled by the Agent (first server) on behalf of a subscriber client computer.[23,24] The authentication task compares the digital certificate received from the subscriber client computer hardware key forwarded via the Agent with the subscriber's digital certificate stored in the Clearinghouse database. If the certificates successfully compare, the subscriber client is authenticated. |
| **24e.)** attempting to authenticate the identity of said first server computer from said clearinghouse means responsive to said subscriber client computer making the request for selected computer resources; and, | The Johnson & Johnson Clearinghouse uses two-way SSL to authenticate the identity data of the first server.[25] The Johnson & Johnson Clearinghouse sends a certificate request message to the Johnson & Johnson IIS Web Server Agent (first server) requesting its identity data. The Johnson & Johnson IIS Web Server Agent responds with a certificate message sending its identity data to the clearinghouse.[26] The identity data is a X.509 digital certificate. |
| **24f.)** permitting access to said selected computer resources responsive to successful initial authentication of said first server computer and of said subscriber client computer making said request. | The Johnson & Johnson Clearinghouse permits access to computer resources controlled by the Johnson & Johnson IIS Web Server Agent (first server) upon successful initial authentication of both the Agent (first server) and the subscriber client computer. |

## INTERROGATORY NO. 4

For each product, system, device, service, or activity made, used, offered, or sold by JJSI that was identified in response to Interrogatory No. 3, state the date Prism first became aware of such product, system, device, service, or activity; identify each person who had such knowledge; and describe in detail the circumstances under which Prism first became aware of each such product, system, device, service, or activity.

---

[23] *Oracle Advanced Security*, Oracle Corporation, January 2002 (P 132131-132148).

[24] *Configuring RADIUS Authentication*, Oracle Corporation, 2003 (P 132252-132268).

[25] *Johnson & Johnson Use of Public Key Technology*, Rich Guida and Rajesh Shah, Johnson & Johnson, Inc., 2003 (P 132114-132130).

[26] *RFC 2246 – The TLS Protocol Version 1.0*, IETF, January 1999 (P 132269-132340).

610338v1

**RESPONSE TO INTERROGATORY NO. 4:**

Prism incorporates its general objections, and specifically its General Objections A, B, C,

D, E, and I  Subject to and without waiving these objections, Prism responds that Richard L.

Gregg, Gerald C. Korth, and Gregory J. Duman had knowledge of JJSI's Solution as early as

November 2004   Richard L. Gregg, Gerald C. Korth, and Gregory J. Duman first gained

knowledge of JJSI's Solution through Mr. Korth's research of publicly available documents,

including the web presentation titled "Johnson & Johnson's Public Key Infrastructure" dated

November 2004.  Documents relating to Prism's knowledge of JJSI's Solution will be produced

in response to JJSI's First Request for Production of Documents and Things to Plaintiff.  Further,

pursuant to Fed. R. Civ. Pro. 33(d), Prism states that the information sought is contained within

Prism's document production and the burden of extracting the requested information is

substantially equal for JJSI as it is for Prism.

**INTERROGATORY NO. 5:**

With respect to the subject matter of each asserted claim of the '416 Patent, describe in
detail the conception and reduction to practice of the subject matter of each asserted claim,
including, without limitation, a description of the date of and circumstances of conception,
including a description of where the events occurred and an identification of the persons
involved; the circumstances of the introduction of a conception into the United States; the
identity of the author(s) and recipient(s) of the first written description in the United States; the
date of and circumstances of the first actual reduction to practice, including a description of
where the events occurred and the identity of the persons involved in such reduction to practice;
the circumstances of the introduction of an actual reduction to practice in the United States; any
diligence exercised prior to the reduction to practice, including a description of the events and an
identification of the persons involved; the identity of the author(s) and recipient(s) of the first
disclosure in the United States of the conception and/or actual reduction to practice; and the date
and the identity of the author(s) of the first printed publication describing the subject matter of
each asserted claim.

