IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PRISM TECHNOLOGIES LLC<br><br>Plaintiff<br><br>v.<br><br>VERISIGN, INC., RSA SECURITY, INC., NETEGRITY, INC., COMPUTER ASSOCIATES INTERNATIONAL, INC., and JOHNSON & JOHNSON SERVICES, INC.<br>Defendants. | ) ) ) ) ) ) ) Civil Action No. 05-214-JJF ) ) ) ) ) ) ) ) |

**JOINT DEFENDANTS' FIRST 30(b)(6) NOTICE
OF DEPOSITION OF PRISM TECHNOLOGIES, LLC**

Please take notice that Defendants VeriSign, Inc., RSA Security Inc., Netegrity, Inc., Computer Associates International, Inc., and Johnson & Johnson Services, Inc. (collectively "Joint Defendants"), pursuant to Fed. R. Civ. P. 30(b)(6), the Court's Scheduling Order, the Court's Order of July 21, 2006, regarding depositions, and the Local Rules of the Court, will take the deposition upon oral examination of Plaintiff Prism Technologies LLC ("Prism"), through one or more of Prism's officers, directors, managing agents, or other authorized persons who are most knowledgeable about the topics listed in Schedule B, commencing on October 17, 2006 at the offices of Willkie Farr & Gallagher LLP, 1875 K. Street, N.W., Washington, D.C., 20006, or another mutually agreeable location.

The deposition will be taken by oral examination before an officer authorized by the laws of the United States to administer oaths, and will be recorded by stenographic and/or videographic and/or audiographic means. The Joint Defendants reserve the right to use the

videotape of the deposition at trial under Fed. R. Civ. P. 30(b)(2) and 32. The deposition will continue from day to day until concluded or as agreed to between the parties.

In accordance with Fed. R. Civ. P. 30(b)(6), Prism is advised of its duty to designate one or more of its officers, directors or other persons to testify on its behalf with respect to the topics listed below. At least one week in advance of the date of deposition, Prism should (1) provide a written designation of the name(s) and position(s) of the person(s) designated to testify, and (2) produce, pursuant to Fed. R. Civ. P. 34, any documents reviewed or considered in preparation for the deposition, except those documents produced in response to Joint Defendants discovery requests may be identified by production number.

                                                       ASHBY & GEDDES

                                                    */s/ Tiffany Geyer Lydon*

                                                    Steven J. Balick (I.D. #2114)
                                                    John G. Day (I.D. #2403)
                                                    Tiffany Geyer Lydon (I.D. #3950)
                                                    222 Delaware Avenue, 17th Floor
                                                    P.O. Box 1150
                                                    Wilmington, Delaware  19899
                                                    (302) 654-1888

                                                    *Attorneys for Defendant*
                                                    *Johnson & Johnson Services Inc.*

*Of Counsel:*

John M. DiMatteo
Neal K. Feivelson
Leslie M. Spencer
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019-6099
(212) 728-8000

Dated: September 29, 2006
173765.1

## **DEFINITIONS**

1. "Prism" means plaintiff Prism Technologies LLC, and all past or present predecessors, corporate parents, subsidiaries, or affiliates, such as Prism Resources Inc., and including but not limited to all past or present officers, directors, agents, servants, employees, attorneys, accountants, or other persons or entities acting or purporting to act on behalf of Prism.

2. "Joint Defendants" means, individually and collectively, defendants VeriSign, Inc., RSA Security, Inc., Netegrity, Inc., Computer Associates International, Inc. and Johnson & Johnson Services, Inc.

3. "Person" shall include (a) natural persons (also referred to as "individuals"); (b) legal entities, including without limitation, corporations, partnerships, firms, associations, professional corporations and proprietorships; and (c) governmental bodies or agencies.

4. "'416 Patent" and "patent-in-suit" mean United States Patent No. 6,516,416, entitled "Subscription Access System for Use with an Untrusted Network," together with applications from which that patent issued.

5. "Named Inventors" means Richard L. Gregg, Sandeep Giri, and Timothy C. Goeke, both individually and collectively.

6. "ISA" means Prism's Internet Subscription Access product, and all versions, prototypes and models thereof, including but not limited to Internet Gatekeeper technology.

7. The term "secure access technology" refers to any technology that controls access to computer resources or stored content. This term includes, but is not limited to, the Internet Subscription Access (ISA) product developed by Prism, which typically contained a hardware access key and one or any combination of the following software components: ISA

Subscriber Software, ISA Server Software, ISA Site Administration Software, ISA Clearinghouse Server Software, and/or ISA Subscriber Administration Software.

