# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PRISM TECHNOLOGIES LLC

               Plaintiff,

       v.

VERISIGN, INC., RSA SECURITY, INC.,
NETEGRITY, INC., COMPUTER
ASSOCIATES INTERNATIONAL, INC.,
and JOHNSON & JOHNSON SERVICES,
INC.,

               Defendants.

Civil Action No. CA 05-214 JJF

**PLAINTIFF PRISM TECHNOLOGIES LLC'S OBJECTIONS AND RESPONSES
TO DEFENDANT RSA SECURITY, INC.'S FIRST SET OF
INTERROGATORIES (Nos. 1-14)**

     Plaintiff Prism Technologies LLC ("Prism") provides the following responses and

objections to RSA Security, Inc.'s ("RSA") First Set of Interrogatories. Prism will supplement

these responses as required by the Federal Rules of Civil Procedure and the Local Rules and

Orders of this Court.

**GENERAL OBJECTIONS**

     For its General Objections, Prism objects to RSA's interrogatories, instructions and

definitions as follows. Prism hereby incorporates its definitions as set forth in its Revised First

Set of Document Requests to RSA.

     A.       Prism objects to these interrogatories to the extent they impose obligations or

requirements beyond those imposed by the Federal Rules of Civil Procedure and the Local Rules

of the United States District Court for the District of Delaware, or the Orders of this Court. Prism does not consider itself bound by RSA's instructions and definitions.

B.     Prism objects to these interrogatories as vague, overly broad, unduly burdensome to the extent that they request information not relevant to a claim or defense of any party, not reasonably calculated to lead to the discovery of admissible evidence, or as otherwise exceeding the scope of permissible discovery.

C.     Prism objects to these interrogatories to the extent they seek information or documents that are protected from discovery by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.  No part of Prism's response constitutes a waiver of any privilege or immunity.

D.     Prism objects to these interrogatories to the extent they seek information that is not in its possession, custody or control or that is publicly available or has already been provided to the Defendants.

E.     Prism objects to these interrogatories to the extent that they comprise sub-parts or compound questions and, therefore, exceed or may exceed the number of interrogatories permitted in this action.

F.     Prism objects to the definition of "Prism" and "You" as overly broad to the extent those terms request information from legal entities not within the scope of this litigation or within the possession, custody or control of Prism or not subject to Prism's legal recourse and/or otherwise outside the enforceable scope of the laws of the United States of America.

G.     Prism objects to these interrogatories to the extent they assume incorrect facts.

H.     Prism objects to these interrogatories as premature to the extent that they call for construction of the claims of the patent-in-suit and there has not yet been a determination of

606365v1

claim construction by the Court in this case. Therefore, Prism specifically reserves its right to change, modify, or otherwise supplement the claim constructions presently asserted.

I.      Prism objects to these interrogatories on the grounds that discovery has just begun and Prism has not completed its investigation of all facts relating to Defendants' infringement of the patent-in-suit or its formulation of its contentions with respect to such issues. Therefore, Prism specifically reserves its right to change, modify, or otherwise supplement its allegations based on discovery to be obtained from the Defendants or its own investigation.

J.      Prism objects to these interrogatories to the extent that they call for premature expert discovery.

K.      To the extent not objected above, Prism incorporates by reference its objections to RSA's First Set of Document Requests.

## RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1:

Separately for each Defendant, identify each claim of the patent-in-suit which Prism asserts has been infringed, and for each identified claim, identify separately for each Defendant all specific activities, services, methods, and products alleged to constitute infringement, stating the basis for each such contention.

### RESPONSE TO INTERROGATORY NO. 1:

Prism incorporates its general objections, and specifically its General Objections A, B, H, I, and J. Prism objects as to this Interrogatory to the extent it seeks information regarding products other than RSA's product as not relevant. Prism objects to this interrogatory as a premature contention interrogatory. Prism has not, as yet, had the opportunity to conduct meaningful discovery to determine the full extent of products made, used, sold, and/or offered for sale by RSA that infringe the '416 patent.

606365v1

Subject to and without waiving these objections, Prism responds as follows. Prism refers RSA to Prism's claim charts submitted in response to the other Defendants' First Set of Interrogatories and the claim charts below regarding RSA's infringing products. Prism alleges, to date, that the RSA's ClearTrust and RSA's Authentication Manager literally meet all the elements of at least claims 1 and/or 24.

**INTERROGATORY NO. 2:**

Separately for each patent claim identified in response to Interrogatory No. 1, and separately for each Defendant's activities, services, methods and products alleged to infringe such claim, explain how each such activity, service, method and product corresponds to the language of such claim, providing an element-by-element infringement claim chart analysis explaining how each element of each claim is allegedly met and whether such element is alleged to be met literally or by virtue of the doctrine of equivalents, including for each element that Prism contends is governed by 35 U.S.C. § 112(6), the identity of the structures or acts in the accused activity, service, method or product that perform the claimed function.

