IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PRISM TECHNOLOGIES LLC,<br><br>Plaintiff,<br><br>v.<br><br>VERISIGN, INC., RSA SECURITY, INC., NETEGRITY, INC., COMPUTER ASSOCIATES INTERNATIONAL, INC., and JOHNSON & JOHNSON SERVICES, INC.,<br><br>Defendants. | Civil Action No. CA 05-214 JJF<br>Jury Trial Demanded |

### DEFENDANT VERISIGN INC.'S OPPOSITION TO PLAINTIFF PRISM'S MOTION TO COMPEL PILOT TEST ACCOUNTS FOR THE ACCUSED PRODUCTS

*Of Counsel:*

Edward F. Mannino, Esquire
Jason A. Snyderman, Esquire
AKIN GUMP STRAUSS HAUER & FELD LLP
One Commerce Square, Suite 2200
2005 Market Street
Philadelphia, PA 19103
Telephone: (215) 965-1200
Fax: (215) 965-1210

Frank C. Cimino, Esquire
Daniel E. Yonan, Esquire
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, NW
Washington, DC 20036-1564
Telephone: (202) 887-4000
Fax: (202) 887-4288

Patricia Smink Rogowski, Esquire
Delaware Bar ID 2632
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 North Orange Street
PO Box 2207
Wilmington DE 19899
Telephone : (302) 658-9141
Fax: (302) 658-5614

*Attorneys for Defendant, VeriSign, Inc.*

Dated:  October 6, 2006

**INTRODUCTION**

Prism's lengthy serial letter-writing campaign demanding the production of never-before requested materials must finally end. Weeks after document discovery closed on August 11, 2006, and after VeriSign produced more than 1.6 million pages of documents that describe exactly how each accused product works, Prism now insists that VeriSign provide "Pilot Test Accounts" ("pilot accounts"), which are temporary accounts that VeriSign sometimes provides to potential customers to use on their system for a limited time so the customer can determine whether it wishes to buy VeriSign products. Contrary to Prism's assertions, these pilot accounts are not sold as part of the accused software (including hardware) and, in any event, would be of no use to Prism since they show only that VeriSign's products can operate on a given system but do not show *how* (*e.g.*, how information is generated, stored, transferred, *etc.*), which is the central issue in this litigation. Prism's motion to compel should be denied for two principal reasons.

First, Prism never asked for these pilot accounts until August 29, 2006, weeks after document discovery closed and over 7 months after Prism first learned such pilot accounts existed. Moreover, Prism's claims that the accused software produced by VeriSign is inoperable or incomplete is simply wrong as VeriSign produced exactly the same software that its customers receive. Prism's shocking admission that even now, after 1.5 years of litigation, it has still never had a working copy of VeriSign's products only demonstrates that its pre-Complaint investigation was woefully inadequate and the resulting litigation against VeriSign is baseless.

Second, VeriSign has painstakingly provided more than 1.6 million pages of materials which include every piece of accused software along with corresponding manuals and other documentation outlining exactly how each accused product operates. VeriSign should not now, after the close of document discovery, be forced to market its products to Prism at its own expense as if Prism were a potential customer.

## ARGUMENT

### I. PRISM NEVER ASKED FOR PILOT TEST ACCOUNTS

While it is true that Prism asked for (and has now received) copies of all of VeriSign's accused software, it did not seek pilot accounts until August 29, 2006, weeks after document discovery closed. Prism's entire motion is based on the faulty premise that these pilot accounts are somehow part of the accused software. This is simply not true. Upon request, pilot accounts are sometimes provided to customers who wish to see if VeriSign's software works in their environment.[1] Despite citing to multiple letters and requests seeking the production of software, Prism fails to cite to a single instance before August 29, 2006 when it requested that pilot accounts be produced, or a single document request that specifically calls for their production. *See* Prism Br. at 1, 3.[2] Furthermore, Prism's assertion that it somehow did not and could not know about pilot accounts is ridiculous. In fact, on January 18, 2006, among the very first documents produced by VeriSign, are those that describe precisely what pilot accounts are. *See, e.g.*, Exh. B, Unified Authentication Installation and Configuration Guide, produced on 1/18/06 at VERI 0000224 ("You can install Unified Authentication in a pilot mode before installing it on your production systems ... [t]his enables you to test your configuration against test data and users before allowing it to access production data."); Exh. C, Go Secure for Web Applications Installation and Configuration Guide, produced on 1/18/06 at VERI 0020099 and VERI 0020204.[3] Yet, Prism waited

