## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PRISM TECHNOLOGIES LLC,<br><br>Plaintiff,<br><br>v.<br><br>VERISIGN, INC., RSA SECURITY, INC.,<br>NETEGRITY, INC., COMPUTER ASSOCIATES<br>INTERNATIONAL, INC., and JOHNSON &<br>JOHNSON SERVICES, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

C. A. No. 05-214-JJF

**PUBLIC VERSION**

## DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF

OF COUNSEL:

John M. DiMatteo
Neal K. Feivelson
Leslie M. Spencer
WILLKIE FARR & GALLAGHER

OF COUNSEL:

David M. Schlitz
Samir A. Bhavsar
Jeffery D. Baxter
BAKER BOTTS L.L.P.

OF COUNSEL:

William F. Lee
David B. Bassett
Mark D. Selwyn
Gregory P. Teran
WILMER CUTLER PICKERING HALE AND
DORR LLP

OF COUNSEL

Edward F. Mannino
Jason A. Snyderman
John D. Simmons
Frank C. Cimino
Daniel E. Yonan
AKIN GUMP STRAUSS HAUER & FELD LLP

DATED: October 13, 2006
PUBLIC VERSION DATED: October 17, 2006

Steven J. Balick (# 2114)
John G. Day (#2403)
Tiffany Geyer Lydon (#3950)
ASHBY & GEDDES

*Attorneys for Defendant*
*Johnson & Johnson Services Inc.*

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP

*Attorneys for Defendant*
*Computer Associates International, Inc.*

Frederick L. Cottrell, III (#2555)
Alyssa M. Schwartz (#4351)
Gregory E. Spuhlman (#4765)
RICHARDS, LAYTON & FINGER, P.A.

*Attorneys for Defendant*
*RSA Security Inc.*

Patricia Smink Rogowski (#2632)
CONNOLLY BOVE LODGE & HUTZ LLP

*Attorneys for Defendant*
*VeriSign, Inc.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................iii

TABLE OF EXHIBITS ....................................................................v

INTRODUCTION .......................................................................1

I.    PLAINTIFF MISAPPLIES THE LAW ON MEANS-PLUS-FUNCTION LIMITATIONS. ................ 2

      A.    The recited functions do not include the transitional "adapted to"
            language. ....................................................................2

      B.    The claimed functions must include all recited limitations, including
            triggering events............................................................3

      C.    The patent fails to describe algorithms for performing several of the
            claimed functions, and therefore the underlying claims are indefinite
            and invalid..................................................................4

      D.    The means-plus-function limitations are limited to the algorithms
            disclosed in the specification for performing the function – and may
            not be broadened to include mere software programmed with any
            algorithm that could perform the recited functions..........................8

      E.    The server software means should be construed to require the
            algorithms for performing reauthentication. .................................9

      F.    The clearinghouse means in Claim 24 is a means-plus-function
            limitation, not a step-plus-function limitation.............................9

II.   PLAINTIFF APPLIES A PRE-PHILLIPS ANALYSIS AND FAILS TO CONSTRUE THE
      DISPUTED TERMS IN VIEW OF THE SPECIFICATION. ...................................10

      A.    "hardware key" and "connected".............................................10

      B.    "predetermined digital identification" ....................................12

      C.    "to thereby confirm that said [or a] hardware key is connected to said
            subscriber client computer" ...............................................13

      D.    "operating session" .......................................................14

      E.    "subscriber"...............................................................16

      F.    "subscriber client computer"...............................................16

      G.    "untrusted network" .......................................................17

III.    PLAINTIFF IGNORES THE EXPRESS CLAIM LANGUAGE.................................................. 17

        A.    "identity data" ....................................................................................... 17

        B.    "part of said identity data" ................................................................... 18

        C.    "first server computer" and "selected computer resources" .......................... 19

CONCLUSION.......................................................................................................... 20

## TABLE OF AUTHORITIES

### CASES

Adobe Sys. Inc. v. Macromedia, Inc.,
201 F. Supp. 2d 309 (D. Del. 2002) ....................................................................8

Altiris, Inc. v. Symantec Corp.,
318 F.3d 1363 (Fed. Cir. 2003) .........................................................................10

Atmel Corp. v. Info. Storage Devices,
198 F.3d 1374 (Fed. Cir. 1999) ...................................................................4, 7, 8

Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.,
296 F.3d 1106 (Fed. Cir. 2002) ...........................................................................2

Chef America Inc. v. Lamb-Weston,
358 F.3d 1371 (Fed. Cir. 2004) .........................................................................18

DE Technologies, Inc. v. Dell, Inc.,
428 F. Supp. 2d 512 (W.D. Va. 2006)..................................................................6

Datamize, LLC v. Plumtree Software, Inc.,
417 F.3d 1342 (Fed. Cir. 2005) .........................................................................20

Default Proof Credit Card Sys. v. Home Depot U.S.A., Inc.,
412 F.3d 1291 (Fed. Cir. 2005)................................................................4, 5, 7, 8

Eaton Corp. v. Rockwell Intern. Corp.,
323 F.3d 1332 (Fed. Cir. 2003) ...........................................................................3

Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.,
93 F.3d 1572 (Fed. Cir. 1996) ...........................................................................19

Ferguson Beauregard/Logic Controls v. Mega Controls LLC,
350 F.3d 1327 (Fed. Cir. 2003) ...........................................................................3

Finisar Corp. v. The DirecTV Group, Inc.,
416 F. Supp. 512 (E.D. Tex. 2006) ...................................................................5, 7

Gobeli Research Ltd. v. Apple Computer, Inc.,
384 F. Supp. 2d 1016 (E.D. Tex. 2005) .............................................................4, 7

Harris Corp. v. Ericsson, Inc.,
417 F.3d 1241 (Fed. Cir. 2005) ...........................................................................8

Hoffer v. Microsoft Corp.,
405 F.3d 1326 (Fed. Cir. 2005) ....................................................................13, 14

iii

J&M Corp. v. Harley-Davidson, Inc.,
    269 F.3d 1360 (Fed. Cir. 2001) .................................................................................9

KX Indus. v. Culligan Water Techs., Inc.,
    90 F. Supp. 2d 461 (D. Del. 1999) ...........................................................................14

Lucent Techs., Inc. v. Extreme Networks, Inc.,
    367 F. Supp. 2d 649 (D. Del. 2005) ..................................................................2, 3, 8

O.I. Corp. v. Tekmar Co.,
    115 F.3d 1576 (Fed. Cir. 1997) ................................................................................3

On Demand Machine Corp. v. Ingram Indus., Inc.,
    442 F.3d 1331 (Fed. Cir. 2006) ................................................................................9

