# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PRISM TECHNOLOGIES LLC, | |
| Plaintiff, | C.A. No. 05-214-JJF |
| v. | **JURY TRIAL DEMANDED** |
| VERISIGN, INC., RSA SECURITY, INC., NETEGRITY, INC., COMPUTER ASSOCIATES INTERNATIONAL, INC. and JOHNSON AND JOHNSON, | |
| Defendants. | |

**DEFENDANT VERISIGN, INC.'S FIRST SET OF INTERROGATORIES TO
PLAINTIFF PRISM TECHNOLOGIES LLC (NOS. 1 - 10)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, defendant VeriSign, Inc. ("VeriSign") requests that Plaintiff Prism Technologies LLC ("Prism") answer the following interrogatories fully and separately in writing under oath by an officer or other agent of Prism authorized to give answers on its behalf. Answers to these interrogatories must be served within the time prescribed by the Federal Rules of Civil Procedure. The following definitions and instructions apply.

## DEFINITIONS

1. The term "Prism" means and includes Plaintiff Prism Technologies LLC, and any of its present and former parents, partners, subsidiaries, divisions, branches, affiliates, predecessors or successors in business, and wholly or partially owned entities of Prism and any entities acting or purporting to act for or on behalf of the foregoing or who are subject to the direction or control of the foregoing, including any present or former agents, employees, officers, directors, insurance companies, attorneys, accountants, investigators, and consultants of the foregoing.

2. The term "VeriSign" means and includes Defendant VeriSign, Inc., and any of its present and former parents, partners, subsidiaries, divisions, branches, affiliates, predecessors or successors in business, and wholly or partially owned entities of VeriSign and any entities acting or purporting to act for or on behalf of the foregoing or who are subject to the direction or control of the foregoing, including any present or former agents, employees, officers, directors, insurance companies, attorneys, accountants, investigators, and consultants of the foregoing.

3. The term "Plaintiff," "you," or "your" means Prism.

4. The term "Defendant" or "Defendants" means and includes any defendant in this litigation, including without limitation VeriSign, any third-party defendant, any former defendant, and/or any future defendant.

5. "Patent application" means all patent applications including all parent, continuation, continuing, continuation-in-part, divisional, reeissue or reexamination and other applications, including applications from which an issued patent claims priority, regardless of whether the patent application issued as a patent, is currently pending, or was abandoned, and

regardless of whether the patent application was filed in the Unites States Patent and Trademark Office or a foreign patent office.

6.    "Foreign counterpart patent application" means any patent application filed in a country or territory other than the United States or before an Examining Agency or Authority other than the United States Patent and Trademark Office that claims priority from a U.S. filed patent application and/or which a U.S. filed patent application claims to derive priority from.

7.    "Foreign counterpart patent" means any patent published or issued in a country or territory other than the United States or by an Examining Agency or Authority other than the United States Patent and Trademark Office that claims priority from a U.S. filed patent application and/or which is based on a foreign patent application for which a U.S. filed patent application claims to derive priority from.

8.    The term "related patents" means all parent, continuation, continuing, continuation-in-part, divisional, reexamination, reissue and other patents or patent applications claiming priority to the patent-in-suit, including applications from which an issued patent claims priority, regardless of whether the patent application issued as a patent, is currently pending, or was abandoned, and regardless of whether the patent or patent application was issued or filed, respectively, in the Unites States Patent and Trademark Office or a foreign patent office.

9.    The term "'416 patent" means U.S. Patent No. 6,516,416.

10    The term "patent-in-suit" means U.S. Patent No. 6,516,416.

11.    The term "subject matter disclosed or claimed in the '416 patent" means all information relating to the disclosure of the '416 patent.

12.    The term "document" or "record" shall have its customary broad meaning within the full range allowed by F. Rule Civ. P. 33 and 34, and shall include without limitation, any

3

written, printed, typed, recorded, filmed or graphic matter, however produced or reproduced, and any written or original, master, duplicate, or copy. The term "document" shall include electronic data, any record of all or any portions of any discussion, communication, agreement, conversation, interview, meeting, conference, conclusion, fact, impression, occurrence, opinion, report, or other similar matter, and also shall include, without limitation, all correspondence, papers, cablegrams, mailgrams, telegrams, notes, memoranda, summaries, abstracts, worksheets, books, manuals, publications, engineering reports and notebooks, charts, plans, diagrams, sketches or drawings, photographs, reports and/or summaries of investigations and/or surveys, opinions and reports of appraisers or consultants, projections, corporate records, minutes of board of directors or committee meetings, desk calendars, appointment books, diaries, diary entries and notes, newspapers, magazines, or periodical articles, and other records of any kind. A draft or non-identical copy is a separate document within the meaning of this term. Included in the definition of documents as used herein are files, file folders, books, and their contents, which should be produced together with the documents they contain.

13.    The term "electronic data" includes, but is not limited to, originals and all copies of electronic mail ("e-mail"); activity listings of e-mail receipts and/or transmittals; voice-mail; audio or video recordings of any kind; computer programs (whether private, commercial, or a work-in-progress); programming notes or instructions; output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs, and outlines; operating systems; source code of all types; batch files; ASCII files; and all miscellaneous electronic files and/or file fragments, regardless of the media on which they are stored and regardless of whether the data resides in an active file, deleted file, or file fragment. Electronic data includes any and all information stored in hard disks, floppy disks, CD-ROM

4

disks, B ernoulli d isks a nd t heir e quivalents, m agnetic t apes o f a ll k inds, a nd c omputer c hips. Electronic data also includes the file, folder tabs, containers or labels appended to any storage device containing electronic data.

14.    "Things" shall mean any tangible object other than a document and includes objects of every kind and nature, including, but not limited to, prototypes, models and specimens.

15.    A document or communication "referring to," "related to," or "concerning" a given subject means any and all documents or communications that constitute, contain, embody, comprise, reflect, identify, state, refer to, connect with, deal with, comment on, respond to, describe, involve, or are in any way pertinent to that subject.

16.    The term "person" or "persons" shall include any and/or all natural persons, individuals, corporations, partnerships, unincorporated associations, joint ventures, sole proprietorships, or any and/or all other organization of individuals or other legal or business entities, or functional division thereof.

17.    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise)

18.    "Concerning" means relating to, referring to, describing, evidencing, constituting, or mentioning in any way.

19.    The use of the singular form of any word includes the plural and visa versa.

20.    The terms "he," "his," or "him" are generic terms that mean any person as defined herein, whether natural or otherwise, and whether masculine, feminine, or neuter.

21.    The term "prior art" shall mean all things, patents, publications, disclosures, sales, or other acts or occurrences included within the broadest meaning of 35 U.S.C. § 102 (or any subpart thereof) and 35 U.S.C. § 103.

