# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PRISM TECHNOLOGIES LLC

       Plaintiff,

v.

VERISIGN, INC., RSA SECURITY, INC.,
NETEGRITY, INC., COMPUTER
ASSOCIATES INTERNATIONAL, INC.,
and JOHNSON & JOHNSON SERVICES, INC.,

       Defendants.

Civil Action No. 05-214 JJF

## PLAINTIFF PRISM TECHNOLOGIES LLC'S
## OPENING CLAIM CONSTRUCTION BRIEF

Richard D. Kirk (rk0922)
Ashley B. Stitzer (as3891)
THE BAYARD FIRM
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899
(302) 655-5000
rkirk@bayardfirm.com
astitzer@bayardfirm.com

ATTORNEYS FOR PLAINTIFF
PRISM TECHNOLOGIES LLC

OF COUNSEL:

Dirk D. Thomas, Esq.
Robert A. Auchter, Esq.
Kenneth A. Freeling, Esq.
Jason R. Buratti, Esq.
André J. Bahou, Esq.
Chandran B. Iyer, Esq.
Robins, Kaplan, Miller & Ciresi, L.L.P.
1801 K Street, N.W., Suite 1200
Washington, D.C.  20006
(202) 775-0725

**F.     "subscriber"**

*A person, organization, or computer registered to be allowed access to said selected computer resources.*

The terms "subscriber" and "user" are used interchangeably throughout the specification and drawings of the '416 patent, *e.g.*, at 1:63-67, 7:48-53, Fig. 3, Fig. 17 (block 100) and Fig. 18 (blocks 160-168), and mean the same thing in the context of the '416 patent. The term "user" is simply defined as "a person or thing that uses." *Webster's New Twentieth Century Dictionary* (1983) (Ex. G). The specification states that payment for a subscription is *possible* but not necessary; becoming a subscriber "*could* involve things *like* collecting payment, demographic checks, etc." ('416 patent at 14:43-44) (emphases added). Only in (unasserted) claim 8 is the transmission of credit card information mentioned, and it is mentioned there only as one of a number of possible types of "demographic," not necessarily subscription, data. *(See also* '416 patent at 10:15-16). Defendants attempt to have the term subscriber interpreted to *require* a recurring payment. The fact that the '416 patent states that requiring payment from the subscriber is permissive and not mandatory, and the fact that the patent refers to the "subscriber" and a "user" interchangeably, however, establishes that this claim term should not be narrowly interpreted as defendants urge.

**G.     "first server computer"**

*A computer that makes available information or other resources.*

The first server computer is the access server 34 shown in Fig. 4, which shows that the resources accessed by a user (the block titled "Protected Contents" in Fig. 4) do *not necessarily reside in* and are *not necessarily stored on* the access server 34.

In the context of claim 1, the first server computer is adapted to perform functions that allow it to provide a user with access to certain resources, forward its own and subscribers'

26

identity data to the clearinghouse, receive identity data from the client, and request the subscriber client to forward identity data. Ultimately, the first server computer permits the subscriber to have access to the "Protected Content," as shown by the dotted line arrows in Fig. 3. The first server computer performs a gatekeeper function, thereby controlling access to selected computer resources. The first server computer "makes available," or "communicates," certain computer resources. Those resources, however, may be, and in the preferred embodiment are, stored elsewhere. ('416 patent at 7:29-47; 8:39-41).

**H.    "operating session"**

*A series of interactions between a subscriber client computer and a server computer during which access to selected computer resources is requested.*

An operating session incorporates a subscriber's request for access to selected computer resources. Claim 1 states that the server software means is adapted to forward the required identity data to the clearinghouse means "at the beginning of an operating session." ('416 patent at 35:38-40). This data must be forwarded *prior to* initial authentication because the authentication process itself operates upon this data. The conventional meaning of "beginning" is "the time or place of starting." *Webster's New Twentieth Century Dictionary* (1983) (Ex. G). There is no evidence that the inventors intended "beginning" to have other than its conventional meaning. Therefore, the initial forwarding of identity data occurs at "the time of starting" an operating session, and the operating session begins upon the request for access to protected content.

