## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PRISM TECHNOLOGIES LLC

              Plaintiff,

      v.

VERISIGN, INC., RSA SECURITY, INC.,
NETEGRITY, INC., COMPUTER
ASSOCIATES INTERNATIONAL, INC.,
and JOHNSON & JOHNSON SERVICES,
INC.,

              Defendants.

Civil Action No. 05-214 JJF

**REDACTED PUBLIC VERSION**
**Exhibits Volume 1 of 4**

---

**PLAINTIFF PRISM TECHNOLOGIES LLC'S**
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION**
**TO COMPEL DEFENDANT VERISIGN, INC. TO PRODUCE**
**THE SOURCE CODE OF ITS ACCUSED PRODUCTS**

**February 2, 2007**

Richard D. Kirk (rk0922)
Ashley B. Stitzer (as3891)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899
(302) 655-5000
rkirk@bayardfirm.com
astitzer@bayardfirm.com

ATTORNEYS FOR PLAINTIFF PRISM
TECHNOLOGIES LLC

OF COUNSEL:

Dirk D. Thomas
Robert A. Auchter
Kenneth A. Freeling
André J. Bahou
Aziz Burgy
Chandran B. Iyer
ROBINS, KAPLAN, MILLER & CIRESI LLP
1875 Eye Street, N.W., Suite 300
Washington, D.C.  20006-5409
(202) 775-0725

650770-1

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

PRISM TECHNOLOGIES LLC

         Plaintiff,

      v.

VERISIGN, INC., RSA SECURITY, INC.,
NETEGRITY, INC., COMPUTER
ASSOCIATES INTERNATIONAL, INC.,
and JOHNSON & JOHNSON SERVICES,
INC.,

         Defendants.

Civil Action No. CA 05-214 JJF

**PLAINTIFF'S REVISED FIRST SET OF RULE 34 REQUESTS
FOR PRODUCTION OF DOCUMENTS AND THINGS
TO DEFENDANT VERISIGN, INC.**

Pursuant to Federal Rule of Civil Procedure 34 and the Local Rules of this judicial

district, Plaintiff Prism Technologies LLC ("Prism") requests that Defendant VeriSign, Inc.

("VeriSign") produce the documents and things requested herein at the law offices of Robins,

Kaplan, Miller & Ciresi L.L.P., 1801 K Street, N.W., Washington, D.C. 20006, or some other

location as may be agreed to between the parties, within thirty (30) days of service of these

Rule 34 requests. VeriSign should produce the responsive documents as they are kept in the

usual course of business or organize and label them to correspond with the document requests to

which they are responsive. If no responsive documents and things exist for a particular Rule 34

request, VeriSign shall so state in writing. If responsive documents and things for a particular

Rule 34 request have already been produced, Prism requests that VeriSign so state in writing.

If VeriSign withholds from production any documents and things on the basis of a claim

of attorney-client privilege or work product immunity, Prism requests that VeriSign provide to

602118v1

Prism a list separately identifying each withheld document or thing and specifying: (1) the identity of all persons who prepared and signed the document; (2) the identity of all persons designated as addressees; (3) the identity of all persons who received any copy of the document; (4) the date of the document; (5) the subject matter of the document; (6) the type of document (memorandum, pamphlet, report, etc.); (7) for each disclosure outside of VeriSign's officers and contract employees, the identification and production number of any and all confidentiality agreements that govern the disclosure; and (8) the basis for withholding the document.

If VeriSign comes into possession, custody, or control of responsive documents and things between the time of service of these Rule 34 Requests and trial, Prism requests that VeriSign supplement its production by promptly producing such documents.

**DEFINITIONS**

A.     "The '416 patent" or "patent-in-suit" refers to United States Patent No. 6,516,416, entitled "Subscription Access System For Use With An Untrusted Network." "Intrinsic evidence" shall mean all documents within the publicly available prosecution history file for the '416 patent. "Extrinsic evidence" shall mean all documents or testimony not found in the publicly available prosecution history file for the '416 patent.

B.     "Identity and Access Management" shall mean software and hardware intended to identify users in a system (employees, customers, contractors, etc.) and control their access to resources within that system by associating user rights and restrictions with the established identity, including but not limited to Web single sign-on (SSO), advanced authentication, and/or strong authentication used with USB tokens, Smart Cards, and/or digital identification.

602118v1

C.    "Go Secure" or "Go Secure Authentication Suite" refers to VeriSign's suite of managed authentication and security services, and the related software and hardware, that perform Identity and Access Management.

D.    "Unified Authentication" or "Unified Authentication Suite" refers to VeriSign's suite of managed authentication and security services, and the related software and hardware, that perform Identity and Access Management.

E.    "VeriSign," "Defendant," "you," or "your" refers to VeriSign, Inc., its officers, employees, counsel, agents, consultants, and representatives and includes joint ventures and other legal entities which are wholly or partially owned or controlled by VeriSign, Inc., either directly or indirectly, and the officers, employees, counsel, agents, consultants, and representatives of these divisions, subsidiaries, and joint ventures.

F.    The term "person" refers to natural persons, organizations, firms, corporations, and other legal entities, whether or not in the employ of plaintiff, and the acts "of" a person are defined to include the acts of directors, officers, owners, members, employees, agents or attorneys acting on the person's behalf.'

G.    To "identify" a person means to state the person's name, occupation, job title, and current business address, or if unknown, the last-known business and home address.  Unless it otherwise appears from the context, a request for identity or to identify a person relates to all persons in such category or classification.

H.    The term "document" has the meaning prescribed for "documents and things" in Fed. R. Civ. P. 34(a) and includes the original and every non-identical copy or reproduction in the possession, custody or control of VeriSign.

I.    To "identify" any document or thing means:

602118v1

- 3 -

    i.     to provide a brief description of such documents sufficient to support a request under Rule 34;

    ii.     to state the custodian of the document or the thing by name, job title, employer, and address;

    iii.     to state the place where the document or thing may be inspected; and

    iv.     if a copy of the document has been previously supplied to defendants to so state and to specifically identify the previously supplied copy by reference to production numbers or other identifying information.

J.     Unless it otherwise appears from the context, a request for identity of a person relates to all persons in such classification or category.

K.     In construing these Requests, the singular shall include the plural, and the plural shall include the singular; and the conjunctions "and" and "or" shall be read either disjunctively or conjunctively so as to bring within the scope of these requests all information that might otherwise be construed to be outside their scope.

## RULE 34 REQUESTS

1.     One set of each Identify and Access Management software and software code and/or device made, offered for sale, designed, sold, distributed, leased, or supplied by VeriSign, including but not limited to VeriSign's Go Secure Authentication Suite and VeriSign's Unified Authentication Suite.

2.     All instructional manuals or training manuals for each of the products identified in or within the scope of Request No. 1 above.

3.     All documents related to the design, creation, writing, and/or composing of each of the products identified in or within the scope of Request No. 1 above.

602118v1

4.     All documents that reflect the programming code or system architecture of each of the products identified in or within the scope of Request No. 1 above.

5.     All marketing, pricing, advertising, sales, sales projections, market studies, licenses, memoranda of understanding, agreements, royalty payments, promotional documents or audio-visual aids relating to or referring to any Identity and Access Management software and hardware products, including but not limited to the products identified in or within the scope of Request No. 1 above, whether the information originated from VeriSign or from another entity.

6.     All of VeriSign's annual and interim financial statements covering the years 1996 to the present, including but not limited to Annual Reports and all submissions made to the Securities and Exchange Commission.

7.     All documents that reflect gross and net sales and profit figures (by unit sales volume and by dollar sales volume) since 1996, whether inside or outside the United States, for each product identified in or within the scope of Request No. 1 on a monthly, quarterly, and annual basis, or on whatever timeframe VeriSign regularly keeps records of data.

8.     All documents that refer to, relate to, or constitute a patent licensing or royalty agreement entered into by VeriSign for any computer software or hardware product and/or patent since 1996.

9.     Documents sufficient to show the extent to which VeriSign has made use of the invention of the patents identified in each patent licensing or royalty agreement entered into by VeriSign for any computer software or hardware product and/or patent since 1996.

10.     All documents that refer to, relate to, reflect, or constitute the intellectual property licensing policies of VeriSign since 1996.

602118v1

- 5 -

11.     All documents that describe, refer, or relate to any royalty or license fees received or paid by VeriSign with respect to any Identity and Access Management software or hardware product.

12.     All documents that relate to pricing of the products identified in or within the scope of Request No. 1 above.

13.     All documents that refer, relate, or constitute written opinion(s) of counsel relating to the validity, infringement, or enforceability of the '416 patent.

14.     Any document referring or relating to the '416 patent.

15.     All prior art to the '416 patent and any other non-prior art documents that VeriSign contends is relevant to the validity or infringement of the '416 patent or to the interpretation of any claim terms in the '416 patent.

16.     All documents identified in any study or evaluation of, or search for, prior art to the '416 patent.

17.     All documents and things that VeriSign will offer during the trial.

18.     All documents that refer to, relate to, or constitute communications with any consultants retained to assist VeriSign regarding this litigation.

19.     All documents that refer to, relate to, support, or refute any of the allegations, averments, denials, affirmative defenses and/or counterclaims in VeriSign's Answer and Counterclaims.

20.     All documents referring or relating to Prism Resources, Inc. or Prism Technologies LLC.

21.     All documents considered, relied upon, referred to, or referenced in VeriSign's responses to Prism's Interrogatories to VeriSign.

22.    All confidentiality agreements that relate to the subject matter of this suit or that form any part of the basis of a claim of privilege for any information called for by any discovery request from Prism to VeriSign.

23.    All documents referring or relating to any inventor of the '416 patent, including Richard L. Gregg, Timothy C. Goeke, and Sandeep Giri.

24.    All documents, including but not limited to technical and marketing studies and minutes of meetings, that relate or refer to VeriSign's decision(s) to develop, design, test, manufacture, offer for sale, or sell import any Identity and Access Management software or hardware, including those identified in or within the scope of Request No. 1 above.

25.    All documents that constitute, evidence, describe, pertain to, relate or refer to, any discussion, meeting or correspondence between VeriSign and any customer, potential customer, competitor, or other person concerning the '416 patent, and the present lawsuit against Prism or any other lawsuit or administrative proceeding, anywhere in the world, involving the '416 patent.

26.    Product catalogs, price sheets, product manuals, specifications and descriptions for all Identity and Access Management software or hardware and devices sold or offered for sale by VeriSign.

27.    Documents identifying by name and location any and all distributors to whom VeriSign distributed or sold Identity and Access Management software or hardware and devices and the dates on which such sales or distributions were made.

28.    Documents which any expert you consulted or retained for this matter reviewed or relied upon when forming the bases for their expert opinions, whether asserted or not asserted in this matter, and all copies of any communications or reports developed by any such expert(s).

29.    All market studies, reports, business plans, forecasts, marketing plans or other documents concerning the market for Identity and Access Management software or hardware products and services including, but not limited to market size, market growth, market potentials and studies of the market size of competitors.

30.    To the extent not already requested,  all documents referring or relating in any way to VeriSign's policies, procedures, or other guidelines on licensing or cross-licensing of patents, patent applications or technology to or from others.

31.    Representative corporate organization charts for VeriSign, including parents, subsidiaries, affiliates, divisions, wholly-owned business entities, predecessors or successors, sufficient to show:  (a) the general organization of VeriSign and each such parent, subsidiary, affiliate, division, wholly-owned business entity, predecessor or successor; (b) the names, addresses and telephone numbers of each past and present corporate officer and director of VeriSign and each such parent, subsidiary, affiliate, division, wholly-owned business entity, predecessor, or successor; and (c) the detailed organization of each department, section, or group of VeriSign responsible for designing, developing, testing, manufacturing, exporting, importing, distribution, marketing, advertising, selling, or using Identify and Access Management software and hardware, including the products identified in or within the scope of Request No. 1 above.

32.    All documents that constitute, relate to, or refer to VeriSign's document control and retention policies, including for its electronic documents.

