IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PRISM TECHNOLOGIES LLC<br><br>Plaintiff,<br><br>v.<br><br>VERISIGN, INC., RSA SECURITY, INC., NETEGRITY, INC., COMPUTER ASSOCIATES INTERNATIONAL, INC., and JOHNSON & JOHNSON SERVICES, INC.,<br><br>Defendants. | Civil Action No. 05-214 JJF<br><br><br>REDACTED PUBLIC VERSION |

**PLAINTIFF PRISM TECHNOLOGIES LLC'S
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION
TO COMPEL DEFENDANT VERISIGN, INC. TO PRODUCE
THE SOURCE CODE OF ITS ACCUSED PRODUCTS**

**February 2, 2007**

Richard D. Kirk (rk0922)
Ashley B. Stitzer (as3891)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899
(302) 655-5000
rkirk@bayardfirm.com
astitzer@bayardfirm.com

ATTORNEYS FOR PLAINTIFF PRISM
TECHNOLOGIES LLC

OF COUNSEL:

Dirk D. Thomas
Robert A. Auchter
Kenneth A. Freeling
André J. Bahou
Aziz Burgy
Chandran B. Iyer
ROBINS, KAPLAN, MILLER & CIRESI LLP
1875 Eye Street, N.W., Suite 300
Washington, D.C. 20006-5409
(202) 775-0725

650606-1

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................. 1

FACTS .................................................................................................................................... 2

ARGUMENT .......................................................................................................................... 5

    I.    VERISIGN'S PRODUCTION OF THE SOURCE CODE WOULD PROVIDE CRUCIAL INFORMATION NECESSARY TO RESOLVE DISPUTES OVER THE FUNCTIONALITY OF THE ACCUSED PRODUCTS. ............................................................................................. 5

    II.   IN LIGHT OF THE PROTECTIVE ORDER IN THIS CASE, PRISM'S BENEFIT VASTLY OUTWEIGHS VERISIGN'S BURDEN IN PRODUCING THE SOURCE CODE OF THE ACCUSED PRODUCTS. ............................................................................................. 7

    III.  VERISIGN'S ARGUMENT THAT PRODUCTION OF THE SOURCE CODE IS CUMULATIVE MUST FAIL. ............................................................................................. 7

CONCLUSION ....................................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Cardenas v. Dorel Juvenile Group, Inc.,*
  230 F.R.D. 611 (D. Kan. 2005) ..................................................................................... 5

*Forterra Sys. v. Avatar Factory,*
  2006 U.S. Dist. LEXIS 63100 (N.D. Cal. 2006) ...................................................... 5, 7

*Novartis Pharma. Corp. v. Abbott Labs,*
  203 F.R.D. 159 (D. Del. 2001) ..................................................................................... 5

**Federal Rules**

FED. R. CIV. P. 26(b)(2)(iii) ................................................................................................. 7

FED. R. CIV. P. 37(a) ............................................................................................................. 1

**Local Rules**

D. Del. LR. 37.1 .................................................................................................................... 1

E.D. Tex. Patent L.R. 3-4 ..................................................................................................... 5

N.D. Cal. Patent L.R. 3-4 ..................................................................................................... 5

## INTRODUCTION

Plaintiff Prism Technologies LLC moves this Court pursuant Fed. R. Civ. P. 37(a), and L. R. 37.1, for an Order compelling Defendant VeriSign, Inc. to produce the source code of its Unified Authentication ("UA") and VeriSign Identity Protection ("VIP") software products (collectively the "accused products").[1] On September 20, 2005, Prism specifically requested in Document Request No. 1 "[o]ne set of each Identity [sic] and Access Management software and *software code* and/or device made, offered for sale, designed, sold, distributed, leased, or supplied by VeriSign, including but not limited to VeriSign's Go Secure Authentication Suite and VeriSign's Unified Authentication Suite."[2] As the Court can see from the facts below, the attached discovery requests, and letters, VeriSign has been well aware of Prism's requests for the source code of the accused products for over a full year.[3] Although VeriSign originally,[4] and again subsequently[5] indicated it would produce the source code, its actions have revealed they had no intention of doing so at any point. These tactics have delayed Prism's access to the source code at least until after the close of written fact discovery and very near to the end of deposition discovery, prejudicing Prism as a result. This court should not permit VeriSign an unfair advantage in this suit by ratifying their refusal to produce highly relevant source code that they will continue to have unrestricted access to. As such, Prism asks that the Court compel actual production, as opposed to inspection, of the human readable source code.

