IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PRISM TECHNOLOGIES LLC,<br><br>  Plaintiff,<br><br>v.<br><br>VERISIGN, INC., RSA SECURITY, INC.,<br>NETEGRITY, INC., COMPUTER<br>ASSOCIATES INTERNATIONAL, INC., and<br>JOHNSON & JOHNSON SERVICES, INC.,<br><br>  Defendants. | Civil Action No. CA 05-214 JJF<br>Jury Trial Demanded<br><br><br><br>PUBLIC VERSION |

### DEFENDANT VERISIGN'S MEMORANDUM OF POINTS AND AUTHORITIES ANSWERING PLAINTIFF PRISM'S MOTION TO COMPEL VERISIGN TO PRODUCE THE SOURCE CODE OF ITS ACCUSED PRODUCTS

*Of Counsel:*

Edward F. Mannino, Esquire
Jason A. Snyderman, Esquire
AKIN GUMP STRAUSS HAUER & FELD LLP
One Commerce Square, Suite 2200
2005 Market Street
Philadelphia, PA 19103
Telephone: (215) 965-1200
Fax: (215) 965-1210

Frank C. Cimino, Esquire
Daniel E. Yonan, Esquire
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, NW
Washington, DC 20036-1564
Telephone: (202) 887-4000
Fax: (202) 887-4288

Patricia Smink Rogowski, Esquire
Delaware Bar ID 2632
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington DE 19899
Telephone : (302) 658-9141
Fax: (302) 658-5614

*Attorneys for Defendant, VeriSign, Inc.*

Dated: February 16, 2007

# TABLE OF CONTENTS

Page

I. STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING..................................................................1

II. SUMMARY OF THE ARGUMENT.........................................1

III. STATEMENT OF FACTS..........................................................3

    A. Prism Did Not Seek Source Code Until After Fact Discovery Closed.................................................................3

    B. Prism's Requests Are Overbroad, Cumulative, Unreasonably Burdensome ...................................................4

IV. ARGUMENT...............................................................................5

    A. Prism Should Not Be Permitted To Re-Open Document Discovery In Light Of What Has Already Been Produced...5

        i. VeriSign Already Produced Documents And Witnesses Sufficient To Demonstrate Exactly How Each Accused Product Operates........................6

        ii. Prism Had Ample Opportunity To Seek Source Code But Chose Not To.........................................9

    B. Prism's Demand For All The Source Code Is Woefully Overbroad, Especially Since It Still Has Not Explained Why Source Code Is Necessary To Prove Its Case........................................................10

V. CONCLUSION..........................................................................13

## TABLE OF AUTHORITIES

**Cases**   **Page**

*Cooney v. Consol Edison,*
    220 F.Supp.2d 241 (S.D. N.Y. 2002)...............................................................9

*Gault v. Nabisco Biscuit Co.,*
    184 F.R.D. 620 (D. Nev. 1999)......................................................................9

*Judin v. United States,*
    110 F.3d 780 (Fed. Cir. 1997).......................................................................11

*Novartis Pharmaceuticals Corp. v. Abbott Laboratories,*
    203 F.R.D. 159 (D. Del. 2001)......................................................................6

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.,*
    No. 04-1371-JJF (D. Del. August 24, 2006)...................................................5

*View Engineering, Inc. v. Robotic Vision Systems, Inc.,*
    208 F.3d 981 (Fed. Cir. 2000).......................................................................11

*Wyeth v. Impax Laboratories, Inc.,*
    No. 06-222-JJF (D. Del. October 26, 2002)..................................................5

**Rules and Other Authorities**

Fed.R.Civ.P. 11..................................................................................................11

Fed.R.Civ.P. 26..................................................................................................5, 6

### I. STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

On April 11, 2005, Prism Technologies LLC ("Prism") filed this patent infringement lawsuit alleging infringement of U.S. Patent No. 6,516,416 ("the '416 patent") against VeriSign, Inc. ("VeriSign"), RSA Security, Inc., Computer Associates International, Inc., Netegrity, Inc., and Johnson & Johnson Services, Inc. (collectively "Defendants"). (D.I. 1)

Pursuant to the Court's Scheduling Order, document discovery closed on August 11, 2006. (D.I. 109) The first time Prism complained about VeriSign's failure to produce source code occurred on August 31, 2006. (Prism Ex. 10)

On February 2, 2007, Prism filed the present motion to compel VeriSign to produce source code modules (the "Motion") for its Unified Authentication and Identity Protection products ("accused products").

