# Exhibit 2

**Yonan, Daniel**

| | |
|---|---|
| **From:** | Cimino, Frank |
| **Sent:** | Thursday, January 25, 2007 12:39 PM |
| **To:** | Bahou, Andre J.; VeriSign - Prism |
| **Cc:** | PrismCounsel; Dick Kirk |
| **Subject:** | RE: Prism's Motion to Compel VeriSign's Source Code |

AJ --
We appreciate your professional courtesy, but it should be noted that you were still able to file your motion in time for a February 2 hearing, as you indicated in your email to us on Tuesday January 9th, 2007 ("Notwithstanding the above, we will give you until Thursday to confer with your client and respond to us in writing. Then, Friday, we will file the motion to compel as stated in my prior correspondence to you.") We provided you our response on Thursday, as you requested, so that you could file on Friday and be heard in February. But you chose not to file on Friday.

As we indicated in our response, we are willing to further discuss this issue with you to narrow the issues for the Court. In your letters, your requests have been overly broad and vague, and there has been no explanation as to why its not out of time. If you intend to address these issues in your memorandum, then while we are waiting, perhaps the best way to try and narrow the issues is for you to send us your memorandum, so we can consider your position on these issues and determine whether we consent to your specifically requested relief or not.

Regards,
F.

---

**From:** Bahou, Andre J. [mailto:AJBahou@rkmc.com]
**Sent:** Wednesday, January 17, 2007 2:00 PM
**To:** VeriSign - Prism
**Cc:** PrismCounsel; Dick Kirk
**Subject:** Prism's Motion to Compel VeriSign's Source Code

>>>> Please read the confidentiality statement below <<<<

Danny:

In the spirit of professional courtesy, we gave you until the latter part of last week to respond to our prior requests regarding the production of VeriSign's source code for the accused products. Due to that courtesy and based on the Court's Order of December 15, 2006, we cannot file the motion to compel before February. The motion will be forthcoming at the appropriate time and will be noticed for the hearing date in March.

Regards,
AJ

Andre J. Bahou
Attorney at Law
1875 Eye Street, N.W., Suite 300
Washington, D.C. 20006-5409
202-736-2707 (direct)
202-775-0725 (main)
202-223-8604 (fax)
E-mail address: ajbahou@rkmc.com

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

---

2/15/2007

Information contained in this e-mail transmission is privileged, confidential and covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521.

If you are not the intended recipient, do not read, distribute, or reproduce this transmission.

If you have received this e-mail transmission in error, please notify us immediately of the error by return email and please delete the message from your system.

Pursuant to requirements related to practice before the U. S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U. S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

Thank you in advance for your cooperation.

Robins, Kaplan, Miller & Ciresi L.L.P.
http://www.rkmc.com

_____

2/15/2007

# Exhibit 3

Westlaw.

Slip Copy                                                                 Page 1
Slip Copy, 2006 WL 2604540 (D.Del.)
(Cite as: Slip Copy)

**H**

Briefs and Other Related Documents

Power Integrations, Inc. v. Fairchild Semiconductor International, Inc.D.Del.,2006.Only the Westlaw citation is currently available.

United States District Court,D. Delaware.
POWER INTEGRATIONS, INC., a Delaware corporation, Plaintiff,
v.
FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC., a Delaware corporation, and Fairchild Semiconductor Corporation, a Delaware corporation, Defendants.
No. C.A.04-1371 JJF.

Aug. 24, 2006.

Frank E. Scherkenback, of Fish & Richardson P.C., Boston, Massachusetts, Howard G. Pollack, and Michael R. Headley, of Fish & Richardson P.C., Redwood City, California, William J. Marsden, Jr., of Fish & Richardson, P.C., Wilmington, Delaware, for Plaintiff, Power Integrations, Inc.

Michael W. Shore, Alfonso Garcia Chan, Jeffrey R. Bragalone, and Joseph F. DePumpo, of Shore Chan Bragalone LLP, Dallas, Texas, Steven J. Balick, John G. Day, and Tiffany Geyer Lydon, of Ashby & Geddes, Wilmington, Delaware, for Non-Party, Intersil Corporation.

*MEMORANDUM OPINION*

FARNAN, J.

*1 Presently before the Court is Intersil Corporation's Motion To Quash Subpoena And For Protective Order (D.I.262). For the reasons discussed, the Court will grant Intersil Corporation's Motion.

I. BACKGROUND

*1 Power Integrations, Inc. ("Power Integrations") filed this patent infringement action against Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation ("Fairchild"). Pursuant to subpoenas issued by Power Integrations in January 2006, Power Integrations and Fairchild deposed former Intersil employees, James Beasom, Robert Moore and John Prentice on topics related to U.S. Patent No. 4,823,173 (the " '173 patent") and U.S. Patent No. 5,264,719 (the " '719 patent")

(collectively, "the Beasom patents"). The '173 patent and '719 patent were invented by Mr. Beasom. Mr. Moore and Mr. Prentice worked with Mr. Beasom and signed Mr. Beasom's engineering notebook to acknowledge the date of Mr. Beasom's inventions. Fairchild has asserted the '719 patent as part of its invalidity defense in this litigation.

*1 On April 11, 2006, Fairchild and Intersil Corporation ("Intersil") sued Power Integrations in the Eastern District of Texas alleging infringement of the '719 patent (the "Texas action"). Fairchild obtained the right to sue Power Integrations on the '719 patent through a license agreement with Intersil.

*1 Intersil is not a party to this action. On May 9, 2006, Power Integrations subpoenaed Intersil in this case, listing fifteen topics for examination and seeking the production of documents related to those fifteen topics (the "May 2006 subpoena"). Specifically, Power Integrations seeks information related to (1) the licensing of the Beasom patents to Fairchild by Intersil, (2) communications between Fairchild and Intersil regarding Power Integrations, the Beasom patents, Fairchild's Delaware lawsuit with Power Integrations, and the Texas action against Power Integrations, including all communications with Fairchild's attorneys, (3) documents referring or relating to the Beasom patents, (4) the dates of conception and reduction to practice of the Beasom patents, (5) documents that refer or relate to the conception or reduction to practice of the inventions claimed in the Beasom patents, (6) documents corroborating the date of conception and reduction to practice of the Beasom patents, (7) documents concerning the prosecution of the Beasom patents, (8) efforts to prove out or test the inventions claimed in the Beasom patents, (9) Intersil's commercialization of the inventions claimed in the Beasom patents, (10) the use of the Beasom patents, (11) the markings of the products alleged to embody the Beasom patents, (12) the unit volume of sales of the Intersil products embodying the Beasom patents, (13) communications between Intersil and Messrs. Beasom, Moore and/or Prentice concerning the Beasom Patents, Power Integrations, Power Integrations' patents, Fairchild, and/or the litigations between Power Integrations and Fairchild; (14) the basis for Intersil's decision to sue Power Integrations in the Texas action, and (15) communications between Intersil and any other person or entity

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2604540 (D.Del.)
(Cite as: Slip Copy)

Page 2

regarding the Texas action. (D.I.263, Exh. G).