**RESPONSE TO INTERROGATORY NO. 5:**

Prism incorporates its general objections, and specifically its General Objections A, B, C,

610338v1

- 12 -

D, E, and I. Subject to and without waiving these objections, Prism responds as follows.

Starting around March 1996, Richard L. Gregg began the process that led to the conception of

the subject matter in the asserted claims of the '416 patent when a potential customer, Data

Transmission Network Corp. (DTN), asked Mr. Gregg if he could develop a system using the

Internet that would replace DTN's existing satellite-based transmission network. Upon

undertaking that challenge, Mr. Gregg conceived of the '416 patented invention and directed its

development and approved the software design and system architecture as well as managed the

design project and performed system tests. The subject matter of the asserted claims of the '416

patent was described in a Functional Specification no later than May 6, 1996, as authored by

Sandeep Giri, Timothy C. Goeke, Shelli Muldoon, and edited by Richard L. Gregg. Sandeep

Giri and Timothy C. Goeke participated in the development of the system along with Mr. Gregg

and, under Mr. Gregg's supervision, coded the software for the project. In July 1996, Prism

performed a confidential demonstration of the prototype system for DTN personnel. Richard L.

Gregg performed the demonstration at DTN's offices, while Sandeep Giri and Timothy C. Goeke

managed the computer servers at Prism Resources. That prototype system and its demonstration

to DTN constitutes an actual reduction to practice of the invention defined by the asserted claims

of the '416 patent.

Documents relating to the conception and reduction to practice will be produced in

response to JJSI's First Set of Requests for the Production of Documents and Things to Plaintiff

Prism Technologies LLC. Further, pursuant to Fed. R. Civ. Pro. 33(d), Prism states that the

information sought is contained within Prism's document production and the burden of

extracting the requested information is substantially equal for JJSI as it is for Prism.

**INTERROGATORY NO. 6:**

Identify each product, system, device, service, or activity made, used, offered, or sold by JJSI that was examined, investigated, evaluated, analyzed, or tested by, or on behalf of, Prism (whether or not conducted in anticipation of or in connection with this litigation), and for each such examination, investigation, evaluation, analysis, or testing, identify the dates when conducted; identify the persons conducting and most knowledgeable about the examination, investigation, evaluation, analysis, or testing; describe the nature and conclusions of the examination, investigation, evaluation, analysis, or testing; and describe in detail the examination, investigation, evaluation, analysis, or testing that was performed.

**RESPONSE TO INTERROGATORY NO. 6:**

Prism incorporates its general objections, and specifically its General Objections A, B, C, D, E, F, H, I, and J. Subject to and without waiving these objections, Prism responds as follows Prism reviewed and evaluated publicly available documents regarding JJSI's infringing solution. The claim chart provided in the response to Interrogatory No. 3 herein provides a cross-reference to certain of the documents reviewed by Prism regarding JJSI's infringing solution. Around March 2005, Richard L. Gregg concluded that JJSI's solution infringes at least claims 1 and 24 of the '416 patent, and he is the person most knowledgeable regarding the review of JJSI's infringing solution

**INTERROGATORY NO. 7:**

Identify each and every license, contract, agreement, assignment, or commercial arrangement of any sort (including the date and parties thereto) that Prism has considered entering into, began negotiations to enter into, or has entered into, that would have resulted in, or did result in, Prism or another entity transferring or obtaining any rights to any technology or intellectual property related to the subject matter of the '416 Patent; describe the terms of, and identify all persons knowledgeable about, each such license, contract, agreement, assignment, or arrangement

**RESPONSE TO INTERROGATORY NO. 7:**

Prism incorporates its general objections, and specifically its General Objections A, C, E, and I. Prism objects to this interrogatory as overly broad and unduly burdensome to the extent

that it requests "all" persons knowledgeable about each license, contract, agreement, assignment,

or arrangement. Subject to and without waiving these objections, Prism responds as follows.

Prism developed commercial embodiments of at least some of the subject matter

described in the '416 patent for American Business Information, Inc. ("ABI"), Securities

America, Inc. ("SAI"), and Construction Network Services, Inc. ("CNS").