8.  "DTN," means Data Transmission Network, Corp. and all past or present predecessors, subsidiaries, parents, and affiliates, and including but not limited to all past or present officers, directors, partners, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act on behalf of DTN.

9.  "ABI," means American Business Information, Inc. and all past or present predecessors, subsidiaries, parents, and affiliates, and including but not limited to all past or present officers, directors, partners, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act on behalf of ABI.

10. "SA," mean Securities America, Inc. and all past or present predecessors, subsidiaries, parents, and affiliates, and including but not limited to all past or present officers, directors, partners, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act on behalf of SA.

11. "CNS," means Construction Network Services, Inc. and all past or present predecessors, subsidiaries, parents, and affiliates, and including but not limited to all past or present officers, directors, partners, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act on behalf of CNS.

12. "Amazon," means Amazon Corporation and all past or present predecessors, subsidiaries, parents, and affiliates, and including but not limited to all past or present officers, directors, partners, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act on behalf of Amazon.

13. "Global Netwatch" means Global Netwatch, Inc. and all past or present predecessors, subsidiaries, parents, and affiliates, and including but not limited to all past or

present officers, directors, partners, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act on behalf of Global Netwatch.

14. "AmEx," means American Express and all past or present predecessors, subsidiaries, parents, and affiliates, and including but not limited to all past or present officers, directors, partners, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act on behalf of AmEx.

15. "Fairfield" means Fairfield Resources International and all past or present predecessors, subsidiaries, parents, and affiliates, and including but not limited to all past or present officers, directors, partners, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act on behalf of Fairfield.

16. "AMR" means American Management Resources and all past or present predecessors, subsidiaries, parents, and affiliates, and including but not limited to all past or present officers, directors, partners, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act on behalf of AMR.

17. "Prism Patented Product" means any product created, developed, tested, marketed, sold or offered for sale by Prism that embodies any of the alleged inventions claimed in the '416 patent, including but not limited to Prism's ISA product.

18. The term "document" is used herein in its broadest sense under FED. R. CIV. P. 34 and applicable case law. Electronic mail is included within the definition of the term "document." The terms "writings," "recordings," and "photographs" are defined to be synonymous in meaning and equal in scope to the use of those terms in FED. R. EVID. 1001. A draft or non-identical copy is a separate document within the meaning of the term "document."

19. "Communication" means any document or message received by, transmitted to, conveyed to, or delivered to you from any person or entity or from you to any

person or entity, including but not limited to electronic mail and oral communications reduced to writing.

20. The term "relating to" means referring to, relating to, with respect to, regarding, reflecting, discussing, constituting, mentioning, pertaining to, alluding to, or associated with.

21. The terms "Identify" and "identity":

(a) when used with respect to a patent or patent application, shall mean to state (i) its country; (ii) its patent and application numbers; (iii) its dates of filing, publication, and grant; and (iv) the names of individual patentees (as the term "patentees" is used under United States practice) and corporate applicants or assignees;

(b) when used with respect to a corporation, shall mean to state (i) its name; (ii) its place of incorporation or organization; and (iii) its principal place of business;

(c) when used with respect to a natural person, shall mean to state a person's (i) full name; (ii) present or last known home and business address; (iii) present or last known employer; (iv) present or last known home and business telephone numbers or business affiliation; and (v) job title, position, or occupation;

(d) when used with respect to a document, shall mean to state (i) the author of the document; (ii) each person to whom the document was addressed and to whom a copy of the document was given or sent; (iii) the date appearing on the face of the document; (iv) the general nature or description of the document (i.e., whether it is a letter, memorandum, drawing, etc.); (v) the subject of the document; and (vi) the present or last known custodian of the document.

22. "And" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive; use of a singular noun shall be construed to include the plural noun and use of a plural noun shall be construed to include the singular noun; the use of a verb in any tense shall be construed as the use of that verb in all other

tenses whenever necessary to bring within the scope of the requested documents that which might otherwise be construed to be outside its scope.

## **TOPICS**

1. The conception and reduction to practice of the invention(s) claimed in the '416 Patent or any related patents or patent applications.

2. The design, development, structure and operation of any embodiment of the invention(s) claimed in the '416 Patent or any related patents or patent applications, including but not limited to Prism's ISA product.

3. The correspondence between each claim element and the structures, functions, and operation described in the specification of the '416 Patent.