**RESPONSE TO INTERROGATORY NO. 2:**

Prism incorporates its general objections, and specifically its General Objections A, B, E, H, I, and J. Since discovery is ongoing and RSA has not yet responded to Prism's discovery requests, Prism reserves the right to change, modify, or otherwise supplement its current infringement contentions, including identifying additional products and/or services offered by RSA that infringe one or more claims of the '416 patent. Subject to and without waiving these objections, Prism responds as follows:

| U.S. Patent #6,516,416 | RSA Clear Trust |
|---|---|
| 1.) A system for controlling the operation of and access to selected computer resources of at least a first server computer by at least one subscriber client computer via an untrusted network in an operating session, without necessarily controlling access to other computer resources provided by the first server computer and by other server computers and nonsubscriber client computers, comprising: | The RSA ClearTrust Web Server Agent installed on a Web Server provides the functions of the first server. The RSA ClearTrust Web Server Agent communicates with the subscriber client computer (an operating session) using the Internet (an untrusted network) to control access to selected computer resources. A subscriber client computer is used to access computer resources controlled by the Web Server Agent. Both subscriber client computers and nonsubscriber client computers can |

| U.S. Patent #6,516,416 | RSA Clear Trust |
|---|---|
| | also access resources not controlled by the Web Server Agent on the Web Server (first server). Both subscriber client computers and nonsubscriber client computers can also access other Web Servers (e.g.. www.yahoo.com).[1] |
| **1a.)** clearinghouse means for storing identity data of said first server computer and the identity data of each of said subscriber client computers; | The clearinghouse means consists of the RSA Data Abstraction Layer (DAL), ClearTrust Database, and the ClearTrust Authentication Server. The identity data of the ClearTrust Web Server Agent (first server) and each subscriber client are stored in the RSA ClearTrust Database via the RSA ClearTrust Data Abstraction Layer (DAL).[2] The identity data of the first server is an X.509 digital certificate. The identity data of the subscriber client is a X.509 digital certificate stored on the hardware key (RSA SecurID 6100 USB Token or RSA SecurID 5100 Smartcard).[3] |
| **1b.)** server software means installed on said first server computer adapted to forward its identity data and identity data of each subscriber client computer to said clearinghouse means at the beginning of an operating session in which access to selected computer resources of said first server computer is requested; | The ClearTrust Web Server Agent (first server) forwards its identity data and the subscriber client computer identity to the ClearTrust Authorization Server (clearinghouse means) at the beginning of an operating session when resources controlled by the ClearTrust Web Server Agent are requested by the subscriber client computer.[4] |
| **1c.)** client software means installed on each of said subscriber client computers adapted to forward its identity data to said first server computer at the beginning of an operating session in which access to selected computer resources is requested; | RSA SecurID Passage software is the client software means installed on each of said subscriber client computers.[5] The RSA SecurID Passage software forwards its identity data to the RSA ClearTrust Web Server Agent at the beginning of an operating session when computer resources controlled by the RSA ClearTrust Web Server Agent are requested by the subscriber client computer.[6] |
| **1d.)** at least one hardware key connected to the subscriber client computer, said key being adapted to generate a predetermined digital identification, which identification is part of said identity data; | The RSA SecurID 6100 USB Token or the RSA SecurID 5100 Smart Card is the hardware key which is connected to the subscriber client computer's USB port or by a Smart Card reader. A X.509 digital certificate (predetermined digital identification) can be stored on Token or Smart Card. The digital certificate comprises at least part of the subscriber identity data.[7] |

---

[1] *RSA ClearTrust Web Access Management Overview*, RSA Security, 2002 (P 032508-032519).
[2] *RSA ClearTrust Web Access Management Overview*, RSA Security, 2002 (P 032508-032519).
[3] *RSA SecurID Passage 3.5 Administrator's Guide*, RSA Security, September 2003 (P 032520-032603).
[4] *RSA ClearTrust Web Access Management Overview*, RSA Security, 2002 (P 032508-032519).
[5] *RSA SecurID Passage 3.5 Administrator's Guide*, RSA Security, September 2003 (P 032520-032603).
[6] *RSA ClearTrust Web Access Management Overview*, RSA Security, 2002 (P 032508-032519).
[7] *RSA SecurID Passage 3.5 Administrator's Guide*, RSA Security, September 2003 (P 032520-032603).

606365v1

| U.S. Patent #6,516,416 | RSA Clear Trust |
|---|---|
| 1e.) said server software means installed on the first server computer being adapted to selectively request the subscriber client computer to forward said predetermined digital identification to the first server computer to thereby confirm that said hardware key is connected to said subscriber client computer; | The RSA ClearTrust Web Server Agent (first server) can selectively request the identity data from the subscriber client computer.[8] This is accomplished by either expiration of the inactivity timer or lifetime timer within the RSA ClearTrust Web Server Agent.[9] |
| 1f.)  said clearinghouse means being adapted to authenticate the identity of said subscriber client computer responsive to a request for selected computer resources of said first server computer by a subscriber client computer; | The RSA ClearTrust Authorization Server (clearinghouse) is adapted to authenticate the identity of said subscriber client computer responsive to a request for selected computer resources controlled by the RSA Web Server Agent (first server) by a subscriber client computer.[10] |
| 1g.) said clearinghouse means being adapted to authenticate the identity of said first server computer responsive to said subscriber client computer making the request for selected computer resources of said first server computer; and, | The RSA ClearTrust Authorization Server (clearinghouse) uses two-way SSL to authenticate the identity data of the first server.[11] The RSA ClearTrust Authorization Server sends a certificate_request message to the ClearTrust Web Server Agent (first server) requesting its' identity data. The ClearTrust Web Server Agent responds with a certificate message sending its identity data to the clearinghouse.[12] The identity data is a X.509 digital certificate. |
| 1h.)  said clearinghouse means being adapted to permit access to said selected computer resources responsive to successful initial authentication of said first server computer and of said subscriber client computer making first request. | The RSA ClearTrust Authentication Server (clearinghouse) permits access to computer resources controlled by the ClearTrust Web Server Agent (first server) upon successful initial authentication of both the ClearTrust Web Server Agent (first server) and the subscriber client computer.[13,14] |
| 24.) A method of controlling access to selected computer resources of at least a first server computer by at least one subscriber client computer via an untrusted network during an operating session, without necessarily controlling access to other computer resources provided by the first server computer and by other server computers and nonsubscriber client computers, comprising the steps of: | The RSA ClearTrust Web Server Agent installed on a Web Server provides the functions of the first server. The RSA ClearTrust Web Server Agent communicates with the subscriber client computer (an operating session) using the Internet (an untrusted network) to control access to selected computer resources. A subscriber client computer is used to access computer resources controlled by the Web Server Agent. Both subscriber client |