---

[1] In a VeriSign Authentication Services Glossary produced to Prism in January 2006, a "Pilot System" is defined as a "Prototype system running test versions of VeriSign products and services. The test system allows the Affiliate or enterprise to "try out" the system to ensure proper operation of their PKI-enabled applications. Certificates, Certificate Authorities, and transactions issued on the test system cannot be used outside the test system." *See* Exh. A at VERI 0018157.

[2] Prism's brief cites numerous letters all demanding that the accused software be produced. All of the requested software has since been produced and is not subject to Prism's motion to compel. Prism now attempts to argue that its earlier requests for software were actually also requests for pilot test accounts. *See* Prism Br. at 1-3. Nonetheless, it is undisputed that Prism never even mentioned pilot test accounts until August 29, 2006. *See* Prism Br. at 3, n.14

[3] Prism suggests that it would have known the pilot test accounts existed if these documents were produced before the close of document discovery. Indeed, contrary to Prism's assertions, each of the documents cited here were produced as part of VeriSign's very first document production in January 2006. *See* Exh. D, 1/18/06 letter from D. Yonan to A. Bahou regarding VeriSign's production of VERI 0000001 – 0229363.

over 7 months and until after document discovery was over, to request pilot accounts for the very first time.

Prism's argument that a pilot account is somehow needed to use the accused software is wrong. In fact, the software VeriSign produced to Prism is the same executable software it provides to its customers. Of course, while the software is fully functional, one must purchase the service before its tokens can be activated and the system used. Here, it is apparent that Prism never purchased the VeriSign software and does not have an active account. This is surprising given the fact that Prism's Vice-President and Chief Technical Officer, Rick Gregg, posed as a potential VeriSign customer in January 2005, and surreptitiously sought information from VeriSign's customer support personnel to build Prism infringement contentions against VeriSign but not to buy the actual product. *See* Exh. E, P032971-73 (emails from R. Gregg to VeriSign sales personnel); Exh. F, 4/14/06 Supp. Res. of Prism to VeriSign Interrog. No. 2, n.14, 16, 30, 43, 45, 57, 76, 80, 98 (Prism's detailed infringement claim charts directed to VeriSign citing Mr. Gregg's correspondence with VeriSign sales personnel); Exh. G, Res. of Prism to VeriSign RFA Nos. 9-11, 18 (neither Prism nor its counsel have ever physically possessed or tested copies of the accused products prior to bringing this action). If Prism wanted to install and activate VeriSign's system, it could have – and under Rule 11 should have – purchased the accused products before filing this lawsuit.

The fact that Prism admits it still does not have any working copies of VeriSign's accused products is shocking. The time for Prism to analyze – for the first time – VeriSign's accused products was before it opted to file suit and not now. *See, e.g., View Engineering, Inc. v. Robotic Vision Systems, Inc.*, 208 F.3d 981, 985-6 (Fed. Cir. 2000) (affirmed Rule 11 sanctions against counsel for filing a complaint without having seen the accused products and based the infringement claims on advertising and the knowledge of an employee of the patentee); *Judin v. U.S.*, 110 F.3d 780, 784-5 (Fed. Cir. 1997) (reversed district court's denial of Rule 11 sanctions based upon patentee's inadequate pre-filing investigation by not attempting to obtain or test the accused product and patent counsel's conduct in deferring to client's opinion of infringement without conducting an independent comparison of the patent

claims against the accused product); *see also Centillion Data Systems, LLC v. Convergys Corp.*, No. 104-CV-0073 LJM-WTL, 2006 WL 20777 at *4 (S.D. Ind. Jan. 4, 2006) (patentee's failure to obtain copy of the accused software product showed the pre-filing investigation was "objectively unreasonable") (attached as Exh. H).