Phillips v. AWH Corp.,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc) ..................................................1, 10, 15, 18

Touchcom, Inc. v. Dresser, Inc.,
    427 F. Supp. 2d 730 (E.D. Tex. 2005) ...................................................................4, 7

Trilogy Software, Inc. v. Selectica, Inc.,
    405 F. Supp. 2d 731 (E.D. Tex. 2005) ...................................................................4, 7

Uniloc USA, Inc. v. Microsoft Corp.,
    _ F. Supp. 2d _, 2006 WL 2413676 (D.R.I. Aug. 22, 2006) .......................................8

Unique Concepts, Inc. v. Brown,
    939 F.2d 1558 (Fed. Cir. 1991) ..............................................................................14

WMS Gaming, Inc. v. Int'l Game Tech.,
    184 F.3d 1339 (Fed. Cir. 1999) ................................................................................8

White v. Dunbar,
    119 U.S. 47 (1886) ................................................................................................18

## TABLE OF EXHIBITS

Opening Brief Exhibits

(1)    U.S. Patent No. 6,516,416, entitled "Subscription Access System For Use With An Untrusted Network"

(2)    File History of U.S. Patent No. 6,516,416 (Bates Nos. P031081-P031454)

(3)    August 23, 2006 Joint Claim Construction Statement (D.I. 207)

(4)    Prism Document having Bates Nos. P046018.212150-P046018.212.152)

(5)    Prism Document having Bates Nos. P008968-P008985

(6)    Prism Document having Bates Nos. P008949-P008961

(7)    Selected pages from The American Heritage® Dictionary of the English Language, (3d ed. 1997)

(8)    Plaintiff's Oct. 24, 2005 Responses to Defendant RSA's First Set Of Interrogatories

(9)    Prism Document having Bates Nos. P046018.192231-P046018.192238

(10)    Selected pages from the Microsoft Press Computer Dictionary (3d ed. 1997)

Responsive Brief Exhibits

(11)    April 13, 2006 Paper in U.S. Ser. No. 10/230,638

(12)    Uniloc USA, Inc. v. Microsoft Corp., _ F. Supp. 2d _, 2006 WL 2413676 (D.R.I. Aug. 22, 2006).

## INTRODUCTION

Plaintiff's principal brief on claim construction is fundamentally flawed. The first half of the brief, which focuses on three means-plus-function limitations, consistently misapplies the law of means-plus-function construction. Plaintiff acknowledges that the specification must describe specific algorithms (or step-by-step processes) for performing the claimed functions, yet for some functions Plaintiff omits such algorithms from its proposed constructions in an improper attempt to broaden the claims, and for other functions Plaintiff pretends that such algorithms exist when, in fact, they do not. The latter half of Plaintiff's brief focuses on the remaining disputed claim terms, and merely asserts that these terms should be given their plain meanings when, in fact, the constructions advanced by Plaintiff are far from the ordinary meaning as one of skill in the art would understand them in view of the specification and prosecution history.

Although Plaintiff cites to <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303 (Fed. Cir. 2005) (en banc) <u>cert denied</u> 126 S. Ct. 1332 (2006), Plaintiff's proposed constructions are unmoored from the surrounding claim language, the specification, and the prosecution history — as if <u>Phillips</u> did not exist. For example, Plaintiff attempts to read reauthentication — the process of confirming that the hardware key remains physically attached to the subscriber client computer — out of the claims. Yet, both the specification and prosecution history establish that this re-authentication is an essential feature of the invention and was the reason the Examiner allowed the patent to issue. Some of Plaintiff's constructions even ignore the express claim language. For example, Plaintiff asserts that a "predetermined digital identification" need not be determined in advance and may instead be "calculated at the moment." Plaintiff also argues that "hardware key" may be built into a client computer, even though the claims require that the hardware key be "connected" to the client computer and the specification and prosecution history make clear that the hardware key is an external

device physically attached to the client computer.  For the reasons set forth below, Plaintiff's constructions should not be adopted.

## I.     PLAINTIFF MISAPPLIES THE LAW ON MEANS-PLUS-FUNCTION LIMITATIONS.

The parties' main dispute is whether the specification discloses algorithms — or step-by-step processes — for performing the recited functions of the means-plus-function limitations.  For several of the functions, there simply are no such algorithms (see § I.C below), and for others, the Plaintiff impermissibly attempts to broaden the construction by ignoring the specific algorithms that are disclosed (§§ I.D and I.E below).  Plaintiff attempts to divert the Court's attention with incorrect arguments relating the construction of the recited functions (§§ I.A and B), as well as a misplaced argument concerning whether "clearinghouse means" in Claim 24 should be construed differently from Claim 1 (it should not, see § I.F).

### A.     The recited functions do not include the transitional "adapted to" language.

In construing means-plus-function limitations, the Court is to identify the recited functions and the corresponding structures disclosed in the specification for performing those functions.  Cardiac Pacemakers, Inc. v. St. Jude Med., Inc., 296 F.3d 1106, 1113 (Fed. Cir. 2002).  Often, means-plus-function limitations are written as a "means for" performing a recited function.[1]  Here, the applicants used a slightly different formulation.  Instead of "means for" performing a recited function, the claims describe "means adapted to" perform a recited function.  As this Court has recognized in the past, language such as "for" (or

---

[1] E.g., Lucent Techs., Inc. v. Extreme Networks, Inc., 367 F. Supp. 2d 649, 669 et seq. (D. Del. 2005) (Farnan, J.) (construing, inter alia, "means for determining" and "means for checking").

"adapted to") merely precedes and introduces, but is not part of, the claimed function.[2]  The

"adapted to" language is no more part of the recited function than "for" would be.[3]  The cases

regarding "adapted to" cited by Plaintiff do not involve means-plus-function limitations.

**B.      The claimed functions must include all recited limitations, including triggering events.**

"[A] claimed function may not be broadened by ignoring the clear limitations

contained in the claim language." Lucent Techs., Inc. v. Extreme Networks, Inc., 367

F. Supp. 2d 649, 673 (D. Del. 2005) (Farnan, J.) (citing Lockheed Martin Corp. v. Space

Systems/Loral, Inc., 249 F.3d 1314, 1324 (Fed. Cir. 2001)).  Plaintiff improperly seeks to

broaden the claimed functions by avoiding explicit claim language regarding the triggering

events that are part of the recited functions. Def. Op. Br. at 31-32; Pl. Br. at 13.  Plaintiff

cites no pertinent authority in support of its position.[4]  Contrary to Plaintiff's argument, the

Federal Circuit has affirmed constructions where (as here) a triggering event or condition is

included in the construction of the claimed function.[5]  Consistent with Federal Circuit

precedent, this Court has done the same. Lucent, 367 F. Supp. 2d at 673-74 (holding that a

claimed function includes the triggering event or condition "when the number of links

---

[2] For example, in Lucent, the Court held that the function of the "means for storing the mark with the packet of data" was "storing the mark with the packet of data," and did not include "for" as part of the claimed function as construed. Lucent, 367 F. Supp. 2d at 661.