22.    "Identify" with respect to persons means to give, to the extent known, the person's full name, present or last known address, and, with respect to a natural person, the present or last known place of employment. "Identify" with respect to documents means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s), and recipient(s), and the production number(s) where produced. "Identify" with respect to an entity means to give, to the extent known, the entity's present full name, business name and/or trade name, any former names used such entity, and its present or last known address.

23.    In construing these Interrogatories, the plural shall include the singular, the singular shall include the plural, and a masculine, feminine, or neuter term shall include all other genders. The words "and" and "or" mean "and/or" and should be read both ways so as to encompass both constructions and call for answers to be provided to both constructions. The word "each" includes the word "every," and the word "every" includes the word "each." The word "any" shall be understood to include and encompass "all," and "all " should be interpreted to include and encompass "any."

## INSTRUCTIONS

1.    Each Interrogatory shall be answered fully unless it is in good faith objected to, in which event the reasons for your objection shall be stated in detail. If an objection pertains only to a portion of a Interrogatory, or a word phrase, or clause contained within it, you are required

to state your objection to that portion only and to respond to the remainder of the Interrogatory, using your best efforts to do so.

2.    If Plaintiff contends that any information concerning any document, communication, or other information is withheld under a claim of attorney-client privilege, the work product doctrine or other ground of privilege, then Prism shall identify for each such document:

(a)    the date of the document, communication or other information;

(b)    the name (title or position of the authors) of the document, communication or other information;

(c)    the name and title or position of all persons designated as addressees or otherwise receiving copies of the document, communication or other information;

(d)    the general subject matter of the document, communication or other information;

(e)    the number of pages in the document, communication or other information;

(f)    the type of document (e.g., memorandum, letter or report), communication or other information;

(g)    the specific grounds for withholding the document, communication or other information, including the specific facts upon which Plaintiff will rely to establish the asserted attorney-client privilege, work product doctrine, or other ground of privilege; and

     (h)     the specific Interrogatory to which information concerning the document, communication or other information is responsive.

3.     If any document identified in response to any of these Interrogatories was, but is no longer in the possession, custody or subject to the control of Plaintiff, or is no longer in existence, state whether it:

     (a)     Is missing or lost;

     (b)     Has been destroyed;

     (c)     Has been transferred, voluntarily or involuntarily, to others and state the identity of those persons to whom it has been transferred;

     (d)     Has been otherwise disposed of, and in each instance, explain the circumstances surrounding such disposition, state the date or approximate date thereof, and the identity of the persons with knowledge of such circumstances; or

     (e)     Identify the writings that are missing, lost, destroyed, transferred, or otherwise disposed of, by author, date, subject matter, addressee and the number of pages.

4.     Pursuant to Rule 26(e), Fed. R. Civ. P., these requests are deemed to be continuing in nature to the full extent required by the Federal Rules of Civil Procedure. If further responsive documents come into the possession or to the attention of Plaintiff or its attorneys at any time during the course of this litigation, such documents must be produced as required by the Federal Rules of Civil Procedure.

## INTERROGATORIES

### INTERROGATORY NO. 1.

With reference to the claim charts attached as Exh. A, in which the first column lists the claim elements and/or steps of independent claims 1, 19 and 24 of the '416 patent, complete the second column by stating Plaintiff's claim interpretation contentions for each element and/or step (set forth in each row of Exh. A), as a whole, as well as for each specifically bolded and quoted word a nd/or p hrase, a nd c omplete t he t hird c olumn b y s tating a ll b asis a nd s upport f or t hose contentions, including citing all portions of the specification and prosecution history, and identifying and describing all other evidence, if any, that Plaintiff believes supports its contentions.  If Plaintiff contends that any of the claim elements are means-plus-function elements construed pursuant to 35 U.S.C. §112 paragraph 6, so state and provide plaintiff's contention as to the function to be performed and the identity of the corresponding structure in the specification for performing it, and the scope of equivalents, if any.  If Plaintiffs contend that any claim element that includes the word "means" is *not* means-plus-function (as it is presumed to be under the law), state all basis and evidence for this contention.

### INTERROGATORY NO. 2.

For each claim of the '416 patent that Plaintiff contends is infringed by VeriSign, identify each activity, product, device, part, or system manufactured, imported, used or sold by VeriSign that, according to Plaintiff, embodies, is covered by, makes use of, or otherwise practices any claim of the patent-in-suit and, with reference to Plaintiff's claim interpretation contentions provided in response to Interrogatory No. 1, state with particularity the basis for each of Plaintiff's contentions as to how each asserted claim of the patent-in-suit is infringed, either

9

literally or under the doctrine of equivalents, directly (under 35 U.S.C. § 271(a)) or indirectly (under 35 U.S.C. §271(b) or §271(c)) by VeriSign.

## INTERROGATORY NO. 3.

Describe in detail when Plaintiff first became aware of and/or first had knowledge of each activity, product, device, system and/or equipment identified in response to Interrogatory No. 2; identify each person who had such knowledge; describe the circumstances under which each such person first became aware of and acquired such knowledge; and describe all facts, documents and things that refer and/or relate to this knowledge.

## INTERROGATORY NO. 4.

For each asserted claim of the '416 patent, (a) state Plaintiff's contentions regarding date(s) of the invention, including the date(s) of conception and reduction to practice, (b) identify each person involved in its conception and each person involved in its reduction to practice, (c) describe in detail all circumstances regarding conception, reduction to practice and any diligence exercised from the date of conception to the date of reduction to practice and identify each person involved in any such diligence, (d) identify the specific location of each such conception and reduction to practice, and (e) identify all documents and things referring to, relating to, or concerning the conception, reduction to practice, and any diligence from the date of conception to the date of reduction to practice.

## INTERROGATORY NO. 5.

Excluding the "references cited" on the face of the '416 patent, identify all prior art, including without limitation publications and acts, of which Plaintiff is aware with respect to each of the patent-in-suit and related patents, including prior art located in any prior art search or

otherwise brought to the attention of Plaintiff, and state how and when each item of prior art identified came to Plaintiff's attention.

**INTERROGATORY NO. 6.**

If Plaintiff is seeking an award of any sum of money, whether by damages or otherwise, state the amount of money Plaintiff seeks and describe the manner in which the amount was calculated, including each element of damage or component of recovery that Plaintiff seeks, the amount sought for each element or component, the manner in which each element or component was calculated or determined, and should identify the source of each number used in the calculation, and identify the person or persons who is most knowledgeable with respect to the subject matter of this Interrogatory.

**INTERROGATORY NO. 7.**

Describe in detail the business of Prism and all predecessor companies, from its inception until present, identify all directors, officers and employees of such companies over that time period, and identify all financial records relating to costs and revenues from the '416 patent.