**I.    "hardware key"**

*A device or object from which data may be read or emitted.*

"Hardware key" is used synonymously with the terms "access key" and "hardware access key" in the specification. ('416 patent at 7:61-65; 6:44; 8:35-36). These terms therefore have

September 22, 2006                                    THE BAYARD FIRM


                                                     /s/ Richard D. Kirk (rk0922)
                                                     Richard D. Kirk (rk0922)
                                                     Ashley B. Stitzer (as3891)
                                                     222 Delaware Avenue, Suite 900
                                                     Wilmington, Delaware 19899
                                                     (302) 655-5000
                                                     rkirk@bayardfirm.com
                                                     astitzer@bayardfirm.com

                                                     ATTORNEYS   FOR   PLAINTIFF
                                                     PRISM TECHNOLOGIES LLC

OF COUNSEL:

Dirk D. Thomas, Esq.
Robert A. Auchter, Esq.
Kenneth A. Freeling, Esq.
Jason R. Buratti, Esq.
André J. Bahou, Esq.
Chandran B. Iyer, Esq.
Robins, Kaplan, Miller & Ciresi, L.L.P.
1801 K Street, N.W., Suite 1200
Washington, D.C.  20006
(202) 775-0725

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PRISM TECHNOLOGIES LLC

       Plaintiff,

v.

VERISIGN, INC., RSA SECURITY, INC.,
NETEGRITY, INC., COMPUTER
ASSOCIATES INTERNATIONAL, INC.,
and JOHNSON & JOHNSON SERVICES, INC.,

       Defendants.

Civil Action No. 05-214 JJF

## PLAINTIFF PRISM TECHNOLOGIES LLC'S
## CLAIM CONSTRUCTION ANSWERING BRIEF

Richard D. Kirk
Ashley B. Stitzer
THE BAYARD FIRM
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899-5130
(302) 655-5000
rkirk@bayardfirm.com
astitzer@bayardfirm.com
ATTORNEYS FOR PLAINTIFF
PRISM TECHNOLOGIES LLC

OF COUNSEL:

Dirk D. Thomas
Robert A. Auchter
Kenneth A. Freeling
André J. Bahou
Aziz Burgy
ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.
1801 K Street, N.W., Suite 1200
Washington, D.C. 20006
(202) 775-0725

clearinghouse has authenticated the subscriber/user, not *after* initial authentication as

defendants propose.[4]

### 5. Defendants urge the Court to adopt a meaning for "subscriber" that contradicts their own understanding of the term

| "subscriber" | |
|---|---|
| **Prism:** A person, organization, or computer registered to be allowed access to [said] selected computer resources. The term subscriber and the term user are applied synonymously throughout the specification and drawings, and these terms have the same meaning. | **Defendants:** A user that pays an information provider to receive access to restricted computer resources. |

The term "subscriber" in the field of computers and networks refers to someone

authorized to receive information, and does not necessarily require payment of a fee.[5]

The '416 patent uses the terms "subscriber" and "user" synonymously, thereby

establishing that they were intended to mean the same thing, as pointed out in Prism's

Opening *Markman* Brief. (D.I. 266 at 26). Defendants ask the Court to add the

requirement of payment to the definition of "subscriber." In doing so, defendants

---

[4]    Although the abstract of the '416 patent may refer to an "operating session" that starts after user authentication, the *claims* specifically define the "operating session" as beginning upon the request for access when the subscriber client computer identity data is forwarded to the clearinghouse, i.e., *before* authentication has occurred. Regardless, the invention does not depend on when the "operating session" is defined to begin. A user of the claimed invention might begin to time an operating session upon a request for access to "Protected Content," upon authentication of the user, or at some other time. This dispute about when an "operating session" begins arises solely as a result of defendants' attempt to read a "re-authentication" limitation into the independent claims. But the doctrine of claim differentiation strongly suggests that independent claims 1 and 24 do not require such a re-authentication limitation, as does the fact that the Examiner's statement of reasons for allowance apply to initial authentication of the presence of the hardware key and are not specific to re-authentication. (*See* Section II.3.b *supra*).

[5]    *See,* Ex. B, *American Heritage Dictionary* (4th ed. 2000), which defines "subscribe" in the context of the Internet as: "4) To authorize (someone) to receive or access electronic texts or services, especially over the Internet."

12

contravene their own use of the word in the context of their accused products, as shown below.

Defendants themselves use the word "subscriber" consistent with Prism's definition. For example, defendant JJSI requires J&J employees who apply for a "digital identity" (which allows them to access JJSI's protected computer resources) to sign what JJSI calls a "JJEDS Digital Identity Subscriber Agreement" (Ex. C at JJ008813). The signature line of the agreement is labeled SUBSCRIBER SIGNATURE, and is prefaced by a paragraph that reads:

> IN WITNESS WHEREOF, SUBSCRIBER has caused this Digital Certificate Subscriber Agreement to be duly executed as of the date set forth below.