THE BAYARD FIRM

September 20, 2005

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899
(302) 655-5000
rkirk@bayardfirm.com

ATTORNEYS FOR PLAINTIFF PRISM
TECHNOLOGIES LLC

OF COUNSEL:

Dirk D. Thomas, Esq.
Robert A. Auchter, Esq.
Kenneth A. Freeling, Esq.
Jason R. Buratti, Esq.
André J. Bahou, Esq.
Robins, Kaplan, Miller & Ciresi, L.L.P.
1801 K Street, N.W., Suite 1200
Washington, D.C.  20006
(202) 775-0725

602118v1

# EXHIBIT 2:
# FILED UNDER SEAL

# EXHIBIT 3

# AKIN GUMP
# STRAUSS HAUER & FELD LLP
Attorneys at Law

**DANIEL E. YONAN**
202.887.4497/fax: 202.887.4288
dyonan@akingump.com

May 11, 2006

**Via E-Mail**

André J. Bahou, Esquire
Robins, Kaplan, Miller & Ciresi L.L.P.
Suite 1200
1801 K Street, N.W.
Washington, DC 20006-1307

      Re:    *Prism Technologies LLC v. VeriSign, Inc., et al.*
                <u>Civil Action No. 1:05-CV-00214-JJF</u>

Dear Mr. Bahou:

      This letter is in reply to your letter of April 24, 2006, alleging 'deficiencies' in VeriSign's interrogatory and document request responses. Subject to VeriSign's original objections, the items you raised are addressed more fully below, followed by discovery items VeriSign would like Prism to address.

VERISIGN INTERROGATORY RESPONSES

      *General Objection No. 4*: VeriSign has not withheld the production of any documents on the basis that a protective order has not been formalized. At the time our response was served, over six (6) months ago, there very little movement on formalizing a protective order. Since then, based upon the terms set forth in your January 5, 2006 letter, we have produced well over 200,000 documents. We further expect to produce additional documents shortly under the terms of the protective order, which has only recently been agreed to by all parties.

      *General Objection No. 14*: VeriSign, where necessary and appropriate, will supplement its responses to include further information about its Go Secure and Identity Protection products. Prism, however, only recently accused VeriSign's Identity Protection product (less than one (1) month ago). In view of this development, VeriSign requires additional time to locate, review, and produce any responsive documents, and to develop its positions, before it can fully respond to Prism's requests.

      *Interrogatory No. 2*: This Interrogatory only asks that VeriSign identify its "Identity and Access Management software or hardware product[s]" available since 1996. As Identity and

AKIN GUMP
STRAUSS HAUER & FELD LLP
▬▬▬▬▬▬▬▬ Attorneys at Law

André J. Bahou, Esquire
May 11, 2006
Page 2

Access Management is defined, subject to our original objections, Unified Authentication, Go Secure, and Identity Protection are the only responsive VeriSign products ("Accused Products"). Accordingly, no further supplementation is required.

*Interrogatory No. 3*: VeriSign cannot adequately describe its non-infringement positions until Prism first provides its interpretations for claims 1 and 24 of the asserted '416 patent. It is Prism's burden—not VeriSign's—to show how each element of each claim is met by the accused VeriSign products. While this issue is currently before the Court on a motion to compel, should Prism decide to supply its claim interpretations (and provide what it ascribes the 'plain and ordinary' meaning actually is for the terms identified by VeriSign's Interrogatory No. 13), VeriSign will supplement its response.

*Interrogatory No. 4*: VeriSign disagrees that its Response is deficient simply because it chose to disclose its invalidity contentions using a narrative as opposed to using a 'claim chart.' Notwithstanding, to the extent further invalidity arguments are developed, VeriSign will supplement this Interrogatory.

<u>VERISIGN DOCUMENT REQUEST RESPONSES</u>

*General Objection No. 13*: VeriSign intends to supplement its production, where necessary, to include information about its each of its Accused Products. *See* Res. to General Objection No. 14, *supra*.

*Document Request No. 1*: VeriSign intends to produce one (1) copy of each of its Accused Products to Prism.

*Document Requests Nos. 1-5, 7-9, 11-12. 21, 24, 26-27, 29-31*: As provided *supra*, VeriSign intends to supplement its production to include any information on its Accused Products that has not been previously produced.

*Document Request Nos. 8-9, 11-12*: To the extent information exists about VeriSign's licensing, royalty agreements, or pricing, with respect to its Accused Products, and has not been produced already, VeriSign will produce any responsive, non-privileged documents.

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

André J. Bahou, Esquire
May 11, 2006
Page 3

### OUTSTANDING PRISM DISCOVERY ITEMS

1. In your letter to me of February 21, 2006, you indicated a 'supplemental' Prism production would be forthcoming. We have not received any supplemental documents, and it has been nearly three (3) months since your letter. Please let us know when we can expect to receive these documents.

2. Can you advise us as to the status, volume and timeframe for production of any responsive documents that have been recovered from Prism's back-up tapes by EMag Solutions, LLC.

3. We also have requested a copy of Prism's Internet Subscription Access (ISA) product, along with any prototypes made or distributed. *See* VeriSign's Doc. Req. No. 9. This includes, and is not limited to the following ISA components: Subscriber Software, Server Software, Site Administration Software, Clearinghouse Server Software, Subscriber Administration Software, along with the Subscription Kit (including any software and a hardware access key). Please let us know when we can expect to receive copies of this ISA software and hardware.

4. VeriSign's Interrogatory No. 3 requests that Prism describe, *inter alia*, when it first became aware of VeriSign Accused Products. Prism only answered this Interrogatory with respect to VeriSign's Unified Authentication product. Now that Prism has updated its allegations to include VeriSign's Go Secure and Identity Protection products, we request that Prism supplement its response accordingly.

Very truly yours,

Daniel E. Yonan

# EXHIBIT 4

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

SUITE 1200
1801 K STREET, N.W.
WASHINGTON, D.C. 20006-1307
TEL: 202-775-0725  FAX: 202-223-8604
www.rkmc.com

ATTORNEYS AT LAW

ANDRÉ J. BAHOU
(202) 736-2707

April 24, 2006

**VIA E-MAIL**

Daniel E. Yonan, Esquire
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue. N.W.
Washington, D.C. 20036-1564

Re:    *Prism Technologies LLC v. VeriSign, Inc., et al.*
       Civil Action No. 1:05-cv-00214-JJF

Dear Mr. Yonan:

We have reviewed VeriSign, Inc.'s Answers and Objections to Prism's Revised First Set of Interrogatories and Prism's Revised First Set of Rule 34 Requests for Production of Documents and Things. For the reasons set forth herein, Prism requests that VeriSign supplement its responses.

**INTERROGATORIES**

General Objection No. 4

VeriSign objects to producing any proprietary or confidential information until a protective order is entered in this matter. Although a protective order appears to be nearing execution, please state whether you have withheld any documents based on this objection. Also, please state the approximate volume of documents and the date you expect to produce these documents. In light of Local Rule 26.2 (obligating counsel to keep in confidence any information properly labeled and produced before entry of protective order) and in light of my letter to all Defendants on January 5, 2006, adequate protections are in place for VeriSign to produce confidential documents.

To the extent you maintain your objection and withhold any documents based on this objection, please state in detail the name, address, and nature of engagement with each third

Daniel E. Yonan, Esquire
April 24, 2006
Page 2

party with whom you have a confidentiality agreement; state the author(s), recipient(s), date; and
describe the documents being withheld in connection with each confidentiality agreement. Also,
produce each confidentiality agreement that you claim prevents you from releasing information
subject to that third party confidentiality agreement.

General Objection No. 14

In this objection VeriSign states that its Go Secure product is irrelevant because Prism
has not accused that product of infringement. Notwithstanding our specific allegations regarding
the Go Secure product in the Complaint (dated April 11, 2005) and Amended Complaint (dated
June 22, 2005), Prism has supplemented its response to VeriSign's Interrogatory No. 2 and
provided a detailed claim chart showing how Go Secure infringes the asserted claims of the
'416 patent. Please supplement your response and include information regarding all the accused
products, including but not limited to VeriSign's Identity Protection (VIP), Unified
Authentication (UA), and Go Secure Authentication Solutions.

Interrogatory No. 2

VeriSign states that it would consider supplementing this Interrogatory to include the Go
Secure product once Prism demonstrated the relevance of the Go Secure product. In addition to
our allegations in the Amended Complaint, we have provided you a claim chart showing how the
Go Secure product infringes the asserted claims of the '416 patent. Please supplement your
responses regarding all of VeriSign's accused products, including the related hardware tokens,
USB devices, or Smart Cards.

Interrogatory No. 3

Prism requested that VeriSign provide claim charts, among other things, showing
VeriSign's contentions of which asserted claim element(s) of the '416 patent are not met.
VeriSign refused to properly respond. Instead, VeriSign somehow contends that Prism's detailed
claim chart is not specific enough to show how each and every claim element is met, without
also providing Prism's claim interpretation. We disagree. In addition to providing you with a
detailed claim chart and corresponding structure for the means clauses, Prism stated that each
claim term should be construed according to its ordinary meaning. VeriSign should now
supplement its response and provide the requested claim charts.

Interrogatory No. 4

Prism requested, among other things, that VeriSign provide a claim chart identifying the
exact structure or step disclosed in the allegedly invalidating prior art reference. VeriSign did
not provide a claim chart, and therefore its response is deficient. Notwithstanding your
assumption that Prism "may propose" an "overly broad claim interpretation," VeriSign should
state its invalidity contentions with respect to its allegations, irrespective of Prism's

DC1 45681295.1

Daniel E. Yonan, Esquire
April 24, 2006
Page 3

interpretation. Accordingly, please supplement your response and provide the requested claim
charts.

## DOCUMENT REQUESTS

General Objection No. 13

In this objection VeriSign states that its Go Secure product is not reasonably calculated to
lead to the discovery of admissible evidence because it is not sold with a "hardware key" or
related to the Unified Authentication (UA) product. In addition to our specific allegations
regarding the Go Secure product in the Complaint (dated April 11, 2005) and Amended
Complaint (dated June 22, 2005), Prism has supplemented its response to VeriSign's
Interrogatory No. 2 and provided a detailed claim chart showing how Go Secure infringes the
asserted claims of the '416 patent. In that regard, please supplement your production and include
information regarding all of VeriSign's accused products.

Document Request No. 1

Prism requested one copy of each VeriSign's IAM software suite and hardware products,
specifically including VeriSign's Go Secure Authentication Suite and VeriSign's Unified
Authentication Suite. VeriSign objects to producing one set of each of the accused products
because they are available from "public sources." The fact that documents or things are
available from a public source, is not, by itself, a valid basis for objecting or refusing to produce
such documents or things if those items are within VeriSign's possession, custody, or control.
*Regal Elecs., Inc. v. Pulse Eng'g, Inc.*, 2005 U.S. Dist. LEXIS 29955 (N.D. Cal. 2005) ("[Fed. R.
Civ. P. 34], however, does not excuse [a party] from providing documents in its possession or
control, solely because the information is also publicly available."). Prism requests supplemental
production of one set of software for VeriSign's UA, Go Secure, and VIP Authentication
Solutions, as well as other accused products at issue, such as USB tokens, Secure Storage
Tokens, Multipurpose Next-Generation Tokens, and Smart Cards.

Document Requests Nos. 1-5, 7-9, 11-12. 21, 24, 26-27, 29-31

VeriSign's objections to Document Request Nos. 1-5, 7-9, 11-12. 21, 24, 26-27, 29-31
incorporates General Objection 13 and/or states that VeriSign will consider supplementing its
responses for the Go Secure product. For the same reasons stated above regarding General
Objection No. 13, please supplement your production and include information regarding all of
VeriSign's accused products.

Document Request Nos. 8-9, 11-12

VeriSign objects to producing documents related to its licensing agreements, royalty
agreements, or product pricing regarding computer software and hardware products. Further,

Daniel E. Yonan, Esquire
April 24, 2006
Page 4

VeriSign limits its response to documents relating to UA. VeriSign's limitation is unfounded. The documents requested are relevant and/or reasonably likely to lead to admissible evidence regarding damages adequate to compensate for VeriSign's infringement. *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). Hence, please supplement your document production accordingly.

Prism specifically reserves its rights to challenge other deficiencies not addressed here. Notwithstanding our reservations, please supplement your responses to address the concerns stated above.

Sincerely,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

André J. Bahou

# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PRISM TECHNOLOGIES LLC,

Plaintiff,

v.

VERISIGN, INC., RSA
SECURITY, INC., NETEGRITY, INC.,
COMPUTER ASSOCIATES
INTERNATIONAL, INC. and JOHNSON
AND JOHNSON,

Defendants.

C.A. No. 05-214-JJF
JURY TRIAL DEMANDED

## DEFENDANT VERISIGN, INC.'S FIRST SET OF INTERROGATORIES TO PLAINTIFF PRISM TECHNOLOGIES LLC (NOS. 1 - 10)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, defendant VeriSign, Inc. ("VeriSign") requests that Plaintiff Prism Technologies LLC ("Prism") answer the following interrogatories fully and separately in writing under oath by an officer or other agent of Prism authorized to give answers on its behalf. Answers to these interrogatories must be served within the time prescribed by the Federal Rules of Civil Procedure. The following definitions and instructions apply.