---

[1] Although Go Secure is currently an accused product, Prism holds its request for that source code in abeyance until after the 30(b)(6) deposition of VeriSign, Inc., currently scheduled for next week, February 7, 2007.

[2] *See* Ex. 1, Doc. Req. 1, Prism's Revised First Set of Rule 34 Requests for Production of Documents and Things, Sept. 20, 2005 (emphasis added).

[3] *See* Ex. 1, Doc. Req. 1, Prism's Revised First Set of Rule 34 Requests for Production of Documents and Things, Sept. 20, 2005.

[4] *See* Ex. 2, Response to Req. 1, VeriSign's Responses to Plaintiff's Revised First Set of Rule 34 Requests for Production of Documents and Things, October 27, 2005. In responding to this document request, subject to VeriSign's general objections, it affirmatively indicated it would produce documents responsive to the request, which presumably includes, *inter alia*, the source code of the accused products. *Id.*

[5] *See* Ex. 3, at 2, Letter from D. Yonan to A. Bahou, May 11, 2006.

## FACTS

Over 15 months ago, in its initial document requests to VeriSign of September 20, 2005, Prism specifically requested the software source code of the accused products.[6] After six (6) months (April 24, 2006) had passed since propounding its initial document requests, Prism requested that VeriSign address its deficient document production regarding, among other things, Document Request No. 1.[7] VeriSign stated that it would produce the items called for in Document Request No. 1,[8] but did not do so. After the Protective Order was entered in this case, Prism again requested the items called for in Document Request No. 1 on June 26 and 27, 2006.[9]

On August 4, 2006 (one week before the close of discovery and nearly one year after Prism's initial request), VeriSign produced *some* of the software products but withheld the source code without stating a reason for doing so.[10] No source code was subsequently produced. As written fact discovery closed and once Prism determined that VeriSign's intention was never to produce the source code, Prism renewed its requests in a letter.[11] Even after these requests and diligent reminders,[12] Prism wrote a specific e-mail to VeriSign asking that VeriSign honor

---

[6] *See* Ex. 1, Doc. Req. 1, Prism's Revised First Set of Rule 34 Requests for Production of Documents and Things, Sept. 20, 2005.
[7] *See* Ex. 4, at 3, Letter from A. Bahou to D. Yonan, April 24, 2006.
[8] *See* Ex. 3, at 2, Letter from D. Yonan to A. Bahou, May 11, 2006; *see also* Ex. 2, Response to Req. 1, VeriSign's Responses to Plaintiff's Revised First Set of Rule 34 Requests for Production of Documents and Things, October 27, 2005. In its response, VeriSign affirmatively indicated it would produce "documents" responsive to Prism's request. *Id.* Of note, VeriSign has specifically defined "documents" to include source code. *See* Ex. 5 at Definition ¶¶12-13, VeriSign's First Set of Interrogatories to Prism, September 15, 2005.
[9] *See* Ex. 6, Letter from A. Bahou to D. Yonan, June 26, 2006; *see also* Ex. 7, Letter from A. Bahou to D. Yonan, June 27, 2006.
[10] *See* Ex. 8, Letter from D. Yonan to A. Bahou, August 4, 2006; VeriSign completed production of the remaining software products over one year after the initial request and after the close of discovery, but again did not produce the source code. *See* Ex. 9, Letter from V. Chan to A. Bahou, September 29, 2006.
[11] *E.g.*, Ex. 10, Letter from A. Bahou to D. Yonan, August 31, 2006; *see also* Ex. 11, Letter from A. Bahou to D. Yonan, August 29, 2006 (requesting documents and things that VeriSign had not properly produced before the close of written fact discovery on August 11, 2006).
[12] *E.g.*, Ex. 12, at 2, Letter from A. Bahou to D. Yonan, September 15, 2006; *see also* Ex. 13, E-mail from A. Bahou to D. Yonan, September 26, 2006.