### II. SUMMARY OF THE ARGUMENT

After nearly two years of prosecuting its case against VeriSign and long after document discovery closed on August 31, 2006, Prism now seeks to compel VeriSign to produce source code. Prism repeatedly asserts that it has sufficient evidence to prove its infringement contentions, yet still argues that VeriSign's source code is the "single most important piece of discovery needed" by Prism for it to proceed with its case.

Prism has received 1.6 million pages of documents detailing exactly how the accused products operate, and its counsel has deposed the VeriSign witnesses with the most knowledge of the accused products – including two high ranking vice presidents who designed the accused products, and the software engineers who wrote the very source code in dispute.

In view of the massive amounts of information Prism already has obtained concerning the accused products, one would have expected Prism to have made a specific showing as to what information is currently missing from the discovery record, why that information is material to the specific claims it asserts, and why it thinks that information can be found only in source code. To the contrary, Prism's brief contains only generic and overbroad allegations, as if this case were in its nascent stages rather than nearly two years old and six months past the Court-ordered date for completion of document discovery.

Prism's insatiable appetite for discovery cannot reasonably be motivated by a desire to learn how the accused products work. Prism knows exactly how they work – that is the reason it is unable to make a specific showing of need. Indeed, Prism has provided to VeriSign over 60 pages of its infringement contentions, with cites to over 400 references to documentation already produced in this case. (VeriSign Ex. 1) Prism's problem is that VeriSign's products do not work the way it expected, and Prism's claims are therefore not supported. Prism has continually requested (and received) more and more discovery in the hope that VeriSign will settle its baseless claims not on merit, but based on burden.

Prism asserted for the first time that VeriSign failed to produce source code modules for the accused products weeks after the close of document discovery, and filed the Motion over five months later. In addition, Prism's Motion fails to make any specific showing that its overbroad requests are reasonable or seek relevant information. Indeed, Prism's request for the source code is cumulative to and duplicative of discovery already provided. For these reasons, Prism's Motion should be denied.

### III.   STATEMENT OF FACTS

#### A.   PRISM DID NOT SEEK SOURCE CODE UNTIL AFTER FACT DISCOVERY CLOSED

Despite Prism's repeated claims to the contrary, VeriSign's position on source code has been unequivocal and consistent. Prism argues that its very first request for documents sought source code, but fails to mention that VeriSign specifically objected to the scope of that request. While VeriSign agreed to (and did) produce written documents responsive to that request, it <u>never</u> agreed to produce source code.[1] Yet, Prism cites letter after letter, none of which actually refers to source code in any way, to suggest that this correspondence exchanged by the parties, somehow, inferentially, included references to source code.

In fact, despite the hundreds of pages of exhibits attached to its motion, Prism has been unable to cite a <u>single</u> <u>instance</u> where it ever complained about VeriSign's failure to produce source code until August 31, 2006, more than two weeks after document discovery had already closed.[2] Despite Prism's current argument that VeriSign somehow dragged its feet on responding to Prism's demands for source code, VeriSign's response could not have been any clearer. On September 26, 2006, in a bold heading, VeriSign informed that "VeriSign Will Not Make Available Highly Sensitive Source Code…". (Prism Ex. 15 at 1) Even though Prism now argues that source code is "the single most

---

[1] It is worth noting that on April 24, 2006, Prism specifically challenged VeriSign's objection to its first request for production and VeriSign did supplement its production as a result. However, even then, Prism made no mention of any deficiency relating to source code. (Prism Ex. 4 at 3)