*2 In response to the subpoena, Intersil has produced some documents. However, Intersil seeks to quash the subpoena and obtain a protective order against Power Integrations' deposition of Intersil. The parties have fully briefed Intersil's Motion To Quash, and therefore, the matter is ready for resolution by the Court.

## II. PARTIES' CONTENTIONS

*2 By its Motion To Quash, Intersil contends that Power Integrations is improperly attempting to obtain discovery in the Texas action prior to the Rule 26 Scheduling Conference in that case. Intersil contends that because Mr. Beasom is the sole named inventor of the '173 and '719 patent, "there is no doubt that Intersil would have designated Mr. Beasom to testify on its behalf as to all issues regarding invention for these patents, including conception, invention date, reduction to practice, testing and related matters." (D.I. 263 at 1). Intersil contends that Power Integrations had the opportunity to depose Intersil in January and declined to do so. By issuing the May 2006 subpoenas, Intersil contends that Power Integrations is improperly attempting to depose Mr. Beasom a second time on topics that have already been explored through his deposition in connection with the first subpoena. Intersil also contends that many of the issues listed in the subpoena are matters which are irrelevant to the litigation between Power Integrations and Fairchild in this Court.

*2 In response, Power Integrations contends that Fairchild has produced documents regarding the Beasom patents in the past with the full cooperation of Intersil. However, Power Integrations contends that Fairchild refused to produce further documents since the filing of the Texas action, even though Fairchild represented that it could still obtain the documents from Intersil. Because of Fairchild's alleged "stonewalling" Power Integrations contends that it sought to obtain the documents directly from Intersil through the May 2006 subpoena. In this regard, Power Integrations points out that it never directly subpoenaed Intersil in the past and contends that the documents and things sought by the May 2006 subpoena related to the Beasom patents and the Intersil-Fairchild license are relevant to Power Integrations damages in the form of reasonable royalty rates, Fairchild's invalidity defense, and issues of bias.

## III. DISCUSSION

*2 Pursuant to Federal Rule of Civil Procedure 26(b)(3), the Court may, on its own initiative or pursuant to a motion for a protective order filed under Rule 26(c), limit discovery if "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit ..." Fed.R.Civ.P. 26(b)(3). Rule 30(a)(2)(B) requires a party to obtain leave of court before a deponent is deposed for a second time. In the case of nonparty deponents, courts recognize that "[d]iscovery should be more limited to protect nonparty deponents from harassment, inconvenience or disclosure of confidential documents." See e.g., Northeast Women's Center, Inc. v. McMonagle, 1987 WL 6665, *5 (E .D. Pa. Feb. 10, 1987) (citing Dart Indus. Co. v. Westwood Chem. Co ., 649 F.2d 646, 649 (9th Cir.1980)).

*3 Reviewing the information sought by the May 2006 subpoena in light of the circumstances of this case, the Court concludes that Intersil is entitled to an order quashing the subpoena and precluding Power Integrations from taking the deposition of Intersil. Although the May 2006 subpoena is directed at Intersil, the Court is persuaded that the information sought by the subpoena is uniquely related to Mr. Beasom, and that Power Integrations would have been aware that Mr. Beasom would be asked to testify on behalf of Intersil in response to the subpoena. Further, the information sought by the May 2006 subpoena related to the Beasom patents is, in many respects, identical to the information sought by Power Integrations in its initial subpoenas directed to Messrs. Beasom, Moore and Prentice, and Power Integrations had the opportunity to obtain this information during its depositions of those individuals in January 2006. (Compare D.I. 263, Exh. G with D.I. 263, Exhs. A & E).

*3 To the extent that the May 2006 subpoena seeks information which is not duplicative of Power Integrations previously issued subpoenas, the Court concludes that the information Power Integrations seeks is irrelevant to this lawsuit. Power Integrations has not explained how the information it seeks with respect to the Texas action is relevant here, and Power Integrations has failed to explain how

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2604540 (D.Del.)
(Cite as: Slip Copy)

Page 3

information related to the commercialization, licensing and marketing of the products embodied by the Beasom patents is relevant to the validity of U.S. Patent No. 5,313,082.[FN1] Power Integrations has also failed to explain how unit volume of sales or marking by Intersil, a non-party to this litigation, is relevant to the issue of Power Integrations alleged damages from Fairchild's alleged infringement. Moreover, the last date to complete fact witness depositions in this case was November 14, 2005,[FN2] and Power Integrations has not demonstrated to the Court sufficient reason why discovery should be reopened at this late date.

> FN1. Intersil acknowledges that issues of enablement, conception and reduction to practice of the Beasom patents may be relevant to whether the Beasom patents anticipate or render obvious the '082 patent. As Intersil points out, however, Power Integrations covered these subjects at its prior depositions of Messrs. Beasom, Moore and Prentice.

> FN2. Pursuant to the original Scheduling Order (D.I.17) entered in this case, fact discovery was to close on September 30, 2005. By Order dated November 3, 2005 (D.I.128), the Court extended the deadline for completion of fact witness depositions to November 14, 2005, to accommodate an additional deposition requested by Defendants.

*3 In sum, the Court concludes that the May 2006 subpoena is cumulative to and duplicative of the previous subpoenas issued by Power Integrations in this case, and that Power Integrations had ample opportunity to pursue the discovery it now seeks from Intersil when it deposed Intersil's former employees in January 2006. The Court further concludes that the discovery sought by the May 2006 subpoena which is not cumulative is irrelevant to the present litigation. Accordingly, the Court will grant Intersil's request for an order quashing the May 2006 subpoena and precluding Power Integrations from deposing Intersil.

### III. CONCLUSION

*3 For the reasons discussed, the Court will grant the Motion To Quash And For Protective Order filed by Intersil.

*3 An appropriate Order will be entered.