Prism has approached at least RSA Security, Inc., First Data Corp., Amazon.com, Inc.,

and American Express to provide information regarding the asserted subject matter of the '416

patent. Further, Prism states that Richard L. Gregg is the person within Prism that is most

knowledgeable regarding the subject of this interrogatory. To the extent they exist, non-

privileged documents describing any license, contract, agreement, assignment, or commercial

arrangement related to the asserted subject matter of the '416 patent will be produced in

response to JJSI's First Set of Requests for the Production of Documents and Things to Plaintiff

Prism Technologies LLC. Pursuant to Fed. R. Civ. Pro. 33(d), Prism states that the information

sought is contained within Prism's document production and the burden of extracting the

requested information is substantially equal for JJSI as it is for Prism.

## INTERROGATORY NO. 8:

Identify in detail each Prism product, system, component, or feature thereof, that Prism
contends is covered by claims of the '416 Patent (including the Internet Subscription Access
(ISA) system), and any prototypes, predecessors, or modified versions thereof, including the
version number or name (including any project names or product designations used during
development); and for each such product, system, component, or feature, identify dates of
development, first disclosure, first offer to sell or license, first sale or license.

## RESPONSE TO INTERROGATORY NO. 8:

Prism incorporates its general objections, and specifically its General Objections A, B, C,

E, G, and H. Subject to and without waiving these objections, Prism responds that its ISA

(Internet Subscription Access) system is one commercial embodiment of a product that is

610338v1

- 15 -

covered by the claims of the '416 patent  The dates of development are stated above in response

to Interrogatory No. 5.  Pursuant to Fed. R. Civ. Pro. 33(d), Prism states that the information

sought is contained within Prism's document production and the burden of extracting the

requested information is substantially equal for JJSI as it is for Prism.

**INTERROGATORY NO. 9:**

For each product, system, component, or feature identified in response to Interrogatory
No. 8, identify the persons most knowledgeable about its (a) research and development,
structure, operation, and testing, (b) manufacture and quality control, (c) marketing, promotion,
advertising, offers to sell and sales, and offers to license and licensing.

**RESPONSE TO INTERROGATORY NO. 9:**

Prism incorporates its general objections, and specifically its General Objections A, B, C,

E, and G. Subject to and without waiving these objections, Prism responds that

Richard L. Gregg is the person most knowledgeable regarding the development, testing,

marketing, and promotion of the product identified in response to Interrogatory No. 8

**INTERROGATORY NO. 10:**

For each product, system, component, or feature identified in response to Interrogatory
No. 8, state the total revenue in dollars and in units on a monthly basis since the date of first sale
or license, the amount and category (e.g., sales, administrative, direct labor) of each element of
cost involved in the development, manufacturing, marketing, distribution, and sale, whether each
element of cost is fixed or variable, the gross and net profits, and identify the persons most
knowledgeable about such revenues, costs, and profits.

**RESPONSE TO INTERROGATORY NO. 10:**

Prism incorporates its general objections, and specifically its General Objections A, B, E,

G, and H. Prism further objects to this interrogatory as overly broad and unduly burdensome.

Subject to and without waiving these objections, Prism responds as follows. To the best of

Prism's knowledge, the revenue for the ISA product identified in Interrogatory No. 8 was

approximately $153,750 from American Business Information, Inc. ("ABI"), approximately

$128,814 from Securities America, Inc. ("SAI"), and approximately $165,095 from Construction

Network Services, Inc. ("CNS") Within Prism, the person most knowledgeable regarding the

subject matter of this interrogatory is Richard L. Gregg. Documents showing the costs for the

ISA product are being produced in response to JJSI's First Request for Production of Documents

and Things to Plaintiff. Pursuant to Fed. R. Civ. Pro. 33(d), Prism states that the information

sought is contained within Prism's document production and the burden of extracting the

requested information is substantially equal for JJSI as it is for Prism.