4. The preparation, decision by Prism to file, filing and prosecution of patent applications relating to the invention(s) (or any part thereof) claimed in the '416 Patent, including the application for the '416 Patent and any parent, continuation(s), continuation(s) in part, divisional(s), reissue(s) and/or foreign counterpart(s) of any of the '416 Patent.

5. Communications, evaluations, opinions, analyses or studies prepared by, for or on behalf of Prism concerning the patentability, validity, enforceability or infringement of, or possible litigation relating to the '416 Patent, or any parent, continuation(s), continuation(s) in part, divisional(s), reissue(s) and/or foreign counterpart(s) of the '416 Patent, including but not limited to the information contained in P031574-031588.

6. Knowledge or awareness by Prism of any product, publication or patent qualifying as prior art to the '416 Patent and/or any related patents or patent applications.

7. Prism's disclosure of prior art to, and evaluation of prior art for disclosure to, the United States Patent and Trademark Office in connection with pending patent applications, including but not limited to the information contained in P46018.212150-152.

8. The first written descriptions made in, or introduced into, the United States of the invention(s) claimed in the '416 Patent or any related patents or patent applications or any product, prototype or model embodying such invention(s).

9. The first printed publication describing the invention(s) claimed in the '416 Patent and/or any related patents or patent applications or any product, prototype or model embodying such invention(s).

10. All communications, presentations or meetings with persons either employed or not employed by Prism before June 11, 1996, regarding any product, prototype or model embodying the invention(s) claimed in the '416 Patent and/or any related patents or patent applications.

11. Communications between Prism and any other party concerning the licensing of the '416 Patent or any related patents or patent applications, or any other means of generating revenue using the '416 Patent or any related patents or patent applications.

12. The financial activities of Prism, including but not limited to any policy, strategy or decisions made with regard to capital structure, budgeting, acquisition and investment, financial modeling and planning, funding, dividends and taxation.

13. Any correspondence or communications with potential or existing Prism shareholders and/or investors.

14. The first sale, offer for sale, beta test or customer demonstration, and first disclosure to a person not employed by Prism, of any (a) invention claimed in the '416 Patent or any related patents or patent applications, (b) product, prototype or model embodying such invention(s) or (c) Prism Patented Product relating to any feature recited in any claim of the '416 Patent, and the circumstances (including the dates and participants) thereof.

15. Any alleged commercial success; fulfillment of a long felt need in the art; industry failure to solve the problems alleged solved by the subject matter of the claims; unexpected results achieved; synergy, or copying by others; industry, academic or other tributes or accolades; or any other alleged indicator of nonobviousness with respect to the invention(s) claimed in the '416 Patent.

16. The identification, selection or determination of the proper inventors to be named in the application for the '416 Patent and any parent, continuation(s), continuation(s) in part, divisional(s), reissue(s) and/or foreign counterpart(s) of the '416 Patent.

17. The organization and corporate structure of Prism, including its corporate parents, subsidiaries, affiliates or predecessors, and Board of Directors, and the duties and responsibility of its officers, directors, and employees.

18. The advertising, promotional and marketing efforts undertaken concerning any Prism secure access technology.

19. The relationships between Prism and any past, existing or potential customers, resellers, distributors, and business partners who have purchased, implemented, configured, integrated, and/or procured any Prism secure access technology.

20. Any third-party involvement, including but not limited to any involvement of DTN, ABI, SA, CNS, Amazon, Global Netwatch, AmEx, Fairfield or AMR in the conception, reduction to practice, design, development, study, research, structure, function, operation, testing, experimentation, manufacture, distribution, purchase, offers for sale, sale, modification, change, or redesign of any Prism secure access technology.

21. Any complaints, unfavorable reviews or opinions, negative feedback, or suggestions for improvement, modification, or change of any Prism secure access technology.

22. Proposed or actual licenses (present or past), transfers, or assignments of any patent rights, or other rights, including but not limited to, the content of any negotiations related to the same, for the '416 Patent or any Prism secure access technology.

23. Prism's competition in the market for secure access technology in the United States from 1996 to the present, including but not limited to, the identity of competitors and competing products offered for sale or sold in the United States from 1996 to the present, and any communications, analyses or studies prepared by, for or on behalf of Prism, concerning competition in the market for secure access technology

24. The amount of revenue, costs, and profits relating to the '416 patent or any Prism secure access technology which embodies the subject matter claimed in the '416 patent.