---

[8] *RSA ClearTrust Web Access Management Overview*, RSA Security, 2002 (P 032508-032519).
[9] *RSA Follow Up/Action Items*, Neil Hall, RSA Security, September 30, 2004 (P 032605-032607).
[10] *RSA ClearTrust Web Access Management Overview*, RSA Security, 2002 (P 032508-032519).
[11] *RSA Follow Up/Action Items*, Neil Hall, RSA Security, September 30, 2004 (P 032605-032607).
[12] *RFC 2246 – The TLS Protocol Version 1.0*, IETF, January 1999 (P 032608-032679).
[13] *RSA ClearTrust Web Access Management Overview*, RSA Security, 2002 (P032508-032519).
[14] *RSA Follow Up/Action Items*, Neil Hall, RSA Security, September 30, 2004 (P 032605-032607).

| U.S. Patent #6,516,416 | RSA Clear Trust |
|---|---|
| | computers and nonsubscriber client computers can also access resources not controlled by the Web Server Agent on the Web Server (first server). Both subscriber client computers and nonsubscriber client computers can also access other Web Servers (e.g. www.yahoo.com).[15] |
| **24a.)** registering identity data of said first server computer and the identity data of each of said subscriber client computers and storing the registered identity data in a clearinghouse means associated with said first server computer and said subscriber client computers; | The clearinghouse means consists of the RSA Data Abstraction Layer (DAL), ClearTrust Database, and the ClearTrust Authentication Server. The identity data of the ClearTrust Web Server Agent (first server) and each subscriber client are registered in the RSA ClearTrust Database via the RSA ClearTrust Data Abstraction Layer (DAL).[16] The identity data of the first server is an X.509 digital certificate. The identity data of the subscriber client comprises at least a X.509 digital certificate stored on the hardware key (RSA SecurID 6100 USB Token or RSA SecurID 5100 Smartcard).[17] |
| **24b.)** requiring a subscriber client computer to forward its identity data to said clearinghouse means at the beginning of an operating session in which access to selected computer resources is requested; | RSA SecurID Passage software is installed on each subscriber client computer.[18] The RSA SecurID Passage software forwards its identity data to the RSA ClearTrust Web Server Agent (first server) at the beginning of an operating session. The first server then forwards the subscriber client identity data to the RSA ClearTrust Authentication Server (clearinghouse).[19] |
| **24c.)** requiring a subscriber client computer to forward a predetermined digital identification to said first server computer to thereby confirm that a hardware key is connected to said subscriber client computer; | The RSA SecurID 6100 USB Token or the RSA SecurID 5100 Smart Card is the hardware key which is connected to the subscriber client computer's USB port or by a Smart Card reader. A X.509 digital certificate (predetermined digital identification) can be stored on the Token or Smart Card.[20] The RSA SecurID Passage software is installed on the subscriber client computer and forwards the digital certificate to the RSA Web Server Agent (first server). The RSA Web Server Agent confirms that the hardware key is connected.[21] |

---

[15] *RSA ClearTrust Web Access Management Overview*, RSA Security, 2002 (P 032508-032519).

[16] *RSA ClearTrust Web Access Management Overview*, RSA Security, 2002 (P 032508-032519).
[17] *RSA SecurID Passage 3.5 Administrator's Guide*, RSA Security, September 2003 (P 032520-032603).
[18] *RSA SecurID Passage 3.5 Administrator's Guide*, RSA Security, September 2003 (P 032520-032603).
[19] *RSA ClearTrust Web Access Management Overview*, RSA Security, 2002 (P 032508-032519).
[20] *RSA SecurID Passage 3.5 Administrator's Guide*, RSA Security, September 2003 (P 032520-032603).
[21] *RSA ClearTrust Web Access Management Overview*, RSA Security, 2002 (P 032508-032519).

606365v1

| U.S. Patent #6,516,416 | RSA Clear Trust |
|---|---|
| **24d.)** Attempting to authenticate the identity of said subscriber client computer from said clearinghouse means responsive to a request for selected computer resources of said first server computer by a subscriber client computer; | The RSA ClearTrust Authorization Server (clearinghouse) authenticates the identity of the subscriber client computer responsive to a request for selected computer resources of the RSA Web Server Agent (first server) by a subscriber client computer.[22] |

| U.S. Patent #6,516,416 | RSA Clear Trust |
|---|---|
| **24e.)** attempting to authenticate the identity of said first server computer from said clearinghouse means responsive to said subscriber client computer making the request for selected computer resources; and, | The RSA ClearTrust Authorization Server (clearinghouse) uses two-way SSL to authenticate the identity of the first server.[23] The RSA ClearTrust Authorization Server sends a certificate_request message to the ClearTrust Web Server Agent (first server) requesting its' identity data. The ClearTrust Web Server Agent responds with a certificate message sending its identity data to the clearinghouse.[24] The identity data is a X.509 digital certificate. |
| **24f.)** permitting access to said selected computer resources responsive to successful initial authentication of said first server computer and of said subscriber client computer making said request. | The RSA ClearTrust Authentication Server (clearinghouse) permits access to computer resources controlled by the ClearTrust Web Server Agent (first server) upon successful initial authentication of both the ClearTrust Web Server Agent (first server) and the subscriber client computer.[25,26] |

| US Patent #6,516,416 | RSA Authentication Manager |
|---|---|
| **1.)** A system for controlling the operation of and access to selected computer resources of at least a first server computer by at least one subscriber client computer via an untrusted network in an operating session, without necessarily controlling access to other computer resources provided by the first server computer and by other server computers and nonsubscriber client computers, comprising: | The RSA Authentication Agent installed on a Web Server provides the functions of the first server. The RSA Authentication Agent communicates with the subscriber client computer (an operating session) using the Internet (an untrusted network) to control access to selected computer resources. A subscriber client computer is used to access computer resources controlled by the Authentication Agent. Both subscriber client computers and nonsubscriber client computers can also access resources not controlled by the Authentication Agent on the Web Server (first server). Both subscriber client computers and |