### II. THE DOCUMENTS ALREADY PRODUCED SUFFICIENTLY DESCRIBE HOW EACH ACCUSED PRODUCT OPERATES AND PILOT ACCOUNTS WOULD NOT PROVIDE ANYTHING MORE

VeriSign has already produced more than 1.6 million pages of materials. *See* Exh. I, 9/29/06 ltr. from V. Chan to A. Bahou regarding VeriSign's production through VERI 1602805. These materials include *full and complete* software executable files and hardware tokens for each of the accused products, as well as the corresponding user, administrator, installation, configuration and integration guides, specification and data sheets, product manuals and other highly confidential technical design and architecture documents that detail the operation and function of each of the accused VeriSign products. Thus, Prism now has everything it needs to fully understand how the accused products operate and are intended to be used. Any pilot accounts would only ensure that the accused products can work properly in a client's system, and would not provide any further insight into how the products actually function or operate, *e.g.*, how data is forwarded, received and interpreted by the system's components. Accordingly, providing pilot accounts would not do anything to assist Prism in this case. Considering the vast materials already produced that identify precisely how each of VeriSign's accused products function, VeriSign should not be forced to cater to Prism's untimely and unreasonable demands.

### CONCLUSION

Considering that Prism admits it has never even possessed any of the Accused Products, and it has the documents, software and hardware necessary to understand exactly how each of the Accused Products works, there is no reasonable explanation for why it has waited until now, a year and a half into the litigation and long after the August 11, 2006 deadline, to seek these pilot accounts from VeriSign. Accordingly, Prism's motion should be denied.

Dated: October 6, 2006

| | |
|---|---|
| *Of Counsel:* | CONNOLLY BOVE LODGE & HUTZ LLP |
| Edward F. Mannino, Esquire<br>Jason A. Snyderman, Esquire<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>One Commerce Square, Suite 2200<br>2005 Market Street<br>Philadelphia, PA 19103<br>Telephone: (215) 965-1200<br>Fax: (215) 965-1210 | By: /s/ Patricia Smink Rogowski /PC<br>Patricia Smink Rogowski, Esquire<br>Delaware Bar ID 2632<br>The Nemours Building<br>1007 North Orange Street<br>PO Box 2207<br>Wilmington DE 19899<br>Telephone: (302) 658-9141<br>Fax: (302) 658-5614 |
| | *Attorneys for Defendant, VeriSign, Inc.* |
| Frank C. Cimino, Esquire<br>Daniel E. Yonan, Esquire<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>Robert S. Strauss Building<br>1333 New Hampshire Avenue, NW<br>Washington, DC 20036-1564<br>Telephone: (202) 887-4000<br>Fax: (202) 887-4288 | |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 6, 2006, I electronically filed **DEFENDANT VERISIGN, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PILOT TEST ACCOUNTS FOR THE ACCUSED PRODUCTS** with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Richard D. Kirk
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130
rkirk@bayardfirm.com

Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza- Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
rhorwitz@potteranderson.com
dmoore@potteranderson.com

Frederick L. Cottrell, III
Alyssa Schwartz
Richards Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899-0551
cottrell@rlf.com
schwartz@rlf.com

Steven J. Balick
John G. Day
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

I hereby certify that on October 6, 2006, I electronically mailed the document(s) to the following non-registered participants:

Dirk D. Thomas, Esquire
Robins, Kaplan, Miller & Ciresi, LLP
1801 K Street, N.W., Suite 1200
Washington, DC 20006
PrismCounsel@rkmc.com

John DiMatteo
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019-6099
PrismLitigation-JJSI@willkie.com

David M. Schlitz
Baker Botts LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004-2400
DLDallasPrismLitigationCA-Netegrity@BakerBotts.com

Samir A. Bhavsar
Baker Botts LLP
2001 Ross Avenue
Dallas, TX 75201-2980
DLDallasPrismLitigationCA-Netegrity@BakerBotts.com

Gregory P. Teran
Wilmer Cutler Hale & Dorr LLP
60 State Street
Boston, MA 02109
RSAPrismLitigation@wilmerhale.com

By: /s/ Patricia Smink Rogowski
Patricia Smink Rogowski (DE Bar #2632)
Connolly Bove Lodge & Hutz LLP
P.O. Box 2207
1007 N. Orange Street
Wilmington, DE 19899
(302) 658-9141
progowski@cblh.com