[3] Clearly, "adapted to" is not part of the recited function because even Plaintiff does not contend that the recited means or their corresponding structures perform the function of "adapting." According to Plaintiff's proposed constructions, the structures corresponding to the recited means perform the functions recited after the "adapted to" language in the claims. Ex. 3 at 7-16.

[4] Plaintiff cites only a single case, O.I. Corp. v. Tekmar Co., 115 F.3d 1576 (Fed. Cir. 1997), which held that a "passage" through which an "analyte slug" was passed was not part of the function of "passing" the slug. Id. at 1581.  This holding about passages and slugs does not concern triggering events.

[5] E.g., Ferguson Beauregard/Logic Controls v. Mega Controls LLC, 350 F.3d 1327, 1345 (Fed. Cir. 2003) ("valve means" included claimed function of being "responsive to said actuation signals"); Eaton Corp. v. Rockwell Intern. Corp., 323 F.3d 1332, 1343 n.1 (Fed. Cir. 2003) ("[t]he function required by the claim is to actuate said driveline system to effect engagement of said gear ratio combinations in response to said output signals from said processing unit").

3

between the first and third nodes is less than the number of links between the third node and any other neighbor of the second node").

### C.   The patent fails to describe algorithms for performing several of the claimed functions, and therefore the underlying claims are indefinite and invalid.

Plaintiff concedes that for each one of the claimed functions of the "client software means," "server software means," and "clearinghouse means," the specification must describe, with particularity, an <u>algorithm</u> for performing the function. Pl. Br. at 5, 10-11, 15. Plaintiff further concedes that the disclosed algorithm must be a "step-by-step process" or "set of instructions" for carrying out the various recited functions. Pl. Br. at 11, 15.[6] Plaintiff, however, fails to identify any step-by-step process for several of the recited functions. Because the specification fails to disclose the required corresponding structure, the claims are indefinite, and therefore invalid.[7]

The specification does not describe a step-by-step process for forwarding the first server computer's identity data to the clearinghouse (the first function of the server software means). Def. Br. at 33. Plaintiff relies on the general identification of transmission control protocol/internet protocol (TCP/IP) and user datagram protocol/internet protocol (UDP/IP) as communication protocols.   Pl. Br. at 18 (citing Ex. 1, 5:65-67).   These general

---

[6] Plaintiff's argument that actual computer code for implementing the algorithms need not be disclosed misses the mark. Defendants do not argue that software code must be disclosed and agree that an algorithm may be described in flowcharts or words.

[7] A finding of invalidity is appropriate in the context of claim construction proceedings because "[w]here, as here, the question is whether the patent is indefinite for failure to disclose corresponding structure, the inquiry becomes a question of law, governed by principles of claim construction." <u>Touchcom, Inc. v. Dresser, Inc.</u>, 427 F. Supp. 2d 730, 732-33 (E.D. Tex. 2005) (citing <u>Default Proof Credit Card Sys. v. Home Depot U.S.A., Inc.</u>, 412 F.3d 1291, 1302 (Fed. Cir. 2005)); <u>see also</u> <u>Atmel Corp. v. Info. Storage Devices</u>, 198 F.3d 1374, 1378 (Fed. Cir. 1999) ("A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims."); <u>Gobeli Research Ltd. v. Apple Computer, Inc.</u>, 384 F. Supp. 2d 1016, 1022-23 (E.D. Tex. 2005) (holding claim invalid after <u>Markman</u> hearing); <u>Trilogy Software, Inc. v. Selectica, Inc.</u>, 405 F. Supp. 2d 731, 742 (E.D. Tex. 2005) (same).

communication protocols are not step-by-step processes for forwarding the first server computer's identity data to the clearinghouse. The passage cited by Plaintiff is not even linked to the function of forwarding server identity data from the server to the clearinghouse. Default Proof Credit Card System, Inc. v. Home Depot U.S.A., Inc., 412 F.3d 1291, 1298 (Fed. Cir. 2005) ("A structure disclosed in the specification qualifies as 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim.") The specification cannot possibly disclose a step-by-step process or set of instructions for forwarding the first server computer's identity data to the clearinghouse, since it never even mentions the identity data of the server computer. By contrast, the patent describes an explicit and detailed algorithm for forwarding the login parameters (username, password, and digital ID) to the clearinghouse. Ex. 1, 8:20-30, 12:14-18, 17:35-42, Figs. 3-4 and 18. While Plaintiff points to a portion of the specification describing the access server 34 forwarding the "login parameters" to the clearinghouse 30 (Pl. Br. at 18), the login parameters are the username and password — not server identity data. Ex. 1, 6:25-26 ("subscriber 36 inputs the login parameters"); see also Ex. 1, Fig. 18 (148).

The specification also does not describe a step-by-step process or set of instructions for authenticating the first server computer's identity data (the third function of the clearinghouse means). Def. Br. at 33-34. Plaintiff cites language in the specification indicating that the user authentication daemon "first insures it is communicating with an authentic subscription access server." Pl. Br. at 22 (citing Ex. 1, 7:4-8). That passage is, at best, nothing more than a restatement of the claimed function — not a step-by-step process for performing the function. See Finisar Corp. v. The DirecTV Group, Inc., 416 F. Supp. 2d 512, 519 (E.D. Tex. 2006) (finding no disclosure of algorithm from mere language in the specification that "simply repeat[s] the function described in the claim"). Plaintiff also

5

asserts that authentication is achieved by comparing the server's identity data with data stored in a clearinghouse, but cites no support for that assertion in the specification. Pl. Br. at 22. Instead, Plaintiff refers to portions of the specification describing authentication of subscribers. Pl. Br. at 22 (citing Ex. 1, 4:50-54, 63-66). Nowhere in these passages is there any discussion of, let alone an algorithm for, authenticating server identity data.[8]

Finally, the specification does not describe a step-by-step process or set of instructions for storing, forwarding, or authenticating identity data of the subscriber client computers (the function of the client software means, the first function of the server software means, and the first and second functions of the clearinghouse means). Def. Br. at 34. Plaintiff's contentions rely entirely on its erroneous argument that the Court should read the language "client computer" out of the claims. Def. Br. at 34 and § II.C.1.