**INTERROGATORY NO. 8.**

Identify and describe in detail any attempt to license, sell or otherwise commercialize or transfer rights to the '416 patent, and identify and describe the terms of any such agreements, including licensing and sales agreements.

**INTERROGATORY NO. 9.**

Identify all entities and/or person that now or in the past have held rights (*e.g.*, ownership, right-to-sue, right-to-recovery, etc.) to the '416 patent and any patent claiming priority to the '416 patent, and state the nature of rights held (including, where appropriate, the quantity held by each entity or person).

**INTERROGATORY NO. 10.**

    Identify and describe the specifics of any pre-complaint infringement analysis.


    Dated: September 15, 2005

*Of Counsel*

Edward F. Mannino
Jason A. Snyderman
AKIN GUMP STRAUSS HAUER & FELD LLP
One Commerce Square, Suite 2200
2005 Market Street
Philadelphia, PA 19103
Telephone: (215) 965-1200
Fax: (215) 965-1210


Frank C. Cimino
Jin-Suk Park
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, NW
Washington, DC 20036-1564
Telephone: (202) 887-4000
Fax: (202) 887-4288

By: _Patricia S Rogowski_

    Patricia Smink Rogowski
    Delaware Bar ID 2632
    The Nemours Building
    1007 North Orange Street
    PO Box 2207
    Wilmington DE 19899
    Telephone : (302) 658-9141
    Fax: (302) 658-5614

    *Attorneys for Defendant, VeriSign, Inc.*

Exhibit A

Plaintiff's Response To VeriSign's Interrogatory No. 1

| Claim 1 of the '416 Patent | Plaintiff's Claim Interpretation | Plaintiff's Support and Evidence |
|---|---|---|
| A "system" for controlling the operation of and access to "selected computer resources" of at least a "first server computer" by at least one "subscriber client computer" via an "untrusted network" in an "operating session", "without necessarily controlling access to other computer resources" provided by the first server computer and by "other server computers" and "nonsubscriber client computers", comprising; | | |
| "clearinghouse means" for "storing" "identity data of said first server computer" and the "identity data of each of said subscriber client computers"; | | |
| "server software means" installed on said first server computer "adapted to forward its identity data and identity data of each subscriber client computer to said clearinghouse means" at the "beginning of an operating session" in which "access to" "selected computer resources" of said first server computer is requested; | | |
| "client software means" installed on each of said "subscriber client computers" "adapted to forward its identity data to said first server computer" at the "beginning of an operating session" in which "access to" "selected computer resources" is requested; | | |
| at least one "hardware key" "connected to" the "subscriber client computer" said key being "adapted to generate" a "predetermined" "digital identification", which "identification is part of said identity data", | | |
| said "server software means" installed on the first server computer being "adapted to selectively request" the "subscriber client computer" "to forward" said "predetermined" "digital identification" to the first server computer "to thereby confirm" that said hardware key is "connected" to said subscriber client | | |

Exhibit A
Plaintiff's Response To VeriSign's Interrogatory No. 1

| | |
|---|---|
| computer; | |
| said "clearinghouse means" being "adapted to authenticate the identity of said subscriber client computer" responsive to a request for selected computer resources of said first server computer by a "subscriber client computer"; | |
| said "clearinghouse means" being "adapted to authenticate the identity of said first server computer" responsive to said "subscriber client computer" making the request for selected computer resources of said first server computer; and | |
| said "clearinghouse means" being "adapted to permit access" to said selected computer resources responsive to "successful initial authentication" of said first server computer and of "said subscriber client computer making first request". | |

Exhibit A
Plaintiff's Response To VeriSign's Interrogatory No. 1

| Claim 19 of the '416 Patent | Plaintiff's Claim Interpretation Position | Plaintiff's Support and Evidence |
|---|---|---|
| A "system" for controlling the operation of and access to "selected computer resources" of at least a "first server computer" by at least one "subscriber client computer" via an "untrusted network" in an "operating session", "without necessarily controlling access to other computer resources" provided by the first server computer and by "other server computers" and "nonsubscriber client computers", and each of said subscriber client computers has a "standard browser application" for "browsing" the untrusted network, comprising; | | |
| "clearinghouse means" for "storing" "identity data of said first server computer" and the "identify data of each of said subscriber client computers"; | | |
| "server software means" installed on said first server computer "adapted to forward its identity data and identify data of each subscriber client computer to said clearinghouse means" at the "beginning of an operating session" in which "access to" "selected computer resources" of said first server computer is requested; and, | | |
| "client software means" installed on each of said "subscriber client computers" "adapted to forward its identity data to said first server computer" at the "beginning of an operating session" in which "access to" "selected computer resources" is requested; | | |
| said "clearinghouse means" being "adapted to authenticate the identity of said subscriber client computer" responsive to a request for selected computer resources of said first server computer by a "subscriber client computer". | | |

Exhibit A
Plaintiff's Response To VeriSign's Interrogatory No. 1

| | | |
|---|---|---|
| said "clearinghouse means" being "adapted to authenticate the identify of said first server computer" responsive to said "subscriber client computer" making the request for selected computer resources of said first server computer. | | |
| said "clearinghouse means" being "adapted to permit access" to said selected computer resources responsive to "successful initial authentication" of said first server computer and of "said subscriber client computer making said request"; | | |
| said "server software means" installed on the first server computer being "adapted to designate specific resource content being protected and to provide predetermined protection data identifying said resource content as being protected" when said data is transmitted to one of said "subscriber client computers" responsive to a request for said resource content; | | |
| said "client software means" installed on each of said "subscriber client computers" being "adapted to monitor" said data defining a "hierarchical system of protection" and "selectively" "disable" "predetermined" "application functions" of the "standard browser application" "previously installed" on said "subscriber client computer" for said "designated specific resources content" | | |

Exhibit A
Plaintiff's Response To VeriSign's Interrogatory No. 1

| Claim 24 of the '416 Patent | Plaintiff Claim Interpretation Position | Plaintiff's Support and Evidence |
|---|---|---|
| A "method" of controlling access to "selected computer resources" of at least a "first server computer" by at least one "subscriber client computer" via an "untrusted network" during an "operating session", "without necessarily controlling access to other computer resources" provided by the first server computer and by "other server computers" and "nonsubscriber client computers", comprising the steps of: | | |
| "registering identity data of said first server computer and the identify data of each of said subscriber client computers" and "storing the registered identity data" in a "clearinghouse means" "associated with" said first server computer and said "subscriber client computers", | | |
| requiring a "subscriber client computer" to forward "its identity data" to said "clearinghouse means" at the "beginning an operating session" in which access to "selected computer resources" is requested; | | |
| requiring a "subscriber client computer" to forward a "pre-determined" "digital identification" to said first server computer "to thereby confirm" that a "hardware key" is "connected" to said "subscriber client computer"; | | |
| attempting to "authenticate" the identity of said "subscriber client computer" from said "clearinghouse means" "responsive" to a request for "selected computer-resources" of said first server computer by a "subscriber client computer". | | |
| attempting to "authenticate" the "identity of said first server computer" from said "clearinghouse means" responsive to said "subscriber client computer" making the request for "selected computer resources", and, | | |
| "permitting access" to said "selected computer resources" "responsive" to "successful initial authentication" of said "first server computer" and of said "subscriber | | |

Exhibit
Plaintiff's Response To VeriSign Interrogatory No. 1

client computer" making said request.