Obviously, JJSI does not charge its employees (or those of its affiliates) a fee to access JJSI's protected computer resources, and the Subscriber Agreement reflects no such charge.

Likewise, defendant Netegrity (a wholly-owned subsidiary of defendant Computer Associates), in its "Policy Design" document for the accused infringing SiteMinder product, uses the term "subscriber" to refer to a user of the accused system and does not limit that term to a user who pays a subscription fee. (Ex. D at CA000610). Similarly, defendant VeriSign uses a dictionary of terms that defines "subscriber" as a user of a computer network and not necessarily one who pays a fee. (Ex. E at VERI-0054602).

While the inventors' preferred embodiment of the invention at the time they filed the '416 patent application may have incorporated the ability to bill subscribers for access to protected computer resources, that potential feature of the invention was not recited in

independent claims 1 and 24. In fact, dependent claims 10 and 30 specifically recite that

billing feature. Here again, the doctrine of claim differentiation strongly cautions against

adopting defendants' proposed interpretation of this claim term.

6. **Defendants impermissibly attempt to read limitations from the
specification into the definition of "subscriber client computer"**

| "subscriber client computer" | |
|---|---|
| **Prism:** A programmable electronic device that can store, retrieve, and process data used by a subscriber to attempt to access said selected computer resources. | **Defendants:** A computer that a subscriber uses to access selected computer resources of the first server computer. |

The McGraw-Hill Dictionary of Scientific and Technical Terms defines a

"computer" as "[a] device that receives, processes, and presents data. . . ." *McGraw-Hill

Dictionary of Scientific and Technical Terms* (5th ed. 1994) (Ex. F). Defendants ask this

Court to limit the term "subscriber client computer" to a PC. (D.I. 268 at 22).

Defendants, however, can point to no intrinsic evidence that the inventors of the '416

patent intended "computer" to necessarily be limited to a PC. Since 1997, when the

inventors filed their application for the '416 patent, devices that can act as computers and

perform the functions and steps defined in the asserted claims have expanded well

beyond a desktop or laptop PC. The fact that the preferred embodiment of the subscriber

client computer in 1997 may have been a PC does not mean that the claims are so limited.

*See Varco, L.P.*, 436 F.3d at 1375-76.

14

### III.    CONCLUSION

For the reasons presented above and in its Opening *Markman* Brief, Prism urges this Court to adopt its proffered interpretations of the disputed claim terms and to reject defendants' competing interpretations.

THE BAYARD FIRM

October 13, 2006

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk (rk0922)
Ashley B. Stitzer (as3891)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899-5130
(302) 655-5000
rkirk@bayardfirm.com
astitzer@bayardfirm.com
ATTORNEYS FOR PLAINTIFF
PRISM TECHNOLOGIES LLC

OF COUNSEL:

Dirk D. Thomas, Esq.
Robert A. Auchter, Esq.
Kenneth A. Freeling, Esq.
André J. Bahou, Esq.
Aziz Burgy, Esq.
Robins, Kaplan, Miller & Ciresi, L.L.P.
1801 K Street, N.W., Suite 1200
Washington, D.C.  20006
(202) 775-0725

# Exhibit C

# THE BAYARD FIRM
### A T T O R N E Y S

222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
Zip Code For Deliveries 19801

ℼ MERITAS LAW FIRMS WORLDWIDE

www.bayardfirm.com

302-655-5000
(Fax) 302-658-6395

Writer's Direct Access

ELECTRONICALLY FILED

(302) 429-4208
rkirk@bayardfirm.com

November 1, 2006

The Honorable Joseph J. Farnan, Jr.
United States District Court
844 King Street
Wilmington, Delaware 19801

    Re:    *Prism Technologies LLC v. VeriSign, Inc., et al.*
                  <u>Civil Action No. 05-214-JJF</u>

Dear Judge Farnan:

        The parties are scheduled to present claim construction issues to the Court on Thursday, November 9, 2006 beginning at 1:00 p.m.

        Plaintiff Prism Technologies LLC ("Prism") requests the opportunity to present testimony from Dr. Michael Shamos, Prism's technical expert, and/or Mr. Richard Gregg, one of the co-inventors of the patent-in-suit.  (In making this request for the *opportunity* to present witnesses, Prism does not mean to obligate itself to do so.)