## DEFINITIONS

1.     The term "Prism" means and includes Plaintiff Prism Technologies LLC, and any of its present and former parents, partners, subsidiaries, divisions, branches, affiliates, predecessors or successors in business, and wholly or partially owned entities of Prism and any entities acting or purporting to act for or on behalf of the foregoing or who are subject to the direction or control of the foregoing, including any present or former agents, employees, officers, directors, insurance companies, attorneys, accountants, investigators, and consultants of the foregoing.

2.     The term "VeriSign" means and includes Defendant VeriSign, Inc., and any of its present and former parents, partners, subsidiaries, divisions, branches, affiliates, predecessors or successors in business, and wholly or partially owned entities of VeriSign and any entities acting or purporting to act for or on behalf of the foregoing or who are subject to the direction or control of the foregoing, including any present or former agents, employees, officers, directors, insurance companies, attorneys, accountants, investigators, and consultants of the foregoing.

3.     The term "Plaintiff," "you," or "your" means Prism.

4.     The term "Defendant" or "Defendants" means and includes any defendant in this litigation, including without limitation VeriSign, any third-party defendant, any former defendant, and/or any future defendant.

5.     "Patent application" means all patent applications including all parent, continuation, continuing, continuation-in-part, divisional, reeissue or reexamination and other applications, including applications from which an issued patent claims priority, regardless of whether the patent application issued as a patent, is currently pending, or was abandoned, and

2

regardless of whether the patent application was filed in the Unites States Patent and Trademark Office or a foreign patent office.

6.     "Foreign counterpart patent application" means any patent application filed in a country or territory other than the United States or before an Examining Agency or Authority other than the United States Patent and Trademark Office that claims priority from a U.S. filed patent application and/or which a U.S. filed patent application claims to derive priority from.

7.     "Foreign counterpart patent" means any patent published or issued in a country or territory other than the United States or by an Examining Agency or Authority other than the United States Patent and Trademark Office that claims priority from a U.S. filed patent application and/or which is based on a foreign patent application for which a U.S. filed patent application claims to derive priority from.

8.     The term "related patents" means all parent, continuation, continuing, continuation-in-part, divisional, reexamination, reissue and other patents or patent applications claiming priority to the patent-in-suit, including applications from which an issued patent claims priority, regardless of whether the patent application issued as a patent, is currently pending, or was abandoned, and regardless of whether the patent or patent application was issued or filed, respectively, in the Unites States Patent and Trademark Office or a foreign patent office.

9.     The term "'416 patent" means U.S. Patent No. 6,516,416.

10.    The term "patent-in-suit" means U.S. Patent No. 6,516,416.

11.    The term "subject matter disclosed or claimed in the '416 patent" means all information relating to the disclosure of the '416 patent.

12.    The term "document" or "record" shall have its customary broad meaning within the full range allowed by F. Rule Civ. P. 33 and 34, and shall include without limitation, any

3

written, printed, typed, recorded, filmed or graphic matter, however produced or reproduced, and any written or original, master, duplicate, or copy. The term "document" shall include electronic data, any record of all or any portions of any discussion, communication, agreement, conversation, interview, meeting, conference, conclusion, fact, impression, occurrence, opinion, report, or other similar matter, and also shall include, without limitation, all correspondence, papers, cablegrams, mailgrams, telegrams, notes, memoranda, summaries, abstracts, worksheets, books, manuals, publications, engineering reports and notebooks, charts, plans, diagrams, sketches or drawings, photographs, reports and/or summaries of investigations and/or surveys, opinions and reports of appraisers or consultants, projections, corporate records, minutes of board of directors or committee meetings, desk calendars, appointment books, diaries, diary entries and notes, newspapers, magazines, or periodical articles, and other records of any kind. A draft or non-identical copy is a separate document within the meaning of this term. Included in the definition of documents as used herein are files, file folders, books, and their contents, which should be produced together with the documents they contain.

13.    The term "electronic data" includes, but is not limited to, originals and all copies of electronic mail ("e-mail"); activity listings of e-mail receipts and/or transmittals; voice-mail; audio or video recordings of any kind; computer programs (whether private, commercial, or a work-in-progress); programming notes or instructions; output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs, and outlines; operating systems; source code of all types; batch files; ASCII files; and all miscellaneous electronic files and/or file fragments, regardless of the media on which they are stored and regardless of whether the data resides in an active file, deleted file, or file fragment. Electronic data includes any and all information stored in hard disks, floppy disks, CD-ROM

4

disks, Bernoulli disks and their equivalents, magnetic tapes of all kinds, and computer chips. Electronic data also includes the file, folder tabs, containers or labels appended to any storage device containing electronic data.

14.     "Things" shall mean any tangible object other than a document and includes objects of every kind and nature, including, but not limited to, prototypes, models and specimens.

15.     A document or communication "referring to," "related to," or "concerning" a given subject means any and all documents or communications that constitute, contain, embody, comprise, reflect, identify, state, refer to, connect with, deal with, comment on, respond to, describe, involve, or are in any way pertinent to that subject.

16.     The term "person" or "persons" shall include any and/or all natural persons, individuals, corporations, partnerships, unincorporated associations, joint ventures, sole proprietorships, or any and/or all other organization of individuals or other legal or business entities, or functional division thereof.

17.     "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise)

18.     "Concerning" means relating to, referring to, describing, evidencing, constituting, or mentioning in any way.

19.     The use of the singular form of any word includes the plural and visa versa.

20.     The terms "he," "his," or "him" are generic terms that mean any person as defined herein, whether natural or otherwise, and whether masculine, feminine, or neuter.

21.    The term "prior art" shall mean all things, patents, publications, disclosures, sales, or other acts or occurrences included within the broadest meaning of 35 U.S.C. § 102 (or any subpart thereof) and 35 U.S.C. § 103.

22.    "Identify" with respect to persons means to give, to the extent known, the person's full name, present or last known address, and, with respect to a natural person, the present or last known place of employment. "Identify" with respect to documents means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s), and recipient(s), and the production number(s) where produced. "Identify" with respect to an entity means to give, to the extent known, the entity's present full name, business name and/or trade name, any former names used such entity, and its present or last known address.

23.    In construing these Interrogatories, the plural shall include the singular, the singular shall include the plural, and a masculine, feminine, or neuter term shall include all other genders. The words "and" and "or" mean "and/or" and should be read both ways so as to encompass both constructions and call for answers to be provided to both constructions. The word "each" includes the word "every," and the word "every" includes the word "each." The word "any" shall be understood to include and encompass "all," and "all " should be interpreted to include and encompass "any."

## INSTRUCTIONS

1.    Each Interrogatory shall be answered fully unless it is in good faith objected to, in which event the reasons for your objection shall be stated in detail. If an objection pertains only to a portion of a Interrogatory, or a word phrase, or clause contained within it, you are required

to state your objection to that portion only and to respond to the remainder of the Interrogatory, using your best efforts to do so.

2.    If Plaintiff contends that any information concerning any document, communication, or other information is withheld under a claim of attorney-client privilege, the work product doctrine or other ground of privilege, then Prism shall identify for each such document:

(a)    the date of the document, communication or other information;

(b)    the name (title or position of the authors) of the document, communication or other information;

(c)    the name and title or position of all persons designated as addressees or otherwise receiving copies of the document, communication or other information;

(d)    the general subject matter of the document, communication or other information;

(e)    the number of pages in the document, communication or other information;

(f)    the type of document (e.g., memorandum, letter or report), communication or other information;

(g)    the specific grounds for withholding the document, communication or other information, including the specific facts upon which Plaintiff will rely to establish the asserted attorney-client privilege, work product doctrine, or other ground of privilege; and

(h)    the specific Interrogatory to which information concerning the document, communication or other information is responsive.

3.    If any document identified in response to any of these Interrogatories was, but is no longer in the possession, custody or subject to the control of Plaintiff, or is no longer in existence, state whether it:

(a)    Is missing or lost;

(b)    Has been destroyed;

(c)    Has been transferred, voluntarily or involuntarily, to others and state the identity of those persons to whom it has been transferred;

(d)    Has been otherwise disposed of, and in each instance, explain the circumstances surrounding such disposition, state the date or approximate date thereof, and the identity of the persons with knowledge of such circumstances; or

(e)    Identify the writings that are missing, lost, destroyed, transferred, or otherwise disposed of, by author, date, subject matter, addressee and the number of pages.

4.    Pursuant to Rule 26(e), Fed. R. Civ. P., these requests are deemed to be continuing in nature to the full extent required by the Federal Rules of Civil Procedure. If further responsive documents come into the possession or to the attention of Plaintiff or its attorneys at any time during the course of this litigation, such documents must be produced as required by the Federal Rules of Civil Procedure.

## INTERROGATORIES

### INTERROGATORY NO. 1.

With reference to the claim charts attached as Exh. A, in which the first column lists the claim elements and/or steps of independent claims 1, 19 and 24 of the '416 patent, complete the second column by stating Plaintiff's claim interpretation contentions for each element and/or step (set forth in each row of Exh. A), as a whole, as well as for each specifically bolded and quoted word and/or phrase, and complete the third column by stating all basis and support for those contentions, including citing all portions of the specification and prosecution history, and identifying and describing all other evidence, if any, that Plaintiff believes supports its contentions. If Plaintiff contends that any of the claim elements are means-plus-function elements construed pursuant to 35 U.S.C. §112 paragraph 6, so state and provide plaintiff's contention as to the function to be performed and the identity of the corresponding structure in the specification for performing it, and the scope of equivalents, if any. If Plaintiffs contend that any claim element that includes the word "means" is *not* means-plus-function (as it is presumed to be under the law), state all basis and evidence for this contention.

### INTERROGATORY NO. 2.

For each claim of the '416 patent that Plaintiff contends is infringed by VeriSign, identify each activity, product, device, part, or system manufactured, imported, used or sold by VeriSign that, according to Plaintiff, embodies, is covered by, makes use of, or otherwise practices any claim of the patent-in-suit and, with reference to Plaintiff's claim interpretation contentions provided in response to Interrogatory No. 1, state with particularity the basis for each of Plaintiff's contentions as to how each asserted claim of the patent-in-suit is infringed, either

literally o r u nder t he d octrine o f e quivalents, d irectly ( under 3 5 U .S.C. § 271(a)) o r i ndirectly (under 35 U.S.C. §271(b) or §271(c)) by VeriSign.

## INTERROGATORY NO. 3.

Describe in detail when Plaintiff first became aware of and/or first had knowledge of each activity, product, device, system and/or equipment identified in response to Interrogatory No. 2; identify each person who had such knowledge; describe the circumstances under which each such person first became aware of and acquired such knowledge; and describe all facts, documents and things that refer and/or relate to this knowledge.

## INTERROGATORY NO. 4.

For each asserted claim of the '416 patent, (a) state Plaintiff's contentions regarding date(s) of the invention, including the date(s) of conception and reduction to practice, (b) identify each person involved in its conception and each person involved in its reduction to practice, (c) describe in detail all circumstances regarding conception, reduction to practice and any diligence exercised from the date of conception to the date of reduction to practice and identify each person involved in any such diligence, (d) identify the specific location of each such conception and reduction to practice, and (e) identify all documents and things referring to, relating to, or concerning the conception, reduction to practice, and any diligence from the date of conception to the date of reduction to practice.

## INTERROGATORY NO. 5.

Excluding the "references cited" on the face of the '416 patent, identify all prior art, including w ithout l imitation p ublications a nd a cts, o f w hich P laintiff i s aware w ith r espect t o each of the patent-in-suit and related patents, including prior art located in any prior art search or

10

otherwise brought to the attention of Plaintiff, and state how and when each item of prior art identified came to Plaintiff's attention.

## INTERROGATORY NO. 6.

If Plaintiff is seeking an award of any sum of money, whether by damages or otherwise, state the amount of money Plaintiff seeks and describe the manner in which the amount was calculated, including each element of damage or component of recovery that Plaintiff seeks, the amount sought for each element or component, the manner in which each element or component was calculated or determined, and should identify the source of each number used in the calculation, and identify the person or persons who is most knowledgeable with respect to the subject matter of this Interrogatory.

## INTERROGATORY NO. 7.

Describe in detail the business of Prism and all predecessor companies, from its inception until present, identify all directors, officers and employees of such companies over that time period, and identify all financial records relating to costs and revenues from the '416 patent.