650606-1

its commitment to respond, as it said it would numerous times via telephone.[13] VeriSign maintained its refusal.[14] VeriSign's letter of September 26, 2006 was the first time that VeriSign affirmatively stated that it would neither produce the source code nor make it available for inspection,[15] which was well after the close of discovery on August 11, 2006. In addition, VeriSign now claimed that the source code was "highly sensitive," even though the Court had entered a Protective Order on May 15, 2006.[16]

Faced with the specter of VeriSign refusing to produce the source code but using the code to its own ends later, Prism asked VeriSign to stipulate to not assertively use the source code, though Prism reserved its right to seek the source code later.[17] Since the close of discovery, this was at least Prism's fifth request for the source code, in addition to the numerous teleconferences and at least three letters requesting the source code starting from September 20, 2005. On October 9, 2006, Prism again asked VeriSign to respond to its correspondence regarding the source code.[18] Ignoring Prism's request for a response regarding the stipulation and responding two weeks later, VeriSign improperly attempted to shift the burden of relevancy to Prism, claiming it was "considering [Prism's] requests but [was] unable to locate in any of [Prism's] correspondences the specific reasons why Prism needs source code."[19] In the spirit of cooperation, however, and in light of the upcoming depositions scheduled near VeriSign's facilities in California, Prism asked VeriSign to at least make the source code available for inspection,[20] as several other Defendants had done.[21]

---

[13] See Ex. 14, E-mail from A. Bahou to D. Yonan, September 26, 2006.
[14] See Ex. 15, Letter from D. Yonan to A. Bahou, September 26, 2006.
[15] See Ex. 15, Letter from D. Yonan to A. Bahou, September 26, 2006.
[16] See D.I. 114, Protective Order entered May 15, 2006.
[17] See Ex. 16, Letter from A. Bahou to D. Yonan and attached Stipulation, September 29, 2006.
[18] See Ex. 17, E-mail from A. Bahou to D. Yonan, October 9, 2006.
[19] See Ex. 18, Letter from D. Yonan to A. Bahou, October 23, 2006.
[20] See Ex. 19, Letter from A. Bahou to D. Yonan, November 7, 2006.

Dismissing Prism's appeal to VeriSign's "spirit of cooperation," VeriSign continued to rely on the unsupportable argument that disclosure of the "highly sensitive" source code would be cumulative.[22] Even after Prism again reopened its dialogue with VeriSign,[23] firmly demonstrating its need for access to the source code, VeriSign's counsel continued to delay by insisting on more time to confer with its client on the issue.[24] Although Prism allowed nearly two weeks after the holidays to do so, VeriSign nevertheless sought even more delay.[25] Now, in its latest letter, VeriSign flatly refuses to produce the source code, claiming that it has "maintained a consistent position" throughout this dispute and calling Prism's view of the facts "disingenuous."[26] In doing so, VeriSign misleadingly characterizes its initial response to Prism's Request No. 1, stating it "only intended to produce documents," even though it never disputed Prism's specific and reasonable request for the source code.[27] Yet, VeriSign itself defines documents and electronic data to include computer programs, programming notes or instructions, output resulting from the use of any software program, and source code of all types.[28]

In light of VeriSign's refusal to produce the source code for its accused products, Prism files the instant motion to compel VeriSign to produce the source code of the accused products.

---

[21] See Ex. 20 at 5, RSA Security, Inc.'s Responses to Plaintiff's Revised First Set of Rule 34 Requests for Production of Documents and Things, No. 1, October 28, 2005; Ex. 21, Letter from G. Teran to A. Burgy, August 25, 2006; Ex. 22 at 5, Computer Associates International, Inc. and Netegrity, Inc.'s (collectively "CA's") Responses to Plaintiff's Revised First Set of Rule 34 Requests for Production of Documents and Things, No. 1, October 28, 2005; Ex. 23 at 4, Johnson & Johnson Services, Inc. 's ("JJSI's") Responses to Plaintiff's Revised First Set of Rule 34 Requests for Production of Documents and Things, No. 1, October 27, 2005; see also Ex. 24 at 4-5, JJSI's Responses and Objections to Prism's First Requests for Rule 34 Inspection, September 1, 2006 (agreeing to permit inspection); Ex. 25, Letter from J. Baxter to A. Bahou, February 3, 2006.