[2] At the same time, Prism also complained that VeriSign had not provided a "pilot access" account to Prism. On September 29, 2006, Prism moved to compel the production of the pilot access account and the Court denied its motion on October 23, 2006. (D.I. 337) Nonetheless, Prism's current brief is filled with rhetoric about VeriSign's purportedly improper refusal to provide the very same pilot access the Court specifically ruled need not be produced.

important piece of discovery information" (Prism Ex. 27 at 1), it responded to VeriSign's position not with its threatened motion, but with an attempt to enter into a stipulation that neither party would use source code in this action.[3] (Prism Ex. 16) After repeated threats,[4] Prism did not end up filing its motion until twenty-two months after the case began, six months after the Court ordered deadline for completion of document discovery, and <u>more than four months</u> after VeriSign unequivocally informed Prism that it would "not make available highly sensitive source code." (Prism Ex. 27 at 1)

### B. PRISM'S REQUESTS ARE OVERBROAD, CUMULATIVE, UNREASONABLY BURDENSOME

In consideration of Prism's proposed stipulation, on October 23, 2006, VeriSign repeatedly asked Prism to explain why source code was necessary given the current state of the discovery record. (Prism Ex. 18 and Ex. 26 at 1-2) On December 22, 2006, Prism responded by stating that 20 different source code modules were needed for Prism to answer 10 questions about the accused products. (Prism Ex. 19)

In VeriSign's January 11, 2007 response, it explained that Prism's request is too broad and cited specific examples of requested modules that do not contain information that could answer any of the questions Prism proposed and also pointed out that several of the questions are not relevant to the current patent issues. (Prism Ex. 30 at 2-3)

---

[3] Although Prism originally stated that an inspection (as opposed to a production) of source code was all that was necessary, its current motion specifically states that, now, inspection would be insufficient and only the production of all the source code would suffice. (Prism Br. at 1) Prism states that offers to inspect source code were sufficient from the other defendants. (Prism Br. at 3) Interestingly, Prism has not taken any of the defendants up on this offer showing how unimportant source code really is to Prism.

[4] Prism first threatened to move to compel on September 29, 2006. (*Id.* at 2) This statement was made over *four months* before Prism actually filed the instant motion to compel. Prism threatened again in November 2006 (Prism Ex. 19), and again threatened for the third time in January 2007. (Prism Ex. 27 at 3)

Finally, VeriSign, yet again, informed that it would consider a more narrowly tailored request from Prism – for example, a specific module that is relevant to some specific question that Prism still has about the accused products. (*See, e.g.*, VeriSign Ex. 2, 1/25/07 email from F. Cimino to A. Bahou) Prism responded only with this motion to compel.

IV.   **ARGUMENT**

    A.   **PRISM SHOULD NOT BE PERMITTED TO RE-OPEN DOCUMENT DISCOVERY IN LIGHT OF WHAT HAS ALREADY BEEN PRODUCED**

Prism should not be permitted now, after nearly two years of prosecuting its case and more than six months after document discovery has closed, to force VeriSign to produce its source code, especially without some specific showing as to why that code is necessary. The Federal Rules of Civil Procedure state that discovery shall be limited if (i) the discovery sought is unreasonably cumulative or duplicative or is obtainable from some other source that is more convenient, less burdensome, or less expensive; or (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought. *See* FED. R. CIV. P. 26(b)(2)(i), (ii);[5] Power Integrations, Inc. v. Fairchild Semiconductor Int'l Inc., No. 04-1371-JJF, slip op. at *3 (D. Del. Aug,. 24, 2006) (denying plaintiff's request for discovery since it had ample opportunity to pursue it earlier and the requested discovery sought would be cumulative to and duplicative of discovery already completed) (VeriSign Ex. 3); Wyeth v. Impax Laboratories, Inc., No. 06-222-JJF, slip. op. at *1 (D. Del. Oct. 26, 2002) (Impax's motion to compel denied