### ORDER

*3 At Wilmington, this 24 day of August 2006, for the reasons set forth in the Memorandum Opinion issued this date;

*3 IT IS HEREBY ORDERED that:

*3 1. Intersil Corporation's Motion To Quash Subpoena And For Protective Order (D.I.262) is *GRANTED.*

*4 2. The May 9, 2006 subpoena issued by Power Integrations, Inc. to Intersil Corporation ("Intersil") in connection with the above-captioned action is *QUASHED,* and Power Integrations is precluded from taking the deposition of Intersil in this action.

D.Del.,2006.
Power Integrations, Inc. v. Fairchild Semiconductor International, Inc.
Slip Copy, 2006 WL 2604540 (D.Del.)

Briefs and Other Related Documents (Back to top)

- 2006 WL 3223651 (Verdict, Agreement and Settlement) Special Verdict Form (Oct. 10, 2006) Original Image of this Document (PDF)
- 2006 WL 3227273 (Verdict, Agreement and Settlement) Defendants' Special Verdict Form (on Infringement and Damages) (Sep. 1, 2006)
- 2006 WL 3227274 (Verdict, Agreement and Settlement) Defendants' Special Verdict Form (on Invalidity) (Sep. 1, 2006)
- 2006 WL 3227272 (Trial Motion, Memorandum and Affidavit) Defendants' Motion to Compel Damages Discovery and to Continue Damages Trial Date (Aug. 3, 2006)
- 2006 WL 3227271 (Trial Motion, Memorandum and Affidavit) Fairchild's Answering Brief in Opposition to Power Integrations' Motion for Reconsideration of the Court's June 2, 2006 Order (Jul. 6, 2006)
- 2006 WL 1813959 (Trial Motion, Memorandum and Affidavit) Intersil Corporation's Opening Brief in Support of its Motion to Quash Subpoena and for Protective Order (May 26, 2006) Original Image of this Document (PDF)
- 2006 WL 3227269 (Trial Motion, Memorandum and Affidavit) Consolidated Reply in Support of Defendants' Motions for Summary Judgment (Apr. 19, 2006)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2604540 (D.Del.)
(Cite as: Slip Copy)

• 2006 WL 3227270 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Defendants' Motion for Summary Judgment of Limitation on Damages Under 35 U.S.C. 287 (Failure to Mark) (Apr. 19, 2006)

• 2006 WL 1199891 (Trial Motion, Memorandum and Affidavit) Opening Brief in Support of Defendants' Motion for Summary Judgment of Unenforceability and Invalidity of U.S. Patent Nos. 6,107,851 and 6,229,366 (Mar. 24, 2006) Original Image of this Document (PDF)

• 2006 WL 1199892 (Trial Motion, Memorandum and Affidavit) Opening Brief in Support of Defendants' Motion for Partial Summary Judgment of Non-Infringement (Foreign Sales) (Mar. 24, 2006) Original Image of this Document (PDF)

• 2006 WL 1199893 (Trial Motion, Memorandum and Affidavit) Opening Brief in Support of Defendants' Motion for Summary Judgment of Invalidity of Claim 1 of the '876 Patent (Mar. 24, 2006) Original Image of this Document (PDF)

• 2006 WL 1199894 (Trial Motion, Memorandum and Affidavit) Opening Brief in Support of Defendants' Motion for Partial Summary Judgment of Limitation on Damages under 35 U.S.C. |287 (Failure to Mark) (Mar. 24, 2006) Original Image of this Document (PDF)

• 2006 WL 1199888 (Trial Motion, Memorandum and Affidavit) Opening Brief in Support of Defendants' Motion for Summary Judgment of Invalidity of Claims 1 and 5 of U.S. Patent No. 4,811,075 (Mar. 23, 2006) Original Image of this Document (PDF)

• 2006 WL 1199889 (Trial Motion, Memorandum and Affidavit) Opening Brief in Support of Defendants' Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 4,811,075 (Mar. 23, 2006) Original Image of this Document (PDF)

• 2006 WL 1199890 (Trial Motion, Memorandum and Affidavit) Opening Brief in Support of Defendants' Motion for Summary Judgment of Noninfringement of Claims 17-19 of U.S. Patent No. 6,249,876 (Mar. 23, 2006) Original Image of this Document (PDF)

• 2006 WL 3226493 () Declaration of Dr. Peter Gwozdz in Support of Defendants' Motion for Summary Judgment Regarding Invalidity of Claims 1 and 5 of U.S. Patent No. 4,811,075 (Mar. 17, 2006) Original Image of this Document (PDF)

• 2006 WL 1199887 (Trial Pleading) Plaintiff Power Integrations, Inc.'s Answer to Defendants' First Amended Counterclaims (Mar. 15, 2006) Original Image of this Document (PDF)

• 2006 WL 3227268 (Trial Pleading) Defendants Fairchild Semiconductor International, Inc. and

Fairchild Semiconductor Corporation's First Amended Answer and Counterclaims to Plaintiff's First Amended Complaint for Patent Infringement and Demand for Jury Trial (Feb. 23, 2006)

• 2006 WL 809151 (Trial Pleading) Defendants Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation's First Amended Answer and Counterclaims to Plaintiff's First Amended Complaint for Patent Infringement and Demand for Jury Trial (Feb. 23, 2006) Original Image of this Document (PDF)

• 2006 WL 809150 (Trial Motion, Memorandum and Affidavit) Paul Horowitz's Response and Objections to Subpoena (Feb. 3, 2006) Original Image of this Document (PDF)

• 2006 WL 809149 (Trial Pleading) Plaintiff's Answer to Defendants' Motion to Compel the Continued Depositions of Leif Lund and Balu Balakrishnan (Feb. 2, 2006) Original Image of this Document (PDF)

• 2005 WL 4883954 (Trial Pleading) Power Integrations' Opening Claim Construction Brief (Dec. 28, 2005)

• 2005 WL 3666891 (Trial Motion, Memorandum and Affidavit) Plaintiff's Consolidated Opposition to Defendants' Expedited Motion to Amend the Schdule and Motion to Shorten Time (Oct. 28, 2005) Original Image of this Document (PDF)

• 2005 WL 4883959 (Trial Motion, Memorandum and Affidavit) Defendants'd Answering Brief in Opposition to Plaintiff's Motion for Clarification or Reconsideration (Sep. 7, 2005)

• 2005 WL 4883958 (Trial Motion, Memorandum and Affidavit) Plaintiff's Opening Brief in Support of Its Motion for Clarification or, in the Alternative, Reconsideration of the Court's August 9, 2005 Order (Aug. 23, 2005)