## INTERROGATORY NO. 11:

With respect to the alleged inventions claimed in the '416 Patent, describe in detail any
contention that secondary considerations show the '416 Patent to be nonobvious, including, but
not limited to, how the invention allegedly satisfied a long felt need in the art to which it
pertains, how the industry failed to solve problems allegedly solved by the invention, what
experts in the industry allegedly expressed skepticism concerning the invention, the manner in
which the invention allegedly has been a commercial success, how the industry allegedly has
recognized the significance of the invention, how the invention allegedly has been copied by
others in the industry, or how the invention allegedly achieved unexpected results

## RESPONSE TO INTERROGATORY NO. 11:

Prism incorporates its general objections, and specifically its General Objections A, C, D,

E, H, I, and J. Prism objects to this interrogatory as a premature contention interrogatory. Prism

has not completed its investigation of all facts (*e.g.* fact discovery is ongoing) or its formulation

of all contentions with respect to such issues. Further, Prism objects to this interrogatory to the

extent that it calls for premature expert discovery. Prism specifically reserves its right to change,

modify, or otherwise supplement its contentions based on discovery to be obtained from the

Defendants or its own investigation.

**INTERROGATORY NO. 12:**

Identify and describe all communications by Prism in which any person or entity other than JJSI was accused of, notified of, or charged with infringing the '416 Patent, including, but not limited to, demand letters, notice letters, complaints, or administrative filings

**RESPONSE TO INTERROGATORY NO. 12:**

Prism incorporates its general objections, and specifically its General Objections A, B, C,

D, E, G, H, I, and J  Subject to and without waiving these objections, Prism responds as follows.

No notice letters regarding the asserted subject matter of the '416 patent were communicated

**INTERROGATORY NO. 13:**

Identify each and every patent and patent application relating to the subject matter of the '416 Patent that Prism owns or has any rights to, including any parent, continuation, continuation-in-part, division, reissue, reexamination, or foreign counterpart of the '416 Patent, and any patent application claiming priority to or through the '416 Patent; and for each such patent or patent application, identify all contested proceedings, including any infringement litigation, interference, or opposition

**RESPONSE TO INTERROGATORY NO. 13:**

Prism incorporates its general objections, and specifically its General Objections A, B, C,

D, E, F, and G  Subject to and without waiving these objections, Prism responds as follows.

Prism owns the rights to a U S. Patent Application No. 10/230,638.  Prism is not aware of any

other contested proceedings regarding the '416 patent.

**INTERROGATORY NO. 14:**

Identify each and every person who was consulted or provided information with regard to Prism's responses to JJSI's discovery requests, including these interrogatories, and Defendant Johnson & Johnson Services, Inc.'s First Request for Production of Documents and Things to Plaintiff served herewith, and specify the specific discovery request(s) for which each such person consulted, provided information, or otherwise participated in responding to.

610338v1

**RESPONSE TO INTERROGATORY NO. 14:**

Prism incorporates its general objections, and specifically its General Objections A, B, C,

E, F, and G. Prism objects to this interrogatory as overly broad, unduly burdensome, and

vexatious to the extent that it requests that Prism detail each person consulted and participated in

providing information to JJSI's 69 document requests and 14 interrogatories. Subject to and

without waiving these objections, Prism responds as follows. Richard L. Gregg, Gerald C.

Korth, and Gregory J. Duman provided information regarding Prism's responses to JJSI's

discovery requests.

December 2, 2005

THE BAYARD FIRM

Richard D. Kirk (rk0922)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899-5130
(302) 655-5000
rkirk@bayardfirm.com

ATTORNEYS FOR PLAINTIFF PRISM
TECHNOLOGIES LLC

OF COUNSEL:

Dirk D. Thomas, Esq.
Robert A. Auchter, Esq.
Kenneth A. Freeling, Esq.
Jason R. Buratti, Esq.
André J. Bahou, Esq.
Robins, Kaplan, Miller & Ciresi, L.L.P.
1801 K Street, N.W., Suite 1200
Washington, D.C. 20006
(202) 775-0725

610338v1

– 19 –

## VERIFICATION

I hereby declare on the basis of knowledge and belief, or information otherwise provided and believed by me to be true and correct, under penalty of perjury under the laws of the United States of America, that the foregoing answers to these interrogatories are true and correct.