25. The bases for what Prism contends is a "reasonable royalty" is for VeriSign, Inc.'s and/or Johnson & Johnson Services, Inc.'s alleged infringement of the '416 patent, as that term is used under 35 U.S.C. § 284.

26. Prism's relationship with Fairfield, including but not limited to any ownership or fee arrangement between Prism and Fairfield, and all agreements and communications related thereto.

27. The factual bases for any contention by Prism that any of the Joint Defendants' infringe the '416 patent.

28. The factual bases for any contention by Prism that any of the Joint Defendants' willfully infringe the '416 patent.

29. The factual bases for any contention by Prism that the '416 patent is not invalid or otherwise unenforceable.

30. Allegations of infringement of the '416 patent made by Prism against any other person or entity.

31. The testing, research or investigation of any of Joint Defendants' products and/or services that Prism alleges infringe the '416 patent.

32. Prism's Responses to any and all of Joint Defendants' Interrogatories, Requests for Production and Requests for Admission.

33. Any prefiling investigation performed by Prism prior to filing the current lawsuit, Prism v. VeriSign et al., Civ. Action No. 05-214 JJF (D. Del.).

34. The investigation of any of Joint Defendants' customers made by Prism prior to filing the current lawsuit, Prism v. VeriSign et al., Civ. Action No. 05-214 JJF (D. Del.).

35. The decision to file the Complaint in this action.

36. Prism's fee arrangement with the law firm of Robins, Kaplan, Miller and Ciresi for this lawsuit.

37. Prism's document retention policies and practices.

38. The identification, location, creation and destruction of documents or other information concerning the foregoing topics.

39. The identification of persons and/or entities involved in or knowledgeable about the foregoing topics and their respective roles.

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of September, 2006, the attached **JOINT DEFENDANTS' FIRST 30(b)(6) NOTICE OF DEPOSITION OF PRISM TECHNOLOGIES, LLC** was served upon the below-named counsel at the address and in the manner indicated:

| | |
|---|---|
| Richard D. Kirk, Esquire<br>The Bayard Firm<br>222 Delaware Avenue, Suite 900<br>P.O. Box 25130<br>Wilmington, DE  19899 | HAND DELIVERY |
| Dirk D. Thomas, Esquire<br>Robin, Kaplan, Miller & Ciresi, LLP<br>1801 K Street, N.W., Suite 1200<br>Washington, DC  20006 | VIA FEDERAL EXPRESS |
| Patricia S. Rogowski, Esquire<br>Connolly Bove Lodge & Hutz LLP<br>The Nemours Building<br>1007 North Orange Street<br>P.O. Box 2207<br>Wilmington, DE  19899 | HAND DELIVERY |
| Jason A. Snyderman, Esquire<br>Akin Gump Strauss Hauer & Feld LLP<br>One Commerce Square<br>2005 Market Street<br>Suite 2200<br>Philadelphia, PA  19103-7013 | VIA FEDERAL EXPRESS |
| Frank C. Cimino, Jr., Esquire<br>Akin Gump Strauss Hauer & Feld LLP<br>Robert S. Strauss Building<br>1333 New Hampshire Avenue, N.W.<br>Washington, DC  20036-1564 | VIA FEDERAL EXPRESS |

| | |
|---|---|
| Frederick L. Cottrell, III, Esquire<br>Richards Layton & Finger<br>One Rodney Square<br>P.O. Box 551<br>Wilmington, DE  19899 | HAND DELIVERY |
| William F. Lee, Esquire<br>Wilmer Cutler Pickering Hale & Dorr LLP<br>60 State Street<br>Boston, MA  02109 | VIA FEDERAL EXPRESS |
| Kate Hutchins, Esquire<br>Wilmer Cutler Pickering Hale & Dorr<br>399 Park Avenue<br>New York, NY  10022 | VIA FEDERAL EXPRESS |
| Richard L. Horwitz, Esquire<br>Potter Anderson & Corroon LLP<br>1313 North Market Street<br>P.O. Box 951<br>Wilmington, DE  19899 | HAND DELIVERY |
| Samir Bhavsar, Esquire<br>Baker Botts LLP<br>2001 Ross Avenue<br>Dallas, TX  75201-2980 | VIA FEDERAL EXPRESS |
| David M. Schlitz, Esquire<br>Baker Botts LLP<br>The Warner<br>1299 Pennsylvania Avenue, NW<br>Washington, DC  20004-2400 | VIA FEDERAL EXPRESS |

/s/ *Tiffany Geyer Lydon*
_____
Tiffany Geyer Lydon