---

[22] *RSA ClearTrust Web Access Management Overview*, RSA Security, 2002 (P 032508-032519).
[23] *RSA Follow Up/Action Items*, Neil Hall, RSA Security, September 30, 2004 (P 032605-032607).
[24] *RFC 2246 – The TLS Protocol Version 1.0*, IETF, January 1999 (P 032608-032679).
[25] *RSA ClearTrust Web Access Management Overview*, RSA Security, 2002 (P 032508-032519).
[26] *RSA Follow Up/Action Items*, Neil Hall, RSA Security, September 30, 2004 (P 032605-032607).

| US Patent #6,516,416 | RSA Authentication Manager |
|---|---|
| | nonsubscriber client computers can also access other Web Servers (e.g. www.yahoo.com).[27] |
| **1a.)** clearinghouse means for storing identity data of said first server computer and the identity data of each of said subscriber client computers; | The clearinghouse means consists of the RSA Authentication Manager Engine and the RSA Authentication Manager Database ("RSA Authentication Manager").[28] The identity data of the RSA Authentication Agent (first server) and each subscriber client are stored in the RSA Authentication Manager Database. The identity data of the first server is a unique key or "node secret".[29] The identity data of the subscriber client is a One Time Password (OTP) and/or X.509 digital certificate stored on the hardware key (RSA SecurID SID8100 Hardware Authenticator).[30] |
| **1b.)** server software means installed on said first server computer adapted to forward its identity data and identity data of each subscriber client computer to said clearinghouse means at the beginning of an operating session in which access to selected computer resources of said first server computer is requested; | The RSA Authentication Agent (first server) forwards its identity data and the subscriber client computer identity data to the RSA Authentication Manager (clearinghouse means) at the beginning of an operating session when resources controlled by the RSA Authentication Agent are requested by the subscriber client computer.[31,32] |
| **1c.)** client software means installed on each of said subscriber client computers adapted to forward its identity data to said first server computer at the beginning of an operating session in which access to selected computer resources is requested; | RSA Authentication Utility software[33] is the client software means installed on each of said subscriber client computers. The RSA Authentication Utility software forwards the subscriber client computer identity data to the RSA Authentication Agent at the beginning of an operating session when computer resources controlled by the RSA Authentication Agent are requested by the subscriber client computer.[34] |

---

[27] *The Power Behind RSA SecurID Two-factor User Authentication: RSA Authentication Manager*, RSA Security Inc., 2004 (P 035442-035457).

[28] *The Power Behind RSA SecurID Two-factor User Authentication: RSA Authentication Manager*, RSA Security Inc., 2004, pg. 8 (System Components) (P 035451).

[29] *The Power Behind RSA SecurID Two-factor User Authentication: RSA Authentication Manager*, RSA Security Inc., 2004, pg. 9 (Encyption) (P 035452).

[30] *RSA SecurID SID800 Hardware Authenticator*, RSA Security Inc., 2005, pg. 1 (Flexible – Supports Multiple Credential Types, Future Applications) (P 032458).

[31] *The Power Behind RSA SecurID Two-factor User Authentication: RSA Authentication Manager*, RSA Security Inc., 2004, pg. 8 (System Components) (P 035451).

[32] *The Power Behind RSA SecurID Two-factor User Authentication: RSA Authentication Manager*, RSA Security Inc., 2004, pg. 9 (Encyption) (P 035452).

[33] *RSA SecurID SID800 Hardware Authenticator*, RSA Security Inc., 2005, pg. 2 (Simplified Credential Management Software) (P 035459).

[34] *The Power Behind RSA SecurID Two-factor User Authentication: RSA Authentication Manager*, RSA Security Inc., 2004 (P 035442-035457).

| US Patent #6,516,416 | RSA Authentication Manager |
|---|---|
| **1d.)** at least one hardware key connected to the subscriber client computer, said key being adapted to generate a predetermined digital identification, which identification is part of said identity data; | The RSA SecurID SID800 Hardware Authenticator is the hardware key which is connected[35] to the subscriber client computer's USB port. A One Time Password (OTP) and/or X.509 digital certificate (predetermined digital identification) can be generated by and/or stored on SID800 Hardware Authenticator.[36] The OTP and/or digital certificate comprise the subscriber identity data. |
| **1e.)** said server software means installed on the first server computer being adapted to selectively request the subscriber client computer to forward said predetermined digital identification to the first server computer to thereby confirm that said hardware key is connected to said subscriber client computer. | The RSA Authentication Agent (first server) can selectively request the identity data from the subscriber client computer. This is accomplished when an encrypted cookie stored on the subscriber client computer's web browser expires. When the subscriber client computer requests resources controlled by the RSA Authentication Agent with an expired cookie, the RSA Authentication Agent requests the subscriber client credentials for authentication.[37] |
| **1f.)** said clearinghouse means being adapted to authenticate the identity of said subscriber client computer responsive to a request for selected computer resources of said first server computer by a subscriber client computer; | The RSA Authentication Manager (clearinghouse) is adapted to authenticate the identity of said subscriber client computer responsive to a request for selected computer resources controlled by the RSA Authentication Agent (first server) by a subscriber client computer.[38] |
| **1g.)** said clearinghouse means being adapted to authenticate the identity of said first server computer responsive to said subscriber client computer making the request for selected computer resources of said first server computer; and, | The RSA Authentication Manager (clearinghouse) uses a unique key or "node secret" to authenticate the identity data of the RSA Authentication Agent (first server). The identity data is the secret key or "node secret."[39] |
| **1h.)** said clearinghouse means being adapted to permit access to said selected computer resources responsive to successful initial authentication of said first server computer and of said subscriber client computer making first request. | The RSA Authentication Manager (clearinghouse) permits access to computer resources controlled by the RSA Authentication Agent (first server) upon successful initial authentication of both the RSA Authentication Agent (first server) and the subscriber client computer.[40] |

[35] *RSA SecurID SID800 Hardware Authenticator*, RSA Security Inc., 2005, pg. 1 (Portable And Easy to Use) (P 035458).