Indisputably, the absence of any description of algorithms for performing the claimed functions discussed above renders the limitations in question, and the claims containing them, indefinite and invalid. Several district courts have recently held claims invalid where algorithms were not disclosed for performing claimed functions of means-plus-function limitations. For example, in DE Technologies, Inc. v. Dell, Inc., 428 F. Supp. 2d 512 (W.D. Va. 2006), Plaintiff's trial counsel (and expert) in this case represented DE and made many of the same arguments as Plaintiff has here, which the district court rejected in holding a means-plus-function limitation invalid. In DE, the claimed function involved running a single transaction program to integrate various subsidiary processes into one functional system for carrying out international commercial transactions. The specification described

---

[8] The specification also does not disclose a step-by-step process for permitting access to selected computer resources (the fourth function of the clearinghouse means). Plaintiff cites "that portion of the clearinghouse software which sends a successful authentication response to the first server." Pl. Br. at 23 (citing Ex. 1 Col. 17:45-48 and Fig. 18 blocks 158 and 160). This authentication response, however, triggers the server, not the clearinghouse, to "permit" access. Def. Br. at 34; Ex. 1, Fig. 18 (160-68); 17:54-57.

the processes that are ultimately integrated, and contained a figure diagramming the sequence of these processes, but no portion of the written specification disclosed the steps for actually integrating the processes. Id. at 520-21. DE insisted (as Plaintiff has here) that the lack of explicit disclosure should be excused because "[i]ntegration of data from data processing components is straightforward and thoroughly understood in the art." Id. at 522; compare with Pl. Br. at 15 et seq. (attempting to impute "four decades" of computer technology to the specification). The district court rejected DE's arguments and found the claim invalid. DE, 428 F. Supp. 2d at 522.[9]

The Court should reject Plaintiff's argument that the missing algorithms are somehow "implicit" in the specification. Plaintiff cites Atmel Corp. v. Information Storage Devs., Inc. for the proposition that an algorithm may be "implicit in the written description if it would have been clear to those skilled in the art what structure must perform the function recited in the means-plus-function limitation." Pl. Br. at 11 (quoting 198 F.3d 1374, 1380 (Fed. Cir. 1999)); see also P. Br. at 15-16. Atmel, however, was not a case involving algorithms for a computer implemented function. Moreover, in this case, Plaintiff has not identified any disclosure (implicit or otherwise) in the specification clearly linked or associated to the functions discussed above. See Default Proof, 412 F.3d at 1298 (distinguishing Atmel and S3, Inc. v. NVIDIA Corp., 259 F.3d 1364 (Fed. Cir. 2001)).

The Court should also reject Plaintiff's identification of the "standard software" incorporated by reference (such as Netscape Navigator) as corresponding structure. Pl. Br. at 15. "[M]aterial incorporated by reference cannot provide the corresponding structure

---

[9] See also Gobeli, 384 F. Supp. 2d at 1022 ("Gobeli could have provided figures or flow charts that describe the algorithm. Gobeli also could have attached actual code to the patent that would set out the necessary algorithm. None of these options was exercised by the patentee. Failure to provide the algorithm in the specification is fatal to Claim 7 of the Gobeli patent."); Finisar, 416 F. Supp. 2d at 519 (finding means plus function limitation indefinite for failure to disclose algorithm corresponding to claimed function); Touchcom, 427 F. Supp. 2d at 735-37 (same); Trilogy, 405 F. Supp. 2d at 742 (same).

necessary to satisfy the definiteness requirement for a means-plus-function clause." <u>Default</u>

<u>Proof</u>, 412 F.3d at 1301; <u>see also</u> <u>Atmel</u>, 198 F.3d at 1381.

> **D.    The means-plus-function limitations are limited to the algorithms disclosed in the specification for performing the function – and may not be broadened to include mere software programmed with any algorithm that could perform the recited functions.**

Plaintiff improperly contends that the corresponding structures of the means-plus-function limitations are <u>any software</u> that performs the recited functions.[10]  As Plaintiff recognized in its opening brief, the corresponding structures of computer-implemented means-plus-function limitations are the algorithms — or step-by-step processes — disclosed in the specification for performing the recited functions.  Pl. Br. at 10-11;  <u>see also</u> <u>Harris Corp. v. Ericsson, Inc.</u>, 417 F.3d 1241, 1253 (Fed. Cir. 2005);  <u>WMS Gaming, Inc. v. Int'l Game Tech.</u>, 184 F.3d 1339, 1348-49 (Fed. Cir. 1999).  Thus, it is improper to identify the corresponding structure as <u>any software</u> for performing the recited functions.  <u>Uniloc USA, Inc. v. Microsoft Corp.</u>, _ F. Supp. 2d _, 2006 WL 2413676, *10-11 (D.R.I. Aug. 22, 2006) (Ex. 12) (rejecting patentee's argument that the corresponding structure was software containing any algorithm sufficient to perform the function, and holding patentee to the specific algorithm described in patent); <u>see also</u> <u>Lucent</u>, 367 F. Supp. 2d at 673-75 (construing means plus function limitations to require specific algorithms described in specific text and figures of the patent); <u>Adobe Sys. Inc. v. Macromedia, Inc.</u>, 201 F. Supp. 2d 309, 328-331 (D. Del. 2002) (Farnan, J.) (same).

Plaintiff's constructions also improperly treat the specification as merely exemplary ("<u>See, e.g.</u>" and "preferably"), and in some instances, Plaintiff's constructions entirely omit

---

[10] For example, Plaintiff argues that the corresponding structures for the first three functions of the clearinghouse means are: (a) "Any clearinghouse server(s) with software capable of storing identity data, and equivalents thereof," Ex. 3 at 12; (b) "That portion of the clearinghouse software . . . which authenticates the subscriber client computer, and equivalents thereof," Ex. 3 at 14; and (c) "That portion of the clearinghouse software . . . which authenticates the first server, and equivalents thereof," Ex. 3 at 16.

the corresponding structures that it admits are disclosed in the specification. For example, Plaintiff concedes that the structure in the specification for performing the first function of the clearinghouse is a structured query language (SQL) database, but its proposed construction is not limited to a SQL database. Pl. Br. at 20. Such constructions ignore settled law that the corresponding structure is "sharply limited to the structure disclosed in the specification and its equivalents." J&M Corp. v. Harley-Davidson, Inc., 269 F.3d 1360, 1367 (Fed. Cir. 2001).

### E.    The server software means should be construed to require the algorithms for performing reauthentication.

Plaintiff argues that the server software means need not include the reauthentication algorithms because reauthentication may be "desired," but is not "required." Pl. Br. at 19. That position is inconsistent with the specification and file history, which make clear that reauthentication was the only aspect of Plaintiff's system that was different from the prior art, and was the reason why the Examiner allowed the patent to issue. Def. Br. § I.C.