9

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2005, a true and correct copy of the foregoing DEFENDANT VERISIGN, INC.'S FIRST SET OF INTERROGATORIES TO PLAINTIFF PRISM TECHNOLOGIES LLC (NOS.1 - 10) was caused to be served on the following by Hand or via First Class Mail:

Richard D. Kirk (By Hand)
The Bayard Firm
22 Delaware Avenue
Suite 900
Wilmington, DE 19899

Dirk D. Thomas (First Class Mail)
Robins, Kaplan, Miller & Ciresi, LLP
1801 K Street, N.W.
Suite 1200
Washington, D.C. 20006-1307

Gregory P. Teran (First Class Mail)
Wilmer Cutler Pickering Hale & Dorr LLP
60 State Street
Boston, MA 02109

David M. Schlitz (First Class Mail)
Baker Botts LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2450

John DiMatteo (First Class Mail)
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019-6099

Frederick L. Cottrell, III (By Hand)
Richards Layton & Finger
One Rodney Square
920 North King Street,
Wilmington, DE 19801

Richard L. Horwitz (By Hand)
Potter Anderson & Corroon
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899

Steven J. Balick (By Hand)
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899

By: _____
Patricia Smink Rogowski
Bar ID 2632

13

# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PRISM TECHNOLOGIES LLC,<br><br>Plaintiff,<br><br>v.<br><br>VERISIGN, INC., RSA SECURITY, INC., NETEGRITY, INC., COMPUTER ASSOCIATES INTERNATIONAL, INC. and JOHNSON AND JOHNSON,<br><br>Defendants. | C.A. No. 05-CV-214-JJF<br><br>JURY TRIAL DEMANDED |

**DEFENDANT VERISIGN, INC.'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS
TO PLAINTIFF PRISM TECHNOLOGIES LLC NOS. (1 -40)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant VeriSign, Inc. ("VeriSign") requests that Plaintiff Prism Technologies LCC ("Prism") respond to each of the following Requests for Documents and Things by producing all responsive documents and things to the offices of Akin, Gump, Strauss, Hauer & Feld LLP, 1333 New Hampshire Ave., N.W., Washington, D.C. 20036 or at such other place and time as the parties may agree to, within the time prescribed by the Federal Rules of Civil Procedure.

## DEFINITIONS AND INSTRUCTIONS

VeriSign incorporates the Definitions and Instructions from VeriSign's First Set of Interrogatories to Plaintiff Prism served concurrently herewith. In addition, the following Definitions and Instructions apply:

1. The Definitions, Rules, and Instructions set forth in Rule 34(a), Fed. R. Civ. P. are incorporated herein by reference.

2. These Requests extend to all documents in the possession, custody and/or control of Prism, or in the possession, custody or control of persons or entities under the control of Prism.

3. In the event that more than one copy of a document exists, Plaintiff shall produce the original and each non-identical copy of each document or other tangible thing requested herein which is in Plaintiff's possession, custody or control, or that of Plaintiff's agents, attorneys, accountants, employees or representatives.

4. Each Request shall be fully responded to unless it is in good faith objected to, in which event the reasons for your objection shall be stated in detail. If an objection pertains only to a portion of a Request, or a word phrase, or clause contained within it, you are required to state your objection to that portion only and to respond to the remainder of the Request, using your best efforts to do so.

5. If Plaintiff contends that any document requested to be produced is protected from discovery by the attorney-client privilege, the work product doctrine or other ground of privilege, then Plaintiff shall identify for each such document:

(a)   the date of the document;

(b)   the name (title or position of the authors) of the document;

2

(c)     the name and title or position of all persons designated as addressees or otherwise receiving copies of the document;

(d)     the general subject matter of the document;

(e)     the type of document (e.g., memorandum, letter or report);

(f)     the specific grounds for withholding the document, including the specific facts upon which Plaintiffs will rely to establish the asserted attorney-client privilege, work product doctrine, or other ground of privilege; and

(g)     the specific document requests to which the document is responsive.

6.     All requested documents produced by Plaintiff shall be organized either to correspond to the categories in these requests, or as they are kept in the ordinary course of business. In either case, all documents produced shall:

(a)     be produced with all associated file labels, file headings, and file folders together with the responsive documents from each file, and each file shall be identified as to its owner or custodian; for any document originally stored in electronic media, the file name, path and directory information for each such documents shall also be provided;

(b)     if produced in hard copy, all pages now stapled or fastened together shall be produced stapled or fastened together, and shall include all attachments currently or previously appended to each document, regardless of whether such attachments themselves are responsive to these requests;

(c)     if produced electronically, all attachments currently or previously appended to the electronic file shall be produced, regardless of whether such attachments themselves are responsive to these requests;

(d)    all documents that cannot be legibly copied shall be produced in original

form.

7.    If any document identified in response to any of these Requests was, but is no

longer in the possession, custody or subject to the control of Plaintiff, or is no longer in

existence, state whether it:

(a)    Is missing or lost;

(b)    Has been destroyed;

(c)    Has been transferred, voluntarily or involuntarily, to others and state the

identity of those persons to whom it has been transferred;

(d)    Has been otherwise disposed of, and in each instance, explain the

circumstances surrounding such disposition, state the date or approximate

date thereof, and the identity of the persons with knowledge of such

circumstances; or

(e)    Identify the writings that are missing, lost, destroyed, transferred, or

otherwise disposed of, by author, date, subject matter, addressee and the

number of pages.

**REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1.**

All documents and things relied upon or referred to in answering VeriSign's First Set of

Interrogatories to Plaintiff served concurrently herewith.

**REQUEST FOR PRODUCTION NO. 2.**

All documents and things referring to, relating to or concerning the '416 patent or any

activities, product, device, part, or system identified in response to Interrogatory No. 2.

4

**REQUEST FOR PRODUCTION NO. 3.**

All documents and things referring to, relating to, or concerning the decision to commence this action, including, without limitation, any investigation, testing, analysis, study or examination conducted or considered by or on Plaintiff's behalf that relates to any accused device, product, part or system that Plaintiff identified in response to Interrogatory No. 2.