        If the Court were to grant this permission, Prism *may* present Dr. Shamos' or Mr. Gregg's testimony regarding the technological background of the patent-in-suit and the existence in the patent specification of algorithms and structure that embody the means clauses of claim 1.  Additionally, both witnesses would be available to answer any questions the Court may have.

        Both Dr. Shamos and Mr. Gregg plan to attend the hearing on November 9, 2006 as observers, in any event.

        Respectfully submitted,

        *Richard D. Kirk*

        Richard D. Kirk (rk0922)

cc:    Clerk of Court (courtesy copy by hand)
       Counsel in accordance with the attached certificate and agreed service protocol

631020v1

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on November 1, 2006, he electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send automatic notification of the filing to the following:

Frederick L. Cottrell, III, Esq.
Alyssa M. Schwartz, Esq.
Richards Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19801

Richard L. Horwitz, Esq.
David E. Moore, Esq.
Potter Anderson & Corroon LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
P.O. Box 951
Wilmington, DE 19899

Patricia S. Rogowski, Esq.
Connolly, Bove, Lodge & Hutz, LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
222 Delaware Ave., 17th Fl.
Wilmington, DE 19801

The undersigned counsel further certifies that copies of the foregoing document were sent by hand on November 1, 2006 to the above counsel and by first-class mail or overnight delivery as indicated to the below counsel:

*Via Federal Express*

John DiMatteo, Esq.
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019-6099

William Lee, Esq.
Wilmer Cutler Hale & Dorr LLP
60 State Street
Boston, MA 02109

Jason Snyderman, Esq.
Akin Gump Strauss Hauer & Feld LLP
One Commerce Square, Suite 2200
2005 Market Street
Philadelphia, PA 19103

Frank C. Cimino, Esq.
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, NW
Washington, DC 20036-1564

David M. Schlitz
Baker Botts L.L.P.
1299 Pennsylvania Avenue, NW
Washington, DC  20004-2400

Samir A. Bhavsar
Jeffrey D. Baxter
Baker Botts L.L.P.
2001 Ross Avenue
Dallas, TX  75201-2980

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk

587422v1

# Exhibit D

1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2             IN AND FOR THE DISTRICT OF DELAWARE

 3                           - - -

 4   PRISM TECHNOLOGIES LLC       :       CIVIL ACTION
                                  :
 5            Plaintiff           :
                                  :
 6         vs.                    :
                                  :
 7   VERISIGN, INC., RSA SECURITY,:
     INC., NETEGRITY, INC., COMPUTER :
 8   ASSOCIATES INTERNATIONAL, INC.,  :
     and JOHNSON & JOHNSON SERVICES,  :
 9   INC.,                        :
                                  :
10            Defendants          :       NO. 05-214 (JJF)

11                           - - -

12                               Wilmington, Delaware
                                 Thursday, November 9, 2006
13                               1:05 o'clock, p.m.

14                           - - -

15   BEFORE:  HONORABLE JOSEPH J. FARNAN, JR., U.S.D.C.J.

16                           - - -

17   APPEARANCES:

18            THE BAYARD FIRM
              BY:  RICHARD D. KIRK, ESQ.
19

20                 -and-

21

22

23                               Valerie J. Gunning
                                 Official Court Reporter
24

25
```

2

```
 1   APPEARANCES (Continued):

 2
             ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.
 3           BY:  DIRK D. THOMAS, ESQ.,
                  ANDRE J. BAHOU, ESQ. and
 4                AZIZ BURGY, ESQ.
                  (Washington, D.C.)
 5
                  Counsel for Plaintiff
 6

 7           CONNOLLY, BOVE, LODGE & HUTZ, LLP
             BY:  PATRICIA S. ROGWOSKI, ESQ.
 8

 9                    -and-

10
             AKIN GUMP STRAUSS HAUER & FELD LLP
11           BY:  FRANK C. CIMINO, ESQ. and
                  (Washington, D.C.)
12

13                    -and-

14
             AKIN GUMP STRAUSS HAUER & FELD LLP.
15           BY:  JASON SNYDERMAN, ESQ.
                  (Philadelphia, Pennsylvania)
16

17                Counsel for Defendant VeriSign, Inc.

18

19           RICHARDS, LAYTON & FINGER
             BY:  ALYSSA M. SCHWARTZ, ESQ.
20

21                    -and-

22
             WILMER CUTLER HALE & DORR LLP
23           BY:  GREG TERAN, ESQ. and
                  MARK SELWYN, ESQ.
24                (Boston, Massachusetts)

25
                  Counsel for Defendant RSA Security, Inc.
```

3

```
 1   APPEARANCES (Continued):