## INTERROGATORY NO. 8.

Identify and describe in detail any attempt to license, sell or otherwise commercialize or transfer rights to the '416 patent, and identify and describe the terms of any such agreements, including licensing and sales agreements.

## INTERROGATORY NO. 9.

Identify all entities and/or person that now or in the past have held rights (*e.g.*, ownership, right-to-sue, right-to-recovery, etc.) to the '416 patent and any patent claiming priority to the '416 patent, and state the nature of rights held (including, where appropriate, the quantity held by each entity or person).

11

**INTERROGATORY NO. 10.**

Identify and describe the specifics of any pre-complaint infringement analysis.

Dated: September 15, 2005

*Of Counsel*

Edward F. Mannino
Jason A. Snyderman
AKIN GUMP STRAUSS HAUER & FELD LLP
One Commerce Square, Suite 2200
2005 Market Street
Philadelphia, PA 19103
Telephone: (215) 965-1200
Fax: (215) 965-1210

Frank C. Cimino
Jin-Suk Park
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, NW
Washington, DC 20036-1564
Telephone: (202) 887-4000
Fax: (202) 887-4288

By: *Patricia S Rogowski*

Patricia Smink Rogowski
Delaware Bar ID 2632
The Nemours Building
1007 North Orange Street
PO Box 2207
Wilmington DE 19899
Telephone : (302) 658-9141
Fax: (302) 658-5614

*Attorneys for Defendant, VeriSign, Inc.*

12

Exhibit A

Plaintiff's Response To VeriSign's Interrogatory No. 1

| Claim 1 of the '416 Patent | Plaintiff's Claim Interpretation | Plaintiff's Support and Evidence |
|---|---|---|
| A "system" for controlling the operation of and access to "selected computer resources" of at least a "first server computer" by at least one "subscriber client computer" via an "untrusted network" in an "operating session", "without necessarily controlling access to other computer resources" provided by the first server computer and by "other server computers" and "nonsubscriber client computers", comprising: | | |
| "clearinghouse means" for "storing" "identity data of said first server computer" and the "identity data of each of said subscriber client computers"; | | |
| "server software means" installed on said first server computer "adapted to forward its identity data and identity data of each subscriber client computer to said clearinghouse means" at the "beginning of an operating session" in which "access to" "selected computer resources" of said first server computer is requested; | | |
| "client software means" installed on each of said "subscriber client computers" "adapted to forward its identity data to said first server computer" at the "beginning of an operating session" in which "access to" "selected computer resources" is requested; | | |
| at least one "hardware key" "connected to" the "subscriber client computer" said key being "adapted to generate" a "predetermined" "digital identification", which "identification is part of said identity data"; | | |
| said "server software means" installed on the first server computer being "adapted to selectively request" the "subscriber client computer" "to forward" said "predetermined" "digital identification" to the first server computer "to thereby confirm" that said hardware key is "connected" to said subscriber client | | |

Exhibit A
Plaintiff's Response To VeriSign's Interrogatory No. 1

| | | | |
|---|---|---|---|
| computer; | | | |
| said "clearinghouse means" being "adapted to authenticate the identity of said subscriber client computer" responsive to a request for selected computer resources of said first server computer by a "subscriber client computer"; | | | |
| said "clearinghouse means" being "adapted to authenticate the identity of said first server computer" responsive to said "subscriber client computer" making the request for selected computer resources of said first server computer; and | | | |
| said "clearinghouse means" being "adapted to permit access" to said selected computer resources responsive to "successful initial authentication" of said first server computer and of "said subscriber client computer making first request". | | | |

2

Exhibit A
Plaintiff's Response To VeriSign's Interrogatory No. 1

| Claim 19 of the '416 Patent | Plaintiff's Claim Interpretation Position | Plaintiff's Support and Evidence |
|---|---|---|
| A "system" for controlling the operation of and access to "selected computer resources" of at least a "first server computer" by at least one "subscriber client computer" via an "untrusted network" in an "operating session", "without necessarily controlling access to other computer resources" provided by the first server computer and by "other server computers" and "nonsubscriber client computers", and each of said subscriber client computers has a "standard browser application" for "browsing" the untrusted network, comprising; | | |
| "clearinghouse means" for "storing" "identity data of said first server computer" and the "identify data of each of said subscriber client computers"; | | |
| "server software means" installed on said first server computer "adapted to forward its identity data and identify data of each subscriber client computer to said clearinghouse means" at the "beginning of an operating session" in which "access to" "selected computer resources" of said first server computer is requested; and, | | |
| "client software means" installed on each of said "subscriber client computers" "adapted to forward its identity data to said first server computer" at the "beginning of an operating session" in which "access to" "selected computer resources" is requested; | | |
| said "clearinghouse means" being "adapted to authenticate the identity of said subscriber client computer" responsive to a request for selected computer resources of said first server computer by a "subscriber client computer"; | | |

3

Exhibit A

Plaintiff's Response To VeriSign's Interrogatory No. 1

| | | | |
|---|---|---|---|
| said "clearinghouse means" being "adapted to authenticate the identity of said first server computer" responsive to said "subscriber client computer" making the request for selected computer resources of said first server computer. | | | |
| said "clearinghouse means" being "adapted to permit access" to said selected computer resources responsive to "successful initial authentication" of said first server computer and of "said subscriber client computer making said request"; | | | |
| said "server software means" installed on the first server computer being "adapted to designate specific resource content as being protected and to provide predetermined protection data identifying said resource content as being protected" when said data is transmitted to one of said "subscriber client computers" responsive to a request for said resource content; | | | |
| said "client software means" installed on each of said "subscriber client computers" being "adapted to monitor" said data defining a "hierarchical system of protection" and "selectively" "disable" "predetermined" "application functions" of the "standard browser application" "previously installed" on said "subscriber client computer" for said "designated specific resources content". | | | |

4

Exhibit A
Plaintiff's Response To VeriSign's Interrogatory No. 1

| Claim 24 of the '416 Patent | Plaintiff Claim Interpretation Position | Plaintiff's Support and Evidence |
|---|---|---|
| A "method" of controlling access to "selected computer resources" of at least a "first server computer" by at least one "subscriber client computer" via an "untrusted network" during an "operating session", "without necessarily controlling access to other computer resources" provided by the first server computer and by "other server computers" and "nonsubscriber client computers", comprising the steps of: | | |
| "registering identity data of said first server computer and the identity data of each of said subscriber client computers" and "storing the registered identity data" in a "clearinghouse means" "associated with" said first server computer and said "subscriber client computers"; | | |
| requiring a "subscriber client computer" to forward "its identity data" to said "clearinghouse means" at the "beginning an operating session" in which access to "selected computer resources" is requested; | | |
| requiring a "subscriber client computer" to forward a "pre-determined" "digital identification" to said first server computer "to thereby confirm" that a "hardware key" is "connected" to said "subscriber client computer"; | | |
| attempting to "authenticate" the identity of said "subscriber client computer" from said "clearinghouse means" "responsive" to a request for "selected computer-resources" of said first server computer by a "subscriber client computer"; | | |
| attempting to "authenticate" the "identity of said first server computer" from said "clearinghouse means" responsive to said "subscriber client computer" making the request for "selected computer resources"; and, | | |
| "permitting access" to said "selected computer resources" "responsive" to "successful initial authentication" of said "first server computer" and of said "subscriber | | |

Exhibit
Plaintiff's Response To VeriSi:    .nterrogatory No. 1

client computer" making said request.

6

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2005, a true and correct copy of the foregoing DEFENDANT VERISIGN, INC.'S FIRST SET OF INTERROGATORIES TO PLAINTIFF PRISM TECHNOLOGIES LLC (NOS.1 - 10) was caused to be served on the following by Hand or via First Class Mail:

Richard D. Kirk (By Hand)
The Bayard Firm
22 Delaware Avenue
Suite 900
Wilmington, DE 19899

Dirk D. Thomas (First Class Mail)
Robins, Kaplan, Miller & Ciresi, LLP
1801 K Street, N.W.
Suite 1200
Washington, D.C. 20006-1307

Gregory P. Teran (First Class Mail)
Wilmer Cutler Pickering Hale & Dorr LLP
60 State Street
Boston, MA 02109

David M. Schlitz (First Class Mail)
Baker Botts LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2450

John DiMatteo (First Class Mail)
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019-6099

Frederick L. Cottrell, III (By Hand)
Richards Layton & Finger
One Rodney Square
920 North King Street,
Wilmington, DE 19801

Richard L. Horwitz (By Hand)
Potter Anderson & Corroon
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899.

Steven J. Balick (By Hand)
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899.

By: _Patricia S. Rogowski_
Patricia Smink Rogowski
Bar ID 2632

13

# EXHIBIT 6

# ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

SUITE 1200
1801 K STREET, N.W.
WASHINGTON, D.C. 20006-1307
TEL: 202-775-0725  FAX: 202-223-860
www.rkmc.com

ATTORNEYS AT LAW

ANDRÉ J. BAHOU
(202) 736-2707

June 26, 2006

**VIA E-MAIL**

Daniel E. Yonan, Esquire
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue. N.W.
Washington, D.C. 20036-1564

　　　　Re:　*Prism Technologies LLC v. VeriSign, Inc., et al.*
　　　　　　　Civil Action No. 1:05-cv-00214-JJF

Dear Mr. Yonan:

　　　　On April 24, 2006, I wrote to you regarding VeriSign's deficiencies in its discovery responses. In your response of May 11, 2006, you stated, *inter alia*, that VeriSign would produce one (1) copy of each of the Accused VeriSign Products to Prism. It has been over nine (9) months since we propounded our document requests calling for the production of the Accused VeriSign Products (VeriSign's Unified Authentication and Go Secure Solutions) (*see* Prism's Revised First Set of Document Requests, No. 1, *et seq.*, dated September 20, 2005) and at least 45 days since your letter. To date, VeriSign has not produced a copy of VeriSign's allegedly infringing software and hardware products. We demand immediate production of the products alleged to infringe in our Complaint of April 11, 2005, and the additional product (VeriSign's Identity Protection Solution) identified in Prism's First Supplemental Response to VeriSign's Interrogatory No. 2 of April 14, 2006.

DC1 45685695.1

A T L A N T A · B O S T O N · L O S A N G E L E S · M I N N E A P O L I S · N A P L E S · S A I N T P A U L · W A S H I N G T O N, D. C.

Daniel E. Yonan, Esquire
June 26, 2006
Page 2

Please produce those products immediately or we will take this matter up with the Court.

Sincerely,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

*A.J. Bahou*

André J. Bahou

# EXHIBIT 7

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

SUITE 1200
1801 K STREET, N.W.
WASHINGTON, D.C. 20006-1307
TEL: 202-775-0725  FAX: 202-223-8604
www.rkmc.com

ATTORNEYS AT LAW

ANDRÉ J. BAHOU
(202) 736-2707

June 27, 2006

**VIA E-MAIL**

Daniel E. Yonan, Esquire
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue. N.W.
Washington, D.C.  20036-1564

   Re: *Prism Technologies LLC v. VeriSign, Inc., et al.*
     Civil Action No. 1:05-cv-00214-JJF

Dear Mr. Yonan:

  On April 14, 2006, Prism served its First Supplemental Response to VeriSign's Interrogatory No. 2.  In that response we alleged that VeriSign's Identity Protection solution infringes at least claims 1 and 24 of U.S. Patent No. 6,516,416, in addition to the previously accused products (VeriSign's Unified Authentication and Go Secure Solutions).  Accordingly, please supplement your discovery responses, specifically including but not limited to VeriSign's Response to Prism's Interrogatories Nos. 1 and 3.  Likewise, please supplement your document production, including but not limited to documents called for in Prism's Document Requests Nos. 1-5, 7, 9, 12, 17-19, 21, 24, 26-27, 29, 31, and 33-36.

  Feel free to call me with any questions you may have.

    Sincerely,

    ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

    André J. Bahou

cc: Robert A. Auchter, Esquire

DC1 45685787.1

ATLANTA · BOSTON · LOS ANGELES · MINNEAPOLIS · NAPLES · SAINT PAUL · WASHINGTON, D.C.

# EXHIBIT 8:
# FILED UNDER SEAL

# EXHIBIT 9

# AKIN GUMP
# STRAUSS HAUER & FELD LLP

━━━━━━━━━━━━━━━ Attorneys at Law

Virginia Chan
VChan@akingump.com
(202) 887-5276

September 29, 2006

**<u>Via E-Mail and UPS</u>**
André J. Bahou, Esquire
Robins, Kaplan, Miller & Ciresi L.L.P.
Suite 1200
1801 K Street, N.W.
Washington, DC 20006-1307

    Re:   *Prism Technologies LLC v. VeriSign, Inc., et al.*
           <u>Civil Action No. 1:05-CV-00214-JJF</u>

Dear Mr. Bahou:

    Enclosed please VeriSign's production of documents bearing the Bates numbers VERI-1597029 through VERI-1602805.