[22] See Ex. 26, Letter from D. Yonan to A. Bahou, November 28, 2006.

[23] See Ex. 27, Letter from A. Bahou to D. Yonan, December 22, 2006.

[24] See Ex. 28, E-mail from J. Snyderman to A. Bahou, December 26, 2006.

[25] See Ex. 29, E-mail from D. Yonan to A. Bahou, January 8, 2007 (implying that in light of the 'new demand' that the production be made in Washington, D.C., a further delay was likely); see Ex. 39, E-mail from A. Bahou to D. Yonan, January 9, 2007 (agreeing to more time for VeriSign to respond to Prism's requests).

[26] See Ex. 30, Letter from D. Yonan to A. Bahou, January 11, 2007.

[27] See Ex. 30, Letter from D. Yonan to A. Bahou, January 11, 2007.

[28] See Ex. 5, VeriSign's First Set of Interrogatories to Prism, at Definition ¶¶12-13, September 15, 2005.

## ARGUMENT

### I. VeriSign's Production of the Source Code Would Provide Crucial Information Necessary To Resolve Disputes Over The Functionality Of The Accused Products.

VeriSign's primary argument for withholding the source code, namely that it would not provide any further insight into how the products actually operate, is unsupportable. The source code of an accused product is relevant and discoverable under FED. R. CIV. P. 26, and should be produced. *See* Ex. 31, *Forterra Sys. v. Avatar Factory*, 2006 U.S. Dist. LEXIS 63100, *4 (N.D. Cal. 2006) (holding that the entire source code of the accused product was discoverable and granting plaintiff's motion to compel its disclosure); *Novartis Pharma. Corp. v. Abbott Labs*, 203 F.R.D. 159, 164 (D. Del. 2001) (J. Farnan) (granting portion of plaintiff's motion to compel the requested documents that were relevant and non-privileged). When discovery sought appears relevant on its face, the party resisting discovery has the burden to establish that the discovery is not relevant.[29] Here, in addition to the plain fact that the accused products' source code is, by its very nature highly relevant to this litigation, access to the source code may be the most efficient method to resolve the specific disputes between the parties as to how VeriSign's products operate. Further, other judicial districts view source code as so crucial to the litigation process that they require a party opposing a claim of patent infringement to produce the source code of any aspects or elements described in a plaintiff's infringement claim charts.[30]

Prism desires access to the accused products' source code to rebut VeriSign's non-infringement contentions. In its December 22, 2006 letter, Prism gave VeriSign a multitude of reasons why it should have access to the human readable source code, including to determine,

---

[29] *Cardenas v. Dorel Juvenile Group, Inc.*, 230 F.R.D. 611, 615 (D. Kan. 2005) ("Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party. A request for discovery should be allowed 'unless it is clear that the information sought can have no possible bearing' on the claim or defense of a party.").
[30] *See, e.g.*, N.D. Cal. Patent L.R. 3-4 ; E.D. Tex. Patent L.R. 3-4 .

*inter alia*, where the accused products store the client identity data, where the identity data of the server is stored, and where the authentication of the client takes place.[31] Conveniently, however, VeriSign refuses to produce the source code, insists on wording its non-infringement contentions using very broad terminology, and does not point to any documents or other support for its non-infringement arguments.[32]

Prism does not seek to "embark on an unfettered fishing expedition" as VeriSign suggests,[33] but seeks access to the source code that it conclusively knows exists and is relevant to this case. The publicly available documents[34] or the documents VeriSign has produced to date may show enough for Prism to establish that the accused products infringe the '416 patent, but those documents do not provide enough detail to rebut VeriSign's non-infringement positions, nor do those documents provide necessary detail on the disputed functions performed by the accused products.[35]

In short, because VeriSign's source code is relevant, discoverable, and detailed enough to more efficiently resolve the pending disputes, the Court should compel VeriSign to produce its source code for the accused products.