---

[5] Rule 26 also states that discovery shall be limited if the burden of producing the requested discovery outweighs any benefit it may provide. FED. R. CIV. P. 26(b)(2)(iii). Considering the massive burden Prism has already forced VeriSign to undertake, and Prism's inability to articulate any benefit that would specifically result from access to source code, no further burden on VeriSign is justified.

under FED. R. CIV. P. 26(b)(2) for failure to demonstrate how the requested information was "critical to resolving the issues before the Court" in view of what has already been produced") (VeriSign Ex. 4); Novartis Pharmaceuticals Corp. v. Abbott Laboratories, 203 F.R.D. 159, 163-64 (D. Del. 2001) (Novartis' motion to compel partially denied under FED. R. CIV. P. 26(b)(2) because the requested information was duplicative and cumulative to what Abbott had already produced). Here, VeriSign's source code would be cumulative to and duplicative of discovery already provided, and Prism failed to timely act despite having ample opportunity to do so.

### i. VERISIGN ALREADY PRODUCED DOCUMENTS AND WITNESSES SUFFICIENT TO DEMONSTRATE EXACTLY HOW EACH ACCUSED PRODUCT OPERATES

Prism has long known exactly how each of VeriSign's accused products work.[6] Prism does not argue otherwise. Rather, Prism oddly states that source code is needed to "resolve disputes" rather than to prove infringement. (Prism Br. at 5) Because source code would not provide Prism with any further information than it already has, Prism's motion to compel should be denied.

Prism's argument that VeriSign's production is somehow insufficient as it only included "high-level end user manual[s]" is preposterous. (Prism Br. at 8-9) VeriSign produced over 1.6 million pages of documents in discovery. Among these documents were tens of thousands of pages of user, administrative, installation, configuration and integration guides, specifications and data sheets for the accused products, and highly confidential technical design and architecture documents, including engineering e-mails,

---

[6] Indeed, when responding to interrogatories seeking infringement contentions, Prism provided a 61 page claim chart incorporating over 400 citations to exhibits already produced evidencing Prism's detailed knowledge as to how the accused products operate. (VeriSign Ex. 1)

that detail the operation and function of the accused products. Furthermore, Prism deposed six VeriSign witnesses, *including those who created the very source code now at issue*. In its 30(b)(6) Notices, Prism demanded that witnesses be prepared to provide testimony with regard to topics such as:

- design, development, operation, and function of the accused software and hardware products;

- authentication of a user using the accused software and hardware products;

- flow of information, request(s) for information, queries, and/or messages exchanged or passed between the component parts of the accused software and hardware products; and

- system architecture and/or the content of the message(s), queries, or other information exchanged between the components on which the accused software and hardware products are run or intended to operate as described in the administrator guides, troubleshooting guides, getting started guides, quick reference guides, overview guides, requirements guides, installation guides, configuration guides, pre-installation guides, user guides, management SDK guides, validation SDK guides, (*see, e.g.*, VERI 1596504-1597028, VERI 0020236-247, VERI 0020482-801, VERI 0031786-32101, VERI 0019988-20235, VERI 0020248-20481), or any other product guides, product manuals, incident reports, bug fixes, product requirements and/or design specifications of the accused software and hardware products.

(D.I. 323, 10/18/06 Am. Notice of Dep. of VeriSign at Topics 1-3 and 4) As a result, Prism's counsel spent days questioning multiple VeriSign witnesses about these and other topics asking very specific, detailed questions about the design and operation of each accused product, even marking many technical documents relating to these very issues. (*See, e.g.*, VeriSign Ex. 5, VeriSign Developer's Guide for Unified Authentication v4.0 Validations SDK Guide at VERI 1597014-15; VeriSign Ex. 6, VeriSign Managed PKI Certificate Validation and Parsing Guide at VERI 0021286) Thus, it is inconceivable for Prism to now argue that it still does not understand how VeriSign's products actually work.