• 2005 WL 4883957 (Trial Motion, Memorandum and Affidavit) Plaintiff's Opposition to Defendants' First Motion to Compel (Aug. 12, 2005)

• 2005 WL 4883956 (Trial Pleading) Answer (Aug. 1, 2005)

• 2005 WL 4883955 (Trial Pleading) Defendants Fairchild Semiconductor International, Inc.'s and Fairchild Semiconductor Corporation's Answer and Counterclaims to Plaintiff's First Amended Complaint for Patent Infringementand Demand for Jury Trial (Jul. 11, 2005)

• 2004 WL 3606399 (Trial Pleading) First Amended Complaint for Patent Infringement (Oct. 20, 2004) Original Image of this Document (PDF)

• 2004 WL 5027299 (Trial Pleading) First Amended Complaint for Patent Infringement (Oct. 20, 2004)

• 1:04cv01371 (Docket) (Oct. 20, 2004)

• 2004 WL 5027296 (Verdict, Agreement and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2604540 (D.Del.)
**(Cite as: Slip Copy)**

Settlement) DEfendants' Proposed Special Verdict
Form (2004)
• 2004 WL 5027297 (Verdict, Agreement and
Settlement) Power Integrations' ŸProposed¨ Special
Verdict and Interrogatories to the Jury - Validity
(2004)
• 2004 WL 5027303 (Verdict, Agreement and
Settlement) Special Verdict form (2004)
• 2004 WL 5027306 (Verdict, Agreement and
Settlement) Power Integrations' ŸProposed¨ Special
Verdict and Interrogatories to the Jury (2004)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit 4



Slip Copy
Slip Copy, 2006 WL 3091331 (D.Del.)
**(Cite as: Slip Copy)**

Page 1

**C**
<u>Briefs and Other Related Documents</u>
Wyeth v. Impax Laboratories, Inc.D.Del.,2006.Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
WYETH, Plaintiff,
v.
IMPAX LABORATORIES, INC., Defendant.
No. Civ.A. 06-222-JJF.

Oct. 26, 2006.

<u>Jack B. Blumenfeld</u>, <u>Karen Jacobs Louden</u>, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Plaintiff.
<u>Mary Matterer</u>, Morris, James, Hitchens & Williams, Wilmington, DE, Daniel N. Kassabian, Samuel Ernst, Pro Hac Vice, for Defendant.

*MEMORANDUM ORDER*
<u>FARNAN</u>, J.
\*1 Pending before the Court is Defendant Impax's ("Impax") Motion To Compel Production Of Documents (D.I.36). The Motion concerns a series of issues that the court will address individually. For the reasons discussed, the Motion will be granted in part and denied in part.

*1. Production Of Pleadings, Deposition Transcripts, Hearing Transcripts And Orders From The Teva Litigation*

\*1 By its Motion, Impax contends that Plaintiff Wyeth ("Wyeth") has "refused to produce all pleadings, deposition transcripts, hearing transcripts, expert reports, and orders from its lawsuit against Teva Pharmaceuticals in the District of New Jersey, No. 03-CV-1293 ("Teva Litigation")[.]" (D.I.36). The basis for Impax's request is a contention that because the patents at issue in the Teva Litigation are the same patents at issue in this case, all documents in the Teva Litigation are relevant here.

\*1 In response, Wyeth contends that the request is overly broad and unreasonable, and that Wyeth has produced all relevant documents from the Teva Litigation, namely, those dealing with claim construction and patent validity. (D.I.41). Wyeth has also agreed to produce documents from the Teva

Litigation relating to validity and enforcement of the patent at issue. *Id.*

\*1 Pursuant to <u>Rule 26 of the Federal Rules of Civil Procedures</u>, "[p]arties may obtain discovery of any matter, not privileged, that is relevant to the claim or defense of any party." <u>Fed. R. Civ. P. 26(b)(1)</u>. A court may limit discovery "if the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issue at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Id.* at 26(b)(2).

\*1 The Court concludes that Wyeth's proffered production is reasonable, and that Impax's request for all documents from the Teva Litigation is overly broad. The Court finds that Impax has not demonstrated why it is entitled to documents from the Teva Litigation involving matters not at issue in this litigation. Also, Impax has not shown that the documents requested from the Teva Litigation, beyond what Wyeth has already produced or offered to produce, are critical to resolving the issues before the Court. Thus, this portion of Impax's Motion is denied.

*2. Production Of Responsive Documents In Their Native Format*

\*1 Impax contends that Wyeth should be ordered to produce electronic documents in their native format, complete with metadata, and not in the Tagged Image File Format ("TIFF") in which they were produced. (D.I.36). Impax also contends that a document database created by Wyeth for purposes of the Teva Litigation is discoverable and should be produced. In response, Wyeth contends that Impax is not entitled to electronic copies in their natural state for two reasons: (1) Impax has not made a particularized showing of need for the metadata, and (2) collection of this data would be overly burdensome. (D.I.41).

\*2 Metadata is defined as "information describing the history, tracking, or management of an electronic document." *<u>Shirley Williams, et al.. v. Sprint/United Management Co.</u>*, 230 F.R.D. 640, 646 (D.Kan.2005) (quoting Proposed Advisory Committee Note to <u>Federal Rule of Civil Procedure 26(f)</u>, *available at*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 3091331 (D.Del.)
**(Cite as: Slip Copy)**

http://www.uscourts.gov/rules/comment2005/CVAug04.pdf# page=40). Removal of metadata from an electronic document usually requires an affirmative alteration of that document, through scrubbing or converting the file from its native format to an image file, for example. *See Williams,* 230 F.R.D. at 653. Most metadata is of limited evidentiary value, and reviewing it can waste litigation resources. *Id.* at 651.

*2 "Emerging standards of electronic discovery appear to articulate a general presumption against the production of metadata[.]" *Id.* at 651. The Default Standard for Discovery of Electronic Documents utilized in this District follows this general presumption. Paragraph 6 directs parties to produce electronic documents as image files (e.g. PDF or TIFF) if they cannot agree on a different format for production. "Default Standard For Discovery of Electronic Documents ("E-Discovery")," Ad Hoc Committee for Electronic Discovery of the U.S. District Court for the District of Delaware, http://www.ded.uscourts.gov/Announce/Policies/Policy01.htm. [hereinafter "Default Standard"]. However, if the requesting party can demonstrate a particularized need for the native format of an electronic document, a court may order it produced. *Id.* Therefore, the producing party must preserve the integrity of the electronic documents it produces. *Id.* Failure to do so will not support a contention that production of documents in native format is overly burdensome.