Executed on  December 2, 2005

Mr. Richard L. Gregg
Vice President and Chief
  Technology Officer
Prism Technologies LLC
14707 California Street, Suite 5
Omaha, Nebraska 68154-1952

DC1 45677397 1

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PRISM TECHNOLOGIES LLC

Plaintiff,

v.

VERISIGN, INC., RSA SECURITY, INC.,
NETEGRITY, INC., COMPUTER
ASSOCIATES INTERNATIONAL, INC.,
and JOHNSON & JOHNSON SERVICES,
INC.,

Defendants.

Civil Action No. 05-214 JJF

PLAINTIFF'S REVISED FIRST SET OF RULE 34 REQUESTS
FOR PRODUCTION OF DOCUMENTS AND THINGS TO
DEFENDANT JOHNSON & JOHNSON SERVICES, INC.

Pursuant to Federal Rule of Civil Procedure 34 and the Local Rules of this judicial

district, Plaintiff Prism Technologies LLC ("Prism") requests that Defendant Johnson & Johnson

Services , Inc. ("JJSI") produce the documents and things requested herein at the law offices of

Robins, Kaplan, Miller & Ciresi L.L.P., 1801 K Street, N.W., Washington, D.C. 20006, or some

other location as may be agreed to between the parties, within thirty (30) days of service of these

Rule 34 requests. JJSI should produce the responsive documents as they are kept in the usual

course of business or organize and label them to correspond with the document requests to which

they are responsive. If no responsive documents and things exist for a particular Rule 34 request,

JJSI shall so state in writing. If responsive documents and things for a particular Rule 34 request

have already been produced, Prism requests that JJSI so state in writing.

If JJSI withholds from production any documents and things on the basis of a claim of

attorney-client privilege or work product immunity, Prism requests that JJSI provide to Prism a

list separately identifying each withheld document or thing and specifying: (1) the identity of all

persons who prepared and signed the document; (2) the identity of all persons designated as

addressees; (3) the identity of all persons who received any copy of the document; (4) the date of

the document; (5) the subject matter of the document; (6) the type of document (memorandum,

pamphlet, report, etc.); (7) for each disclosure outside of JJSI's officers and contract employees,

the identification and production number of any and all confidentiality agreements that govern

the disclosure; and (8) the basis for withholding the document.

If JJSI comes into possession, custody, or control of responsive documents and things

between the time of service of these Rule 34 Requests and trial, Prism requests that JJSI

supplement its production by promptly producing such documents.

## DEFINITIONS

A.    "The '416 patent" or "patent-in-suit" refers to United States Patent No. 6,516,416,

entitled "Subscription Access System For Use With An Untrusted Network." "Intrinsic

evidence" shall mean all documents within the publicly available prosecution history file for the

'416 patent. "Extrinsic evidence" shall mean all documents or testimony not found in the

publicly available prosecution history file for the '416 patent.

B.    "Identity and Access Management" shall mean software and hardware intended to

identify users in a system (employees, customers, contractors, etc.) and control their access to

resources within that system by associating user rights and restrictions with the established

identity, including but not limited to Web single sign-on (SSO), advanced authentication, and/or

strong authentication used with USB tokens, Smart Cards, and/or digital identification.

C.    "SafeNet iKey" or "SafeNet iKey Authentication Suite" refers to JJSI's suite of

managed authentication and security services, and the related software and hardware, that

perform Identity and Access Management, including but not limited to Oracle database and advanced security software products, Microsoft IIS Web Server software products and JJSI Web Server Agent software.