[36] *RSA SecurID SID800 Hardware Authenticator*, RSA Security Inc., 2005, pg. 1 (Flexible – Supports Multiple Credential Types, Future Applications) (P 035458).

[37] *NEXUS – The RSA Security Identity Management System – A Technical Vision for Identity and Access Management*, RSA Security, Inc., 2003-2004, pg. 11 (SSO Cookie Security) (P 035472).

[38] *The Power Behind RSA SecurID Two-factor User Authentication: RSA Authentication Manager*, RSA Security Inc., 2004 (P 035442-035457).

[39] *The Power Behind RSA SecurID Two-factor User Authentication: RSA Authentication Manager*, RSA Security Inc., 2004, pg. 9 (Encyption) (P 035452).

[40] *The Power Behind RSA SecurID Two-factor User Authentication: RSA Authentication Manager*, RSA Security Inc., 2004 (P 035442-035457).

| US Patent #6,516,416 | RSA Authentication Manager |
|---|---|
| **24.)** A method of controlling access to selected computer resources of at least a first server computer by at least one subscriber client computer via an untrusted network during an operating session, without necessarily controlling access to other computer resources provided by the first server computer and by other server computers and nonsubscriber client computers, comprising the steps of: | The RSA Authentication Agent installed on a Web Server provides the functions of the first server. The RSA Authentication Agent communicates with the subscriber client computer (an operating session) using the Internet (an untrusted network) to control access to selected computer resources. A subscriber client computer is used to access computer resources controlled by the Authentication Agent. Both subscriber client computers and nonsubscriber client computers can also access resources not controlled by the Authentication Agent on the Web Server (first server). Both subscriber client computers and nonsubscriber client computers can also access other Web Servers (e.g. www.yahoo.com).[41] |
| **24a.)** registering identity data of said first server computer and the identity data of each of said subscriber client computers and storing the registered identity data in a clearinghouse means associated with said first server computer and said subscriber client computers; | The clearinghouse means consists of the RSA Authentication Manager Engine and the RSA Authentication Manager Database ("RSA Authentication Manager").[42] The identity data of the RSA Authentication Agent (first server) and each subscriber client are stored in the RSA Authentication Manager Database. The identity data of the first server is a unique key or "node secret".[43] The identity data of the subscriber client is at least a One Time Password (OTP) or X.509 digital certificate stored on the hardware key (RSA SecurID SID8100 Hardware Authenticator).[44] |
| **24b.)** requiring a subscriber client computer to forward its identity data to said clearinghouse means at the beginning of an operating session in which access to selected computer resources is requested; | The subscriber client computer identity data is forwarded by the RSA Authentication Utility software[45] installed on the subscriber client computer to the RSA Authentication Agent which forwards the identity data to the RSA Authentication Manager (clearinghouse means) at the beginning of an operating session when resources controlled by the RSA Authentication Agent are requested by the subscriber client computer.[46,47] |

---

[41] *The Power Behind RSA SecurID Two-factor User Authentication: RSA Authentication Manager*, RSA Security Inc., 2004 (P 035442-035457).

[42] *The Power Behind RSA SecurID Two-factor User Authentication: RSA Authentication Manager*, RSA Security Inc., 2004, pg. 8 (System Components) (P 035451).

[43] *The Power Behind RSA SecurID Two-factor User Authentication: RSA Authentication Manager*, RSA Security Inc., 2004, pg. 9 (Encyption) (P 035452).

[44] *RSA SecurID SID800 Hardware Authenticator*, RSA Security Inc., 2005, pg. 1 (Flexible – Supports Multiple Credential Types, Future Applications) (P 035458).

[45] *RSA SecurID SID800 Hardware Authenticator*, RSA Security Inc., 2005, pg. 2 (Simplified Credential Management Software) (P 035459).

[46] *The Power Behind RSA SecurID Two-factor User Authentication: RSA Authentication Manager*, RSA Security Inc., 2004, pg. 8 (System Components) (P 035451).

| US Patent #6,516,416 | RSA Authentication Manager |
|---|---|
| **24c.)** requiring a subscriber client computer to forward a predetermined digital identification to said first server computer to thereby confirm that a hardware key is connected to said subscriber client computer; | The RSA SecurID SID800 Hardware Authenticator is the hardware key which is connected to the subscriber client computer's USB port. A One Time Password (OTP) and/or X.509 digital certificate (predetermined digital identification) can be generated by and/or stored on SID800 Hardware Authenticator. The OTP and/or digital certificate comprise the subscriber identity data.[48] The subscriber client identity data is forwarded to the RSA Authentication Agent (first server) which confirms the hardware key is connected to the subscriber client computer.[49,50] |
| **24d.)** attempting to authenticate the identity of said subscriber client computer from said clearinghouse means responsive to a request for selected computer resources of said first server computer by a subscriber client computer; | The RSA Authentication Manager's (clearinghouse) Engine is adapted to authenticate the identity of said subscriber client computer responsive to a request for selected computer resources controlled by the RSA Authentication Agent (first server) by a subscriber client computer.[51] |
| **24e.)** attempting to authenticate the identity of said first server computer from said clearinghouse means responsive to said subscriber client computer making the request for selected computer resources; and, | The RSA Authentication Manager (clearinghouse) uses a unique key or "node secret" to authenticate the identity data of the RSA Authentication Agent (first server). The identity data of the first server is the secret key or "node secret."[52] |
| **24f.)** permitting access to said selected computer resources responsive to successful initial authentication of said first server computer and of said subscriber client computer making said request. | The RSA Authentication Manager (clearinghouse) permits access to computer resources controlled by the RSA Authentication Agent (first server) upon successful initial authentication of both the RSA Authentication Agent (first server) and the subscriber client computer.[53] |