### F.    The clearinghouse means in Claim 24 is a means-plus-function limitation, not a step-plus-function limitation.

When this litigation began, Plaintiff admitted (correctly) in its interrogatory responses that "clearinghouse means" was a means-plus-function limitation. Ex. 8 at 13-14. As Plaintiff recognized, the use of "means" next to "clearinghouse" raises the presumption that it is a means-plus-function limitation, and the claim recites three functions associated with the clearinghouse means. Thus, for those three functions, the constructions of clearinghouse means in Claims 1 and 24 should be consistent. Def. Br. at § IV.D.[11]

---

[11] Plaintiff argues that "clearinghouse means" is not a step-plus-function limitation. Pl. Br. at 24. Defendants agree; it is a means-plus-function limitation. Plaintiff appears to suggest that method claims (such as Claim 24) may include step-plus-function limitations, but not means-plus-function limitations. Pl. Br. at 24. Plaintiff is wrong. The Federal Circuit has affirmed numerous means-plus-function constructions of limitations found in method claims. E.g., On Demand Machine Corp. v. Ingram Indus., Inc., 442 F.3d 1331, 1340-41 (Fed. Cir. 2006)

II.   **PLAINTIFF APPLIES A PRE-PHILLIPS ANALYSIS AND FAILS TO CONSTRUE THE DISPUTED TERMS IN VIEW OF THE SPECIFICATION.**

A.   **"hardware key" and "connected"**

As discussed extensively in Defendants' opening brief (Def. Br. at 6-10), the specification clearly and explicitly describes the hardware key used in the claimed invention as an external hardware device that physically attaches to the subscriber client computer and in which the predetermined digital identification is microcoded. Ex. 1, 5:52-55, 21:39-45.

Plaintiff erroneously asserts that the claimed hardware key may be built into the computer. That, however, is inconsistent with the claims, which are limited to a hardware key that is "connected" to the computer. Ex. 1, 35:47-48, 35:55-56, 38:54-55. The specification consistently uses the term "connected" to mean "attached" to the computer, for example, by a parallel, serial, or keyboard port. Def. Br. at p. 8; Ex. 1, 7:59-65, 18:50-53, 21:42-45, 21:52, 22:6-10, Fig. 20 (234). Moreover, construing "connected" to mean "built in" is inconsistent with the limitations of Claims 1 and 24 requiring that a subscriber client computer "forward [a] predetermined digital identification to [a] first server computer to thereby confirm that said hardware key is connected to said subscriber client computer." These limitations are premised on the fact that the hardware key can be disconnected from the subscriber client computer. Ex. 1, 18:13-17. There would be no need to confirm that the hardware key is connected to the computer if the hardware key were built into the subscriber client computer. Phillips, 415 F.3d at 1316 ("The construction that says true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.").

-------------------------------------------------------------

(district court correctly viewed "providing means for a customer to visually review said sales information," which appeared in method claims, "to be in means-plus-function form"); Altiris, Inc. v. Symantec Corp., 318 F.3d 1363, 1367, 1375-78 (Fed. Cir. 2003); J & M Corp. v. Harley-Davidson, Inc., 269 F.3d 1360, 1364 (Fed. Cir. 2001) ("Claim 17, which is a method claim, contains a nearly identical means-plus-function limitation ['gripping means'].").

10

Plaintiff's only support for its construction is the following sentence in the specification:

> Generally, two factor authentication provides that something is known, such as the name and password and something is held, such as the physical key that is attached to the computer, or built into the computer.

(Ex. 1, 21:49-53.)   This sentence, however, is a general description of two factor authentication.  The Applicants did not invent general two factor authentication, which was already well known in the art.  Rather, Applicants' claims are limited to a specific authentication scheme that uses a "connected" hardware key.  Furthermore, Plaintiff's argument is based on a grammatically incorrect reading of the above quoted sentence.[12]

Plaintiff also erroneously argues that even if a hardware key is not attached to the subscriber client computer, it still may be "connected" to the computer if it is in communication with the computer via a radio frequency (RF).  Plaintiff does not cite to any support in the specification.  The specification never mentions wireless or radio frequency technology.  With respect to the limitations of Claims 1 and 24 requiring that the first server computer confirm that the hardware key is "connected" to the subscriber client computer, the specification describes confirming that the hardware key is "attached" to the computer — not

---

[12] Plaintiff would have the Court believe that the phrase "built into the computer" modifies "physical key." Plaintiff, however, ignores the comma that separates the phrase "such as the physical key that is attached to the computer" from the phrase "or built into the computer." According to basic grammar rules, that comma identifies the end of the descriptive phrase "such as the physical key that is attached to the computer," which simply provides an example of something held. Defendants' reading of the passage is verified by applying the standard grammar checking technique of removing dependent clauses from the sentence to determine what the remainder of the sentence means. Applying this technique here, the sentence reads: "Generally, two factor authentication provides that something is known and something is held or built into the computer." While two factor authentication may generally be based on something that is held or built into the computer, the alleged invention is limited to the particular type of two factor authentication that involves the use of "the physical key that is attached to the computer."

11

"in communication with" the computer (wirelessly or otherwise) as Plaintiff would have the Court believe. Ex. 1, 7:59-65, 18:50-53, 18:55-60, Fig. 20 (234).

**B.    "predetermined digital identification"**

In its opening brief, Plaintiff pays lip service to using the plain and ordinary meaning of claim terms. Yet it argues that a <u>predetermined</u> digital identification need not be determined in advance and may be "calculated at the moment." Plaintiff reads the word "predetermined" out of the claims.

Plaintiff's construction is also inconsistent with the specification. Plaintiff acknowledges that the specification states: "The access key comprises a hardware key component containing an ASIC as having the structure illustrated in FIG. 28 and contains a unique identification that is microcoded into it." Ex 1, 5:52-55. Plaintiff postulates that the ASIC may "calculate at the moment" the predetermined digital identification "based on a known algorithm." The specification does not support Plaintiff's pure conjecture; it never states that the ASIC may perform this function and does not describe any algorithm for doing so. To the contrary, the specification states that the ASIC performs other functions, such as encryption and password protection. Ex. 1, 22:6-45. Rather than describe the ASIC as "calculating at the moment" the predetermined digital identification, the very sentence of the specification on which Plaintiff relies states that the identification itself is "microcoded" into the hardware key. Ex 1, 5:52-55; <u>see also</u> Ex. 1, 14:50-53; Ex. 9 at P046018.192232 (defining digital I.D. as ███████████████████████████████).