**REQUEST FOR PRODUCTION NO. 4.**

All documents and things referring to, relating to, or concerning any of Plaintiff's contentions regarding the meaning, scope or interpretation of any of the claim terms and/or phrases in the asserted claims of the patent-in-suit.

**REQUEST FOR PRODUCTION NO. 5.**

All documents and things referring to, relating to, concerning, or constituting any of Plaintiff's contentions that the asserted claims of the patent-in-suit are infringed by VeriSign's importation, manufacture, use or sale of each product, device, part or system identified in response to Interrogatory No. 2, including, without limitation, any opinions of consultants or experts.

**REQUEST FOR PRODUCTION NO. 6.**

All documents and things referring to, relating to, concerning, or relied on in any opinions produced in response to Request For Production No. 5.

**REQUEST FOR PRODUCTION NO. 7.**

All documents and things referring to, relating, concerning, or constituting any of Plaintiff's contentions concerning or relating to the type and amount of damages that Plaintiff is seeking as a result of VeriSign's alleged infringement of the patent-in-suit, including, without limitation, any opinions of consultants or experts.

**REQUEST FOR PRODUCTION NO. 8.**

All documents and things referring to, relating to, concerning, or relied on in any opinions produced in response to Request For Production No. 7.

**REQUEST FOR PRODUCTION NO. 9.**

All documents and things referring to, relating to, or concerning the conception, first reduction to practice, research and development, diligence between conception and reduction to practice and the location of each such conception, reduction to practice, research and development and diligence, of the alleged invention recited in each of the claims of the patent-in-suit, including, without limitation, a sample of all models, prototypes, or mock-ups of any devices and/or products that embody the alleged invention recited in each claim of the patent-in-suit.

**REQUEST FOR PRODUCTION NO. 10.**

Documents sufficient to identify all engineers or other persons who participated in the research, design or development of the alleged inventions claimed in the patent-in-suit.

**REQUEST FOR PRODUCTION NO. 11.**

All documents referring to, relating to, concerning, or constituting business and technical activities of the named inventors, including, without limitation, any resumes, curriculum vitae, employment files, publications and biographies

**REQUEST FOR PRODUCTION NO. 12.**

All licenses and agreements, including active, expired, terminated or otherwise unenforced licenses or agreements, to the patent-in-suit or any patent, patent application or technology related to the subject matter disclosed or claimed in the patent-in-suit, that is or was assigned, owned or otherwise controlled by Prism at any time

**REQUEST FOR PRODUCTION NO. 13.**

All documents and things referring to, relating to, or concerning documents produced in response to Request For Production No. 12, including, without limitation, all communications between Prism and any other person, including the licensee or party the license or agreement

**REQUEST FOR PRODUCTION NO. 14.**

All documents concerning the ownership of the patent-in-suit.

**REQUEST FOR PRODUCTION NO. 15.**

All documents referring to, relating to, concerning or constituting communications between Plaintiff and the named inventors of the patent-in-suit

**REQUEST FOR PRODUCTION NO. 16.**

All documents referring to, relating to, concerning or constituting any agreement between Plaintiff and the named inventors of the patent-in-suit, including, without limitation, any assignment, contract, employment agreement or license.

**REQUEST FOR PRODUCTION NO. 17.**

All documents referring to, relating to, or concerning the specific inventive contribution (as contemplated in 35 U.S.C §102(f)) of each contributor to each invention described or claimed in the patent-in-suit, whether named in the patent-in-suit or not, with respect to any element of any invention(s) disclosed or claimed in the patent-in-suit

**REQUEST FOR PRODUCTION NO. 18.**

All documents and things referring to, relating to, or concerning any actual or threatened enforcement of the patent-in-suit against any person or entity, any request that any person or entity cease making, using, offering for sale, importing, or selling any product, machine, device, or process because of the patent-in-suit, any offers, requests, demands, or suggestions that any

person or entity take a license under the patent-in-suit, or any charge or allegation of infringement of the patent-in-suit against any person or entity, including, without limitation, documents concerning the disposition and/or present status of each such instance, and the title, court, and docket number of any lawsuit that resulted therefrom, each and every defense raised by each defendant, and the disposition and/or present status of each such lawsuit.

**REQUEST FOR PRODUCTION NO. 19.**

All documents and things referring to, relating to, or concerning the design, development, testing, fabrication, manufacture, or sale of any device, product or part made by, on behalf of, or pursuant to an agreement with Prism that embodies any of the alleged inventions disclosed or claimed in the patent-in-suit.

**REQUEST FOR PRODUCTION NO. 20.**

All engineering and technical documents, including, without limitation, schematic diagrams, mechanical drawings, sketches, manufacturer specifications, operating manuals and service manuals, laboratory notebooks, technical reports, research reports, progress reports or other documents pertaining to development, analysis, or laboratory work for each apparatus, device, or system made or designed for practicing the subject matter disclosed or claimed in the patent-in-suit.

**REQUEST FOR PRODUCTION NO. 21.**

All documents and things referring to, relating to, concerning any actual and forecasted revenues, and any actual or forecasted manufacturing costs, pertaining to Plaintiff's actual or intended production of any items practicing the alleged inventions disclosed or claimed in the patent-in-suit.

8

**REQUEST FOR PRODUCTION NO. 22.**

All documents and things referring to, relating to, concerning any actual and forecasted profits pertaining to Plaintiff's actual or intended production of any items practicing the alleged inventions disclosed or claimed in the patent-in-suit.

**REQUEST FOR PRODUCTION NO. 23.**

All documents and things referring to, relating to, concerning any actual and forecasted cost of goods sold pertaining to Plaintiff's actual or intended production of any items practicing the alleged inventions disclosed or claimed in the patent-in-suit.

**REQUEST FOR PRODUCTION NO. 24.**

All documents and things referring to, relating to, concerning any actual or forecasted revenues pertaining to the patent-in-suit, including, without limitation, any actual or forecasted revenues from Plaintiff's licensing, litigation, or other enforcement efforts with respect to the patent-in-suit.

**REQUEST FOR PRODUCTION NO. 25.**

All documents and things pertaining referring to, relating to, concerning, or constituting any business plans, marketing plans, marketing efforts, promotional programs, offers for sale, licensing strategies, market studies, commercialization studies, and/or customer studies or data referring to, relating to, or concerning the patent-in-suit or any patent, patent application or technology related to the subject matter disclosed or claimed in the patent-in-suit.