 2
             POTTER, ANDERSON & CORROON.
 3           BY:  RICHARD L. HORWITZ, ESQ.

 4
                      -and-
 5

 6           BAKER BOTTS L.L.P.
             BY:  DAVID M. SCHLITZ, ESQ.
 7               (Washington, D.C.)

 0
                      -and-
 9

10           BAKER BOTTS L.L.P.
             BY:  JEFFREY D. BAKER, ESQ.
11               (Dallas, Texas)

12               Counsel for Netegrity, Inc. and
                 Computer Associates International, Inc.
13

14           ASHBY & GEDDES
             BY:  STEVEN J. BALICK, ESQ.
15

16                    -and-

17
             WILLKIE FARR & GALLAGHER LLP
18           BY: JOHN DiMATTEO, ESQ.,
                 LESLIE SPENCER, ESQ. and
19               DAVID LEE, ESQ.
                 (New York, New York)
20

21               Counsel for Defendant
                 Johnson & Johnson Services, Inc.
22                             - - -

23

24   ALSO PRESENT: PRISM TECHNOLGIES LLC.
                 JERRY KORTH and
25               RICH GREGG
```

7

```
1              MR. THOMAS:  I also have copies for each of the

2    defendants.

3              We have here, your Honor, bound copies and

4    copies for your clerks.  We also have two unbound copies

5    in case that was useful for filing (handing documents to

6    the Court).

7              Your Honor, just to explain where I'm going to go

8    with my opening statements, first of all, I'm going to start

9    by giving a general overview of the technology at issue in

10   this suit, then I'm going to go into each of the specific

11   claim disputes, and I'm going to take them, your Honor, in

12   the order that they've been presented in the joint claim

13   construction statement.  That is how our opening brief

14   addressed them.  I don't think that was necessarily

15   consistent amongst all the briefing that was provided, but

16   just for your Honor's purposes, I will be taking you through

17   the slides and through my comments about each of those

18   disputes based on the order that it was presented in the

19   joint claim construction statement, which was attached to our

20   opening brief.

21             And with respect, just so your Honor knows, with

22   respect to us being able to call witnesses, we do have here

23   in the courtroom this afternoon Mr. Richard Gregg over on the

24   right.  He is one of the named inventors of the '416 patent.

25   And I also have Mr. Mike Shamus.  He is our technical
```

8

1    expert.

2              I don't intend, your Honor, to call those

3    witnesses during my opening presentation, but I do reserve

4    the right to put them on the stand for rebuttal purposes,

5    depending on what I hear today, if that would be of

6    particular use to your Honor or if we think it's necessary to

7    fulfill the record.

8              THE COURT:  All right.

9              MR. THOMAS:  First of all, your Honor, the

10   company that owns this technology, its patents, is

11   Prism Technologies.  Prism Technologies was a consulting

12   and software development company based out of Omaha,

13   Nebraska.

14             Prism Technologies developed the invention

15   as it's described in the '416 patent starting in around

16   1996.  It actually came out with a commercial version of

17   this product and they called it the ISA product.  And you

18   will see the ISA product referred to numerous times in the

19   specification of the '416 patent as the preferred

20   embodiment.

21             And I just wanted to point out to your Honor,

22   there was a commercial embodiment of this product.  It was

23   sold, a few versions of it were.  Was it a resounding success

24   as it stood?  No.  But that had more to do with the fact that

25   the company, Prism Technologies, being relatively small,

140

1              MR. CIMINO:  I think we would like an opportunity

2     to take a look at them first, your Honor.  We will advise

3     you.

4              THE COURT:  Yes.  Let me know whether you want to

5     submit something or not by, let's say, next Thursday.

6              MR. CIMINO:  Sure.

7              THE COURT:  That way you can take a look at them

8     over the weekened.

9              MR. CIMINO:  Absolutely.

10             THE COURT:  You can have some additional time to

11    submit, if you think I need it, but just tell me whether you

12    are going to submit by next Thursday.

13             MR. CIMINO:  So you know whether the record is

14    full or not?

15             THE COURT:  Whether I know it's closed or not.

16             MR. CIMINO:  Okay.

17             THE COURT:  Anything further?

18             MR. THOMAS:  Nothing further.  Thank you for your

19    time, your Honor.

20             THE COURT:  All right.  If there's nothing

21    further, we'll be in recess.

22             MR. CIMINO:  Thank you, your Honor.

23             (Court recessed at 4:40 p.m.)

24                       - - -

25