    Please contact Daniel Yonan if you have any questions.

                Very truly yours,

                Virginia Chan
                Paralegal

Enclosures
cc: Daniel E. Yonan, Esq. (w/o enclosure)

**RECEIVED**

OCT 2 2006

# EXHIBIT 10

## ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

SUITE 1200
1801 K STREET, N.W.
WASHINGTON, D.C. 20006-1307
TEL: 202-775-0725  FAX: 202-223-8604
www.rkmc.com

ATTORNEYS AT LAW

ANDRÉ J. BAHOU
(202) 736-2707

August 31, 2006

**VIA E-MAIL**

Daniel E. Yonan, Esquire
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036-1564

Re:     *Prism Technologies LLC v. VeriSign, Inc., et al.*
        Civil Action No. 1:05-cv-00214-JJF

Dear Mr. Yonan:

In our first set of request for production of documents and things, we requested that you provide the source code for the accused Identity and Access Management (IAM) solution products, or services. *See* Revised First Set of Document Requests to VeriSign, Inc., September 20, 2005. In responding to our Document Request No. 1 and subject to the stated objections, VeriSign stated that it would produce responsive documents. *See* VeriSign's Responses to Plaintiff's Revised First Set of Rule 34 Request for Production of Documents and Things, October 27, 2005. We renew our request for the production of the source code in human readable, electronic format for each of the accused products.

Please let us know if you will produce that source code by September 8. Alternatively, please call us to discuss a mutually agreeable time to respond to this request. We do not believe that making the source code available for inspection will adequately allow our expert to analyze the information. We, therefore, ask for production of the source code in lieu of making it available for inspection.

Very truly yours,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

*A.J. Bahou*

André N Bahou

cc:     Robert A. Auchter, Esquire (via e-mail)

DC1 45688072.1

ATLANTA · BOSTON · LOS ANGELES · MINNEAPOLIS · NAPLES · SAINT PAUL · WASHINGTON, D.C.

# EXHIBIT 11

# ROBINS, KAPLAN, MILLER & CIRESI LLP

ATTORNEYS AT LAW

SUITE 1200
1801 K STREET, N.W.
WASHINGTON, D.C. 20006-1307
TEL: 202-775-0725 FAX: 202-223-8604
www.rkmc.com

ANDRÉ J. BAHOU
(202) 736-2707

August 29, 2006

**VIA E-MAIL**

Daniel E. Yonan, Esquire
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036-1564

Re:  *Prism Technologies LLC v. VeriSign, Inc., et al.*
Civil Action No. 1:05-cv-00214-JJF

Dear Mr. Yonan:

### Request for Production of the Latest Version of Unified Authentication and the Associated Documents[1]

We request that you provide us the most recent software version and the related manuals for the following VeriSign products:

1.   Unified Authentication (In-Premise and VeriSign-Hosted to support OTP)
2.   Unified Authentication for Windows (In-Premise and VeriSign-Hosted to support PKI)

We request all manuals for both Unified Authentication product offerings, including the following:

1.   Unified Authentication Overview
2.   Unified Authentication User's Guide
3.   Unified Authentication In-Premise Installation and Configuration Guide
4.   Unified Authentication VeriSign-Hosted Installation and Configuration Guide

---

[1] We request all documents responsive to our document requests, including, but not limited to the design specifications, functional specifications, etc. for the most recent version of the accused products. This letter is not intended to limit our other discovery requests, but it merely sets forth documents that are needed regarding your production of the Unified Authentication version 4.0.1.

Daniel Yonan, Esq.
August 29, 2006
Page 2

     5.      Unified Authentication Administrator's Guide
     6.      Unified Authentication Validation SDK Guide
     7.      Unified Authentication Management SDK Guide
     8.      Unified Authentication Application Integration Guide
     9.      Unified Authentication Release Notes

If additional manuals have been added to these Unified Authentication product offerings that have not been listed, please provide those manuals as well. We will also request a Pilot Account in order to evaluate the VeriSign-Hosted Unified Authentication Service. Finally, we also request three commissioned Hybrid USB Tokens that are capable of supporting both OTP and PKI and also capable of being activated by the Unified Authentication Service.

Although you have provided version 4.0.1 of the Unified Authentication product software, we have not been able to find the related manuals in your document production. If we are mistaken, please provide us the Bates numbers for those documents. If, however, there is a later version of the Unified Authentication product or the manuals have not been provided, please produce those at your earliest convenience.

## Production of an Index Regarding Electronically Stored Documents

On August 3 and 4, you and I spoke on the telephone and discussed the organization of your production of documents stored electronically by your client. I had requested that you provide us any existing index of VeriSign's forthcoming document production of e-mails and electronically stored documents, represented to be approximately a million pages. To the extent you have any information that identifies the organization of your document production, we request that information.[2] For example, we would like the report from your searches of the terms that the parties agreed to, the number of hits for each term, and, if possible, the bates number of those documents. From our telephone conversation, you stated that the search term list was not correlated to final documents as produced. Nevertheless, we request the list of search terms, number of hits for each search term, and any other information that would help us understand the make-up of your document production.

Given that the documents have not been produced as kept in the ordinary course of business, we request the appropriate information to ascertain, at a minimum, the custodial source of each document, the bates range for each custodial source, and any other information by which you have indexed or tracked the produced documents. *See Scripps Clinic & Research Foundation v. Baxter Travenol Laboratories, Inc.,* 1988 U.S. Dist. Lexis 7495 (D. Del. 1988) ("Rule 34(b) gives [the producing party] the option of either producing documents as they are ordinarily kept or of organizing and labeling them to correspond to the request. It is obvious that [the producing party] did not organize the documents to correspond to the individual requests. [The producing party] also failed, however, to produce the documents as they were kept in the

---

[2] Note, we do not request any of your attorney notes or work product.

Daniel Yonan, Esq.
August 29, 2006
Page 3

ordinary course of business. The documents were gathered from many people and transferred to [the receiving party] in an unintelligible manner. This is insufficient under Rule 34(b)….").

### Prism's Updated Claim Charts

Regarding your correspondence of August 25, we will provide our updated infringement claim charts once we have the manuals and software for most current version of each of the accused products.

Please feel free to call me with any questions.

Very truly yours,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

André J. Bahou

AJB/cas

cc:     Robert A. Auchter, Esq. (via e-mail)

DC1 45687883.1

# EXHIBIT 12

**ROBINS, KAPLAN, MILLER & CIRESI** LLP

SUITE 1200
1801 K STREET, N.W.
WASHINGTON, D.C. 20006-1307
TEL: 202-775-0725  FAX: 202-223-8604
www.rkmc.com

ATTORNEYS AT LAW

ANDRÉ J. BAHOU
(202) 736-2707

September 15, 2006

**VIA E-MAIL**

Daniel E. Yonan, Esquire
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue. N.W.
Washington, D.C. 20036-1564

Re:  *Prism Technologies LLC v. VeriSign, Inc., et al.*
Civil Action No. 1:05-cv-00214-JJF

Dear Mr. Yonan:

Please verify that the most recent versions of the Go Secure! software are:

Go Secure! for Web Applications v.6.0.,
Go Secure! for Nortel v.6.0.,
Go Secure! for Check Point v.6.0.,
Go Secure! for Lotus Notes R5/R6 v.6.0.1., and
Go Secure! for Microsoft Exchange v.6.0.

If these are not the most recent versions of software, please provide a complete and functional copy of the executable code of the most recent versions along with the most recent versions of the Go Secure! product manuals. The manuals should include the following:

Administrator's Guides,
Installation and Configuration Guides,
Release Notes,
Developers Guides,
Reference Guides,
Overview Manuals,
User's Guides, and
Application Integration Guides.

DC1 45688594.1

A T L A N T A · B O S T O N · L O S A N G E L E S · M I N N E A P O L I S · N A P L E S · S A I N T P A U L · W A S H I N G T O N, D. C.

Daniel E. Yonan, Esquire
September 15, 2006
Page 2

Please also provide any manuals that are used in conjunction with VeriSign's Personal Trust
Agent (PTA), including both client and server instances and the Personal Trust Service (PTS).

Also, we have noticed that the software has not been provided for the following Go
Secure! products: Go Secure! for Identrus, Go Secure! for Nortel, Go Secure! for Checkpoint,[1]
and Go Secure! for SAP. Please provide the most recent version of the software and
documentation for these products immediately.

Since all of the Go Secure! products require the use of VeriSign's Managed PKI (MPKI)
service (*see, e.g.,* VERI-0017431, VERI-0019602) for proper installation and evaluation, please
provide the most recent MPKI executable code (*see, e.g.,* VERI-0019602) and a set of MPKI
documentation, which should include but not be limited to the following documents:

> Managed PKI Introduction,
> Managed PKI Administrator's Handbook,
> Authentication Services Hardware and Software Requirements,
> Enterprise Support and Service Overview,
> Managed PKI Technical Reference,
> Authentication Services Glossary,
> Managed PKI Installation and Configuration,
> Managed PKI Digital ID Validation and Parsing Guide,
> Key Management Service Administrator's Guide, and
> VeriSign Glossary.

Because the Go Secure! software is not functional and cannot be installed or evaluated
without the proper registration file and pilot test accounts, we require a Managed PKI (MPKI)
account to test the Go Secure! products (*see, e.g.,* VERI-0020099) and will require the specific
URL address to access VeriSign's OCSP responder (*see, e.g.,* VERI-0020204).

Of specific note, we are disappointed that your production has been piecemeal, especially
after the close of written fact discovery, August 11, 2006. Our revised first set of document
requests were sent to you on September 20, 2005. Specifically in Request No. 1, we asked for
"One set of each [Identity] and Access Management software and software code and/or device
made, offered for sale, designed, sold, distributed, leased, or supplied by VeriSign, including but
not limited to VeriSign's Go Secure Authentication Suite and VeriSign's Unified Authentication
Suite." Although you debated the relevance of Go Secure, which we alleged to infringe in our
Complaint of April 11, 2005, we supplemented the infringement claim charts on April 14, 2006.
Furthermore, we asked you to supplement your production on April 24, 2006. Your delay and
piecemeal production is unacceptable because it has unfairly prejudiced us in our prosecution of
this case. If you do not produce the most recent versions of executable code of all accused
products and all of the related manuals by September 21, 2006, we will move to compel their
production. In the same regard, we also require the test accounts and other registration
information to install, evaluate, and operate the software. If you do not provide the pilot test

---

[1]  Please note that the Go Secure! disks for Nortel and Checkpoint include some documentation but no software.
DC1 45688594.1

Daniel E. Yonan, Esquire
September 15, 2006
Page 3

accounts and registration information for each and every accused product, we will move the
Court to compel the production of these documents also.[2]

      Finally, please confirm for us which Go Secure! products have been offered since
February 4, 2003, and any Go Secure! products which have been discontinued.

              Very truly yours,

              ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

              André J. Bahou

AJB/cas

cc:     Robert A. Auchter, Esquire (via e-mail)

---

[2] Of specific note, CA produced the accused software in or around December 2005 and RSA produced its hardware
tokens and software around March 2006.

# EXHIBIT 13

**From:** Bahou, Andre J.
**Sent:** Tuesday, September 26, 2006 10:18 AM
**To:** Yonan, Daniel; VeriSign Prism Outside Counsel
**Cc:** PrismCounsel
**Subject:** Meet and Confer

Danny:

During our meet and confer teleconference last week (9-20) you stated that you would send a letter regarding VeriSign's position, *inter alia*, to not produce the pilot test accounts and its source code for the accused products.  To date, we have not received the letter.  Moreover, you stated in our numerous teleconferences throughout September that you would send letters stating VeriSign's positions.  We ask that you honor your commitment to state VeriSign's positions in writing so that the Court may be fully informed of the issues for our motion to compel.

Regardless of your delay, we plan to file a motion to compel on the issues you and I discussed.