---

[31] *See* Ex. 27, Letter from A. Bahou to D. Yonan, December 22, 2006.
[32] *See* Ex. 33, VeriSign's CORRECTED First Supplemental Response to Prism's Interrogatory No. 3, August 28, 2006.
[33] *See* Ex. 30, Letter from D. Yonan to A. Bahou, January 11, 2007.
[34] This Court should dispense with VeriSign's argument that Prism did not perform a sufficient investigation before bringing suit. *See* Ex. 30, Letter from D. Yonan to A. Bahou, January 11, 2007. VeriSign's publicly available white papers and other publicly available documents provided Prism with more than sufficient information to conduct a reasonable investigation of VeriSign's products to determine whether they infringed the '416 patent. Further, those publicly available documents were cited in detailed claim charts as parts of Prism's Responses to VeriSign's Interrogatory No. 2, well before VeriSign produced any documents to Prism. *See* Ex. 32 at 6-10, Prism's Objections and Responses to VeriSign's First Set of Interrogatories, October 24, 2005.
[35] *See* Ex. 35, at ¶¶12-15 *et seq.*, Affidavit of Plaintiff's Expert Michael I. Shamos, Ph.D, J.D., Concerning VeriSign Source Code; *see also* Ex. 34, Declaration of Matthew B. Weinstein.

## II. In Light Of The Protective Order In This Case, Prism's Benefit Vastly Outweighs VeriSign's Burden in Producing The Source Code Of The Accused Products.

VeriSign's prior excuses[36] characterizing the source code as "highly sensitive" material are untenable. Considering that the Court has already approved the Protective Order agreed to by all parties of this action, the only concern is whether Prism's benefit outweighs VeriSign's burden in producing the source code.[37] As Prism has definitively shown the importance of production of the source code, and considering the standing Protective Order in place which completely mitigates the risk of inadvertent disclosure,[38] Prism's benefit significantly outweighs VeriSign's burden of production in this case.

## III. VeriSign's Argument That Production Of The Source Code Is Cumulative Must Fail.

VeriSign argues that production of the source code is merely cumulative and relies on its production of "cop[ies] of the accused software" and the sheer size of the production, "over 1.6 million pages," as support for its assertion.[39] This Court should dispense with that assertion as inaccurate and ridiculous. First, the copies of the accused software VeriSign produced are inoperable and useless as VeriSign refused to provide any installation codes to allow Prism to install, operate, and evaluate the software produced. Second, dumping an overwhelming volume of high-level documents on Prism cannot excuse VeriSign from withholding the detailed source code of the accused products.[40] Moreover, production of the source code is not cumulative or

---

[36] See Ex. 15, Letter from D. Yonan to A. Bahou, September 26, 2006.
[37] See Ex. 31, *Forterra Sys.*, 2006 U.S. Dist. LEXIS at *4 (weighing the defendant's burden but finding the source code was at "the heart of the dispute" and ordering its production to Forterra's expert); FED. R. CIV. P. 26(b)(2)(iii).
[38] See Ex. 35, at ¶ 32, Affidavit of Plaintiff's Expert Michael I. Shamos, Ph.D, J.D., Concerning VeriSign Source Code
[39] See Ex. 26, Letter from D. Yonan to A. Bahou, November 28, 2006.
[40] Of the more than 1.6 million pages of documents produced by VeriSign, roughly 1.2 million pages are e-mail and associated attachments. See Ex. 34, Declaration of Matthew B. Weinstein.

duplicative for at least three additional reasons: first, <u>there is no guarantee that any of the design documents VeriSign produced reflect the as-implemented functionality of the final, publicly-available product</u>; second, the source code provides a definitive basis for establishing the function of the software, as compared with other documents that may describe the function under a specific configured installation; and third, the source code is significantly more detailed than any other high-level end user manual produced.[41]

VeriSign also asserts that none of the other Defendants produced its source code.[42] This characterization is misleading because other defendants willingly offered to allow Prism to inspect their source code[43] and/or produced operable copies of their accused products with the appropriate license files.[44] In contrast, VeriSign withheld its software until one week before the close of written fact discovery, and even then VeriSign refused to provide license files or installation codes to permit Prism to run VeriSign's software. Most notably, VeriSign did not state affirmatively that it would not produce the source code until September 26, 2006, after the close of discovery on August 11, 2006.