Despite taking depositions of all of VeriSign's key personnel, the only evidence Prism is able to advance to demonstrate that VeriSign's document production is not cumulative to what it would learn from source code is a Declaration from a law student that works at Prism's law firm. (Prism Ex. 34 ¶ 2) This Declaration, submitted by Matthew B. Weinstein, is wholly unpersuasive. Mr. Weinstein explains that he reviewed "a majority" of the 1.6 million pages of documents VeriSign produced and conclusively states that no technical design or architectural documents were produced at all. (*Id.* at ¶¶ 4 and 8) Despite admitting he did not review the entire production, Mr. Weinstein goes on to completely dismiss *1.2 million* pages of documents simply because they consisted of e-mails with associated attachments. (*Id.* at ¶ 5) He fails to mention that tens of thousands of documents included the very type of "highly confidential technical design and architecture" documents he states were never produced at all. (*See, e.g.*, VeriSign Ex. 7, Unified Authentication Card Management System Marketing Requirements Document; VeriSign Ex. 8, XKMS Service Product Requirement Document; VeriSign Ex. 9, Identity Protection Technical Architecture Design Document) Furthermore, he acknowledges that 400,000 additional pages were also produced but conveniently fails to describe their contents. (*Id.* at ¶¶ 5-8) Mr. Weinstein's admittedly incomplete review of VeriSign's documents and unexplained dismissal of hundreds of thousands of documents is hardly sufficient evidence that VeriSign failed to produce documents relating to the detailed design of its products. Coupled with the fact that Prism's own counsel used many such documents during VeriSign depositions, Mr. Weinstein's assertions have even less weight.

Prism cannot have it both ways. It cannot argue, as it has for the past two years, that VeriSign must produce further documents and then also argue that VeriSign's

production was somehow too vast and unhelpful. (Prism Br. at 7) Prism's own extremely detailed contentions, and its conduct in depositions demonstrates that Prism knows full well <u>exactly</u> how VeriSign's products function, thus making the production of source code completely cumulative and unnecessary.

### ii. PRISM HAD AMPLE OPPORTUNITY TO SEEK SOURCE CODE BUT CHOSE NOT TO

There can be no real dispute that Prism had ample opportunity to seek VeriSign's source code before now but did not. Impressed more with the quantity of their exhibits than the quality of their content, Prism attaches hundreds of pages of documents to its brief and argues that these exhibits demonstrate that VeriSign somehow promised to produce source code long ago. In fact, a careful review of these exhibits shows that no correspondence specifically referenced source code until August 31, 2006, weeks after document discovery closed. (Prism Ex. 10) If it were true that source code is "the single most important piece of discovery needed" in this case, then Prism should have sought its production long ago, but opted not to. (Prism Ex. 27 at 1) Prism's delay can only suggest one thing – Prism never actually thought source code was as critical as it now claims.[7] Because Prism had more than ample opportunity to pursue this issue but did not, it should not now be permitted to re-open document discovery to seek source code. *See, e.g.*, Cooney v. Consol Edison, 220 F. Supp.2d 241, 247 (S.D.N.Y. 2002) (plaintiff's motion to compel denied because it was submitted long after the close of discovery); Gault v. Nabisco Biscuit Co., 184 F.R.D. 620, 621-22 (D. Nev. 1999) (plaintiff's motion

---

[7] This is further supported by Prism's original willingness to stipulate that source code not be used by anyone in the case. (Prism Ex. 16)

to compel denied because it was filed seventy-six days after close of discovery and plaintiff knew of the asserted deficiencies nearly two months prior).