*2 Since the parties have never agreed that electronic documents would be produced in any particular format, Wyeth complied with its discovery obligation by producing image files. Further, neither party has argued that the need for accessing metadata was foreseeable or generally necessary. Finally, Impax has not demonstrated a particularized need for the metadata or database production it has requested. Therefore, this part of Impax's Motion is denied.

### 3. Production of Responsive Documents From Locations and Facilities Outside the United States

*2 Impax's Motion seeks to compel Wyeth to produce documents from Wyeth's foreign facilities, contending that Wyeth's production is not complete. Particularly, Impax references a European clinical study relied upon in support of the patent-in-suit as well as documents related to litigation of foreign-equivalent patents-in-suit. In response, Wyeth contends that it has produced 1.3 million pages of documents from domestic and foreign facilities, has agreed to produce all documents relating to the

European clinical study, and that relevant documents pertaining to conception and reduction to practice have always been located exclusively in the United States, and have been produced. (D.I.41, 42). Further, Wyeth has agreed to update production of correspondence to or from those foreign patent offices in which counterpart cases have been filed.

*3 Because the Court is convinced that the foreign documents identified by Impax in this Motion, or domestic copies thereof, have or will soon be produced by Wyeth, this part of Impax's Motion will be denied.

### 4. Production of All Responsive Documents Generated After February 10, 2003

*3 Impax contends that, except for self-selected discrete categories, Wyeth is refusing to look for or produce documents created or generated after February 10, 2003. Wyeth, in response, contends that documents created after February 10, 2003 are irrelevant and that updating the search would be burdensome and unlikely to produce relevant material. Wyeth also contends that it has offered to update searches in those areas that might possibly have subsequent relevant documents generated after February 2003.

*3 The Court finds that Wyeth's proffered production is reasonable. Wyeth has identified those areas where relevant documents may have been created or generated after February 2003, and is willing to continue to augment its discovery responses. Since Impax has not demonstrated that the broad search it asks for will generate additional relevant documents, the Court concludes that the burden of production on Defendant outweighs its likely benefit to Impax. Accordingly, this portion of Impax's Motion is denied.

### 5. Burden of Discovery Costs

*3 Impax contends that Wyeth has refused to produce documents unless Impax pays Wyeth's imaging costs, and seeks an order compelling Wyeth to bear its own discovery costs. (D.I.36, 42). Wyeth contends, only by reference, that it is under no obligation to pay for copying costs of voluminous materials. (D.I.41).

*3 The Default Standard, Paragraph 9, states that the costs of discovery are borne by each party, only to be apportioned upon a showing of good cause to

Slip Copy
Slip Copy, 2006 WL 3091331 (D.Del.)
**(Cite as: Slip Copy)**

Page 3

redistribute discovery costs. The Court finds there has been no showing of good cause. Wyeth's Teva Litigation materials were converted to image files at Wyeth's request in preparation for Wyeth's prosecution of Teva. Even adopting Wyeth's veiled argument that these materials are voluminous, the cost of production is not, as Wyeth argues, one-half the cost Wyeth incurred in imaging the materials. At most, the cost would be that of copying the already-imaged files. As to documents produced exclusively in this litigation, Wyeth has not shown good cause for requiring Impax to pay the "copying" cost of Wyeth's complete imaging fee. Particularly, Wyeth has not shown that this group of documents is overly voluminous. Further, the Court finds that Impax is not the only party benefitting from the organization of these documents into Wyeth's Concordance database; Wyeth is also a beneficiary of its imaged files. In view of the Default Standard provisions, the Court is not persuaded that deviation from the Default Standard indicating costs should be borne by the parties is warranted. Therefore, this part of Impax's Motion is granted.

*3 NOW THEREFORE, IT IS HEREBY ORDERED that Defendant Impax Laboratories, Inc.'s Motion To Compel Production Of Documents (D.I.36) is *GRANTED IN PART AND DENIED IN PART,* as detailed in this Memorandum Order.

D.Del.,2006.
Wyeth v. Impax Laboratories, Inc.
Slip Copy, 2006 WL 3091331 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1388641 (Trial Pleading) Answer and Counterclaims of Defendant Impax Laboratories, Inc., and Demand for Jury Trial (Apr. 25, 2006) Original Image of this Document with Appendix (PDF)
• 1:06cv00222 (Docket) (Apr. 5, 2006)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit 5



DEVELOPER'S GUIDE



## Unified Authentication v4.0

Validation SDK Guide



Where it all comes together. ™

VeriSign, Inc. 00021939 ■ March 28, 2006

VERI-1597007

Unified Authentication v4.0 Validation SDK Guide

Copyright © 2004 - 2006 VeriSign, Inc. All rights reserved.

The information in this document belongs to VeriSign. It may not be used, reproduced or disclosed without the written approval of VeriSign.

### DISCLAIMER AND LIMITATION OF LIABILITY

VeriSign, Inc. has made efforts to ensure the accuracy and completeness of the information in this document. However, VeriSign, Inc. makes no warranties of any kind (whether express, implied or statutory) with respect to the information contained herein. VeriSign, Inc. assumes no liability to any party for any loss or damage (whether direct or indirect) caused by any errors, omissions, or statements of any kind contained in this document.

Further, VeriSign, Inc. assumes no liability arising from the application or use of the product or service described herein and specifically disclaims any representation that the products or services described herein do not infringe upon any existing or future intellectual property rights. Nothing herein grants the reader any license to make, use, or sell equipment or products constructed in accordance with this document. Finally, all rights and privileges related to any intellectual property right described herein are vested in the patent, trademark, or service mark owner, and no other person may exercise such rights without express permission, authority, or license secured from the patent, trademark, or service mark owner. VeriSign Inc. reserves the right to make changes to any information herein without further notice.

### TRADEMARKS

VeriSign, the VeriSign logo, "Where it all comes together.", Intelligence and Control, VeriSign Trust Network, Unified Authentication, and other trademarks, service marks, and logos are registered or unregistered trademarks of VeriSign and its subsidiaries in the United States and in foreign countries. Other trademarks and service marks in this document are the property of their respective owners.