D.    "JJSI," "Defendant," "you," or "your" refers to Johnson & Johnson Services, Inc., its officers, employees, counsel, agents, consultants, and representatives and includes joint ventures and other legal entities which are wholly or partially owned or controlled by Johnson & Johnson Services, Inc., either directly or indirectly, and the officers, employees, counsel, agents, consultants, and representatives of these divisions, subsidiaries, and joint ventures.

E.    The term "person" refers to natural persons, organizations, firms, corporations, and other legal entities, whether or not in the employ of plaintiff, and the acts "of" a person are defined to include the acts of directors, officers, owners, members, employees, agents or attorneys acting on the person's behalf.'

F.    To "identify" a person means to state the person's name, occupation, job title, and current business address, or if unknown, the last-known business and home address. Unless it otherwise appears from the context, a request for identity or to identify a person relates to all persons in such category or classification.

G.    The term "document" has the meaning prescribed for "documents and things" in Fed. R. Civ. P. 34(a) and includes the original and every non-identical copy or reproduction in the possession, custody or control of JJSI.

H.    To "identify" any document or thing means:

    i.    to provide a brief description of such documents sufficient to support a request under Rule 34;

602122v1

- 3 -

    ii.      to state the custodian of the document or the thing by name, job title, employer, and address;

    iii.     to state the place where the document or thing may be inspected; and

    iv.     if a copy of the document has been previously supplied to defendants to so state and to specifically identify the previously supplied copy by reference to production numbers or other identifying information.

I.     Unless it otherwise appears from the context, a request for identity of a person relates to all persons in such classification or category.

J.     In construing these Requests, the singular shall include the plural, and the plural shall include the singular; and the conjunctions "and" and "or" shall be read either disjunctively or conjunctively so as to bring within the scope of these requests all information that might otherwise be construed to be outside their scope.

## RULE 34 REQUESTS

1.     One set of each Identify and Access Management software and software code and/or device made, offered for sale, designed, sold, distributed, leased, or supplied by JJSI, including but not limited to JJSI's SafeNet iKey Authentication Suite.

2.     All instructional manuals or training manuals for each of the products identified in or within the scope of Request No. 1 above.

3.     All documents related to the design, creation, writing, and/or composing of each of the products identified in or within the scope of Request No. 1 above.

4.     All documents that reflect the programming code or system architecture of each of the products identified in or within the scope of Request No. 1 above.

5.      All marketing, pricing, advertising, sales, sales projections, market studies, licenses, memoranda of understanding, agreements, royalty payments, promotional documents or audio-visual aids relating to or referring to any Identity and Access Management software and hardware products, including but not limited to the products identified in or within the scope of Request No. 1 above, whether the information originated from JJSI or from another entity.

6.      All of JJSI's annual and interim financial statements covering the years 1996 to the present, including but not limited to Annual Reports and all submissions made to the Securities and Exchange Commission.

7.      All documents that reflect gross and net sales and profit figures (by unit sales volume and by dollar sales volume) since 1996, whether inside or outside the United States, for each product identified in or within the scope of Request No. 1 on a monthly, quarterly, and annual basis, or on whatever timeframe JJSI regularly keeps records of data.

8.      All documents that refer to, relate to, or constitute a patent licensing or royalty agreement entered into by JJSI for any computer software or hardware product and/or patent since 1996.

9.      Documents sufficient to show the extent to which JJSI has made use of the invention of the patents identified in each patent licensing or royalty agreement entered into by JJSI for any computer software or hardware product and/or patent since 1996.

10.     All documents that refer to, relate to, reflect, or constitute the intellectual property licensing policies of JJSI since 1996.

11.     All documents that describe, refer, or relate to any royalty or license fees received or paid by JJSI with respect to any Identity and Access Management software or hardware product.

602122v1

- 5 -

12.     All documents that relate to pricing of the products identified in or within the scope of Request No. 1 above.

13.     All documents that refer, relate, or constitute written opinion(s) of counsel relating to the validity, infringement, or enforceability of the '416 patent.

14.     Any document referring or relating to the '416 patent.

15.     All prior art to the '416 patent and any other non-prior art documents that JJSI contends is relevant to the validity or infringement of the '416 patent or to the interpretation of any claim terms in the '416 patent.