---

[47] *The Power Behind RSA SecurID Two-factor User Authentication: RSA Authentication Manager*, RSA Security Inc., 2004, pg. 9 (Encyption) (P 035452).

[48] *RSA SecurID SID800 Hardware Authenticator*, RSA Security Inc., 2005, pg. 1 (Flexible – Supports Multiple Credential Types, Future Applications) (P 035458).

[49] *RSA SecurID SID800 Hardware Authenticator*, RSA Security Inc., 2005, pg. 1 (Portable And Easy to Use) (P 035458).

[50] *RSA SecurID SID800 Hardware Authenticator*, RSA Security Inc., 2005, pg. 2 (Simplified Credential Management Software) (P 035459).

[51] *The Power Behind RSA SecurID Two-factor User Authentication: RSA Authentication Manager*, RSA Security Inc., 2004 (P 035442-035457).

[52] *The Power Behind RSA SecurID Two-factor User Authentication: RSA Authentication Manager*, RSA Security Inc., 2004, pg. 9 (Encyption) (P 035452).

[53] *The Power Behind RSA SecurID Two-factor User Authentication: RSA Authentication Manager*, RSA Security Inc., 2004 (P 035442-035457).

**INTERROGATORY NO. 3:**

Separately for each term in each patent claim identified in response to Interrogatory No 1, state Prism's proposed construction of that term, and identify all intrinsic and extrinsic evidence known to Prism supporting its proposed construction, including, for each element that Prism contends is governed by 35 U.S.C. § 112(6), the identity of the structures or acts disclosed in the patent-in-suit that perform the claimed function.

**RESPONSE TO INTERROGATORY NO. 3:**

Prism incorporates its general objections, and specifically its General Objections A, C, E, H, I, and J. Prism objects to this interrogatory as a premature contention interrogatory. Prism has not completed its investigation of all facts or its formulation of all contentions with respect to such issues. Prism objects to this interrogatory to the extent it calls for subject matter not relevant to a claim or defense of any party, not reasonably calculated to lead to the discovery of admissible evidence, or as otherwise imposing obligations or requirements beyond those imposed by the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Delaware, or the Orders of this Court.

Subject to and without waiving these objections, Prism responds as follows. The terms of at least claims 1 and/or 24 of the '416 patent should be given their plain and ordinary meaning. The following means plus function elements of claims 1 and 24 have the functions specifically recited in the claim for that means plus function element. The structure embodying the means plus function element is identified below. Prism reserves its right to change, modify, or otherwise supplement its contentions regarding the structure that embodies each means clause.

**Clearinghouse Means**

The corresponding structure of the claimed "clearinghouse means" is the clearinghouse database server 56 and the user authentication daemon 58. *See* '416 patent, col. 6, line 66 to col. 7, line 9.

### Server Software Means

The corresponding structure of the claimed "server software means" is that portion of the session manager 52, *see* '416, patent col. 7, lines 49-50, which works in conjunction with the user authentication daemon 58 to forward the identity data of the first server computer and the subscriber client computer to said clearinghouse means. The server software means also includes the "access key validator" block (as shown in Fig. 3, at reference number 34) which requests the subscriber client computer to forward its digital identification to the first server to confirm the presence of a hardware key.

### Client Software Means

The corresponding structure of the "client software means" includes that portion of the subscriber software 36 that is adapted to forward the identity data of the client computer to said first server computer at the beginning of an operating session.

### INTERROGATORY NO. 4:

Describe in detail all facts upon which Prism based its allegations of infringement in its Complaint, and identify all persons knowledgeable about such facts, indicating which facts each person has knowledge about, and all documents or other evidence supporting these allegations.

### RESPONSE TO INTERROGATORY NO. 4:

Prism incorporates its general objections, and specifically its General Objections A, B, C, and I. Subject to and without waiving these objections, Prism responds as follows. Prism reviewed and evaluated publicly available documents regarding VeriSign, Inc.'s; RSA Security, Inc.'s; Computer Associates, Inc.'s; Netegrity, Inc.'s; and Johnson & Johnson Services Inc.'s (JJSI) infringing products. The claim charts included in these responses include cross-references to certain of the documents relied upon by Prism to conclude that RSA infringes the '416 patent.

Within Prism, the three most knowledgeable persons regarding Prism's allegations are:  Richard L. Gregg, Gerald C. Korth, and Gregory J. Duman.

Pursuant to Fed. R. Civ. Pro. 33(d), Prism states that the information sought is contained within Prism's document production and the burden of extracting the requested information is substantially equal for RSA as it is for Prism.

**INTERROGATORY NO. 5:**

Identify separately for each Defendant the five persons most knowledgeable concerning the factual basis for Prism's allegations of patent infringement against the Defendant and all documents alleged to support, or relating to, such allegations.