Moreover, elsewhere in its opening brief, Plaintiff acknowledges that the identity data (of which the predetermined digital identification is part) must be stored in the clearinghouse database in advance of any authentication. Pl. Br. at p. 21; <u>see also</u> Ex. 1, 17:37-45. Thus, the predetermined digital identification must be "preassigned" or "known in advance" as opposed to "calculated at the moment."

12

C.    "to thereby confirm that said [or a] hardware key is connected to said subscriber client computer"

Plaintiff attempts to read the "to thereby confirm" limitation out of both Claims 1 and 24 by wrongly arguing that it merely states the results of other claim limitations. In fact, the "to thereby confirm" limitation defines an essential aspect of the invention. Its addition by amendment to independent Claims 1 and 24 was the basis of their allowance and thus cannot be ignored to broaden the substance of the claims.

As discussed in detail in Defendants' opening brief (Def. Br. at 15-17), system Claim 1 and its corresponding method Claim 24 (application Claim 28) originally claimed only the initial authentication process described in the specification. Ex. 2, P031193, P031198-99. Other claims, such as original application Claim 5, were directed to the reauthentication process described in the specification. Ex. 2, P031194, P031283. During prosecution, the Examiner decided that the dependent claims directed to reauthentication (including application Claim 5) would be allowable if rewritten in independent form. Ex. 2, P031297. The Applicants amended Claims 1 and 24 to incorporate the "to thereby confirm" limitation of Claim 5 directed to reauthentication. Ex. 2, P031302, P031305-306. The Examiner subsequently allowed Claims 1 and 24, relying on the "to thereby confirm" limitation that had been incorporated from Claim 5 into both Claims 1 and 24. Ex. 2, P031314-15. The "to thereby confirm" limitation was thus material to patentability.

Disregarding the specification and the prosecution history, Plaintiff argues that the "to thereby confirm" limitation is analogous to a "whereby" clause and incorrectly suggests that there is a per se rule that "whereby" clauses are to be given no weight. Pl. Br. at 32. No such rule exists. Rather, the Federal Circuit has stated, "when the 'whereby' clause states a condition that is material to patentability, it cannot be ignored in order to change the substance of the invention." Hoffer v. Microsoft Corp., 405 F.3d 1326, 1329 (Fed. Cir.

13

2005).[13] In the cases cited by Plaintiff, the disputed "whereby" clause merely expressed the necessary results of what was otherwise recited in the claims. Here, however, the "to thereby confirm" limitation was added by amendment to Claims 1 and 24 to distinguish the prior art. Thus, the limitation is material to the patentability of those claims, as the Examiner's remarks plainly show. It is well established that when a "thereby" or "whereby" clause is added to overcome an Examiner's rejection (as was the case here), it "does not merely state the result of the limitations of the claim, but adds limitations to the claim." KX Indus. v. Culligan Water Techs., Inc., 90 F. Supp. 2d 461, 488 (D. Del. 1999). This is consistent with the well-recognized principle that a patentee cannot rely upon one meaning of claim terms during prosecution to gain allowance of a patent, and then assert an alternative meaning of those claim terms in a suit for infringement. Unique Concepts, Inc. v. Brown, 939 F.2d 1558, 1562 (Fed. Cir. 1991).

Plaintiff makes a cursory argument that Claims 1 and 24 are only directed to initial authentication, not reauthentication. As described in Defendants' opening brief, this is inconsistent with the specification and prosecution history. Def. Br. at pp. 13-17.

D.    "operating session"

Plaintiff's proposal improperly expands the definition of an "operating session" to include steps taken by a user to request access to the protected resources even before access is granted. This includes when a user is not "operating" anything and before any active session actually starts. This construction specifically contradicts the patent's express language, defies common sense and therefore should be rejected.

---

[13] In Hoffer, the Federal Circuit held that the disputed "whereby" clause "is more than the intended result of a process step; it is part of the process itself." 405 F.3d at 1330. The court explained that the element "is described in the specification and prosecution history as an integral part of the invention." Id. As in Hoffer, the "to thereby confirm" limitation of Claims 1 and 24 is described as an integral part of the invention in the specification and prosecution history of the '416 Patent. See, e.g., Ex. 1, 18:13-17.

The patent specification itself resolves this dispute — it states that the authentication steps all take place "*before* an operating session occurs." Ex. 1, Abstract. Plaintiff ignores this intrinsic evidence. It also ignores the express language of Claims 1 and 24. For example, Claim 1 says that the invention is for "controlling . . . operation of and access to selected computer resources of the first server computer . . . in an operating session." Ex. 1, 35:25-28. There can be no real dispute that "operation of" the selected computer resource of the first server computer can take place only after authentication has occurred. Plaintiff does not suggest otherwise.

In addition, Plaintiff's interpretation, which covers log-in attempts that fail or are unauthorized, defies logic and common sense. If someone attempts to log-in to a protected resource with an incorrect username, password or predetermined digital identification, then access is denied, no log-in occurs and an "operating session" does not occur. Imagine trying to log-in to a database service such as Lexis or Westlaw with a wrong username or password – access is denied. Because the access is never granted, the customer is never permitted to "operate" the requested resources, and is never billed because no "operating session" ever began. It strains credulity to suggest, as Plaintiff does, that a subscriber would be considered to have begun an "operating session" – and therefore be billed – if it was never given access to or permitted to operate the protected resources. The very point of the '416 Patent is to begin such a session only after the subscriber has been initially authenticated.[14]

Plaintiff's construction ignores intrinsic contextual evidence in favor of a dictionary and is precisely what the court in Phillips warned against.    Phillips, 415 F.3d at 1319 ("[E]xtrinsic evidence [such as dictionaries] may be useful to the court, but it is unlikely to

---

[14] See, e.g., Ex. 2 at P031284 ("the advantage of the present invention is its design to secure an operating session ….") (emphasis added). An operating session cannot occur until the authentication steps have been completed to "secure" the session.

result in a reliable interpretation of the claim scope unless considered in the context of the intrinsic evidence.").

### E.    "subscriber"

Plaintiff's argument that the terms "subscriber" and "user" are interchangeable (Pl. Br. at 26) is inconsistent with the claim language.  The claims distinguish between "subscriber client computers" and "non-subscriber client computers."  Ex. 1, 35:25-31, 38:35-41.  Thus, the claims recognize that some users are "subscribers" and other users are "non-subscribers."  Because some users are not subscribers, the terms "user" and "subscriber" are not interchangeable.