**REQUEST FOR PRODUCTION NO. 26.**

All documents and things referring to, relating to, concerning or evidencing any revenues received, prices charged, costs incurred, royalties or profits earned by Plaintiff, Plaintiff's

licensees, licensors, assignees, or assignors in connection with the patent-in-suit, or any products or services related technology of the subject matter disclosed or claimed in the patent-in-suit.

## REQUEST FOR PRODUCTION NO. 27.

All documents and things referring to, relating to, concerning, or constituting Plaintiff's policies and business strategies regarding the seeking, granting, withholding or negotiating of licenses, or regarding the preferred or required terms of such licenses.

## REQUEST FOR PRODUCTION NO. 28.

All documents referring to, relating to, concerning, or constituting any prior art to the patent-in-suit, including, without limitation, the first offer for sale or license, first sale or license, or first use, whether public or otherwise and whether experimental or otherwise, of each of the alleged inventions disclosed or claimed in the patent-in-suit.

## REQUEST FOR PRODUCTION NO. 29.

All documents describing in a printed publication any of the alleged inventions claimed in the patent-in-suit, including the first such description in a printed publication.

## REQUEST FOR PRODUCTION NO. 30.

All documents referring to, relating to, or concerning the validity or invalidity of the patent-in-suit under 35 U.S.C. §§102 and/or 103, including, without limitation, prior art and any opinions of counsel, consultants or experts.

## REQUEST FOR PRODUCTION NO. 31.

All documents and things referring to, relating to, concerning, or relied on in any opinions produced in response to Request For Production No. 30

**REQUEST FOR PRODUCTION NO. 32.**

All documents and things referring to, relating to, or concerning any and all interference, reissue, or reexamination judicial or administrative proceedings, whether such proceedings took place in the United States, the United Kingdom, the European Patent Office or elsewhere, involving any of the patent-in-suit, related patents, foreign counterpart patents, or patent applications leading to the patent-in-suit or related patents

**REQUEST FOR PRODUCTION NO. 33.**

All documents and things concerning the preparation and prosecution of the patent application(s) for the patent-in-suit, any prior and/or currently pending continuations and divisional continuation(s)-in-part applications related to the patent-in-suit, related patents, or foreign counterpart patents including, without limitation, draft applications, invention disclosures, all prior art whether cited in such applications or not, all copies of the file histories marked or annotated by Plaintiff, and other materials prepared for sending to the U.S. Patent and Trademark Office, papers sent to or received from the U.S. Patent and Trademark Office, notes and memoranda of interviews (telephone or in person), correspondence, and attorney time records and bills.

**REQUEST FOR PRODUCTION NO. 34.**

All documents and things referring to, relating to, concerning or constituting any communication between Prism and VeriSign and/or each of the Defendants prior the filing of this lawsuit relating in any way to the patent-in-suit or related patents, and/or the subject matter disclosed or claimed in the patent-in-suit or related patents.

11

**REQUEST FOR PRODUCTION NO. 35.**

All documents and things referring to, relating to, concerning or constituting any actual or attempted assignment, transfer, conveyance, license, mortgage, lien, or granting of any security interest in or of any rights to any of the patent-in-suit, related patents, foreign counterpart patents, or patent applications leading to the patent-in-suit or related patents.

**REQUEST FOR PRODUCTION NO. 36.**

All documents and things referring to, relating to, concerning or constituting any inquires, offers, requests, proposals, or negotiations to assign, transfer, convey, license, mortgage, lien, or grant of security interest in or of any rights to any of the patent-in-suit, related patents, foreign counterpart patents, or patent applications leading to the patent-in-suit or related patents.

**REQUEST FOR PRODUCTION NO. 37.**

All documents and things referring to, relating to, concerning or constituting any actual or attempted assignment, transfer, conveyance, license, mortgage, lien, or granting of any security interest in or of any rights to any patents, technology, or know-how related to the technology disclosed in the patent-in-suit, including without limitation, computer and/or electronic based subscription access systems, internet security, web server or local area network security, electronic security keys, electronic identification tokens, electronic password authentication, and electronic clearinghouses.

**REQUEST FOR PRODUCTION NO. 38.**

All documents provided by or to any consultant or expert Plaintiff has retained to provide testimony (whether live in court, or by affidavit, declaration, deposition, report, or disclosure) in this action.

## REQUEST FOR PRODUCTION NO. 39.

All documents referring to, relating to, concerning, or constituting business and technical activities of the Plaintiff, including organizational charts and other documents sufficient to identify its directors and officers, parents, and subsidiaries.

## REQUEST FOR PRODUCTION NO. 40.

All documents and things referring to, relating to, concerning or constituting Plaintiff's document retention policy.

13

Dated: September 15, 2005

*Of Counsel*

Edward F. Mannino
Jason A. Snyderman
AKIN GUMP STRAUSS HAUER & FELD LLP
One Commerce Square, Suite 2200
2005 Market Street
Philadelphia, PA 19103
Telephone: (215) 965-1200
Fax: (215) 965-1210


Frank C. Cimino
Jin-Suk Park
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, NW
Washington, DC 20036-1564
Telephone: (202) 887-4000
Fax: (202) 887-4288

By: _Patricia S Rogowski_

Patricia Smink Rogowski
Delaware Bar ID 2632
The Nemours Building
1007 North Orange Street
PO Box 2207
Wilmington DE 19899
Telephone : (302) 658-9141
Fax: (302) 658-5614

*Attorneys for Defendant, VeriSign, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2005, a true and correct copy of the foregoing DEFENDANT VERISIGN, INC.'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFF PRISM TECHNOLOGIES LLC NOS. (1-40) was caused to be served on the following by Hand or via First Class Mail:

Richard D. Kirk (By Hand)
The Bayard Firm
22 Delaware Avenue
Suite 900
Wilmington, DE 19899

Dirk D. Thomas (First Class Mail)
Robins, Kaplan, Miller & Ciresi, LLP
1801 K Street, N.W.
Suite 1200
Washington, D.C. 20006-1307

Gregory P. Teran (First Class Mail)
Wilmer Cutler Pickering Hale & Dorr LLP
60 State Street
Boston, MA 02109

David M. Schlitz (First Class Mail)
Baker Botts LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2450

John DiMatteo (First Class Mail)
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019-6099

Frederick L. Cottrell, III (By Hand)
Richards Layton & Finger
One Rodney Square
920 North King Street,
Wilmington, DE 19801

Richard L. Horwitz (By Handl)
Potter Anderson & Corroon
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899.

Steven J. Balick (By Hand)
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899.