AJ

Andre J. Bahou
Attorney at Law
1801 K Street, N.W., Suite 1200
Washington, D.C. 20006
202-736-2707 (direct)
202-775-0725 (main)
202-223-8604 (fax)
E-mail address:  ajbahou@rkmc.com

# EXHIBIT 14

**From:** Bahou, Andre J.
**Sent:** Tuesday, September 26, 2006 10:18 AM
**To:** Yonan, Daniel; VeriSign Prism Outside Counsel
**Cc:** PrismCounsel
**Subject:** Meet and Confer

Danny:

During our meet and confer teleconference last week (9-20) you stated that you would send a letter regarding VeriSign's position, *inter alia*, to not produce the pilot test accounts and its source code for the accused products. To date, we have not received the letter. Moreover, you stated in our numerous teleconferences throughout September that you would send letters stating VeriSign's positions. We ask that you honor your commitment to state VeriSign's positions in writing so that the Court may be fully informed of the issues for our motion to compel.

Regardless of your delay, we plan to file a motion to compel on the issues you and I discussed.

AJ

Andre J. Bahou
Attorney at Law
1801 K Street, N.W., Suite 1200
Washington, D.C. 20006
202-736-2707 (direct)
202-775-0725 (main)
202-223-8604 (fax)
E-mail address: ajbahou@rkmc.com

# EXHIBIT 15

# AKIN GUMP
# STRAUSS HAUER & FELD LLP
Attorneys at Law

DANIEL E. YONAN
202.887.4497/fax: 202.887.4288
dyonan@akingump.com

September 26, 2006

**Via E-Mail**

André J. Bahou, Esquire
Robins, Kaplan, Miller & Ciresi L.L.P.
Suite 1200
1801 K Street, N.W.
Washington, DC 20006-1307

Re:    *Prism Technologies LLC v. VeriSign, Inc., et al.*
       Civil Action No. 1:05-CV-00214-JJF

Dear Mr. Bahou:

This letter responds to your letters of August 29, 31 and September 8, 15, 2006 and specifically addresses, *inter alia*, Prism's delinquent request for highly sensitive and proprietary source code and pilot access to VeriSign's Unified Authentication, Go Secure and Identity Protection products ("Accused Products"). After consideration of your request, and in further view of our meet and confer, VeriSign will not make these items available.

### A. VERISIGN WILL NOT MAKE AVAILABLE HIGHLY SENSITIVE SOURCE CODE OR PILOT PROGRAM ACCESS FOR ITS ACCUSED PRODUCTS

In January 2005, Prism's Vice President and Chief Technology Officer acted as a potential VeriSign customer and communicated with VeriSign employees in order to gather information about how VeriSign's Accused Products alleged worked. *See* P032971 *et seq.* Prism opted not to purchase the Accused Products at that time, and never purchased, tested, set-up, implemented or even possessed, any of the Accused Products prior to having filed this patent litigation against VeriSign on April 15, 2005. *See, e.g.,* 8/11/06 Res. of Prism to VeriSign's RFA Nos. 8-10 and 18. The first time Prism raised any allegations that VeriSign has not provided the necessary software for its Accused Products was August 29 – over two weeks after the close of document discovery, and more than 16 months after Prism initiated this litigation.

Prism now contends that it is entitled to have VeriSign provide, at its own expense, a pilot account for its Accused Products, along with any highly sensitive source code for the Accused Products, so that Prism can more closely evaluate the products it alleges infringe. However, Prism has already been given materials that clearly disclose in detail how each Accused Product operates, many of these documents used by Prism to form its basis for infringement. *See, e.g.,* 9/20/06 2nd Supp. Res. of Prism to VeriSign's Infringement Contention

AKIN GUMP
STRAUSS HAUER & FELD LLP
━━━━━━━━━━━ Attorneys at Law

André J. Bahou, Esquire
September 26, 2006
Page 2

Interrog. No. 2. They include user, administrator, installation, configuration and integration guides, specification and data sheets, *id*, in addition to other materials that include manuals and software and highly confidential technical design and architecture documents including engineering emails that detail the operation and function of its Accused Products. As a result, Prism has long had documents necessary to understand exactly how each of the Accused Products works. Moreover, the "pilot access" or source code now requested would not provide any further insight into how the products actually operate (*e.g.* how information is generated, stored, transferred, *etc.*).

The time for Prism to analyze – for the first time – VeriSign's Accused Products was before it opted to file suit and not now. *See, e.g., View Engineering, Inc. v. Robotic Vision Systems, Inc.*, 208 F.3d 981, 985-6 (Fed. Cir. 2000) (affirmed Rule 11 sanctions against counsel for filing a complaint without having seen the accused products and based the infringement claims on advertising and the knowledge of an employee of the patentee); *Judin v. U.S.*, 110 F.3d 780, 784-5 (Fed. Cir. 1997) (reversed district court's denial of Rule 11 sanctions based upon patentee's inadequate pre-filing investigation by not attempting to obtain or test the accused product and patent counsel's conduct in deferring to client's opinion of infringement without conducting an independent comparison of the patent claims against the accused product); *see also Centillion Data Systems, LLC v. Convergys Corp.*, No. 104-CV-0073 LJM-WTL, 2006 WL 20777 at *4 (S.D. Ind. Jan. 4, 2006) (patentee's failure to obtain copy of the accused software product showed the pre-filing investigation was "objectively unreasonable").

Considering that Prism admits it has never even possessed any of the Accused Products, there is no reasonable explanation for why it has waited until now, a year and a half into the litigation and long after the August 11, 2006 deadline, to seek this discovery.

### C. OTHER OUTSTANDING ITEMS

With regard to the remaining items in your letters, VeriSign has already produced all the latest software for the Unified Authentication (UA) One-Time Password (OTP) product, which is the identical to any software for the UA for Windows OTP product. We are in the process of preparing for production the latest software for UA for Public Key Infrastructure (PKI) which will be produced by Friday, September 29. Any missing manuals may be retrieved from the UA PKI software CDs, that will be produced. The latest manuals for UA are also reflected as version 4.0, which were previously produced, even though version 4.0.1 of the software is currently being sold.

A K I N   G U M P
S T R A U S S   H A U E R   &   F E L D ᴸᴸᴾ
━━━━━━━━━━━━ Attorneys at Law

André J. Bahou, Esquire
September 26, 2006
Page 3


        With regard to Go Secure, the latest version of the Managed Public Key Infrastructure
(MPKI) software will be produced by Friday, September 29.  Again, any manuals may be
retrieved from the CDs.  And the Go Secure CD kits previously produced are the latest versions
while the only Go Secure kits sold today are for MS Exchange and Web Applications.  Any Go
Secure kits that have not been produced, *e.g.*, Identrus and SAP, are no longer sold and
unavailable.  Finally, the Go Secure CD kits for Nortel and Checkpoint never included
executable files, only documentation to describe how to integrate each application into an
existing system.


                                            Very truly yours,



                                            Daniel E. Yonan

# EXHIBIT 16

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

SUITE 1200
1801 K STREET, N.W.
WASHINGTON, D.C. 20006-1307
TEL: 202-775-0725  FAX: 202-223-8604
www.rkmc.com

ATTORNEYS AT LAW

ANDRÉ J. BAHOU
(202) 736-2707

September 29, 2006

**VIA E-MAIL**

Daniel E. Yonan, Esquire
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036-1564

Re:   *Prism Technologies LLC v. VeriSign, Inc., et al.*
      Civil Action No. 1:05-cv-00214-JJF

Dear Mr. Yonan:

    This letter responds to your letter dated September 26, 2006. First, we believe that VeriSign's refusal to provide source code for the Accused Products[1] also prevents VeriSign from using that information in this litigation. Second, the source code of the Accused Products is relevant to our infringement allegations and, as such, it should be produced. By your refusal to produce the requested information, you seek to stonewall the discovery process. We nonetheless reserve our right to further seek the source code of the Accused Products if we determine that we need it to adequately prosecute this case. But because you have refused to produce the source code, we will object if you attempt to use your source code for any purpose during this litigation. In that regard, we ask that you sign the attached stipulation stating that you do not plan to rely on the source code of the Accused Products. This stipulation is required in light of your refusal to produce the source code. Further, we feel that the reservation of our right to request and use the source code is equitable because you are withholding it now and you have the sole knowledge of its contents. Therefore, we cannot relinquish our right to use that information without knowing its contents.

    Moreover, while the other documents you produced and our pre-filing investigations are also relevant to and may be sufficient to establish infringement, that is not a reason to refuse to produce additional relevant information, particularly where you do not contend that such production is unduly burdensome. As you recognize, Prism can adequately demonstrate that

---

[1] VeriSign's Unified Authentication, Go Secure, and Identity Protection products.

DC1 45689222.2

Daniel E. Yonan, Esquire
September 29, 2006
Page 2

VeriSign's Accused Products infringe the '416 patent by citing references in the documents that describe the Accused Products. Consequently, your position that Prism did not conduct an adequate pre-filing investigation is therefore untenable and contradictory to your other assertions in your letter of September 26, 2006.

Although VeriSign states that it will produce the referenced software by September 29, 2006, it fails to provide a complete and operable version of any software by refusing to provide the pilot test accounts, which we believe include: (1) the Registration or License file (VERI 1596789), (2) the Registration Authority Certificate (VERI 1596798), and (3) two of each type of Tokens that can be activated and tested (VERI 1596712-1596715), and (4) a Service Password (VERI 1596906). Because your software is not operable without the four items mentioned above, we will move to compel the pilot test accounts.

Third, your other assertions regarding Prism's requests for the Accused Products software and source code are inaccurate and will be addressed in our forthcoming motion to compel.

Very truly yours,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

André J. Bahou

AJB/cas

Enclosure

cc:    Robert A. Auchter, Esquire (via e-mail)

DC1 45689222.2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PRISM TECHNOLOGIES LLC

Plaintiff,

v.

VERISIGN, INC., RSA SECURITY, INC.,
NETEGRITY, INC., COMPUTER
ASSOCIATES INTERNATIONAL, INC.,
and JOHNSON & JOHNSON SERVICES,
INC.,

Defendants.

Civil Action No. CA 05-00214 JJF

**STIPULATION BY DEFENDANT VERISIGN, INC. TO FOREGO USING
THE SOURCE CODE OF UNIFIED AUTHENTICATION,
GO SECURE, AND IDENTITY PROTECTION IN THIS ACTION**

WHEREAS, Plaintiff Prism Technologies LLC ("Prism") has requested that Defendant

VeriSign, Inc. ("VeriSign") provide the source code for Unified Authentication, Go Secure, and

Identity Protection ("Accused Products").

WHEREAS, in a letter dated September 26, 2006, VeriSign formally refused to provide

this source code requested by Prism.

WHEREAS, Prism reserves its right to seek the source code of the Accused Products.

IT IS HEREBY STIPULATED AND AGREED, by VeriSign and Prism, through their

undersigned counsel, and subject to the approval of the Court, as follows:

1.      VeriSign shall not use the source code of its Accused Products, including Unified

Authentication, Go Secure, and Identity Protection in this action.

DC1 45689355.2

2.      VeriSign agrees that Prism reserves its right to further seek the source code of the Accused Products.

AKIN GUMP STRAUSS HAUER & FELD LLP

By: _____

Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036-1564
Telephone: (202) 887-4497

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

By: _____

1801 K Street, N.W., Suite 1200
Washington, D.C. 20006
Telephone: (202) 775-0725

- 2 -

# EXHIBIT 17

**From:** Bahou, Andre J.
**Sent:** Monday, October 09, 2006 6:47 PM
**To:** Yonan, Daniel; VeriSign - Prism
**Cc:** PrismCounsel
**Subject:** Pending Items

Danny:

As we discussed on the telephone today, please respond in writing with the dates for deposition that you propose for VeriSign's witnesses.

Separately, please respond to my letter of September 29 and our proposed stipulation regarding VeriSign's source code.

Regards,
AJ

Andre J. Bahou
Attorney at Law
1801 K Street, N.W., Suite 1200
Washington, D.C. 20006
202-736-2707 (direct)
202-775-0725 (main)
202-223-8604 (fax)
E-mail address: ajbahou@rkmc.com

*NOTE: EFFECTIVE NOVEMBER 13, 2006,*
*OUR NEW ADDRESS WILL BE:*
*1875 EYE STREET, N.W., SUITE 300*
*WASHINGTON, D.C. 20006-5409*

*PHONE/FAX NUMBERS AND E-MAIL ADDRESS*
*WILL REMAIN THE SAME.*

# EXHIBIT 18

# A K I N   G U M P
# S T R A U S S   H A U E R   &   F E L D L L P

━━━━━━━━━━━━━━ Attorneys at Law

DANIEL E. YONAN
202.887.4497/fax: 202.887.4288
dyonan@akingump.com

October 23, 2006

**Via E-Mail**

André J. Bahou, Esquire
Robins, Kaplan, Miller & Ciresi L.L.P.
Suite 1200
1801 K Street, N.W.
Washington, DC  20006-1307

      Re:    *Prism Technologies LLC v. VeriSign, Inc., et al.*
              <u>Civil Action No. 1:05-CV-00214-JJF</u>

Dear Mr. Bahou:

      This letter responds to your most recent requests concerning VeriSign's highly proprietary source code for Unified Authentication, Go Secure and Identity Protection products ("accused products").