Lastly, the primary difference between VeriSign and the other Defendants is that the "highly confidential technical design and architecture documents" VeriSign purports to have produced, in fact, have not been produced by VeriSign.[45] Instead, VeriSign's production consists of a plethora of public-facing user's guides, administrator's guides, installation and

---

[41] *See* Ex. 35, Affidavit of Plaintiff's Expert Michael I. Shamos, Ph.D, J.D., Concerning VeriSign Source Code.
[42] *See* Ex. 30, Letter from D. Yonan to A. Bahou, January 11, 2007.
[43] *See* Ex. 20 at 5, RSA Security, Inc.'s Responses to Plaintiff's Revised First Set of Rule 34 Requests for Production of Documents and Things, No. 1, October 28, 2005; Ex. 21, Letter from G. Teran to A. Burgy, August 25, 2006; Ex. 22 at 5, CA's Responses to Plaintiff's Revised First Set of Rule 34 Requests for Production of Documents and Things, No. 1, October 28, 2005; Ex. 23 at 4, JJSI's Responses to Plaintiff's Revised First Set of Rule 34 Requests for Production of Documents and Things, No. 1, October 27, 2005; *see also* Ex. 24 at 4-5, JJSI's Responses and Objections to Prism's First Request for Rule 34 Inspection, September 1, 2006 (agreeing to permit inspection).
[44] *See* Ex. 25, Letter from J. Baxter to A. Bahou, February 3, 2006.
[45] *See* Ex. 34, Declaration of Matthew B. Weinstein.

configuration guides that describe the accused products in broad high-level language.[46] This is in stark contrast to the numerous detailed technical design documents received from both RSA Security, Inc. and Computer Associates International, Inc.[47]

Thus, as production of the highly relevant source code would not be cumulative, duplicative, or overly burdensome, this Court should grant Prism's motion to compel.

## CONCLUSION

For the foregoing reasons, Prism respectfully asks that the Court grant its motion to compel VeriSign to produce the source code of the accused products. Alternatively, if the Court denies this motion, Prism request that the Court order that VeriSign not be allowed to use its source code in this matter for any reason.

February 2, 2007                                                THE BAYARD FIRM

                                                                /s/ Richard D. Kirk (rk0922)
                                                                Richard D. Kirk (rk0922)
OF COUNSEL:                                                     Ashley B. Stitzer (as3891)
Dirk D. Thomas                                                  222 Delaware Avenue, Suite 900
Robert A. Auchter                                               Wilmington, Delaware 19899
Kenneth A. Freeling                                             (302) 655-5000
André J. Bahou                                                  rkirk@bayardfirm.com
Aziz Burgy                                                      astitzer@bayardfirm.com
Chandran B. Iyer                                                ATTORNEYS FOR PLAINTIFF
ROBINS, KAPLAN, MILLER & CIRESI LLP                             PRISM TECHNOLOGIES LLC
1875 Eye Street, N.W., Suite 300
Washington, D.C. 20006-5409
(202) 775-0725

---

[46] See Ex. 34, Declaration of Matthew B. Weinstein; see, e.g., Ex. 36, Managed PKI Certificate Validation Module Developer's Guide, VERI1597045-1597154.
[47] Compare Ex. 36, Managed PKI Certificate Validation Module Developer's Guide, VERI1597045-1597154 with Ex. 37, Network Communication Between SiteMinder Agents and Policy Servers, CA032640-032658 and Ex. 38, ACE/Server 6.0 Software Requirements Specification Architecture For Disconnected Authentication and Login Password Integration, RSA0012210-0012268.

650606-1