### B. PRISM'S DEMAND FOR ALL THE SOURCE CODE IS WOEFULLY OVERBROAD ESPECIALLY SINCE IT STILL HAS NOT EXPLAINED WHY SOURCE CODE IS NECESSARY TO PROVE ITS CASE

Despite repeated requests from VeriSign (Prism Ex. 18; Ex. 26 at 1-2; Ex. 30 at 1-2), Prism has staunchly refused to provide any adequate explanation as to how source code would help it in this case, especially given the extent of VeriSign's prior production of documents and witnesses. Rather, Prism continues to maintain its hopelessly overbroad demand that all source code relating to the accused products must be produced without explaining why. Even in its brief, Prism has still not offered a sufficient explanation as to why all of VeriSign's source code would prove helpful to Prism thereby justifying that document discovery now be re-opened.[8]

The only purported explanation provided by Prism came in its letter of January 11, 2007 wherein Prism stated only that twenty modules of source code should be produced in order for it to prove ten different claim elements.[9] (Prism Ex. 27 at 2)

However, Prism offered no explanation of how source code would assist it in establishing these elements and, in fact, it would not. Prism's letter does nothing more than list the source code modules it wants and list many claim elements for which it

---

[8] Prism improperly asserts that VeriSign has somehow shifted the burden onto Prism to show why source code should be produced. In fact, because Prism failed to timely seek source code during document discovery (and for six months after document discovery was closed), the burden indeed rests on Prism to provide some basis as to why discovery should now be re-opened.

[9] Prism however now concedes that its requests that seven modules relevant to the Go Secure product are irrelevant. Unfortunately, Prism refused to retract its request for these modules until VeriSign was forced to threaten to seek costs for responding to that part of their motion. (Prism Ex. 30 at 3)

needs support, but in no way ties these two lists together. This hardly explains *how* the production of source code would help Prism in this case. All this letter actually establishes is what VeriSign has maintained all along – that Prism had no good faith basis to have even brought this case against VeriSign in the first place.[10]

The Declaration submitted by Prism's expert, Dr. Shamos, also does nothing to explain why source code is needed in this particular case. While Dr. Shamos describes what source code is, he fails to link why source code is necessary to prove each of the claims limitations asserted in this case. (Prism Ex. 34 ¶¶ 12-32)[11] Rather, the bulk of Dr. Shamos' Declaration, inexplicably, is devoted to attacking two pieces of correspondence from VeriSign's counsel and explaining why, in his opinion, VeriSign has failed to comply with the Federal Rules of Civil Procedure.[12]

In fact, the source code requested would not assist Prism. First, many of the claim elements identified by Prism in its December 22, 2006 letter cannot possibly be found in source code because, quite simply, the products do not do what Prism's patent requires.

---

[10] If Prism's motion means that even after nearly two years it still cannot establish the 10 claim elements set forth in its January 11, 2007 letter, then that simply demonstrates that Prism never had a sufficient basis to bring a case against VeriSign in the first place. *See, e.g.*, FED. R. CIV. P. 11(b); *see also* View Engineering, Inc. v. Robotic Vision Systems, Inc., 208 F.3d 981, 985-6 (Fed. Cir. 2000); Judin v. U.S., 110 F.3d 780, 784-5 (Fed. Cir. 1997).

[11] Dr. Shamos offers only one instance as to what elements of the '416 patent VeriSign's source code could be used to show; the means plus function requirements of claim 1. (Prism Ex. 35 ¶ 18). However, Prism's means plus function requirements are limited to the disclosure of the '416 patent. Nowhere in the '416 specification does Prism disclose its source code to describe either the structure or function used in these elements. Rather, the '416 disclosure uses block diagrams through its figures to describe these means plus function elements. (*See, e.g.*, VeriSign Ex. 10, '416 patent at Fig. 2) This is the very same type of pictorial representation that Prism admits is among the technical documents VeriSign produced in this case. (*See, e.g.*, VeriSign Ex. 5 at VERI 1597014)

[12] While Dr. Shamos is apparently an attorney, he has hardly been proffered as an expert in these areas. As the Court is well aware, there are scores of attorneys involved in this case and Dr. Shamos' opinion on how to interpret the rules of discovery is hardly something the Court should find persuasive.