This document may describe features and/or functionality that are not present in your software or your service agreement. Contact your account representative to learn more about what is available with this VeriSign product. If you need help using this product, contact customer support.

enterprise-pkisupport@verisign.com

+1-650-426-3535 or 1-800-579-2848

Publication date: March 26, 2006

VERI-1597008

 DEVELOPER'S GUIDE

# Contents

+   **Chapter 1 Introduction** . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    Configuration Terminology . . . . . . . . . . . . . . . . . . . . . . . 1
    About This Guide . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    Additional Resources . . . . . . . . . . . . . . . . . . . . . . . . . . 2

+   **Chapter 2 Integrating OTP Authentication** . . . . . . . . . . . . 3
    OTP Authentication . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        The Validation Engine . . . . . . . . . . . . . . . . . . . . . . . 3
    Validation Process . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    Implementation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    Installation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    Building Applications that Use the Validation SDK . . . . 6
        C Applications on Linux or Solaris . . . . . . . . . . . . . . 7
        C Applications on Windows . . . . . . . . . . . . . . . . . . . 7
        Java Applications . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    Running Applications that Use the Validation SDK . . . . 7
    Writing Applications that Use the Validation SDK . . . . . 7
    Initialization Arguments for Bundled Plug-ins . . . . . . . 8

+   **Appendix A OTP Validation Code Sample** . . . . . . . . . . . 11

+   **Appendix B Validation Server Reason Codes** . . . . . . . . . 13
        Validation Operation Result Codes . . . . . . . . . . . . . . 13

 Where it all comes together. ™

VERI-1597009

Unified Authentication v4.0 Validation SDK Guide

Synchronization Operation Result Codes . . . . . . . . . . . 14

+ Index . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

iv

VERI-1597010



CHAPTER 1

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ✦

# Introduction

*Unified Authentication Validation SDK Guide* provides the information required to integrate your applications with VeriSign's Unified Authentication. Specifically, this document describes the Validation SDK, used to integrate one-time password (OTP) -based authentication into your applications.

OTPs are obtained by users from the tokens you receive as a customer of Unified Authentication. Both C and Java versions of the Validation SDK are provided for Linux, Solaris, and Windows platforms.

## Configuration Terminology

+ VeriSign-hosted Validation: OTPs are validated over the Internet by VeriSign's hosted Validation Service and token store. VeriSign deployments use a Validation Engine and a Secure Tunnel Forwarder to communicate with the VeriSign Validation Service.

+ In-premise Validation: OTPs are validated at the customer's enterprise using a locally hosted Unified Authentication Validation Service and token store. In-premise deployments use a Validation Engine to communicate with the customer site.

## About This Guide

This document contains the following chapters:

+ Chapter 2, "Integrating OTP Authentication," describes how you can integrate OTP validation into the Unified Authentication environment.

+ Appendix A, "OTP Validation Code Sample," describes the use of the Java and C OTP validation API using the sample code files included with the distribution.

+ Appendix B, "Validation Server Reason Codes," lists the Validation Server reason codes that can appear in the applications you develop with this SDK.

VERI-1597011

# Additional Resources

The following resources provide additional information about Unified Authentication:

+ The Unified Authentication SDK CD, containing:

  – C-language Validation SDK and online API documentation

  – Java Validation SDK and online API documentation

  – C-language Management SDK and online API documentation

  – Java Management SDK and online API documentation

+ The Unified Authentication documentation CD, containing documents that describe how to install, deploy, and manage Unified Authentication.

+ Online help for administrator and user applications.

VeriSign, Inc. 00021939  ■  March 26, 2006

VERI-1597012

 CHAPTER 2

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ✳

# Integrating OTP Authentication

This chapter describes how to integrate OTP authentication into your applications.

## OTP Authentication

OTP authentication includes the use of:

+ A username registered in your site's user store.

> **Note**  Unified Authentication supports Active Directory, LDAP, OCI, and ODBC databases as the user store.

+ The static string chosen by the user and associated with the username in the directory maintained by your site. This static string is referred to as the "OTP PIN," although in practice it can be any string, not just a number.

+ An OTP a user obtains from a token.

+ The Remote Authentication Dial-In User Service (RADIUS) server shared secret. Unified Authentication uses RADIUS protocol as the basis for transferring OTP authentication data.

+ A token ID, which is the serial number assigned by the manufacturer to the token.

### The Validation Engine

The Validation Engine is the center of communication within Unified Authentication deployments:

+ VeriSign-hosted deployments use a Validation Engine and Secure Tunnel Forwarder to communicate with the VeriSign Validation Service.

+ In-premise deployments use a Validation Engine to communicate with a Validation Server located at the enterprise.

A side-by-side overview of these configurations is shown Figure 2-1.

VERI-1597013

Unified Authentication v4.0 Validation SDK Guide



Figure 2-1    OTP authentication environment

## Validation Process

Referring to Figure 2-1, the validation process proceeds as follows:

1    A user enters username, password, and token-generated OTP in a login form. The login form is provided by an application that is integrated with the Validation SDK.

> **Note**    In addition to an OTP, some client configurations support the use of an OTP PIN, a static value chosen by the user. Supporting both configurations requires separate Validation Services, which must have their Validation type set appropriately. For further information, refer to the installation and configuration guide for the Unified Authentication release you are deploying. As the application developer and integrator, you are responsible for providing appropriate login forms.

VERI-1597014

2 The username and password are validated by sending them to the Validation Engine. This is the first part of the two-factor authentication process.

3 If the username and password are authenticated, the Validation Engine retrieves the unique token ID corresponding to that username and password.

4 This is the second part of the two-factor authentication process, in which the OTP is validated. The specific validation process depends on the whether an in-premise or VeriSign-hosted configuration is used:

  a In-premise configurations: The Validation Engine sends the token ID and OTP to the customer Validation Server. The Validation Server uses its Token Store to validate the request.

  b VeriSign-hosted configurations: The Validation Engine sends the token ID and OTP to the VeriSign Validation Service. The request is sent to the VeriSign Validation Service through the Secure Tunnel Forwarder. The VeriSign Validation Service uses its Token Store to validate the request.

5 Depending on the configuration used in Step 4, the in-premise Validation Service or VeriSign Validation Service returns the authentication response. The response is returned to the Validation Engine, which forwards the authentication response to the client application.

6 If the authentication process was successful, the user is logged-in and allowed access to the protected resource.

---

**Note**  For users who have mislaid a token, or for the case of a damaged token, the administrator may be able to generate a temporary password, with a limited period of validity, to give to the user. This depends on the configuration, which in turn depends on the security policies in effect.

---

## Implementation

The Validation SDK is implemented based on an extensible plug-in architecture. It comes with two bundled plug-ins:

+ A concrete Validation plug-in implementation that uses the RADIUS protocol to forward validation requests to a Validation Service hosted at VeriSign or a Validation Server located at the enterprise.

+ A stub Validation plug-in implementation that can be used during initial coding and testing.