16.     All documents identified in any study or evaluation of, or search for, prior art to the '416 patent.

17.     All documents and things that JJSI will offer during the trial.

18.     All documents that refer to, relate to, or constitute communications with any consultants retained to assist JJSI regarding this litigation.

19.     All documents that refer to, relate to, support, or refute any of the allegations, averments, denials, affirmative defenses and/or counterclaims in JJSI's Answer and Counterclaims.

20.     All documents referring or relating to Prism Resources, Inc. or Prism Technologies LLC.

21.     All documents considered, relied upon, referred to, or referenced in JJSI's responses to Prism's Interrogatories to JJSI.

22.     All confidentiality agreements that relate to the subject matter of this suit or that form any part of the basis of a claim of privilege for any information called for by any discovery request from Prism to JJSI.

602122v1

- 6 -

23.    All documents referring or relating to any inventor of the '416 patent, including Richard L. Gregg, Timothy C. Goeke, and Sandeep Giri.

24.    All documents, including but not limited to technical and marketing studies and minutes of meetings, that relate or refer to JJSI's decision(s) to develop, design, test, manufacture, offer for sale, or sell or import any Identity and Access Management software or hardware, including those identified in or within the scope of Request No. 1 above.

25.    All documents that constitute, evidence, describe, pertain to, relate or refer to, any discussion, meeting or correspondence between JJSI and any customer, potential customer, competitor, or other person concerning the '416 patent, and the present lawsuit against Prism or any other lawsuit or administrative proceeding, anywhere in the world, involving the '416 patent.

26.    Product catalogs, price sheets, product manuals, specifications and descriptions for all Identity and Access Management software or hardware and devices sold or offered for sale by JJSI.

27.    Documents identifying by name and location any and all distributors to whom JJSI distributed or sold Identity and Access Management software or hardware and devices and the dates on which such sales or distributions were made.

28.    Documents which any expert you consulted or retained for this matter reviewed or relied upon when forming the bases for their expert opinions, whether asserted or not asserted in this matter, and all copies of any communications or reports developed by any such expert(s).

29.    All market studies, reports, business plans, forecasts, marketing plans or other documents concerning the market for Identity and Access Management software or hardware products and services including, but not limited to market size, market growth, market potentials and studies of the market size of competitors.

602122v1

30. To the extent not already requested, all documents referring or relating in any way to JJSI's policies, procedures, or other guidelines on licensing or cross-licensing of patents, patent applications or technology to or from others.

31. Representative corporate organization charts for JJSI, including parents, subsidiaries, affiliates, divisions, wholly-owned business entities, predecessors or successors, sufficient to show: (a) the general organization of JJSI and each such parent, subsidiary, affiliate, division, wholly-owned business entity, predecessor or successor; (b) the names, addresses and telephone numbers of each past and present corporate officer and director of JJSI and each such parent, subsidiary, affiliate, division, wholly-owned business entity, predecessor, or successor; and (c) the detailed organization of each department, section, or group of JJSI responsible for designing, developing, testing, manufacturing, exporting, importing, distribution, marketing, advertising, selling, or using Identify and Access Management software and hardware, including the products identified in or within the scope of Request No. 1 above.

32. All documents that constitute, relate to, or refer to JJSI's document control and retention policies, including for its electronic documents.

THE BAYARD FIRM

September 20, 2005

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899
(302) 655-5000
rkirk@bayardfirm.com

ATTORNEYS FOR PLAINTIFF PRISM
TECHNOLOGIES LLC

602122v1

- 8 -

OF COUNSEL:

Dirk D. Thomas, Esq.
Robert A. Auchter, Esq.
Kenneth A. Freeling, Esq.
Jason R. Buratti, Esq.
André J. Bahou, Esq.
Robins, Kaplan, Miller & Ciresi, L.L.P.
1801 K Street, N.W., Suite 1200
Washington, D.C.  20006
(202) 775-0725