**RESPONSE TO INTERROGATORY NO. 5:**

Prism incorporates its general objections, and specifically its General Objections A, B, C, and I.  Subject to and without waiving these objections, Prism responds as follows.  Within Prism, the most knowledgeable persons regarding Prism's allegations of infringement against RSA are:  Richard L. Gregg, Gerald C. Korth, and Gregory J. Duman.  Certain of the documents known, at present, to support Prism's allegations of infringement are identified in the claim charts provided with these responses.  Additional documentation is expected to be uncovered via the discovery requests served on RSA.

Pursuant to Fed. R. Civ. Pro. 33(d), Prism states that the information sought is contained within Prism's document production and the burden of extracting the requested information is substantially equal for RSA as it is for Prism.

**INTERROGATORY NO. 6:**

Identify all contested proceedings, including any infringement litigation, interference, or opposition involving the patent-in-suit, or any of its foreign counterparts, and all persons knowledgeable about the information requested in this Interrogatory.

**RESPONSE TO INTERROGATORY NO. 6:**

Prism incorporates its general objections, and specifically its General Objections A, B, C, D, E, F, and G. Subject to and without waiving these objections, Prism responds that it is not aware of any other contested proceedings regarding the '416 patent.

**INTERROGATORY NO. 7:**

Describe in detail the facts and circumstances concerning the conception and actual reduction to practice of each of the claimed invention(s) of the patent-in-suit being asserted against any Defendant, including the dates of conception and reduction to practice, and identify all evidence corroborating conception, diligence, and reduction to practice, as well as all project names, codes, or other designations used to refer to or identify such activities, and all persons knowledgeable about the information requested in this Interrogatory, indicating which information each person has knowledge about.

**RESPONSE TO INTERROGATORY NO. 7:**

Prism incorporates its general objections, and specifically its General Objections A, B, C, D, E, and I. Subject to and without waiving these objections, Prism responds as follows. Starting around March 1996, Richard L. Gregg began the process that led to the conception of the subject matter in the asserted claims of the '416 patent when a potential customer, Data Transmission Network Corp. (DTN), asked Mr. Gregg if he could develop a system using the Internet that would replace DTN's existing satellite-based transmission network. Upon undertaking that challenge, Mr. Gregg conceived of the '416 patented invention and directed its development and approved the software design and system architecture as well as managed the design project and performed system tests. The subject matter of the asserted claims of the '416 patent was described in a Functional Specification no later than May 6, 1996. Sandeep Giri and Timothy C. Goeke participated in the development of the system along with Mr. Gregg and, under Mr. Gregg's supervision, coded the software for the project. In July 1996, Prism performed a confidential demonstration of the prototype system for DTN personnel. Richard L.

Gregg performed the demonstration at DTN's offices, while Sandeep Giri and Timothy C. Goeke managed the computer servers at Prism Resources. That prototype system and its demonstration to DTN constitutes an actual reduction to practice of the invention defined by the asserted claims of the '416 patent.

Documents relating to the conception and reduction to practice will be produced in response to RSA's First Set of Requests for the Production of Documents and Things to Plaintiff Prism Technologies LLC. Further, pursuant to Fed. R. Civ. Pro. 33(d), Prism states that the information sought is contained within Prism's document production and the burden of extracting the requested information is substantially equal for RSA as it is for Prism.

**INTERROGATORY NO. 8:**

Identify each item or prior art, within the meaning of 35 U.S.C. §§ 102 and 103, made known to or considered by Prism, or anyone associated with the prosecution of the patent-in-suit or its related applications and foreign counterparts, that relates to or could reasonably be considered relevant to the claimed invention(s) of the patent-in-suit, including the date of each reference, publication, offer, use, prior knowledge, invention, or similar material.

**RESPONSE TO INTERROGATORY NO. 8:**

Prism incorporates its general objections, and specifically its General Objections A, B, C, and E. Subject to and without waiving these objections, Prism responds as follows.

All known, relevant, non-cumulative prior art to the '416 patent has been identified in the related, pending U.S. Patent Application No. 10/230,638. Any such prior art not identified on the face of the '416 patent or its certificate of correction did not become known to any person having any obligation under 37 C.F.R. 1.56 until after the issuance of the '416 patent. Further, pursuant to Fed. R. Civ. Pro. 33(d), Prism states that the information sought is contained within Prism's document production and the burden of extracting the requested information is substantially equal for RSA as it is for Prism.

606365v1

**INTERROGATORY NO. 9:**

Identify the first offer for sale, the first public disclosure, and the first public use of the claimed invention(s) of the patent-in-suit, the dates of such offer, disclosure and public use, documents referring or relating to such offer, disclosure, and public use, the persons making such offer, disclosure, and public use, and all other persons knowledgeable about such offer, disclosure, and public use.

**RESPONSE TO INTERROGATORY NO. 9:**

Prism incorporates its general objections, and specifically its General Objections A, B, C,

E, G, and I.  Subject to and without waiving these objections, Prism responds as follows.  In July

1996, Prism performed a confidential demonstration of the prototype system for DTN (Data

Transmission Network Corporation) personnel.  To the best of Mr. Gregg's recollection, the

DTN personnel present at that demonstration were Robert Herman, Chet Slump, Jay Froshiser,

and Scott Fleck.  Richard L. Gregg performed the demonstration at DTN's offices, while

Sandeep Giri and Timothy C. Goeke managed the computer servers at Prism Resources, 2328

Bob Boozer Drive, Omaha, NE 68130-2558.

The first offer for sale of a commercial embodiment of the '416 patent was to American

Business Information, Inc. (ABI) during November 1996.  No public disclosure, public use, or

offer to sell the '416 patented invention was made prior to the critical date of the '416 patent, *i.e.*

June 11, 1996.  Pursuant to Fed. R. Civ. Pro. 33(d), Prism states that the information sought is

contained within Prism's document production and the burden of extracting the requested

information is substantially equal for RSA as it is for Prism.