As described in the specification, a "user" is anyone who has access to the network, regardless of whether they have access rights to protected content.  Ex. 1, 1:8-12 ("any user that has access to the network.").  In contrast, the specification consistently describes "subscribers" as the subset of "users" that have paid for the right to access the protected contents on a subscription access server.  See, e.g., id., 1:12-38, 14:59-61.  The specification uses the term "subscriber" exclusively in connection with generating revenue through paid access to protected content.  Def. Br. at 20-21; Ex. 1, 35:10-14.  Every embodiment described in the specification includes features for generating revenue from subscribers; the only distinctions are as to method, timing and nature of payment, e.g., by processing credit card information (id., 9:28-34) and/or collecting payment during application approval (id., 14:40-45).  To define subscribers as paying users, as the Defendants propose, simply recognizes the specification's express teachings about the requirement for revenue generation.

### F.    "subscriber client computer"

Plaintiff now backpedals from its overbroad construction that expands the term "computer" to include any "programmable electronic device that can store, retrieve, and process data."  Instead, Plaintiff now proposes that a "computer" is a "device capable of

running the client software means." <u>Id.</u>  Furthermore, Plaintiff's only example of a "subscriber client computer" from the specification is a desktop PC, <u>i.e.</u>, a personal computer. Pl. Br. at 30.  Thus, Defendants' proposed construction — "a computer that a subscriber uses to access selected computer resources" — should be adopted.

### G.    "untrusted network"

Plaintiff concedes that the patentee acted as its own lexicographer and specifically defined the term "untrusted network."  Pl. Br. at 25.  Defendants' construction, which Plaintiff rejects, is a <u>direct quote</u> from the specification where the patentee defined this term. Ex. 1, 3:59-64.  ████████████████████████████████████████████████████████████

████████████████    Ex. 9 at P46018.192237.  Plaintiff does not provide any justification for its construction, which includes only part of the definition rather than the entire definition.

### III.    PLAINTIFF IGNORES THE EXPRESS CLAIM LANGUAGE.

### A.    "identity data"

Claims 1 and 24 require that the identity data be that of the "subscriber client computer," not the subscriber.  As described in Defendants' opening brief, Plaintiff is asking the Court to read the words "client computer" out of the phrase "subscriber client computer" in the claims.  Def. Br. at 23-24.  That is exactly what Plaintiff did in its opening brief. Plaintiff's construction is dependent upon the claims specifying the identity data of the subscriber, but that is not what is in fact claimed.[15]

| Plaintiff's Description | Actual Claim Language |
|---|---|
| "Claim 1 states . . . that the <u>subscriber's</u> identity data is stored in the clearinghouse means." Pl. Br. at 30. | "clearinghouse means for storing . . . the identity data of each of said subscriber <u>client computers</u>." Ex. 1, 35:32-34. |
| "Claim 1 states . . . that the <u>subscriber's</u> | "client software means . . . adapted to |

---

[15] Elsewhere in its brief, Plaintiff acknowledges that the identity data is "of the user's computer." Pl. Br. at 2.

| Plaintiff's Description | Actual Claim Language |
|---|---|
| identity data can be forwarded from the subscriber client computer to the first server computer at the beginning of an operating session." Pl. Br. at 30. | forward its identity data [i.e., "the identity data of the subscriber <u>client computer</u>"[16]] to said first server computer at the beginning of an operating session." Ex. 1, 35:41-45. |
| "Claim 1 states . . . that the first server computer can forward the <u>subscriber's</u> identity data and its own identity data to the clearinghouse means." Pl. Br. at 30. | "server software means . . . adapted to forward . . . identity data of each subscriber <u>client computer</u> to said clearinghouse means." Ex. 1, 35:35-40. |

Plaintiff is asking the Court to construe the claims as it now wishes that the claims had been written, not as they were actually written and issued. "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" <u>Phillips</u>, 415 F.3d at 1312 (quoting <u>Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.</u>, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). As articulated by the Supreme Court, because the patentee is required to "define precisely what his invention is," it is "unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of the terms." <u>White v. Dunbar</u>, 119 U.S. 47, 52 (1886). No matter what temptation may exist to broaden the claims to cover what the patentee may have desired but failed to claim, "courts may not redraft claims, whether to make them operable or to sustain their validity." <u>Chef America Inc. v. Lamb-Weston</u>, 358 F.3d 1371, 1374 (Fed. Cir. 2004). Thus, this Court should not rewrite the claims to read out the words "client computer" from the phrase "subscriber client computer."

### B.    "part of said identity data"

Plaintiff's position that the "predetermined digital identification" on its own is the complete "identity data" contradicts the plain language of the claims, and cannot be correct.

---

[16] Claim 1 states "its identity data," but both parties have agreed that "its" in column 35, line 42 refers to "the identity data of the subscriber client computer." Joint Claim Construction Statement, Ex. 3, p. 24.

The express language of Claim 1 states that the predetermined digital identification is only "part of" the identity data. Thus, the "identity data" must include something more than just the predetermined digital identification. Moreover, Claims 1 and 24 recite "identity data" and "the predetermined digital identification" as separate claim terms. Ex. 1, 35:32-33, 35:46-49. To interpret these terms to be the same would impermissibly read limitations out of the claims.[17]

Plaintiff is unable to point to any evidence in the intrinsic record to show that "identity data" can be just the predetermined digital identification. Pl. Br. at 31. This is because the patent teaches the opposite. Consistent with the claim language, the patent describes the use of the predetermined digital identification <u>only</u> in connection with two factor authentication, never by itself. Ex. 1, 1:58-67, 5:50-55, 7:59-65, 13:44-46, 14:50-58, 17:21-30, 17:42-45, 21:38-22:5, <u>see also</u> Ex. 9 at P046018.192232 (defining digital I.D. as

████████████████████████████████████████████████████████████████

████████████████████). The intrinsic evidence supports only defendants' construction of "identity data," that it must be the predetermined digital identification along with something else to identify the subscriber client computer.

### C.    "first server computer" and "selected computer resources"

Plaintiff proposes that the "first server computer" may be a gateway that permits indirect access to protected "selected computer resources" provided by other computers. Plaintiff's argument contradicts the express claim language.

---

[17] For example, Plaintiff's constructions would render redundant the Claim 24 limitations "requiring a subscriber client computer to forward its identity data . . ." and "requiring a subscriber client computer to forward a predetermined digital identification . . .", effectively reading one of the limitations out of the claim as mere surplusage. <u>Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.</u>, 93 F.3d 1572, 1578 (Fed. Cir. 1996) ("If, as Ethicon argues, "connected to" should be read broadly to include elements which are connected directly or indirectly, then this language would read on a lockout mechanism located anywhere in the surgical stapler, and the "connected to" limitation would be meaninglessly empty.").