By: _Patricia S. Rogowski_

Patricia Smink Rogowski
Bar ID 2632

# EXHIBIT 7

# ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

SUITE 1200
1801 K STREET, N W.
WASHINGTON, D C 20006-1307
TEL: 202-775-0725  FAX: 202-223-8604
www rkmc com

ATTORNEYS AT LAW

ANDRÉ J. BAHOU
(202) 736-2707

April 24, 2006

**VIA E-MAIL**

Daniel E. Yonan, Esquire
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue. N.W.
Washington, D.C. 20036-1564

      Re:    *Prism Technologies LLC v. VeriSign, Inc., et al.*
              Civil Action No. 1:05-cv-00214-JJF

Dear Mr. Yonan:

      We have reviewed VeriSign, Inc.'s Answers and Objections to Prism's Revised First Set of Interrogatories and Prism's Revised First Set of Rule 34 Requests for Production of Documents and Things. For the reasons set forth herein, Prism requests that VeriSign supplement its responses.

## INTERROGATORIES

General Objection No. 4

      VeriSign objects to producing any proprietary or confidential information until a protective order is entered in this matter. Although a protective order appears to be nearing execution, please state whether you have withheld any documents based on this objection. Also, please state the approximate volume of documents and the date you expect to produce these documents. In light of Local Rule 26.2 (obligating counsel to keep in confidence any information properly labeled and produced before entry of protective order) and in light of my letter to all Defendants on January 5, 2006, adequate protections are in place for VeriSign to produce confidential documents.

      To the extent you maintain your objection and withhold any documents based on this objection, please state in detail the name, address, and nature of engagement with each third

Daniel E. Yonan, Esquire
April 24, 2006
Page 2

party with whom you have a confidentiality agreement; state the author(s), recipient(s), date; and describe the documents being withheld in connection with each confidentiality agreement. Also, produce each confidentiality agreement that you claim prevents you from releasing information subject to that third party confidentiality agreement.

General Objection No. 14

In this objection VeriSign states that its Go Secure product is irrelevant because Prism has not accused that product of infringement. Notwithstanding our specific allegations regarding the Go Secure product in the Complaint (dated April 11, 2005) and Amended Complaint (dated June 22, 2005), Prism has supplemented its response to VeriSign's Interrogatory No. 2 and provided a detailed claim chart showing how Go Secure infringes the asserted claims of the '416 patent. Please supplement your response and include information regarding all the accused products, including but not limited to VeriSign's Identity Protection (VIP), Unified Authentication (UA), and Go Secure Authentication Solutions.

Interrogatory No. 2

VeriSign states that it would consider supplementing this Interrogatory to include the Go Secure product once Prism demonstrated the relevance of the Go Secure product. In addition to our allegations in the Amended Complaint, we have provided you a claim chart showing how the Go Secure product infringes the asserted claims of the '416 patent. Please supplement your responses regarding all of VeriSign's accused products, including the related hardware tokens, USB devices, or Smart Cards.

Interrogatory No. 3

Prism requested that VeriSign provide claim charts, among other things, showing VeriSign's contentions of which asserted claim element(s) of the '416 patent are not met. VeriSign refused to properly respond. Instead, VeriSign somehow contends that Prism's detailed claim chart is not specific enough to show how each and every claim element is met, without also providing Prism's claim interpretation. We disagree. In addition to providing you with a detailed claim chart and corresponding structure for the means clauses, Prism stated that each claim term should be construed according to its ordinary meaning. VeriSign should now supplement its response and provide the requested claim charts.

Interrogatory No. 4

Prism requested, among other things, that VeriSign provide a claim chart identifying the exact structure or step disclosed in the allegedly invalidating prior art reference. VeriSign did not provide a claim chart, and therefore its response is deficient. Notwithstanding your assumption that Prism "may propose" an "overly broad claim interpretation," VeriSign should state its invalidity contentions with respect to its allegations, irrespective of Prism's

Daniel E. Yonan, Esquire
April 24, 2006
Page 3

interpretation. Accordingly, please supplement your response and provide the requested claim charts.

## DOCUMENT REQUESTS

### General Objection No. 13

In this objection VeriSign states that its Go Secure product is not reasonably calculated to lead to the discovery of admissible evidence because it is not sold with a "hardware key" or related to the Unified Authentication (UA) product. In addition to our specific allegations regarding the Go Secure product in the Complaint (dated April 11, 2005) and Amended Complaint (dated June 22, 2005), Prism has supplemented its response to VeriSign's Interrogatory No. 2 and provided a detailed claim chart showing how Go Secure infringes the asserted claims of the '416 patent. In that regard, please supplement your production and include information regarding all of VeriSign's accused products.

### Document Request No. 1

Prism requested one copy of each VeriSign's IAM software suite and hardware products, specifically including VeriSign's Go Secure Authentication Suite and VeriSign's Unified Authentication Suite. VeriSign objects to producing one set of each of the accused products because they are available from "public sources." The fact that documents or things are available from a public source, is not, by itself, a valid basis for objecting or refusing to produce such documents or things if those items are within VeriSign's possession, custody, or control. *Regal Elecs., Inc. v. Pulse Eng'g, Inc.*, 2005 U.S. Dist. LEXIS 29955 (N.D. Cal. 2005) ("[Fed. R. Civ. P. 34], however, does not excuse [a party] from providing documents in its possession or control, solely because the information is also publicly available.") Prism requests supplemental production of one set of software for VeriSign's UA, Go Secure, and VIP Authentication Solutions, as well as other accused products at issue, such as USB tokens, Secure Storage Tokens, Multipurpose Next-Generation Tokens, and Smart Cards.

### Document Requests Nos. 1-5, 7-9, 11-12, 21, 24, 26-27, 29-31

VeriSign's objections to Document Request Nos. 1-5, 7-9, 11-12, 21, 24, 26-27, 29-31 incorporates General Objection 13 and/or states that VeriSign will consider supplementing its responses for the Go Secure product. For the same reasons stated above regarding General Objection No. 13, please supplement your production and include information regarding all of VeriSign's accused products.

### Document Request Nos. 8-9, 11-12

VeriSign objects to producing documents related to its licensing agreements, royalty agreements, or product pricing regarding computer software and hardware products. Further,

Daniel E. Yonan, Esquire
April 24, 2006
Page 4


VeriSign limits its response to documents relating to UA. VeriSign's limitation is unfounded. The documents requested are relevant and/or reasonably likely to lead to admissible evidence regarding damages adequate to compensate for VeriSign's infringement. *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). Hence, please supplement your document production accordingly.

Prism specifically reserves its rights to challenge other deficiencies not addressed here. Notwithstanding our reservations, please supplement your responses to address the concerns stated above.