      We are considering your requests but are unable to locate in any of your correspondences the specific reasons why Prism needs source code – other than your unspecific assertion that it is "relevant to [your] infringement allegations." 9/29/06 ltr. from AJB to DEY.  As we have repeatedly pointed out, Prism already has all of the software and hardware we sell to our customers, including executable files, and tens of thousands of pages of technical documents that explain the operation of our products.  We do not see what Prism stands to gain or learn from the source code that it does not have already have.

      Please explain with reference to specific claim elements what information about our products you believe you have not obtained from our current production of approximately 1.6 million pages, and how that information is available from our source code so we may consider your requests.

                  Very truly yours,

                  Daniel E. Yonan

# EXHIBIT 19

ROBINS, KAPLAN, MILLER & CIRESI LLP

SUITE 1200
1801 K STREET, N.W.
WASHINGTON, D.C. 20006-1307
TEL: 202-775-0725  FAX: 202-223-8604
www.rkmc.com

ATTORNEYS AT LAW

ANDRÉ J. BAHOU
(202) 736-2707

November 7, 2006

**VIA E-MAIL**

Daniel E. Yonan, Esquire
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036-1564

   Re: *Prism Technologies LLC v. VeriSign, Inc., et al.*
     Civil Action No. 1:05-cv-00214-JJF

Dear Mr. Yonan:

   This letter responds to your letter of October 23 and further to our prior document requests. In the spirit of cooperation, we ask that you make the source code of the Unified Authentication, Go Secure, and Identity Protection (the "Accused Products") available for inspection. As I mentioned recently on the telephone, if VeriSign does not make the source code available for inspection, you will leave us no choice but to move the Court to compel the production of the source code for the Accused Products. Please note that we feel our prior teleconference and this further effort to reach agreement meet our obligation to confer with you pursuant to local rules.

        Very truly yours,

        ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

        André J. Bahou

AJB/cas

cc: Robert A. Auchter, Esquire (via e-mail)

DC1 45690820.1

ATLANTA · BOSTON · LOS ANGELES · MINNEAPOLIS · NAPLES · SAINT PAUL · WASHINGTON, D.C.

# EXHIBIT 20

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PRISM TECHNOLOGIES LLC, )<br><br>Plaintiff, )<br><br>v. )<br><br>VERISIGN, INC., RSA SECURITY, INC., )<br>NETEGRITY, INC., COMPUTER )<br>ASSOCIATES INTERNATIONAL, INC., )<br>and JOHNSON & JOHNSON, )<br><br>Defendants. ) | Civil Action No. 05-214 |

### DEFENDANT RSA SECURITY INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S REVISED FIRST SET OF RULE 34 REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANT RSA SECURITY INC.

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and applicable Local

Rules, Defendant RSA Security Inc. hereby objects and responds to Plaintiff's Revised First Set

of Rule 34 Requests for Production of Documents and Things to Defendant RSA Security Inc. as

follows.

### GENERAL OBJECTIONS

RSA's General Objections, as set forth herein, are to be considered continuing objections

and responses to each specific request that follows, even if not referred to in the response to a

specific request. RSA's objections and responses given herein shall not waive or prejudice any

objections it may later assert.

A.     RSA objects to each of Prism's requests to the extent that it seeks information

protected from disclosure by any privilege or immunity, including the attorney-client privilege,

the attorney work product doctrine, or any other privilege, immunity, doctrine, or rule of

confidentiality. The inadvertent production of any such information or documents shall not constitute a waiver of such protection.

   B.    RSA objects to each definition and request to the extent that it seeks to impose obligations on RSA in excess of those set forth in the Federal Rules of Civil Procedure, applicable Local Rules, or the rules of this Court, including but not limited to any request that exceeds the scope of Rules 26 and 34 of the Federal Rules of Civil Procedure.

   C.    RSA objects to each request to the extent that it requires production of documents that are neither relevant to any claims or defenses of any party in this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

   D.    RSA objects to each definition and request to the extent that it seeks the production of documents not currently in RSA's possession, custody, or control or otherwise seeks to impose obligations exceeding those required by law. Unless otherwise stated, RSA will construe the requests only to require RSA to use reasonable diligence to locate responsive documents or information based on examination of RSA's facilities, and facilities of agents most likely to have responsive documents or information about the specific matters at issue and based on review of files in which such information or documents ordinarily would expect to be found.

   E.    All of RSA's responses to these requests are based on information presently available. RSA has responded to these requests to the best of its present ability. However, fact investigation and trial preparation are continuing, and RSA reserves the right to correct, add to, supplement, modify, or clarify its responses pursuant to Rule 26(e) of the Federal Rules of Civil Procedure in any manner it deems appropriate. Moreover, these responses are made without prejudice to RSA's right to present at trial additional evidence as may be discovered and produced.

2

F.    RSA objects to these requests to the extent that they are unclear, ambiguous, overly broad, and/or unduly burdensome.

G.    RSA objects to the requests insofar as (a) they seek documents that are unreasonably cumulative or duplicative, or that are obtainable from some other source that is more convenient, less burdensome, or less expensive, and/or (b) compliance would be unduly burdensome, expensive, annoying, or oppressive.

H.    To the extent that RSA responds to these requests, it does not waive the foregoing objections nor does it concede that any document requested or provided in response thereto is relevant to any claims or defenses of a party in the pending action or admissible at the trial thereof.  RSA expressly reserves:

(a)    the right to object, on the grounds of competency, relevance, materiality, privilege, or any other applicable ground, to the use of the documents to be produced in response to these requests or the subject matter thereof, in any subsequent proceeding in, or trial of, this or any other action; and

(b)    the right to object on any ground to other document requests, interrogatories, or other discovery proceedings involving or relating to the subject matter of the requests.

I.    Any inadvertent production of any document shall not be deemed or construed to constitute a waiver of any privilege or right of RSA, which reserves the right to demand that Prism return any such document and copies thereof.

J.    RSA objects to each of Prism's document requests to the extent that they seek confidential information or documents in the absence of an appropriate agreement and order of the Court protecting confidentiality.

3

K.    RSA objects to the requests insofar as they seek production of documents that already have been produced to Prism; of documents that RSA has filed with the Court and served on Prism; of documents that Prism has obtained by its own means; or of documents that are publicly available.

L.    RSA objects to any aspect of Prism's definition of "RSA," "Defendant," "you," or "your" as vague, overly broad, and not reasonably calculated to lead to the discovery of admissible evidence, to the extent that the definition purports to include any person or entity other than RSA Security Inc., its officers, directors, or employees.  In responding to these requests, RSA interprets "RSA," "Defendant," "you," and "your" to mean only RSA Security Inc., its officers, directors, and employees.

M.    RSA objects to the definition of "Identity and Access Management" as vague and ambiguous in that "system," "resources," "advanced authentication," "strong authentication," "USB tokens," "Smart Cards," and "digital identification" are undefined.  RSA responds to requests referencing "Identity and Access Management" with respect to RSA ClearTrust® as well as any products and services explicitly identified in Prism's infringement contentions in response to RSA's Interrogatories.

N.    RSA objects to the definition of "ClearTrust Authentication Suite" as vague and ambiguous.  RSA responds to requests referencing "ClearTrust Authentication Suite" with respect to RSA ClearTrust® only.

4

## OBJECTIONS AND RESPONSES TO SPECIFIC REQUESTS

**REQUEST NO. 1:**

One set of each Identify [sic] and Access Management software code and/or device made, offered for sale, designed, sold, distributed, leased, or supplied by RSA, including but not limited to RSA's ClearTrust Authentication Suite.

**RESPONSE TO REQUEST NO. 1:**

Subject to and without waiving its objections, RSA will produce executable code for the current version of RSA ClearTrust, the only Identity and Access Management product identified with specificity in Prism's definition. RSA will also produce executable code of the current version of RSA Authentication Manager, and samples of hardware, including RSA SecurID 6100 USB Token, RSA Smart Card 5100, and RSA SecurID SID 800. RSA will not produce copies of source code for any software or hardware product, but is willing to allow inspection of relevant portions of source code at RSA's facilities to experts retained by Prism following entry of a suitable protective order. RSA is willing to meet and confer with Prism to identify any additional software code and/or devices relevant to the litigation.

**REQUEST NO. 2:**

All instructional manuals or training manuals for each of the products identified in or within the scope of Request No. 1 above.

**RESPONSE TO REQUEST NO. 2:**

Subject to and without waiving its objections, RSA will produce copies of current instructional manuals or training manuals related to the software and hardware identified in RSA's response to Prism's Request for Production No. 1. RSA is willing to meet and confer with Prism to identify any additional manuals relevant to the litigation

5

**REQUEST NO. 3:**

All documents related to the design, creation, writing, and/or composing of each of the products identified in or within the scope of Request No. 1 above.

**RESPONSE TO REQUEST NO. 3:**

Subject to and without waiving its objections, RSA will produce any non-privileged documents in its possession, custody, or control related to the software and hardware identified in its response to Prism's Request for Production No. 1, including requirements documents and specifications, that can reasonably be collected without undue burden and identified as responsive to this request.

**REQUEST NO. 4:**

All documents that reflect the programming code or system architecture of each of the products identified in or within the scope of Request No. 1 above.

**RESPONSE TO REQUEST NO. 4:**

Subject to and without waiving its objections, RSA will produce current executable code of the software and current samples of the hardware identified in its response to Prism's Request for Production No. 1, as well as requirements documents and specifications related to those products.  RSA will not produce copies of source code for any software or hardware product, but is willing to allow inspection of relevant portions of source code at RSA's facilities to experts retained by Prism following entry of a suitable protective order.

**REQUEST NO. 5:**

All marketing, pricing, advertising, sales, sales projections, market studies, licenses, memoranda of understanding, agreements, royalty payments, promotional documents or audio-visual aids relating to or referring to Identity and Access Management software and hardware

6

productions, including but not limited to the products identified in or within the scope of Request No. 1 above, whether the information originated from RSA or from another entity.

**RESPONSE TO REQUEST NO. 5:**

RSA objects to this request as vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving its objections, RSA will produce any non-privileged documents in its possession, custody, or control that can reasonably be collected without undue burden and identified as responsive to this request.

**REQUEST NO. 6:**

All of RSA's annual and interim financial statements covering the years 1996 to the present, including but not limited to Annual Reports and all submissions made to the Securities and Exchange Commission.

**RESPONSE TO REQUEST NO. 6:**

RSA objects to this request as vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. RSA further objects to producing publicly available documents. RSA objects to the request to produce all submissions made to the Securities and Exchange Commission.

Subject to and without waiving its objections, RSA will produce any non-privileged documents in its possession, custody, or control that can reasonably be collected without undue burden and identified as responsive to this request, including RSA's annual reports on Form 10-K for the years 1996 until the present.

**REQUEST NO. 7:**

All documents that reflect gross and net sales and profit figures (by unit sales volume and by dollar sales volume) since 1996, whether inside or outside the United States, for each product identified in or within the scope of Request No. 1 on a monthly, quarterly, and annual basis, or on whatever timeframe RSA regularly keeps records of data.

**RESPONSE TO REQUEST NO. 7:**

RSA objects to this request as vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving its objections, RSA will produce documents sufficient to reflect sales, revenue, cost and profit figures related to RSA ClearTrust® WebAccess Management Solutions, RSA Federated Identity Manager, and RSA SecurID® Authentication Solutions from 2003 to present.

**REQUEST NO. 8:**

All documents that refer to, relate to, or constitute a patent licensing or royalty agreement entered into by RSA for any computer software or hardware product and/or patent since 1996.

**RESPONSE TO REQUEST NO. 8:**

RSA objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving its objections, RSA will produce any non-privileged documents in its possession, custody, or control that can reasonably be collected without undue burden and identified as responsive to this request.

8

**REQUEST NO. 9:**

Documents sufficient to show the extent to which RSA has made use of the invention of the patents identified in each patent licensing or royalty agreement entered into by RSA for any computer software or hardware product and/or patent since 1996.