(Prism Ex. 27) For example, Prism says it seeks source code to determine where "access rights" and "authorization levels" are stored. Yet, those functions are not included in any of VeriSign's software – rather it is functionality provided by software VeriSign's customers obtain from a third-party. Prism could only verify these and other issues by looking at how VeriSign customers configure their individual systems, not through a review of any of VeriSign's source code, which would be wholly unhelpful in this regard. Despite having all the literature relating to VeriSign's products, and deposing all the key software engineers, Prism has been unable to make any showing that the modules it seeks would actually provide Prism with relevant information to the patent claims at issue. Its failure to do so is fatal to the present motion.

Second, several of the 10 items Prism says it needs source code to review are not even relevant to the asserted patent claims. For example, items (h) and (i) of Prism's December 22, 2006 letter seek "how the identity data of the client [and server] is forwarded." (Prism Ex. 27 at 2) Again, Prism fails to make any showing as to why the manner in which identity data is forwarded is relevant to its patent claims, when all the claims require is *if* the data is indeed forwarded.

Because Prism has failed to identify specific reasons why its overly broad request for all the source code relating to the accused products is needed in this particular case, its motion should be denied.

## V. CONCLUSION

For each of the foregoing reasons, Prism's motion should be denied.

Dated: February 16, 2007

*Of Counsel*

Edward F. Mannino
Jason A. Snyderman
AKIN GUMP STRAUSS HAUER & FELD LLP
One Commerce Square, Suite 2200
2005 Market Street
Philadelphia, PA 19103
Telephone: (215) 965-1200
Fax: (215) 965-1210

Frank C. Cimino, Jr.
Daniel Yonan
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, NW
Washington, DC 20036-1564
Telephone: (202) 887-4000
Fax: (202) 887-4288

By: /s/ Patricia S. Rogowski

Patricia Smink Rogowski
Delaware Bar ID 2632
CONNOLLY, BOVE, LODGE & HUTZ LLP
The Nemours Building
1007 North Orange Street
PO Box 2207
Wilmington DE 19899
Telephone: (302) 658-9141
Fax: (302) 658-5614

*Attorneys for Defendant, VeriSign, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2007, I electronically filed **DEFENDANT VERISIGN'S MEMORANDUM OF POINTS AND AUTHORITIES ANSWERING PLAINTIFF PRISM'S MOTION TO COMPEL VERISIGN TO PRODUCE THE SOURCE CODE OF ITS ACCUSED PRODUCTS** with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Richard D. Kirk
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130
rkirk@bayardfirm.com

Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza- Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
rhorwitz@potteranderson.com
dmoore@potteranderson.com

Frederick L. Cottrell, III
Alyssa Schwartz
Richards Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899-0551
cottrell@rlf.com
schwartz@rlf.com

Steven J. Balick
John G. Day
Ashby & Geddes
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

I hereby certify that on February 16, 2007, I electronically mailed the document(s) to the following non-registered participants:

Dirk D. Thomas, Esquire
Robins, Kaplan, Miller & Ciresi, LLP
1875 Eye Street, N.W., Suite 300
Washington, DC 20006
PrismCounsel@rkmc.com

John DiMatteo
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019-6099
PrismLitigation-JJSI@willkie.com


David M. Schlitz
Baker Botts LLP
1299 Pennsylvania Avenue, NW
Washington, DC  20004-2400
DLDallasPrismLitigationCA-Netegrity@BakerBotts.com

Samir A. Bhavsar
Baker Botts LLP
2001 Ross Avenue
Dallas, TX  75201-2980
DLDallasPrismLitigationCA-Netegrity@BakerBotts.com

Gregory P. Teran
Wilmer Cutler Hale & Dorr LLP
60 State Street
Boston, MA  02109
RSAPrismLitigation@wilmerhale.com

By:  */s/ Patricia S. Rogowski*
Patricia Smink Rogowski (DE Bar #2632)
Connolly Bove Lodge & Hutz LLP
P.O. Box 2207
1007 N. Orange Street
Wilmington, DE  19899
(302) 658-9141
progowski@cblh.com

400470_8.DOC