VERI-1597015

# Installation

The SDK package is in the form of a .zip archive. Choose a directory where the Validation SDK should be installed and extract the package directly under the installation directory.

The installation directory will contain the following subdirectories:

+ include/

+ lib/

+ docs/api/C

+ docs/api/java

+ samples/C

+ samples/java

C API HTML documentation can be accessed from "docs/api/C/index.html'." Respectively, Java API documentation can be accessed from "docs/api/java/index.html."

An sample C program, called "ClientExample.c," is provided in the subdirectory "samples/C," together with scripts to build ("build.sh" and '"build.bat"), and run ("'run.sh" and "run.bat"') the sample.

An sample Java program, called "ClientExample.java," is provided in the subdirectory "samples/java," together with scripts to build ("build.sh" and "build.bat"), and run ("run.sh" and "run.bat") the sample.

The "lib/" subdirectory contains the files listed in Table 2-1.

Table 2-1   Files in lib subdirectory

| Linux and Solaris Systems | Windows |
|---|---|
| lib/libvsauthotpclient.a | lib/vsauthotpclient.lib |
| | lib/vsauthotpclient.dll |
| lib/libvsradiusclientimpl.so | lib/vsradiusclientimpl.dll |
| lib/libvsauthotpstubimpl.so | lib/vsauthotpstubimpl.dll |
| lib/libvsotpgenericnativeclientjni.so | lib/vsotpgenericnativeclientjni.dll |
| lib/vsauthotpclient.jar | lib/vsauthotpclient.jar |

# Building Applications that Use the Validation SDK

The Validation SDK is supported on Linux, Solaris, and Windows, using C or Java as the programming language. The Java Validation SDK requires Java JDK 1.4. There are no other platform restrictions.

VeriSign, Inc. 00021939 ■ March 26, 2006

VERI-1597016

### C Applications on Linux or Solaris

When compiling C applications on Linux or Solaris systems, define the following symbols: D_REENTRANT -D_POSIX_PTHREAD_SEMANTICS.

The C compiler options should specify the include/ directory of the Validation SDK as a header file search path, so that Validation SDK header files can be found.

When linking C applications, ensure that the library search path includes the Validation SDK lib/ directory.

The following libraries should be specified when linking the application:

+ libvsauthotpclient.a

+ libdl.so

+ On Solaris systems, the "libsocket.so" and "libnsl.so" libraries must also be specified.

All other libraries are dynamically loaded, as needed, at run time.

### C Applications on Windows

Only the vsauthotpclient.lib library should be specified when linking the application. All other libraries are dynamically loaded at run time as needed.

### Java Applications

When compiling Java applications, the CLASSPATH environment variable must include the lib/vsauthotpclient.jar file.

## Running Applications that Use the Validation SDK

In order to run the provided sample code, or C or Java applications using the Validation SDK, you must ensure that the loadable libraries can be found for execution. The required libraries are listed in Table 2-2.

Table 2-2    Validation SDK Libraries

| Unix systems | Windows |
|---|---|
| The LD_LIBRARY_PATH environment variable must be set to include the Validation SDK 'lib' directory. | The PATH environment variable must be set to include the Validation SDK 'lib' directory. |

In addition, for Java applications, the CLASSPATH environment variable must include the lib/vsauthotpclient.jar file.

## Writing Applications that Use the Validation SDK

To invoke any validation requests, the client code must:

VERI-1597017

+ Specify a validation plug-in.

+ Obtain a client descriptor, or object, through which the validation requests are to take place.

Refer to the API documentation and the sample code provided for details. The sample C and Java code are included in the distribution. See Appendix A, "OTP Validation Code Sample."

# Initialization Arguments for Bundled Plug-ins

Initialization arguments for the RADIUS Validation plug-in are listed in Table 2-3. Initialization arguments for the Stub Validation plug-in are listed in Table 2-4.

The Stub plug-in can be used for initial testing of the client application. The methods of the Stub plug-in echo their arguments to standard out, and return success.

**Table 2-3   RADIUS Validation plug-in initialization arguments**

| | |
|---|---|
| C language -Loadable library name | For Unix: "libvsradiusclientimpl.so"For Windows: "vsradiusclientimpl.dll" |
| C language -Library initialization entry point name | "VSRadiusClientImplInit" |
| Java -Concrete class name | "com.verisign.authentication.otp.RadiusClientImpl" |
| Java -Concrete class initialization entry point name | "implInit" |
| C and Java -Entry point arguments | None |
| C and Java -New client descriptor / object constructor initialization arguments | ▪ "readTimeout" ::= a numeric value that specifies the delay, in seconds, that defines a 'timeout' event when receiving a reply.<br><br>▪ "callAttempts" ::= a numeric value that specifies how many automatic retries triggered by 'timeout' events, should be attempted.<br><br>▪ "contextPoolCapacity" ::= the size of the (permanent) networking resource cache. Note that the resource pool capacity may temporarily exceed this threshold, but it will de-allocate the extra resources when no longer needed. |

VeriSign, Inc. 00021939 ▪ March 26, 2006

VERI-1597018

**Table 2-3    RADIUS Validation plug-in initialization arguments (Continued)**

| C and Java -New client descriptor / object constructor initialization authentication channels | • All authentication channels to be used by a single client object, when performing validation requests, must be configured when the client object is created.<br><br>• An authentication channel is specified in the following format: <target_host>:<target_port>?secret=<radius_server_secret>[&localIP=<IP_address>]<br><br>where:<br><br>• target_host ::= the hostname or IP address of the VeriSign Validation Engine or server<br><br>• target_port ::= the port on which the Validation Engine or server listens for requests<br><br>• secret ::= the Radius secret of the target server. (This can be an empty string for VeriSign-hosted implementations only.)<br><br>• localIP ::= the IP address of the client machine, running the application. A specific IP address may be provided with each authentication channel. This allows the client application to specify which network interface adapter should be used to communicate with the target server. If not specified, the Validation SDK will use the IP address bound to the local host name. |
|---|---|

**Table 2-4    Stub plug-in initialization arguments**

| C language -Loadable library name | For Unix: "libvsauthotpstubimpl.so"For Windows: "vsauthotpstubimpl.dll" |
|---|---|
| C language -Library initialization entry point name | "VSAuthOTPStubImplInit" |
| Java -Concrete class name | "com.verisign.authentication.otp.StubClientImpl" |
| Java -Concrete class initialization entry point name | "implInit" |
| C and Java -Entry point arguments | None |
| C and Java -New client descriptor / object constructor initialization arguments | <any_name> ::= <any_value> |

VERI-1597019

Table 2-4   Stub plug-in initialization arguments

| C and Java -New client descriptor / object constructor initialization authentication channels | Authentication channels are in free format. |
|---|---|

VERI-1597020

 APPENDIX A

# OTP Validation Code Sample

The following sample validation code files are included with the distribution:

+ ClientExample.c. This code exercises the C API OTP validation functions and is run from the command line.