**INTERROGATORY NO. 10:**

Describe in detail each and every test, analysis, or investigation conducted by or on behalf of Prism in anticipation of or in connection with this litigation, including, but not limited to:  the identity of each individual who requested, formulated, conducted, or otherwise

participated in such tests, analyses or investigations; the purpose for each such test, analysis, or investigation; and the results and all data generated for each such test, analysis, or investigation.

**RESPONSE TO INTERROGATORY NO. 10:**

Prism incorporates its general objections, and specifically its General Objections A, B, C, D, F, H, and I. Subject to and without waiving these objections, Prism responds that Richard L. Gregg evaluated RSA's SecurID Passage 3.5, RSA's SecurID 6100 USB Token, RSA's SecurID 5100 Smart Card reader, publicly available documents, attended RSA web seminars, and conducted correspondence with RSA's sales representatives. Mr. Gregg installed RSA's client software, reader, and used the RSA demo website. Mr. Gregg then emailed Neil Hall and Cindy Wagner with follow up questions. These tests, analyses, and investigations were conducted to confirm that RSA infringes at least claims 1 and 24 of the '416 patent. The results confirmed that RSA infringes.

**INTERROGATORY NO. 11:**

Identify each person who is participating or has participated in any way (*e.g.*, providing technical input, reviewing or commenting on communications from the PTO, preparing and filing of papers in the PTO, participating in interviews, etc.) in the preparation or prosecution of any patent application related to the patent-in-suit, including without limitation United States Patent Application 20020002688, and describe the nature and extent of participation by each such person.

**RESPONSE TO INTERROGATORY NO. 11:**

Prism incorporates its general objections, and specifically its General Objections A, B, C, D, and I. Subject to and without waiving these objections, Prism responds that Roger D. Greer, Esq., Grace Law, Esq., Richard L. Gregg, Sandeep Giri, and Timothy C. Goeke participated in the preparation and/or prosecution of the '416 patent. Thomas Martin, Esq. is prosecuting the pending continuation application (Serial No. 10/230,638) that claims priority to the '416 patent application.

606365v1

**INTERROGATORY NO. 12:**

Identify each opinion, investigation, analysis, or study conducted by or on behalf of Prism, written or oral, relating or referring to the patentability or unpatentability, validity or invalidity, enforceability or unenforceability, or infringement or noninfringement of the patent-in-suit, and separately for each such opinion, investigation, analysis or study:  identify the subject of the opinion, investigation, analysis, or study, and each person who gave the opinion or was involved in the investigation, analysis, or study, each person who contributed information for it, and each person with knowledge of the circumstances under which such opinion, investigation, analysis, or study was prepared, requested or received by or on behalf of Prism; identify all documents that constitute, refer to or relate to any such opinion, investigation, analysis, or study; identify each non-written communication which embodies, relates to, or refers to such opinion, investigation, analysis, or study; and identify each person to whom a copy of or the conclusion or substance of the opinion, investigation, analysis, or study was communicated.

**RESPONSE TO INTERROGATORY NO. 12:**

Prism incorporates its general objections, and specifically its General Objections A, B, C, D, E, F, G, H, I, and J.  Subject to and without waiving these objections, Prism responds as follows.  Other than the investigations of infringement by the named defendants in this case, Prism has not conducted any analyses of any other IAM products and/or services.  Those investigations and resulting opinions regarding infringement are privileged and/or constitute work product.  Prism has not conducted or had conducted any analysis or opinion relating to the validity or enforceability of the '416 patent, other than the examination conducted by the USPTO that resulted in the issuance of the '416 patent.

**INTERROGATORY NO. 13:**

Identify any company or other entity that has taken a license under the patent-in-suit or its related applications and foreign counterparts, including without limitation United States Patent Application 20020002688, and describe the terms and conditions of the license.

**RESPONSE TO INTERROGATORY NO. 13:**

Prism incorporates its general objections, and specifically its General Objections A, C, E, and I. Subject to and without waiving these objections, Prism responds that no company has taken a license to the '416 patent or any related patent application.

**INTERROGATORY NO. 14:**

Identify each witness (expert or fact) whom Prism intends to call to testify at trial, either by deposition or in person, stating the name, address, and telephone number of each such witness and the subject matter on which the witness is expected to testify.

**RESPONSE TO INTERROGATORY NO. 14:**

Prism incorporates its general objections, and specifically its General Objections A, C, I, and J. Subject to and without waiving these objections, Prism responds that it intends to call Richard L. Gregg to testify regarding the '416 patent, its development, and the subsequent infringement of the '416 patent by the Defendants. Prism also expects to call at least one damages expert and at least one liability expert who have not yet been identified. Prism also expects to call to testify at trial one or more individuals from each Defendant with knowledge of the infringing systems. Prism reserves the right to call additional witnesses as it develops its case through discovery.

THE BAYARD FIRM

October 24, 2005

Richard D. Kirk (rk0922)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899-5130
(302) 655-5000

ATTORNEYS FOR PLAINTIFF PRISM
TECHNOLOGIES LLC

OF COUNSEL:

Dirk D. Thomas, Esq.
Robert A. Auchter, Esq.
Kenneth A. Freeling, Esq.
Jason R. Buratti, Esq.
André J. Bahou, Esq.
Robins, Kaplan, Miller & Ciresi, L.L.P.
1801 K Street, N.W., Suite 1200
Washington, D.C.  20006
(202) 775-0725

## VERIFICATION

I hereby declare on the basis of knowledge and belief, or information otherwise provided and believed by me to be true and correct, under penalty of perjury under the laws of the United States of America, that the foregoing answers to these interrogatories are true and correct.

Executed on  October 24, 2005

Mr. Richard L. Gregg
Vice President and Chief Technology Officer
Prism Technologies LLC
14707 California Street
Suite 5
Omaha, Nebraska 68154-1952