Claims 1 and 24 are directed to a system and method that "control[] access to selected computer resources of at least a first server computer." Ex. 1, 35:26, 38:35-36. Thus, the first server computer provides the selected computer resources rather than, as Plaintiff argues, controlling access to selected computer resource provided by other computers.[18]

Furthermore, Claim 1 states that the clearinghouse — not the first server — acts as the gatekeeper permitting access to the selected computer resources. The clearinghouse means is "adapted to permit access to said selected computer resources." Ex. 1, 35:66-67. Earlier this year, during prosecution of a continuation-in-part of the '416 patent, Plaintiff conceded that the clearinghouse (not the first server) controls access to the protected resources. See 4/13/06 Paper in U.S. Ser. No. 10/230,638, at 23, 25 (Ex. 11) (amending claims and stating that "Applicant's clearinghouse controls access to the protected resources of the application server while the application server of Tabuki controls this access.")[19] Plaintiff, however, would now have the Court believe that "the first server computer performs a gatekeeper function, thereby controlling access to selected computer resources." Pl. Br. at 27; see also Pl. Br. at 29-30 (stating that "selected computer resources . . . may reside elsewhere with access to those resources controlled by the first server(s) acting as gatekeepers").

## CONCLUSION

For all of the reasons stated above, this Court should adopt Defendants' proposed constructions of the disputed terms.

---

[18] In contrast, the claims state the "other [i.e., unprotected] computer resources [are] provided by the first server computer and by other server computers and nonsubscriber client computers." Ex. 1, 35:29-31, 38:39-41.

[19] These statements by the inventors limit the scope of the "first server computer" of the '416 Patent claims. See, e.g., Datamize, LLC v. Plumtree Software, Inc., 417 F.3d 1342, 1353 (Fed. Cir. 2005).

Dated:  October 13, 2006
Public Version Dated:  October 17, 2006

OF COUNSEL:                                    ASHBY & GEDDES

John M. DiMatteo
Neal K. Feivelson                              By:   /s/ John G. Day
Leslie M. Spencer                                    Steven J. Balick (# 2114)
WILLKIE FARR & GALLAGHER                             John G. Day (#2403)
787 Seventh Avenue                                   Tiffany Geyer Lydon (#3950)
New York, NY 10019-6099                              222 Delaware Avenue, 17th Floor
(212) 728-8000                                       P.O. Box 1150
                                                     Wilmington, Delaware  19899
                                                     (302) 654-1888
                                                     sbalick@ashby-geddes.com
                                                     jday@ashby-geddes.com
                                                     tlydon@ashby-geddes.com

                                               *Attorneys for Defendant*
                                               *Johnson & Johnson Services Inc.*

OF COUNSEL:                                    POTTER ANDERSON & CORROON LLP

David M. Schlitz
BAKER BOTTS L.L.P.                             By:   /s/ David E. Moore
1299 Pennsylvania Ave., N.W.                         Richard L. Horwitz (#2246)
Washington, D.C. 20004-2400                          David E. Moore (#3983)
Tel.  202-639-7700                                   Hercules Plaza, 6th Floor
                                                     1313 N. market Street
Samir A. Bhavsar                                     P.O. Box 951
Jeffery D. Baxter                                    Wilmington, DE  19899-0951
BAKER BOTTS L.L.P.                                   Tel: 302-984-6000
2001 Ross Avenue                                     rhorwitz@potteanderson.com
Dallas, TX  75201-2980
Tel: 214-953-6500                              *Counsel for Defendant*
                                               *Computer Associates International, Inc.*

OF COUNSEL:

William F. Lee
David B. Bassett
Mark D. Selwyn
Gregory P. Teran
WILMER CUTLER PICKERING HALE
AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000

RICHARDS, LAYTON & FINGER, P.A.

By:  */s/ Gregory E. Spuhlman*
      Frederick L. Cottrell, III (#2555)
      Alyssa M. Schwartz (#4351)
      Gregory E. Spuhlman (#4765)
      One Rodney Square
      Post Office Box 551
      Wilmington, DE 19899
      Telephone: (302) 651-7700
      cottrell@rlf.com
      schwartz@rlf.com

*Attorneys for Defendant*
*RSA Security Inc.*

OF COUNSEL

Edward F. Mannino
Jason A. Snyderman
John D. Simmons
AKIN GUMP STRAUSS HAUER & FELD LLP
One Commerce Square, Suite 2200
2005 Market Street
Philadelphia, PA 19103
Telephone: (215) 965-1200
Fax: (215) 965-1210

Frank C. Cimino
Daniel E. Yonan
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, NW
Washington, DC 20036-1564
Telephone: (202) 887-4000
Fax: (202) 887-4288

CONNOLLY BOVE LODGE & HUTZ LLP

By:  */s/ Patricia Smink Rogowski*
      Patricia Smink Rogowski (#2632)
      The Nemours Building
      1007 North Orange Street
      PO Box 2207
      Wilmington DE 19899
      Telephone : (302) 658-9141
      Fax: (302) 658-5614
      progowski@cblh.com

*Attorneys for Defendant*
*VeriSign, Inc.*

755766/29074

22

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on October 17, 2006, the attached document was

hand-delivered on the following persons and was electronically filed with the Clerk of the Court

using CM/ECF which will send notification to the registered attorney(s) of record that the

document has been filed and is available for viewing and downloading:

Richard D. Kirk
The Bayard Firm
222 Delaware Avenue, Suite 900
P. O. Box 25130
Wilmington, DE 19899-5130

Frederick L. Cottrell, III
Alyssa M. Schwartz
Richards, Layton & Finger
One Rodney Square
P. O. Box 551
Wilmington, DE 19899-0551

Patricia Smink Rogowski
Connolly, Bove, Lodge & Hutz
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

Steven Balick
John G. Day
Ashby & Geddes
222 Delaware Avenue
P. O. Box 1150
Wilmington, DE 19899

I hereby certify that on October 17, 2006, I have Electronically Mailed the documents to

the following:

Dirk D. Thomas
Robert A. Auchter
Kenneth A. Freeling
Jason R. Buratti
André J. Bahou
Robins, Kaplan, Miller & Ciresi, L.L.P.
1801 K Street, Suite 1200
Washington, DC 20006
PrismCounsel@rkmc.com

William F. Lee
David B. Bassett
Mark D. Selwyn
Gregory P. Teran
Wilmer Cutler Pickering Hale & Dorr
60 State Street
Boston, MA 02109
RSAPrismLitigation@wilmerhale.com

Edward F. Mannino
Jason A Snyderman
Akin Gump Strauss Hauer & Feld LLP
One Commerce Square, Suite 2200
2005 Market Street
Philadelphia, PA 19103
VerisignPrism@akingump.com

Frank C. Cimino
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, NW
Washington, DC 20036-1564
fcimino@akingump.com

John DiMatteo
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019-6099
PrismLitigation-JJSI@willkie.com

*/s/ David E. Moore*
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

680022