Sincerely,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

André J. Bahou

# EXHIBIT 8

# AKIN GUMP
# STRAUSS HAUER & FELD LLP

▓▓▓▓▓▓▓▓▓▓▓▓ Attorneys at Law

DANIEL E. YONAN
202 887.4497/fax: 202 887 4288
dyonan@akingump.com

May 11, 2006

<u>**Via E-Mail**</u>

Andre J. Bahou, Esquire
Robins, Kaplan, Miller & Ciresi L.L.P.
Suite 1200
1801 K Street, N.W.
Washington, DC 20006-1307

> Re:   *Prism Technologies LLC v. VeriSign, Inc., et al.*
> **Civil Action No. 1:05-CV-00214-JJF**

Dear Mr. Bahou:

This letter is in reply to your letter of April 24, 2006, alleging 'deficiencies' in VeriSign's interrogatory and document request responses. Subject to VeriSign's original objections, the items you raised are addressed more fully below, followed by discovery items VeriSign would like Prism to address.

## VeriSign Interrogatory Responses

*General Objection No. 4*: VeriSign has not withheld the production of any documents on the basis that a protective order has not been formalized. At the time our response was served, over six (6) months ago, there very little movement on formalizing a protective order. Since then, based upon the terms set forth in your January 5, 2006 letter, we have produced well over 200,000 documents. We further expect to produce additional documents shortly under the terms of the protective order, which has only recently been agreed to by all parties.

*General Objection No. 14*: VeriSign, where necessary and appropriate, will supplement its responses to include further information about its Go Secure and Identity Protection products. Prism, however, only recently accused VeriSign's Identity Protection product (less than one (1) month ago). In view of this development, VeriSign requires additional time to locate, review, and produce any responsive documents, and to develop its positions, before it can fully respond to Prism's requests.

*Interrogatory No. 2*: This Interrogatory only asks that VeriSign identify its "Identity and Access Management software or hardware product[s]" available since 1996. As Identity and

AKIN GUMP
STRAUSS HAUER & FELD LLP
━━━━━━━━━━━━ Attorneys at Law

Andre J. Bahou, Esquire
May 11, 2006
Page 2

Access Management is defined, subject to our original objections, Unified Authentication, Go Secure, and Identity Protection are the only responsive VeriSign products ("Accused Products"). Accordingly, no further supplementation is required.

*Interrogatory No. 3*:  VeriSign cannot adequately describe its non-infringement positions until Prism first provides its interpretations for claims 1 and 24 of the asserted '416 patent.  It is Prism's burden—not VeriSign's—to show how each element of each claim is met by the accused VeriSign products.  While this issue is currently before the Court on a motion to compel, should Prism decide to supply its claim interpretations (and provide what it ascribes the 'plain and ordinary' meaning actually is for the terms identified by VeriSign's Interrogatory No. 13), VeriSign will supplement its response.

*Interrogatory No. 4*:  VeriSign disagrees that its Response is deficient simply because it chose to disclose its invalidity contentions using a narrative as opposed to using a 'claim chart.' Notwithstanding, to the extent further invalidity arguments are developed, VeriSign will supplement this Interrogatory.

<u>VERISIGN DOCUMENT REQUEST RESPONSES</u>

*General Objection No. 13*:  VeriSign intends to supplement its production, where necessary, to include information about its each of its Accused Products.  *See* Res. to General Objection No. 14, *supra*.

*Document Request No. 1*:  VeriSign intends to produce one (1) copy of each of its Accused Products to Prism.

*Document Requests Nos. 1-5, 7-9, 11-12. 21, 24, 26-27, 29-31*:  As provided *supra*, VeriSign intends to supplement its production to include any information on its Accused Products that has not been previously produced.

*Document Request Nos. 8-9, 11-12*:  To the extent information exists about VeriSign's licensing, royalty agreements, or pricing, with respect to its Accused Products, and has not been produced already, VeriSign will produce any responsive, non-privileged documents.

AKIN GUMP
STRAUSS HAUER & FELD L.L.P
━━━━━━━━━━ Attorneys at Law

Andre J. Bahou, Esquire
May 11, 2006
Page 3

## OUTSTANDING PRISM DISCOVERY ITEMS

1. In your letter to me of February 21, 2006, you indicated a 'supplemental' Prism production would be forthcoming. We have not received any supplemental documents, and it has been nearly three (3) months since your letter. Please let us know when we can expect to receive these documents.

2. Can you advise us as to the status, volume and timeframe for production of any responsive documents that have been recovered from Prism's back-up tapes by EMag Solutions, LLC.

3. We also have requested a copy of Prism's Internet Subscription Access (ISA) product, along with any prototypes made or distributed. *See* VeriSign's Doc. Req. No. 9. This includes, and is not limited to the following ISA components: Subscriber Software, Server Software, Site Administration Software, Clearinghouse Server Software, Subscriber Administration Software, along with the Subscription Kit (including any software and a hardware access key). Please let us know when we can expect to receive copies of this ISA software and hardware.

4. VeriSign's Interrogatory No. 3 requests that Prism describe, *inter alia*, when it first became aware of VeriSign Accused Products. Prism only answered this Interrogatory with respect to VeriSign's Unified Authentication product. Now that Prism has updated its allegations to include VeriSign's Go Secure and Identity Protection products, we request that Prism supplement its response accordingly.

Very truly yours,

Daniel E. Yonan

# EXHIBIT 9

# ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

SUITE 1200
1801 K STREET, N.W.
WASHINGTON, D.C. 20006-1307
TEL: 202-775-0725  FAX: 202-223-8609
www.rkmc.com

ATTORNEYS AT LAW

ANDRÉ J. BAHOU
(202) 736-2707

June 2, 2006

**VIA E-MAIL**

Daniel E. Yonan, Esquire
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue. N.W.
Washington, D.C. 20036-1564

> Re:     *Prism Technologies LLC v. VeriSign, Inc., et al.*
>         Civil Action No. 1:05-cv-00214-JJF

Dear Mr. Yonan:

I write to inquire about VeriSign, Inc.'s document production. During the parties' teleconference of April 20, 2006, Prism agreed that you may narrow your searches by removing from the list the names of the persons for which you confirm that you have searched their e-mail files. (*See also* Letter from D. Yonan to A. Bahou of April 21, 2006). In addition, Jason Snyderman, Esq. stated that agreement would accelerate the production of those e-mail documents for mid-May. (*See also* Letter from D. Yonan to A. Bahou of April 21, 2006 confirming mid-May production of those e-mail documents). To date, however, we have not received any further production from you. In that regard, please respond by June 9, 2006 and advise us as to the status, volume, and timeframe for production of the remaining documents to substantially complete your document production. Also, please let us know when we can anticipate receiving your updated privilege log.

Please call me with any questions.

Sincerely,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

*André J. Bahou*

André J. Bahou

cc:     Robert A. Auchter, Esquire

DCI 45684624 1

ATLANTA    BOSTON    LOS ANGELES    MINNEAPOLIS    NAPLES    SAINT PAUL    WASHINGTON, D.C.