**RESPONSE TO REQUEST NO. 9:**

RSA objects to this request as vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving its objections, RSA is presently unaware of any documents reflecting the extent to which RSA has made use of any inventions identified in licensing or royalty agreements entered into by RSA. RSA will nonetheless produce any such non-privileged documents in its possession, custody, or control that may be collected and identified as responsive to this request.

**REQUEST NO. 10:**

All documents that refer to, relate to, reflect, or constitute the intellectual property licensing policies of RSA since 1996.

**RESPONSE TO REQUEST NO. 10:**

RSA objects to this request as overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving its objections, other than documents concerning disclosure and licensing of patents in connection with its participation in standards bodies, RSA is presently unaware of any additional documents reflecting intellectual property licensing policies of RSA since 1996. RSA will nonetheless produce any non-privileged documents in its possession, custody, or control that may be collected and identified as responsive to this request.

9

**REQUEST NO. 11:**

All documents that describe, refer, or relate to any royalty or license fees received or paid by RSA with respect to any Identity and Access Management software or hardware product.

**RESPONSE TO REQUEST NO. 11:**

RSA objects to this request as vague, ambiguous, overly broad, and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving its objections, RSA will produce any non-privileged documents in its possession, custody, or control that can reasonably be collected without undue burden and identified as responsive to this request.

**REQUEST NO. 12:**

All documents that relate to pricing of the products identified in or within the scope of Request No. 1 above.

**RESPONSE TO REQUEST NO. 12:**

RSA objects to this request as vague, ambiguous, overly broad, and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving its objections, RSA will produce any non-privileged documents in its possession, custody, or control that can reasonably be collected without undue burden and identified as responsive to this request.

**REQUEST NO. 13:**

All documents that refer, relate, or constitute written opinion(s) of counsel relating to the validity, infringement, or enforceability of the '416 patent.

**RESPONSE TO REQUEST NO. 13:**

RSA objects to this request as calling for communications protected by the attorney-client privilege and the attorney work product doctrine.

**REQUEST NO. 14:**

Any document referring or relating to the '416 patent.

**RESPONSE TO REQUEST NO. 14:**

Subject to and without waiving its objections, RSA is presently unaware of any non-privileged documents referring or relating to the '416 patent. RSA will nonetheless produce any non-privileged documents in its possession, custody, or control that can reasonably be collected without undue burden and identified as responsive to this request.

**REQUEST NO. 15:**

All prior art to the '416 patent and any other non-prior art documents that RSA contends is relevant to the validity or infringement of the '416 patent or to the interpretation of any claim terms in the '416 patent.

**RESPONSE TO REQUEST NO. 15:**

Subject to and without waiving its objections, RSA will produce any non-privileged documents in its possession, custody, or control that can reasonably be collected without undue burden and identified as responsive to this request.

**REQUEST NO. 16:**

All documents identified in any study or evaluation of, or search for, prior art to the '416 patent.

**RESPONSE TO REQUEST NO. 16:**

RSA objects to this request as vague, ambiguous, overly broad, and unduly burdensome. RSA further objects to this request as calling for privileged information.

11

Subject to and without waiving its objections, RSA will produce any non-privileged documents in its possession, custody, or control that can reasonably be collected without undue burden and identified as responsive to this request.

**REQUEST NO. 17:**

All documents and things that RSA will offer during trial.

**RESPONSE TO REQUEST NO. 17:**

Subject to and without waiving its objections, RSA will produce any documents and things it may offer as evidence at trial. RSA incorporates by reference its present and subsequent disclosures under Rule 26(a) of the Federal Rules of Civil Procedure, applicable Local Rules and Standing Orders, and any amendments thereto.

**REQUEST NO. 18:**

All documents that refer to, relate to, or constitute communications with any consultants retained to assist RSA regarding this litigation.

**RESPONSE TO REQUEST NO. 18:**

RSA objects to this request as calling for documents protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiving its objections, RSA will disclose documents in accordance with Rule 26(a)(2) of the Federal Rules of Civil Procedure, applicable Local Rules, and present and future Orders of this Court.

**REQUEST NO. 19:**

All documents that refer to, relate to, support, or refute any of the allegations, averments, denials, affirmative defenses and/or counterclaims in RSA's Answer and Counterclaims.

**RESPONSE TO REQUEST NO. 19:**

RSA objects to this request as vague, ambiguous, overly broad, and calling for documents protected by attorney client privilege and/or the work product doctrine.

Subject to and without waiving its objections, RSA will produce any non-privileged documents in its possession, custody, or control that can reasonably be collected without undue burden and identified as responsive to this request.

**REQUEST NO. 20:**

All documents referring or relating to Prism Resources, Inc. or Prism Technologies LLC.

**RESPONSE TO REQUEST NO. 20:**

Subject to and without waiving its objections, RSA is presently unaware of any non-privileged documents referring or relating to Prism Resources, Inc. or Prism Technologies LLC. RSA will nonetheless produce any non-privileged documents in its possession, custody, or control that can reasonably be collected without undue burden and identified as responsive to this request.

**REQUEST NO. 21:**

All documents considered, relied upon, referred to, or referenced in RSA's responses to Prism's Interrogatories to RSA.

**RESPONSE TO REQUEST NO. 21:**

Subject to and without waiving its objections, RSA will produce any non-privileged, responsive documents.

**REQUEST NO. 22:**

All confidentiality agreements that relate to the subject matter of this suit or that form any part of the basis of a claim of privilege for any information called for by any discovery request from Prism to RSA.

13

**RESPONSE TO REQUEST NO. 22:**

RSA objects to the term "subject matter of this suit" as vague. RSA objects to this request, to the extent it can be reasonably understood, as calling for documents protected by the attorney-client privilege and/or the work product doctrine.

**REQUEST NO. 23:**

All documents referring or relating to any inventor of the '416 patent, including Richard L. Gregg, Timothy C. Goeke, and Sandeep Giri.

**RESPONSE TO REQUEST NO. 23:**

RSA objects to this request as ambiguous and overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving its objections, RSA will produce any non-privileged documents in its possession, custody, or control that can reasonably be collected without undue burden and identified as referring or relating to Richard L. Gregg, Timothy C. Goeke, and Sandeep Giri. .

**REQUEST NO. 24:**

All documents, including but not limited to technical and marketing studies and minutes of meetings, that relate or refer to RSA's decision(s) to develop, design, test, manufacture, offer for sale, or sell or import any Identity and Access Management software or hardware, including those identified in or within the scope of Request No. 1 above.

**RESPONSE TO REQUEST NO. 24:**

RSA objects to this request as vague and ambiguous and overly broad.

14

Subject to and without waiving its objections, RSA will produce any non-privileged documents in its possession, custody, or control that can reasonably be collected without undue burden and identified as technical and marketing studies and minutes of technical and engineering meetings referring or relating to software or hardware identified in RSA's response to Prism's Request for Production No. 1.

**REQUEST NO. 25:**

All documents that constitute, evidence, describe, pertain to, relate or refer to, any discussion, meeting or correspondence between RSA and any customer, potential customer, competitor, or other person concerning the '416 patent, and the present lawsuit against Prism or any other lawsuit or administrative proceeding, anywhere in the world, involving the '416 patent.

**RESPONSE TO REQUEST NO. 25:**

RSA objects to this request as ambiguous, overly broad, unduly burdensome, and calling for documents that are protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiving its objections, RSA is presently unaware of any non-privileged documents referring or relating to any discussion, meeting or correspondence between RSA and any customer, potential customer, competitor, or other person concerning the '416 patent, and the present lawsuit against Prism or any other lawsuit or administrative proceeding, anywhere in the world, involving the '416 patent.

**REQUEST NO. 26:**

Product catalogs, price sheets, product manuals, specifications and descriptions for all Identity and Access Management software or hardware and devices sold or offered for sale by RSA.

15

**RESPONSE TO REQUEST NO. 26:**

RSA objects to this request as overly broad and calling for documents that are not reasonably likely to lead to the discovery of admissible evidence.

Subject to and without waiving its objections, RSA will produce any non-privileged documents in its possession, custody, or control that can reasonably be collected without undue burden and identified as responsive to this request concerning software and hardware identified in RSA's response to Prism's Request for Production No. 1 for February 2003 until the present.

**REQUEST NO. 27:**

Documents identifying by name and location any and all distributors to whom RSA distributed or sold Identity and Access Management software or hardware and devices and the dates on which such sales or distributions were made.

**RESPONSE TO REQUEST NO. 27:**

RSA objects to this request as overly broad.

Subject to and without waiving its objections, RSA will produce any non-privileged documents in its possession, custody, or control that can reasonably be collected without undue burden and identified as responsive to this request concerning software and hardware identified in RSA's response to Prism's Request for Production No. 1 for February 2003 until the present.

**REQUEST NO. 28:**

Documents which any expert you consulted or retained for this matter reviewed or relied upon when forming the bases for their expert opinions, whether asserted or not asserted in this matter, and all copies of any communications or reports developed by any such expert(s).

16

**RESPONSE TO REQUEST NO. 28:**

RSA objects to this request as overly broad.  RSA further objects to this request to the extent that it calls for documents protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiving its objections, RSA will disclose responsive documents in accordance with Rule 26(a)(2) of the Federal Rules of Civil Procedure and applicable Local Rules and Orders of this Court.

**REQUEST NO. 29:**

All market studies, reports, business plans, forecasts, marketing plans or other documents concerning the market for Identity and Access Management software or hardware products and services including, but not limited to market size, market growth, market potentials and studies of the market size of competitors.

**RESPONSE TO REQUEST NO. 29:**

RSA objects to this request as seeking documents that are not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving its objections, RSA will produce any non-privileged documents in its possession, custody, or control that can reasonably be collected without undue burden and identified as responsive to this request concerning software and hardware identified in RSA's response to Prism's Request for Production No. 1 for February 2003 until April 2005.

**REQUEST NO. 30:**

To the extent not already requested, all documents referring or relating in any way to RSA's policies, procedures, or other guidelines on licensing or cross-licensing of patents, patent applications or technology to or from others.

17

**RESPONSE TO REQUEST NO. 30:**

      RSA objects to this request as duplicative and overly broad.

      Subject to and without waiving its objections, other than documents concerning disclosure and licensing of patents in connection with its participation in standards bodies, RSA is presently unaware of any additional documents reflecting policies, procedures, or other guidelines on licensing or cross-licensing of patents, patent applications or technology to or from others. RSA will nonetheless produce any non-privileged documents in its possession, custody, or control that may be collected and identified as responsive to this request.

**REQUEST NO. 31:**

      Representative corporate organization charts for RSA, including parents, subsidiaries, affiliates, divisions, wholly-owned business entities, predecessors or successors, sufficient to show: (a) the general organization of RSA and each such parent, subsidiary, affiliate, division, wholly-owned business entity, predecessor or successor; (b) the names, addresses and telephone numbers of each past and present corporate officer and director of RSA and each such parent, subsidiary, affiliate, division, wholly-owned business entity, predecessor, or successor; and (c) the detailed organization of each department, section, or group of RSA responsible for designing, developing, testing, manufacturing, exporting, importing, distribution, marketing, advertising, selling, or using Identify [sic] and Access Management software and hardware, including the products identified in or within the scope of Request No. 1 above.

**RESPONSE TO REQUEST NO. 31:**

      RSA objects to this request as overly broad and not reasonably calculated to lead to the discovery of admissible evidence. RSA objects to the request to provide the names, addresses, and telephone number of each past and present corporate officer and director of RSA and each

such parent, subsidiary, affiliate, division, wholly-owned business entity, predecessor, or successor.

Subject to and without waiving its objections, RSA will produce any non-privileged documents in its possession, custody, or control that can reasonably be collected without undue burden and identified as responsive to this request.

**REQUEST NO. 32:**

All documents that constitute, relate to, or refer to RSA's document control and retention policies, including for its electronic documents.

**RESPONSE TO REQUEST NO. 32:**

RSA objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving its objections, RSA will produce any non-privileged documents in its possession, custody, or control that can reasonably be collected without undue burden and identified as responsive to this request.

RSA SECURITY INC.

_____
Frederick L. Cottrell, III (#2555)
Alyssa M. Schwartz (#4351)
Richards, Layton & Finger, P.A.
One Rodney Square
Post Office Box 551
Wilmington, DE  19899
Telephone: (302) 651-7700
cottrell@rlf.com
schwartz@rlf.com

Of Counsel:

William F. Lee (*pro hac vice*)
David B. Bassett (*pro hac vice*)

Mark D. Selwyn (*pro hac vice*)
Gregory P. Teran (*pro hac vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA  02109
(617) 526-6000

October 28, 2005

20