+ ClientExample.java. This code exercises Java OTP validation API functions and is run from the command line.

**Note**   The required parameters are hard-coded into the examples. They should be changed to the values required by your environment prior to compiling the code. The header file VSAuthOTPClient.h is included with the C-language Validation SDK distribution. The com.verisign.authentication.otp classes are included with the Validation SDK. This SDK requires JDK 1.4.

VERI-1597021

Unified Authentication v4.0 Validation SDK Guide

VeriSign, Inc. 00021939  ■  March 26, 2006

VERI-1597022

 APPENDIX B

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

# Validation Server Reason Codes

When you add OTP-based authentication into your applications, you can choose to display validation server reason codes in your application to give end users feedback on validation operations. Table B-1 and Table B-2 list the codes that can appear for token status or user account.

## Validation Operation Result Codes

The validation server returns reason codes indicating the result of a validation operation. Table B-1 describes the different sets of conditions that can occur during the Validate operation, the resulting reason codes, and the effect on the failure count in the database.

**Note**  These operations do not check whether the jurisdiction hash is set in the database.

Table B-1    Validation results

| Validate Operation | Token State | Auto-sync | Temp Pass State | Result | RC | DB update |
|---|---|---|---|---|---|---|
| Correct OTP | Enabled | No | No | ACCEPT | 0 | Fail_cnt=0 |
| Incorrect OTP | Enabled | No | No | REJECT | 12 | Fail_cnt++ |
| Correct/Incorrect OTP | Disabled | No | No | REJECT | 15 | |
| Correct/Incorrect OTP | Locked | No | No | REJECT | 16 | |
| Correct/Incorrect OTP | NEW | No | No | REJECT | 14 | |
| Correct Temp pass | Disabled | N/A | Not expired | ACCEPT | 0 | Fail_cnt=0 |
| Correct Temp pass | Disabled | N/A | Expired | REJECT | 15 | |
| Incorrect Temp Pass | Disabled | N/A | Not Expired | REJECT | 12 | Fail_cnt++ |
| Incorrect Temp Pass | Disabled | N/A | Expired | REJECT | 15 | |
| Correct OTP in Auto-Sync Window | Enabled | Auto-Sync Trigger | No | REJECT | 12 | |

VERI-1597023

**Table B-1   Validation results (Continued)**

| Validate Operation | Token State | Auto-sync | Temp Pass State | Result | RC | DB update |
|---|---|---|---|---|---|---|
| Incorrect OTP (Not in Look ahead and Auto Sync Window) | Enabled | Auto-Sync Trigger | No | REJECT | 12 | Fail_cnt++ |
| Correct Temp pass | Enabled | Auto-Sync No trigger | Not Expired | ACCEPT | 0 | Fail_cnt=0 |
| Incorrect Temp pass | Enabled | Auto-Sync No trigger | Expired | ACCEPT | 12 | Fail_cnt++ |

## Synchronization Operation Result Codes

Table B-2 describes the different sets of conditions that can occur during the Synchronization operation, the resulting reason codes, and the effect on the failure count in the database.

**Note**   We assume that the acct_id/vs_acct_jurisdiction_hash is always populated in both in-premise and VSHA token store.

**Table B-2   Synchronization results**

| VeriSign hosted | In-premise | 2good OTPs | Req w/ jhash | Current Token State | Result | RC | Token state becomes | DB update |
|---|---|---|---|---|---|---|---|---|
| Yes | No | Yes | No | NEW | ACCEPT | | NEW | Fail_cnt=0 |
| Yes | No | Yes | Yes | NEW | ACCEPT | | ENABLED | Fail_cnt=0 |
| Yes | No | Yes | Yes | ENABLED | ACCEPT | | ENABLED | Fail_cnt=0 |
| Yes | Yes | Yes | No | NEW | REJECT | 14 | NEW | Fail_cnt=0 |
| Yes | Yes | Yes | No | ENABLED | ACCEPT | | ENABLED | Fail_cnt=0 |
| Yes | No | No | Yes | NEW | REJECT | 12 | NEW | |
| Yes | No | No | Yes | ENABLED | REJECT | 12 | ENABLED | Fail_cnt++ |
| Yes | Yes | No | No | NEW | REJECT | 12 | NEW | |
| Yes | Yes | No | No | ENABLED | REJECT | 12 | ENABLED | Fail_cnt++ |

VeriSign, Inc. 00021939 ■ March 26, 2006

VERI-1597024

# Index

**A**

Active Directory 3

**B**

bundled plug-ins 5, 8
    RADIUS Validation initialization arguments 8
    Stub Validation initialization arguments 9

**C**

compiling C applications
    Linux 7
    sample code 11
    Solaris 7
    Windows 7
compiling Java applications 7

**I**

in-premise deployments 3

**J**

Java applications
    compiling 7
    sample code 11
Java JDK 1.4 6

**L**

LDAP 3
linking C applications 7

**O**

OCI 3
ODBC 3
one-time password
    see OTP
OTP 1, 3, 4
OTP PIN 3, 4

**R**

RADIUS protocol 3, 5
RADIUS Validation plug-in 8

**S**

Secure Tunnel Forwarder 1, 5

static string
    see OTP PIN
Stub Validation plug-in 8

**T**

token ID 3, 5
tokens 1
two-factor authentication 5

**U**

Unified Authentication Service 1
user store 3
    Active Directory 3
    LDAP 3
username 3

**V**

validation 4
    in-premise 1, 5
    VeriSign-hosted 1, 5
Validation Engine 1, 3, 5
Validation SDK 1
    application libraries 7
    C-language header files 7
    C-language sample code 11
    C-language version 1, 2
    implementation 5
    Java CLASSPATH variable 7
    Java sample code 11, 13
    Java language version 1, 2
Validation SDK platforms
    Linux 1
    Solaris 1
    Windows 1
Validation Server 3
VeriSign-hosted deployments 3

VERI-1597025

Unified Authentication v4.0 Validation SDK Guide

VeriSign, Inc. 00021939 ■ March 26, 2006

VERI-1597026