## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PRISM TECHNOLOGIES LLC

             Plaintiff,

        v.

VERISIGN, INC., RSA SECURITY, INC.,
NETEGRITY, INC., COMPUTER
ASSOCIATES INTERNATIONAL, INC.,
and JOHNSON & JOHNSON SERVICES,
INC.,

             Defendants.

Civil Action No. CA 05-00214 JJF
JURY TRIAL DEMANDED

**REDACTED PUBLIC VERSION**

---

### PLAINTIFF PRISM TECHNOLOGIES LLC'S REPLY
### MEMORANDUM OF POINTS AND AUTHORITIES TO DEFENDANT
### VERISIGN INC.'S ANSWERING BRIEF TO PRISM'S MOTION TO COMPEL
### VERISIGN TO PRODUCE THE SOURCE CODE OF ITS ACCUSED PRODUCTS

Dated: February 26, 2007

Richard D. Kirk (rk0922)
THE BAYARD FIRM
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899
(302) 655-5000
rkirk@bayardfirm.com

*Attorneys for Plaintiff*
*Prism Technologies LLC*

*Of Counsel*:

Dirk D. Thomas, Esq.
Robert A. Auchter, Esq.
Kenneth A. Freeling, Esq.
André J. Bahou, Esq.
Aziz Burgy, Esq.
Robins, Kaplan, Miller & Ciresi, L.L.P.
1875 Eye Street, N.W., Suite 300
Washington, D.C. 20006
(202) 775-0725

## TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................ 1

PRISM'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL VERISIGN TO
PRODUCE THE SOURCE CODE OF ITS ACCUSED PRODUCTS ........................................ 1

I.    PRISM REASONABLY RELIED ON VERISIGN'S STATEMENT THAT IT WOULD
      PRODUCE SOURCE CODE IN RESPONSE TO PRISM'S DOCUMENT REQUEST FOR THE
      SOFTWARE AND SOURCE CODE. .......................................................................... 5

      A.    Prism's Motion to Compel is Warranted And Seeks Production Of Long
            Overdue Discovery. .................................................................................. 6

      B.    Prism's Motion to Compel is Timely ......................................................... 7

II.   PRISM EXPLAINED ITS NEED FOR THE SOURCE CODE TO REBUT VERISIGN'S
      UNSUPPORTED NON-INFRINGEMENT CONTENTIONS. ........................................... 11

      A.    The Source Code Is The Accused Product And Is Relevant To This
            Litigation. ............................................................................................... 13

      B.    VeriSign Cannot Rebut Prism's Evidence That Production Of The Source
            Code Is Not Cumulative ........................................................................... 14

            1.    VeriSign's design documents are not cumulative of source code. ........... 14

            2.    High-level user's guides and public-facing documents are not
                  cumulative of source code. ....................................................... 16

            3.    VeriSign's deposition witnesses are not a proxy for the source
                  code. ................................................................................... 17

      C.    VeriSign Has Not And Cannot Establish That Production Of The Source
            Code Is Overbroad Or Burdensome ........................................................... 18

CONCLUSION ........................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Cardenas v. Dorel Juvenile Group, Inc.,*
   230 F.R.D. 611 (D. Kan. 2005) ............................................................................... 13

*Forterra Sys. v. Avatar Factory,*
   2006 U.S. Dist. LEXIS 63100 (N.D. Cal. Aug. 22, 2006) ....................................... 13

*Gault v. Nabisco Biscuit Corp.,*
   184 F.R.D. 620 (D. Nev. 1999) ............................................................................ 7, 9

*In Re ML-Lee Acquisition Fund II, L.P.,*
   151 F.R.D. 37 (D. Del. 1993) .................................................................................. 13

*In re Sulfuric Acid Antitrust Litig.,*
   231 F.R.D. 331 (N.D. Ill. 2005)............................................................................... 11

*Josephs v. Harris Corp.,*
   677 F.2d 985 (3d Cir. 1982) ...................................................................................... 6

*M2 Software, Inc. v. M2 Communications, L.L.C.,*
   217 F.R.D. 499 (C.D. Cal. 2003)................................................................... 4, 6, 7, 10

*Novartis Pharma. Corp. v. Abbott Labs,*
   203 F.R.D. 159 (D. Del. 2001) ................................................................................ 13

*United States Ex Rel. Robert Purcell v. MWI Corp.,*
   233 F.R.D. 14 (D.D.C. 2005)...................................................................................... 9

## INTRODUCTION

Plaintiff Prism Technologies LLC has moved this Court for an order compelling Defendant VeriSign, Inc. to produce the source code of its Unified Authentication ("UA") and VeriSign Identity Protection ("VIP") software products (collectively the "accused products"). VeriSign opposed this motion and filed an opposition memorandum. Now, Prism files this reply memorandum to address mischaracterizations in VeriSign's opposition.

## PRISM'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL VERISIGN TO PRODUCE THE SOURCE CODE OF ITS ACCUSED PRODUCTS

VeriSign complains in its answering brief that the first time Prism raised VeriSign's failure to produce the source code was after the close of written discovery.[1] But VeriSign's gamesmanship is exposed. In fact, VeriSign led Prism to believe that it would produce the documents and things, namely software and source code, called for in Prism's Doc. Req. No. 1.[2] VeriSign stated that it would produce responsive documents relating to Unified Authentication in response to Prism's Doc. Req. 1.[3] To the extent that VeriSign used its own definition of "documents," it could not fairly limit the scope to anything narrower than it expected of Prism— "[t]he term 'document' shall include electronic data," and "'electronic data' includes, but is not

---

[1] VeriSign's Memorandum of Points and Authorities Answering Plaintiff Prism's Motion to Compel VeriSign to Produce the Source Code of Its Accused Products, at 1 (hereinafter "VeriSign's Opp.") (D.I. 426). Exhibits filed with VeriSign's Opposition are referenced herein as "VeriSign Ex. __." Similarly, Prism's exhibits 1-39 filed with Prism's Opening Memorandum (D.I. 415) and Prism's exhibits (40-41) filed herewith are referred to as "Prism Ex. __."

[2] *E.g.,* Prism Ex. 3, at 2, Letter from D. Yonan to A. Bahou, May 11, 2006; Prism Ex. 8, Letter from D. Yonan to A. Bahou, August 4, 2006.

[3] *See* Prism Ex. 2, VeriSign Resp. to Doc. Req. 1 at page 6, VeriSign's Responses to Plaintiff's Revised First Set of Rule 34 Requests for Production of Documents and Things, October 27, 2005; *see also* Prism Ex. 1, at 3 ¶H, Prism's Revised First Set of Rule 34 Requests for Production of Documents and Things, September 20, 2005, Prism's Revised Doc. Req. 1. (defining "document" to have the meaning prescribed for "documents and things" in Fed. R. Civ. P. 34(a)).

limited to … computer programs [and] source code of all types."[4]  Yet, in numerous letters and teleconferences, VeriSign <u>never</u> informed Prism that it would <u>not</u> produce the source code until after the close of written discovery.

Most notably, Prism's Doc. Req. No. 1 requests one set of the <u>software</u> and <u>software code</u>—not merely paper "documents" as VeriSign would attempt to limit that term for its production.  VeriSign cannot reasonably maintain that its response was only to "documents" because Prism's request for source code is for electronic data that is completely within the scope and definition of documents and things under FED. R. CIV. PROC. 34.  Prism reasonably relied on VeriSign's statements that the requested materials would be forthcoming.

In hindsight, it is apparent that VeriSign selectively chose to produce <u>some </u>software almost one year after it was requested but decided to cloak its withholding of the **source code** without ever stating that it was doing so.  After the close of discovery, VeriSign's ploy became apparent.  VeriSign laid in wait to produce <u>some,</u> but not all, of the accused product software one week before the close of discovery.  The critical fact for this Court to consider is that the publicly available software could have been pulled off the shelf and produced on September 20, 2005— the date of Prism's first request.  This fact cannot be disputed.

VeriSign, however, did not produce the software.  It played a discovery game by stating that it would produce the documents[5] called for in Prism's Doc. Req. No. 1 but hid its true intentions.  After piecemealing the software production on the last week of written discovery— nearly one year after Prism's initial request—VeriSign withheld the source code without stating

---

[4]  *See* Prism Ex. 5, at Definition ¶¶12-13, VeriSign's First Set of Interrogatories to Prism, September 15, 2005.  VeriSign also incorporated its definitions and instructions from its First Set of Interrogatories into its First Set of Document Requests to Prism. *See* Prism Ex. 40, at 2, VeriSign's First Set of Requests for the Production of Documents and Things to Prism (Nos. 1-40), September 15, 2005.

[5]  *See* Prism Ex. 2, VeriSign's Resp. to Doc. Req. No. 1; Prism Ex. 3, at 2, Letter from D. Yonan to A. Bahou, May 11, 2006; Prism Ex. 8, Letter from D. Yonan to A. Bahou, August 4, 2006.

any reason for doing so. VeriSign then forced Prism to inquire as to VeriSign's failure to produce the source code.

VeriSign discovery tactics were apparently at work. It withheld the source code for nearly a year since Prism's initial request, produced only its software in a selectively piecemeal fashion,[6] and all the while withheld the critical installation codes/information needed to install the software.

VeriSign, for the first time on September 26, 2006, stated it would not produce the source code.[7] VeriSign somehow states that it meant that it would produce "documents" but meant to exclude electronic information.[8] VeriSign is exposed. Contrary to its newfound slight of hand, VeriSign had always led Prism to believe that it would produce documents and things responsive to Req. No. 1. Subject to certain objections, VeriSign stated that it [

**REDACTED**

] Now VeriSign misleads this Court by saying its position on the source code has been "unequivocal and consistent."[10] But, VeriSign cannot reconcile its statements before the close of discovery:

> "*Document Request No. 1:* VeriSign intends to produce one (1) copy of each of its Accused Products to Prism."[11]

---

[6] *See* Prism Ex. 8, Letter from D. Yonan to A. Bahou, August 4, 2006; Prism Ex. 9, Letter from V. Chan to A. Bahou, September 29, 2006. VeriSign produced its software on August 4—the last week of discovery—and responded to Prism's request regarding VeriSign's incomplete production on September 29, 2006.

[7] *See* Prism Ex. 15, Letter from D. Yonan to A. Bahou, September 26, 2006. VeriSign's letter responded to Prism's numerous requests and teleconferences on the same to fulfill Prism's obligation under L.R. 7.1.1.

[8] "To the extent Prism argues it requested source code in its first set of documents requests, VeriSign long ago objected to the scope of that request, and stated it would only produce <u>documents</u> relating to the accused products." (emphasis added). Prism Ex. 30, Letter from D. Yonan to A. Bahou, Jan. 11, 2007; *see also* VeriSign Opp. at 3.

[9] Prism Ex. 2, at 6, VeriSign Resp. to Doc. Req. 1.

[10] VeriSign Opp. at 3.

[11] Prism Ex. 3, at 2, Letter from D. Yonan to A. Bahou, May 11, 2006.

"*Documents Requests Nos. 1-5, 7-9, 11-12, 21, 24, 26-27, 29-31:* As provided *supra*, VeriSign intends to supplement its production to include <u>any information</u> on its Accused Products that has not been previously produced."[12]

[                          **REDACTED**

]

with this statement below, made after the close of discovery:

"VeriSign will not make available highly sensitive source code or pilot program access for its accused products."[14]

Nor can VeriSign reconcile its *production of software* while maintaining that it withheld the source code because it was not a "document." VeriSign said it could not be "clearer."[15] But why did it wait until September 26, 2006—after the close of discovery—to somehow become 'clear' when it was purposely unclear about its production of source code from October 2005 until August 11, 2006 (the close of written discovery). Notwithstanding the above, VeriSign still complains that Prism's motion is somehow untimely. It is, however, accepted that a motion to compel may be filed after the close of discovery. *See M2 Software, Inc. v. M2 Communications, L.L.C.*, 217 F.R.D. 499, 500 (C.D. Cal. 2003) (granting the motion to compel after the close of fact discovery). Considering the above, this motion should be granted on fairness alone.

In addition, VeriSign cannot state that the source code is cumulative of design documents already in its production. Prism Ex. 35, at ¶ 14, Affidavit of Plaintiff's Expert Michael I. Shamos, Ph.D, J.D., Concerning VeriSign Source Code (hereinafter "Shamos Aff."). As shown below, the design documents do not represent the final release product. VeriSign further argues that the source code is not relevant and attempts to shift the burden to Prism to establish this

---

[12] Prism Ex. 3, at 2, Letter from D. Yonan to A. Bahou, May 11, 2006 (emphasis added).
[13] Prism Ex. 8, Letter from D. Yonan to A. Bahou, August 4, 2006.
[14] Prism Ex. 15, Letter from D. Yonan to A. Bahou, September 26, 2006.
[15] VeriSign Opp. at 3.

relevance. In fact, since VeriSign is resisting discovery, it has the burden to establish that the

source code is not relevant. Regardless, VeriSign's discovery gamesmanship continues with its

reliance on unsupportable relevancy, cumulativeness, and duplicativeness arguments even

though VeriSign affirmatively stated it would produce documents responsive to Prism's specific

request for the accused products' "software code."[16] VeriSign's repeated back-and-forth tactics

and delays have delayed the instant motion to compel nine (9) months,[17] and now it

misrepresents to the Court that this delay is of Prism's own doing.[18] This Court should not

countenance such tactics. And despite VeriSign's assertion to the contrary,[19] both Prism's

initial[20] and renewed[21] requests specifically contemplate production of the source code at issue.

Therefore, this Court should compel production of the accused products' source code.[22]


I.    **PRISM REASONABLY RELIED ON VERISIGN'S STATEMENT THAT IT WOULD PRODUCE SOURCE CODE IN RESPONSE TO PRISM'S DOCUMENT REQUEST FOR THE SOFTWARE AND SOURCE CODE.**

VeriSign does not dispute that it knew of Prism's request for the source code. Nor can

VeriSign dispute that it did not state that it would not produce the source code until September

26, 2006—after the close of written discovery and over a year after Prism's initial request. Quite

the opposite, VeriSign led Prism to believe that it would produce the items—software and source

code—called for in Prism's Doc. Req. Number 1. A court should not deny a party discovery

---

[16] *See* Prism Ex. 2, at 6, VeriSign's Resp. to Doc. Req. 1.
[17] If VeriSign had objected to supplementing Doc. Req. 1 on May, 11, 2006, Prism would have most certainly moved to compel. But VeriSign did not state that it would not produce the source code or the requested documents and things. *See* Prism Ex. 3, at 2, Letter from D. Yonan to A. Bahou, May 11, 2006.
[18] VeriSign Opp. at 3-4.
[19] *See* VeriSign Opp. at n. 4.
[20] *See* Prism Ex. 1, Prism's Revised Doc. Req. 1.
[21] *See, e.g.,* Letters from A. Bahou to D. Yonan, at Prism Ex. 4 (April, 24, 2006), Ex. 6 (June 26, 2006), Ex. 7 (June 27, 2006), and Ex. 10 (August 31, 2006).
[22] *See* Prism Ex. 35, Shamos Aff. at ¶ 30. Mere inspection would not allow Prism to compile and test the accused products' source code.

where it has "reasonably relied to its detriment upon the representations [of an opposing party]." *M2 Software, Inc.*, 217 F.R.D. at 500. VeriSign stated it would produce documents responsive to Prism's request for source code, and Prism relied on that statement.

### A. Prism's Motion to Compel is Warranted And Seeks Production Of Long Overdue Discovery.

VeriSign obscures that Prism requested production of the source code of the accused products in its initial document requests of September 20, 2005.[23] [

REDACTED

] First, boilerplate, generalized objections are inadequate and tantamount to not making any objection at all. *See Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982) ("mere statement by a party that the [discovery requested] was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection"). Second, where a party has responded affirmatively to document requests, it may not "claim that requested documents are irrelevant," because "it has already waived relevancy objections by responding to each request that it will produce the requested documents." *M2 Software, Inc.,* 217 F.R.D. at 501. Thus, the only remaining question is whether the "particular … documents and things sought … are within the scope of the requests at issue." *Id.* at 501. Indeed, in the instant case, Prism's request for the source code of the accused products is explicitly contemplated by the request at issue.

In *M2 Software*, the party responded to document requests with statements that it would "produce documents." *Id.* at 500. Like Prism did here, the moving party's counsel in *M2 Software* repeatedly and diligently requested production of the documents. *Id.* And just like

---

[23] *See* Prism Ex. 1, Prism's Revised Doc. Req. 1.
[24] *See* Prism Ex. 2, VeriSign's Resp. to Doc. Req. 1.

VeriSign—the resisting party never clearly stated that it would not produce the requested and promised documents until after the close of discovery. *Id.* The court in *M2 Software* granted the motion to compel because the other party effectively conceded the issue by making no claim that the documents and things were not within the scope of the requests it had affirmatively indicated it would produce documents in response to. *Id.*

Here, once Prism discovered deficiencies in VeriSign's production, namely the failure to produce the source code, Prism immediately, rightfully, and repeatedly renewed its requests for access to the source code of the accused products.[25] Just as in *M2 Software*, VeriSign did not affirmatively state it would not produce the disputed discovery until after the close of discovery.[26] VeriSign cannot argue that source code is not a document within the meaning of Rule 34, as it has specifically defined documents to include such code.[27] Therefore, as VeriSign cannot make any colorable claim that the source code at issue is not within the scope of Doc. Req. No. 1, this Court should thus grant Prism's motion to compel.

### B. Prism's Motion to Compel is Timely.

VeriSign attempts to rely on *Gault* for the proposition that Prism should have moved to compel the source code prior to the close of discovery.[28] However, the court in *Gault* stated that a motion to compel may be filed after the close of discovery. *Cf. Gault v. Nabisco Biscuit Corp.*, 184 F.R.D. 620, 622 (D. Nev. 1999) (denying a motion to compel where motions for summary judgment were pending). Furthermore, VeriSign led Prism to believe that it would produce the

---

[25] *See, e.g.,* Letters from A. Bahou to D. Yonan, at Prism Ex. 4 (April, 24, 2006), Ex. 6 (June 26, 2006), Ex. 7 (June 27, 2006), and Ex. 10 (August 31, 2006).

[26] *See* Prism Ex. 15, Letter from D. Yonan to A. Bahou, September 26, 2006.

[27] *See* Prism Ex. 5, at Definition ¶¶12-13, VeriSign's First Set of Interrogatories to Prism, September 15, 2005. Additionally, VeriSign produced inoperable copies of its software, which contradicts its attempt to limit its production.

[28] *See* VeriSign Opp. at 9-10 (citing *Gault*, 184 F.R.D. at 621-22).

source code during the written discovery period.[29]  Once it became obvious—after the close of

written discovery—that VeriSign would not produce the source code, Prism diligently sought

compromise by proposing a stipulation[30] just three (3) days after VeriSign said it would not

produce the source code.[31]  Prism's proposed stipulation sought to ensure that VeriSign would

not use the source code without producing it.  Even if VeriSign would have stated that it would

not use the source code, Prism did not delay and <u>always</u> reserved its right to seek the source

code.[32]  Prism's letter enclosing the proposed stipulation and stipulation read, in relevant part:

> "We nonetheless reserve our right to further seek the source code of the
> Accused Products if we determine that we need it to adequately prosecute
> this case.  But because you have refused to produce the source code, we
> will object if you attempt to use your source code for any purpose during
> this litigation.  In that regard, we ask that you sign the attached stipulation
> stating that you do not plan to rely on the source code of the Accused
> Products.  This stipulation is required in light of your refusal to produce
> the source code.  Further, we feel that the reservation of our right to
> request and use the source code is equitable because you are withholding it
> now and you have the sole knowledge of its contents.  Therefore, we
> cannot relinquish our right to use that information without knowing its
> contents."[33]

> "WHEREAS, Prism reserves its right to seek the source code of the
> Accused Products.
> …
> 2.       VeriSign agrees that Prism reserves its right to further seek the
> source code of the Accused Products."[34]

Prism's diligence is shown by its letters footnoted below[35] and teleconferences regarding the

---

[29] *See* Prism Ex. 2, VeriSign Resp. to Doc. Req. 1.

[30] *See* Prism Ex. 16, Letter from A. Bahou to D. Yonan, September 29, 2006.

[31] *See* Prism Ex. 15, Letter from D. Yonan to A. Bahou, September 26, 2006.

[32] *See* VeriSign Opp. at n. 7 and accompanying text.  VeriSign misleads the Court by touting Prism's "willingness"
not to use the source code.

[33] Prism Ex. 16, at 1, Letter and Proposed Stipulation from A. Bahou to D. Yonan, September 29, 2006.

[34] Prism Ex. 16, Proposed Stipulation, at 1-2.

[35] *See, e.g.*, Letters and e-mails from Prism to VeriSign diligently following up on Prism's requests: Prism Ex. 4
(April 24, 2006), Prism Ex. 6 (June 26, 2006), Prism Ex. 7 (June 27, 2006), Prism Ex. 10 (August 31, 2006),
Prism Ex. 12 (September 15, 2006), Prism Ex. 13 (September 26, 2006), Prism Ex. 16 (September 29, 2006),
Prism Ex. 17 (October 9, 2006), Prism Ex. 19 (November 7, 2006), Prism Ex. 27 (December 22, 2006), Prism
Ex. 39 (January 9, 2007).

same requests. In contrast, it is VeriSign's responses that have delayed this motion.

One important factor is whether the motion to compel was filed before the scheduled date for dispositive motions and whether the motion disrupts the court's schedule. *Gault*, 184 F.R.D. at 622 (denying a motion to compel where motions for summary judgment were pending); *cf. United States Ex Rel. Robert Purcell v. MWI Corp.*, 233 F.R.D. 14, 17-18 (D.D.C. 2005) (finding that the defendant's motion to compel would not cause any disruptions to the court's schedule and was therefore timely but denying the motion on grounds of privilege). The instant motion does not disrupt the Court's schedule. Pursuant to the Court's Order of January 19, 2006 (granting the joint stipulation to extend deadlines in this case), no date certain deadline for dispositive motions has been set. Further, unlike in *Gault*, no such motions have yet been filed with the Court.

Another factor courts consider is whether any delay in filing the motion to compel was caused by matters outside control of the movant. *Gault*, 184 F.R.D. at 622. Here, Prism's filing was delayed by both VeriSign's back-and-forth tactics and continuous delays. As a result of those delays, Prism was unable to file the motion: in September 2006 because it waited on VeriSign's reply of October 23, 2006[36] (notwithstanding Prism's reminder of October 9, 2006),[37] in November 2006 because it waited on VeriSign's forthcoming response of November 28, 2006[38] (notwithstanding Prism's response of November 7, 2006), and in December 2006 because Prism awaited VeriSign's response of January 2007. Even after all those delays by VeriSign, it continually stated that it did not think that Prism had met the 'meet and confer' obligation under

---

[36] *See* Prism Ex. 18, Letter from D. Yonan to A. Bahou, October 23, 2006.
[37] *See* Prism Ex. 17, E-mail from A. Bahou to D. Yonan, October 9, 2006.
[38] *See* Prism Ex. 26, Letter from D. Yonan to A. Bahou, November 28, 2006.

L.R. 7.1.1.,[39] and VeriSign requested more delay.[40]

VeriSign's untimeliness argument relies on the fact that Prism's motion to compel comes four (4) months after Prism initially informed VeriSign it intended to file such a motion.[41] VeriSign, however, did not affirmatively state it would not produce the source code until a nearly a month (Sept. 26, 2006)[42] after Prism's renewed request of August 31, 2006. A court should not deny a party discovery where it has "reasonably relied to its detriment upon the representations [of an opposing party]." *M2 Software,* 217 F.R.D. at 500. VeriSign stated it would produce documents responsive to Prism's request for source code, and Prism relied on that statement. Meanwhile, VeriSign also omits that each time Prism subsequently made clear its intention to file a motion to compel, VeriSign answered by leading Prism into believing that an agreement could be reached as to production of the disputed source code.[43]

> "As for your letter relating to source code, now that Prism has finally articulated a basis for why it feels source code is necessary given what has already been produced and the depositions that have already been taken, we will respond once we've had an opportunity to discuss those reasons with our client."[44]

> "On the source code issue, I informed you that we are considering your latest request with our client and that we would provide a substantive response this week (since we received your last correspondence the Friday evening before the Christmas holiday)."[45]

> "We believe it is more efficient for the parties and the Court if you wait until we provide you with our response before you file your motion...."[46]

---

[39] *See, e.g.,* Prism Ex. 26, at 2, Letter from D. Yonan to A. Bahou, Nov. 28, 2006 ("you have not engaged in a good faith meet and confer"); *see also* Prism Ex. 28, E-mail from J. Snyderman to A. Bahou, December 26, 2006 (stating that VeriSign did not believe the parties had sufficiently met and conferred).

[40] *See* Prism Ex. 41, E-mail from F. Cimino to A. Bahou, Jan. 25, 2007 at 12:39 p.m. and Prism's responses thereto, e-mail from A. Bahou to F. Cimino, Jan. 29, 2007 at 5:24 p.m.

[41] *See* VeriSign Opp. at 9.

[42] *See* Prism Ex. 15, Letter from D. Yonan to A. Bahou, September 26, 2006.

[43] *See, e.g.,* Prism Ex. 28, E-mail from J. Snyderman to A. Bahou, December 26, 2006.

[44] Prism Ex. 28, E-mail from J. Snyderman to A. Bahou, December 26, 2006.

[45] Prism Ex. 29, E-mail from D. Yonan to A. Bahou, January 8, 2007.

[46] Prism Ex. 29, E-mail from D. Yonan to A. Bahou, January 8, 2007. "We are considering your requests but are unable to locate in any of your correspondences the specific reasons why Prism needs source – other than your unspecific assertion that it is 'relevant to [your] infringement allegations.'" Prism Ex. 18, Letter from D. Yonan

VeriSign also stated numerous times that it did "not believe that the parties [had] sufficiently met and conferred."[47] "[M]isapprehension that continued negotiations might moot the controversy … justif[ies even] a late filing of a motion to compel." *Cf. In Re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 339 (N.D. Ill. 2005) (finding that plaintiff-movant did not have such misapprehension). Thus, this Court should dismiss VeriSign's argument that Prism's motion is untimely, and compel production of the disputed source code.

## II.    PRISM EXPLAINED ITS NEED FOR THE SOURCE CODE TO REBUT VERISIGN'S UNSUPPORTED NON-INFRINGEMENT CONTENTIONS.

VeriSign on the one hand claims that Prism understands VeriSign's products from the deluge of millions of pages of documents.[48] But on the other hand, VeriSign attempts to argue that Prism does not even have a good faith basis for infringement.[49] VeriSign is talking out of both sides of an inconsistent mouth. Prism understands and cites to specific documents to show how it contends that VeriSign's products infringe the '416 patent.[50] Nevertheless, Prism requires the source code because VeriSign makes bald and uncited assertions in its non-infringement contentions that the software does not work as stated in the document that Prism cites. It is telling that VeriSign criticizes Prism for its numerous citations to VeriSign documents, while

---

to A. Bahou, October 23, 2006. "[W]e cannot meaningfully consider your request (either to stipulate or to permit inspection) until you provide us with specific reasons with reference to specific claim elements at [sic] why source code is needed in view of the significant amount of discovery VeriSign has already provided." Prism Ex. 26, Letter from D. Yonan to A. Bahou, November 28, 2006. "[W]e are willing to further discuss this issue with you to narrow the issues for the Court." Prism Ex. 41, E-mail from F. Cimino to A. Bahou, January 25, 2007, 12:39 p.m.

[47] *E.g.*, Prism Ex. 26, at 2, Letter from D. Yonan to A. Bahou, November 28, 2006 ("you have not engaged in a good faith meet and confer"); *see also* Prism Ex. 28, E-mail from J. Snyderman to A. Bahou, December 26, 2006 (stating that VeriSign did not believe that the parties had sufficiently met and conferred).

[48] VeriSign Opp. at 2, 9.

[49] VeriSign Opp. at 11.

[50] *See* Prism Ex. 32, Prism's Resp. to Interrogatory No. 2, Prism's Objections and Responses to VeriSign's First Set of Interrogatories (Nos. 1-10), October 24, 2005; *see also* VeriSign Ex. 1, Prism's Second Supplemental Objections and Responses to VeriSign's Interrogatory No. 2, September 20, 2006.

VeriSign does not cite to a single document in its non-infringement contentions.[51]

In its opposition, VeriSign also mischaracterizes Prism's desire for access to the source code. In particular, the statement that Prism has "staunchly refused" to provide any adequate explanation as to how the source code would help it in this case completely overlooks Prism's letter of December 22, 2006, which detailed some of the disputes the source code would assist Prism in resolving.[52] Prism's primary concern is that VeriSign's non-infringement contentions do not point to any documents or support for their arguments.  [

**REDACTED**

] As VeriSign does not cite support for these arguments from VeriSign's production, Prism can only assume that VeriSign consulted and intends to rely on the disputed source code to construct its contentions.

In contrast, Prism's infringement contentions cite to specific documents.[55] Consequently, VeriSign assumes that Prism must "know exactly how each of [its] accused products work."[56] If, however, VeriSign does not dispute this "detailed knowledge," then it cannot have any valid conceivable purpose for refusing to provide Prism with access to the accused products' source code.   VeriSign also argues that Prism has not taken other Defendants

---

[51] *See* Prism Ex. 33, VeriSign's Corrected First Supplemental Response to Prism's Interrogatory No. 3 [As Amended], Aug. 28, 2006.

[52] *See* Prism Ex. 27, Letter from A. Bahou to D. Yonan, December 22, 2006.

[53] *See* Prism Ex. 33, at Claim Charts, VeriSign's Corrected First Supplemental Response to Prism's Interrogatory No. 3 [As Amended], August 28, 2006.

[54] *See* Prism Ex. 33, VeriSign's Corrected First Supplemental Response to Prism's Interrogatory No. 3 [As Amended], August 28, 2006.

[55] *See* Prism Ex. 32, Prism's Resp. to Interrogatory No. 2, Prism's Objections and Responses to VeriSign's First Set of Interrogatories (Nos. 1-10), October 24, 2005; *see also* VeriSign Ex. 1, Prism's Second Supplemental Objections and Responses to VeriSign's Interrogatory No. 2, September 20, 2006.

[56] *See* VeriSign Opp., at 6.

up on their offers to inspect their source code and this is evidence that the source code is somehow "unimportant" to Prism.[57]   Yet, VeriSign ignores that the other Defendants have produced operable copies of their software.[58]  Further, the other Defendants did not produce their software in a piecemeal fashion one week before the close of discovery and over a full year since Prism's initial requests.[59]  Thus, for all the foregoing reasons, this Court should grant Prism's motion to compel.

### A. The Source Code Is The Accused Product And Is Relevant To This Litigation.

VeriSign's source code is the accused product, is relevant, and is therefore discoverable under FED. R. CIV. P. 26.  *See* Prism Ex. 31, *Forterra Sys. v. Avatar Factory*, 2006 U.S. Dist. LEXIS 63100, *4 (N.D. Cal. 2006) (holding that the entire source code of the accused product was discoverable and granting plaintiff's motion to compel its disclosure); *Novartis Pharma. Corp. v. Abbott Labs*, 203 F.R.D. 159, 164 (D. Del. 2001) (J. Farnan) (granting portion of plaintiff's motion to compel the requested documents that were relevant and non-privileged). "Discovery should ordinarily be allowed ... unless it is clear that the information sought can have no possible bearing upon the subject matter of the action." *In Re ML-Lee Acquisition Fund II, L.P.*, 151 F.R.D. 37, 39 (D. Del. 1993) (J. Farnan) (granting in part plaintiff's motion to compel production of documents).  Here, the source code is the accused product and its contents have direct bearing on this action.  Further, when discovery sought appears relevant on its face, the party resisting discovery has the burden to establish that the discovery is not relevant.[60]

---

[57] *See* VeriSign Opp., at n. 3.

[58] *See* Prism Ex. 25, Letter from J. Baxter to A. Bahou, February 3, 2006; Prism Ex. 21, Letter from G. Teran to A. Burgy, August 25, 2006.

[59] VeriSign partially completed production of the remaining software products over one year after the initial request and after the close of discovery, but again did not produce the source code. *See* Prism Ex. 9, Letter from V. Chan to A. Bahou, September 29, 2006.

[60] *Cardenas v. Dorel Juvenile Group, Inc.*, 230 F.R.D. 611, 615 (D. Kan. 2005) ("Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party.").

VeriSign did not and cannot establish that the source code is not relevant.

**B.  VeriSign Cannot Rebut Prism's Evidence That Production Of The Source Code Is Not Cumulative.**

    **1.  VeriSign's design documents are not cumulative of source code.**

VeriSign did not and cannot rebut Prism's evidence that the design documents are not cumulative of source code.[61]  Prism Ex. 35, Shamos Aff. at ¶¶12-15.  On the contrary, Prism has shown that the design documents produced are not adequate to resolve the pending disputes. VeriSign's best examples of design documents produced during the course of this litigation (VeriSign Exs. 7, 8, and 9) are not representative of the final product.  Instead, they are works-in-progress:

VeriSign Ex. 7, at VERI-0343190

**REDACTED**

VeriSign Ex. 8, at VERI-0505083-84

**REDACTED**

---

[61] "A court generally will not limit discovery simply because it may be somewhat cumulative and duplicative. Rather, the discovery must be unreasonably so in light of the nature of the inquiry before the court will limit the discovery sought."  6 Moore's Federal Practice § 26.60[2] (3d ed. 2006).

VeriSign Ex. 9, at VERI-1552724

**REDACTED**

These documents are clearly not final.  To dispute key features and argue over functionality

presented in such documents would be futile, inefficient, and overly burdensome on Prism as

compared with VeriSign's production of the source code, which it has not established as unduly

burdensome.  On the contrary, Prism's benefit and need for access to the source code vastly

outweighs VeriSign's excuses for not producing the source code.

It is clear that the design documents are not cumulative of the source code.  Prism

assumes that the interim questions in the statements above were resolved and items that were

"TBD" were finalized before the product launched.  To the extent VeriSign argues that *some* of

the code may have been released as designed, VeriSign has not stated which functions in the

'design' documents were implemented as planned.  VeriSign also states that certain functionality

- 15 -

cannot be found in the source code.[62] If true, VeriSign should produce the source code to allow Prism to challenge those assertions. But withholding the source code allows VeriSign to improperly make certain assertions regarding the content of the source code without ever producing it.

Additionally, VeriSign attempts to say that functionality relating to certain claim elements, such as 'how identity data is forwarded' is not relevant.[63] Yet, VeriSign is playing semantic games; one claim element of the patent-in-suit specifically reads "adapted to forward its identity data and identity data of each subscriber client computer."[64] Prism should be entitled to review the source code to establish how the identity data is forwarded, as that review will lay to rest the question of whether any identity data is forwarded to meet the claims of the '416 patent. In its infringement contentions, Prism has already established that identity information is forwarded.[65] In light of the disputed contentions, Prism should be entitled to confirm whether the source code is adapted to meet that claim element. Because the source code is not cumulative of in-progress design documents, Prism's benefit of using the source vastly outweighs VeriSign's excuses for not producing it. Therefore, this Court should grant Prism's motion to compel.

### 2. High-level user's guides and public-facing documents are not cumulative of source code.

Production of the source code would not be cumulative, duplicative, or burdensome in the instant case. There are significant concrete disputes over the functionality of the accused products, which can easily be resolved by VeriSign's production of the source code. Obscuring

---

[62] VeriSign Opp. at 11.
[63] VeriSign Opp. at 12.
[64] VeriSign Ex. 10, e.g. '416 patent, col. 35, lns. 35-40.
[65] See, e.g., Prism Ex. 36, at VERI1597123-24 ("[t]he Online Certificate Status Protocol (OCSP) request can be signed with the user's private key certificate ... the OCSP client running the Certificate Validation Module (CVM) verifies the certificate and signature and _forwards_ that OCSP request to VeriSign's OCSP responder")

the Court's view of this real issue, VeriSign hides behind the statements in its letters[66] and now in its opposition, that it had produced "tens of thousands of pages of user, administrative, installation, configuration, and integration guides, specifications, and data sheets for the accused products...."[67] In reality, these statements are far from complete truths. Although VeriSign has produced documents which generally fall under its extremely broad description, the documents are either (1) public-facing manuals; or, most importantly, (2) do not contain sufficient detail to establish the complete core functionality of the accused products. Proving that it cannot point to any documents that would alleviate Prism's need for access to the source code, as evidenced by the example documents[68] VeriSign places before this Court in its opposition, VeriSign shows its true intention to hide this fact by engaging in semantic wrangling over Mr. Weinstein's declaration.[69] As production of the source code is therefore not duplicative nor cumulative of the discovery already produced, this Court should grant Prism's motion to compel.

### 3. VeriSign's deposition witnesses are not a proxy for the source code.

VeriSign argues that it provided deposition witnesses, some of whom it claims wrote the source code, as a substitute for actually producing the source code. VeriSign also relies on the fact that Prism has deposed these witnesses using "technical documents relating to these very issues."[70] Yet, Prism had no choice but to rely on the limited utility of such public-facing manuals,[71] because VeriSign refused to provide access to the disputed source code.[72] Further, if VeriSign's witnesses had personal knowledge of the source code or used the source code to prepare for their depositions, Prism cannot verify their testimony without access to the source

---

[66] *E.g.*, Prism Ex. 30, Letter from D. Yonan to A. Bahou, January 11, 2007.
[67] *See* VeriSign Opp., at 6.
[68] *See* VeriSign Opp., at 7.
[69] *See* VeriSign Opp., at 8.
[70] *See* VeriSign Opp., at 7.
[71] *E.g.*, VeriSign Ex. 6, VeriSign Managed PKI Certificate Validation and Parsing Guide at VERI 0021286.
[72] *See* Prism Ex. 15, Letter from D. Yonan to A. Bahou, September 26, 2006.

code, nor if necessary, rebut any inconsistencies between that testimony and the actual operation

of the accused products.  Thus, this Court should dismiss with VeriSign's argument that its

deposition witnesses are substitutes for producing the source code.

### C. VeriSign Has Not And Cannot Establish That Production Of The Source Code Is Overbroad Or Burdensome.

VeriSign claims that Prism's request is overbroad.[73] Not true.  Prism's request is

simple—produce the source code for the accused product(s), namely the source code for Unified

Authentication.[74]  [

**REDACTED**

] It is worth noting, however,

that other Defendants offered to permit inspection of their source code without maintaining any

overbroad or cumulative objections.

VeriSign also cannot establish that Prism's request is burdensome.  Prism's expert

posited that production of the source code would be considerably fewer pages than the 1.6

million pages already produced by VeriSign.  Prism Ex. 35, Shamos Aff. at ¶ 31.  VeriSign has

chosen not rebut this evidence.  Therefore, Prism has established that the production of the

source code is not burdensome.

Moreover, as Prism has established that the benefit and need for the source code vastly

outweighs VeriSign's reasons for not producing the source code, Prism's motion should be

granted.

---

[73] VeriSign Opp. at 5.

[74] VeriSign again misleads this Court by stating its threat to seek costs caused Prism to drop its infringement contentions regarding the Go Secure product.  Not true.  Prism needed to depose VeriSign's 30(b)(6) witness on its knowledge and topics regarding Go Secure, which VeriSign cancelled two (2) times, once in November 2006 and once in December 2006, and did not produce the witness until February 6-7, 2007.

[75] [

**REDACTED**

*See* Prism Ex. 8, Letter from

D. Yonan to A. Bahou, August 4, 2006.

- 18 -

## CONCLUSION

For the reasons stated in both this reply memorandum and Prism's initial memorandum
of points and authorities in support of its motion to compel, Prism respectfully asks that the
Court grant its motion to compel VeriSign to produce the source code of the accused products.

February 26, 2007                                    THE BAYARD FIRM


                                                    /s/ Richard D. Kirk (rk0922)
                                                    Richard D. Kirk (rk0922)
                                                    Ashley B. Stitzer (as3891)
                                                    222 Delaware Avenue, Suite 900
                                                    Wilmington, Delaware 19899
                                                    (302) 655-5000
                                                    rkirk@bayardfirm.com
                                                    astitzer@bayardfirm.com

                                                    ATTORNEYS FOR PLAINTIFF PRISM
                                                    TECHNOLOGIES LLC

OF COUNSEL:

Dirk D. Thomas
Robert A. Auchter
Kenneth A. Freeling
André J. Bahou
Aziz Burgy
Chandran B. Iyer
ROBINS, KAPLAN, MILLER & CIRESI LLP
1875 Eye Street, N.W., Suite 300
Washington, D.C. 20006-5409
(202) 775-0725

652864-1

# EXHIBIT 40

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PRISM TECHNOLOGIES LLC,

Plaintiff,

v.

VERISIGN, INC., RSA
SECURITY, INC., NETEGRITY, INC.,
COMPUTER ASSOCIATES
INTERNATIONAL, INC. and JOHNSON
AND JOHNSON,

Defendants.

C.A. No. 05-CV-214-JJF

JURY TRIAL DEMANDED

**DEFENDANT VERISIGN, INC.'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS
TO PLAINTIFF PRISM TECHNOLOGIES LLC NOS. (1 -40)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant VeriSign,

Inc. ("VeriSign") requests that Plaintiff Prism Technologies LCC ("Prism") respond to each of

the following Requests for Documents and Things by producing all responsive documents and

things to the offices of Akin, Gump, Strauss, Hauer & Feld LLP, 1333 New Hampshire Ave.,

N.W., Washington, D.C. 20036 or at such other place and time as the parties may agree to,

within the time prescribed by the Federal Rules of Civil Procedure.

## DEFINITIONS AND INSTRUCTIONS

VeriSign incorporates the Definitions and Instructions from VeriSign's First Set of Interrogatories to Plaintiff Prism served concurrently herewith. In addition, the following Definitions and Instructions apply:

1.      The Definitions, Rules, and Instructions set forth in Rule 34(a), Fed. R. Civ. P. are incorporated herein by reference.

2.      These Requests extend to all documents in the possession, custody and/or control of Prism, or in the possession, custody or control of persons or entities under the control of Prism.

3.      In the event that more than one copy of a document exists, Plaintiff shall produce the original and each non-identical copy of each document or other tangible thing requested herein which is in Plaintiff's possession, custody or control, or that of Plaintiff's agents, attorneys, accountants, employees or representatives.

4.      Each Request shall be fully responded to unless it is in good faith objected to, in which event the reasons for your objection shall be stated in detail. If an objection pertains only to a portion of a Request, or a word phrase, or clause contained within it, you are required to state your objection to that portion only and to respond to the remainder of the Request, using your best efforts to do so.

5.      If Plaintiff contends that any document requested to be produced is protected from discovery by the attorney-client privilege, the work product doctrine or other ground of privilege, then Plaintiff shall identify for each such document:

(a)      the date of the document;

(b)      the name (title or position of the authors) of the document;

(c)    the name and title or position of all persons designated as addressees or otherwise receiving copies of the document;

(d)    the general subject matter of the document;

(e)    the type of document (e.g., memorandum, letter or report);

(f)    the specific grounds for withholding the document, including the specific facts upon which Plaintiffs will rely to establish the asserted attorney-client privilege, work product doctrine, or other ground of privilege; and

(g)    the specific document requests to which the document is responsive.

6.    All requested documents produced by Plaintiff shall be organized either to correspond to the categories in these requests, or as they are kept in the ordinary course of business. In either case, all documents produced shall:

(a)    be produced with all associated file labels, file headings, and file folders together with the responsive documents from each file, and each file shall be identified as to its owner or custodian; for any document originally stored in electronic media, the file name, path and directory information for each such documents shall also be provided;

(b)    if produced in hard copy, all pages now stapled or fastened together shall be produced stapled or fastened together, and shall include all attachments currently or previously appended to each document, regardless of whether such attachments themselves are responsive to these requests;

(c)    if produced electronically, all attachments currently or previously appended to the electronic file shall be produced, regardless of whether such attachments themselves are responsive to these requests;

    (d)    all documents that cannot be legibly copied shall be produced in original form.

7.    If any document identified in response to any of these Requests was, but is no longer in the possession, custody or subject to the control of Plaintiff, or is no longer in existence, state whether it:

    (a)    Is missing or lost;

    (b)    Has been destroyed;

    (c)    Has been transferred, voluntarily or involuntarily, to others and state the identity of those persons to whom it has been transferred;

    (d)    Has been otherwise disposed of, and in each instance, explain the circumstances surrounding such disposition, state the date or approximate date thereof, and the identity of the persons with knowledge of such circumstances; or

    (e)    Identify the writings that are missing, lost, destroyed, transferred, or otherwise disposed of, by author, date, subject matter, addressee and the number of pages.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1.

All documents and things relied upon or referred to in answering VeriSign's First Set of Interrogatories to Plaintiff served concurrently herewith.

### REQUEST FOR PRODUCTION NO. 2.

All documents and things referring to, relating to or concerning the '416 patent or any activities, product, device, part, or system identified in response to Interrogatory No. 2.

**REQUEST FOR PRODUCTION NO. 3.**

All documents and things referring to, relating to, or concerning the decision to commence this action, including, without limitation, any investigation, testing, analysis, study or examination conducted or considered by or on Plaintiff's behalf that relates to any accused device, product, part or system that Plaintiff identified in response to Interrogatory No. 2.

**REQUEST FOR PRODUCTION NO. 4.**

All documents and things referring to, relating to, or concerning any of Plaintiff's contentions regarding the meaning, scope or interpretation of any of the claim terms and/or phrases in the asserted claims of the patent-in-suit.

**REQUEST FOR PRODUCTION NO. 5.**

All documents and things referring to, relating to, concerning, or constituting any of Plaintiff's contentions that the asserted claims of the patent-in-suit are infringed by VeriSign's importation, manufacture, use or sale of each product, device, part or system identified in response to Interrogatory No. 2, including, without limitation, any opinions of consultants or experts.

**REQUEST FOR PRODUCTION NO. 6.**

All documents and things referring to, relating to, concerning, or relied on in any opinions produced in response to Request For Production No. 5.

**REQUEST FOR PRODUCTION NO. 7.**

All documents and things referring to, relating, concerning, or constituting any of Plaintiff's contentions concerning or relating to the type and amount of damages that Plaintiff is seeking as a result of VeriSign's alleged infringement of the patent-in-suit, including, without limitation, any opinions of consultants or experts.

**REQUEST FOR PRODUCTION NO. 8.**

All documents and things referring to, relating to, concerning, or relied on in any opinions produced in response to Request For Production No. 7.

**REQUEST FOR PRODUCTION NO. 9.**

All documents and things referring to, relating to, or concerning the conception, first reduction to practice, research and development, diligence between conception and reduction to practice and the location of each such conception, reduction to practice, research and development and diligence, of the alleged invention recited in each of the claims of the patent-in-suit, including, without limitation, a sample of all models, prototypes, or mock-ups of any devices and/or products that embody the alleged invention recited in each claim of the patent-in-suit.

**REQUEST FOR PRODUCTION NO. 10.**

Documents sufficient to identify all engineers or other persons who participated in the research, design or development of the alleged inventions claimed in the patent-in-suit.

**REQUEST FOR PRODUCTION NO. 11.**

All documents referring to, relating to, concerning, or constituting business and technical activities of the named inventors, including, without limitation, any resumes, curriculum vitae, employment files, publications and biographies.

**REQUEST FOR PRODUCTION NO. 12.**

All licenses and agreements, including active, expired, terminated or otherwise unenforced licenses or agreements, to the patent-in-suit or any patent, patent application or technology related to the subject matter disclosed or claimed in the patent-in-suit, that is or was assigned, owned or otherwise controlled by Prism at any time.

**REQUEST FOR PRODUCTION NO. 13.**

All documents and things referring to, relating to, or concerning documents produced in response to Request For Production No. 12, including, without limitation, all communications between Prism and any other person, including the licensee or party the license or agreement.

**REQUEST FOR PRODUCTION NO. 14.**

All documents concerning the ownership of the patent-in-suit.

**REQUEST FOR PRODUCTION NO. 15.**

All documents referring to, relating to, concerning or constituting communications between Plaintiff and the named inventors of the patent-in-suit.

**REQUEST FOR PRODUCTION NO. 16.**

All documents referring to, relating to, concerning or constituting any agreement between Plaintiff and the named inventors of the patent-in-suit, including, without limitation, any assignment, contract, employment agreement or license.

**REQUEST FOR PRODUCTION NO. 17.**

All documents referring to, relating to, or concerning the specific inventive contribution (as contemplated in 35 U.S.C. §102(f)) of each contributor to each invention described or claimed in the patent-in-suit, whether named in the patent-in-suit or not, with respect to any element of any invention(s) disclosed or claimed in the patent-in-suit.

**REQUEST FOR PRODUCTION NO. 18.**

All documents and things referring to, relating to, or concerning any actual or threatened enforcement o f t he p atent-in-suit a gainst a ny p erson o r e ntity, a ny r equest t hat a ny p erson o r entity cease making, using, offering for sale, importing, or selling any product, machine, device, or process because of the patent-in-suit, any offers, requests, demands, or suggestions that any

7

person or entity take a license under the patent-in-suit, or any charge or allegation of infringement of the patent-in-suit against any person or entity, including, without limitation, documents concerning the disposition and/or present status of each such instance, and the title, court, and docket number of any lawsuit that resulted therefrom, each and every defense raised by each defendant, and the disposition and/or present status of each such lawsuit.

## REQUEST FOR PRODUCTION NO. 19.

All documents and things referring to, relating to, or concerning the design, development, testing, fabrication, manufacture, or sale of any device, product or part made by, on behalf of, or pursuant to an agreement with Prism that embodies any of the alleged inventions disclosed or claimed in the patent-in-suit.

## REQUEST FOR PRODUCTION NO. 20.

All engineering and technical documents, including, without limitation, schematic diagrams, mechanical drawings, sketches, manufacturer specifications, operating manuals and service manuals, laboratory notebooks, technical reports, research reports, progress reports or other documents pertaining to development, analysis, or laboratory work for each apparatus, device, or system made or designed for practicing the subject matter disclosed or claimed in the patent-in-suit.

## REQUEST FOR PRODUCTION NO. 21.

All documents and things referring to, relating to, concerning any actual and forecasted revenues, and any actual or forecasted manufacturing costs, pertaining to Plaintiff's actual or intended production of any items practicing the alleged inventions disclosed or claimed in the patent-in-suit.

**REQUEST FOR PRODUCTION NO. 22.**

All documents and things referring to, relating to, concerning any actual and forecasted profits pertaining to Plaintiff's actual or intended production of any items practicing the alleged inventions disclosed or claimed in the patent-in-suit.

**REQUEST FOR PRODUCTION NO. 23.**

All documents and things referring to, relating to, concerning any actual and forecasted cost of goods sold pertaining to Plaintiff's actual or intended production of any items practicing the alleged inventions disclosed or claimed in the patent-in-suit.

**REQUEST FOR PRODUCTION NO. 24.**

All documents and things referring to, relating to, concerning any actual or forecasted revenues pertaining to the patent-in-suit, including, without limitation, any actual or forecasted revenues from Plaintiff's licensing, litigation, or other enforcement efforts with respect to the patent-in-suit.

**REQUEST FOR PRODUCTION NO. 25.**

All documents and things pertaining referring to, relating to, concerning, or constituting any business plans, marketing plans, marketing efforts, promotional programs, offers for sale, licensing strategies, market studies, commercialization studies, and/or customer studies or data referring to, relating to, or concerning the patent-in-suit or any patent, patent application or technology related to the subject matter disclosed or claimed in the patent-in-suit.

**REQUEST FOR PRODUCTION NO. 26.**

All documents and things referring to, relating to, concerning or evidencing any revenues received, prices charged, costs incurred, royalties or profits earned by Plaintiff, Plaintiff's

licensees, licensors, assignees, or assignors in connection with the patent-in-suit, or any products or services related technology of the subject matter disclosed or claimed in the patent-in-suit.

## REQUEST FOR PRODUCTION NO. 27.

All documents and things referring to, relating to, concerning, or constituting Plaintiff's policies and business strategies regarding the seeking, granting, withholding or negotiating of licenses, or regarding the preferred or required terms of such licenses.

## REQUEST FOR PRODUCTION NO. 28.

All documents referring to, relating to, concerning, or constituting any prior art to the patent-in-suit, including, without limitation, the first offer for sale or license, first sale or license, or first use, whether public or otherwise and whether experimental or otherwise, of each of the alleged inventions disclosed or claimed in the patent-in-suit.

## REQUEST FOR PRODUCTION NO. 29.

All documents describing in a printed publication any of the alleged inventions claimed in the patent-in-suit, including the first such description in a printed publication.

## REQUEST FOR PRODUCTION NO. 30.

All documents referring to, relating to, or concerning the validity or invalidity of the patent-in-suit under 35 U.S.C. §§102 and/or 103, including, without limitation, prior art and any opinions of counsel, consultants or experts.

## REQUEST FOR PRODUCTION NO. 31.

All documents and things referring to, relating to, concerning, or relied on in any opinions produced in response to Request For Production No. 30.

## REQUEST FOR PRODUCTION NO. 32.

All documents and things referring to, relating to, or concerning any and all interference, reissue, or reexamination judicial or administrative proceedings, whether such proceedings took place in the United States, the United Kingdom, the European Patent Office or elsewhere, involving any of the patent-in-suit, related patents, foreign counterpart patents, or patent applications leading to the patent-in-suit or related patents.

## REQUEST FOR PRODUCTION NO. 33.

All documents and things concerning the preparation and prosecution of the patent application(s) for the patent-in-suit, any prior and/or currently pending continuations and divisional continuation(s)-in-part applications related to the patent-in-suit, related patents, or foreign counterpart patents including, without limitation, draft applications, invention disclosures, all prior art whether cited in such applications or not, all copies of the file histories marked or annotated by Plaintiff, and other materials prepared for sending to the U.S. Patent and Trademark Office, papers sent to or received from the U.S. Patent and Trademark Office, notes and memoranda of interviews (telephone or in person), correspondence, and attorney time records and bills.

## REQUEST FOR PRODUCTION NO. 34.

All documents and things referring to, relating to, concerning or constituting any communication between Prism and VeriSign and/or each of the Defendants prior the filing of this lawsuit relating in any way to the patent-in-suit or related patents, and/or the subject matter disclosed or claimed in the patent-in-suit or related patents.

## REQUEST FOR PRODUCTION NO. 35.

All documents and things referring to, relating to, concerning or constituting any actual or attempted assignment, transfer, conveyance, license, mortgage, lien, or granting of any security interest in or of any rights to any of the patent-in-suit, related patents, foreign counterpart patents, or patent applications leading to the patent-in-suit or related patents.

## REQUEST FOR PRODUCTION NO. 36.

All documents and things referring to, relating to, concerning or constituting any inquires, offers, requests, proposals, or negotiations to assign, transfer, convey, license, mortgage, lien, or grant of security interest in or of any rights to any of the patent-in-suit, related patents, foreign counterpart patents, or patent applications leading to the patent-in-suit or related patents.

## REQUEST FOR PRODUCTION NO. 37.

All documents and things referring to, relating to, concerning or constituting any actual or attempted assignment, transfer, conveyance, license, mortgage, lien, or granting of any security interest in or of any rights to any patents, technology, or know-how related to the technology disclosed in the patent-in-suit, including without limitation, computer and/or electronic based subscription access systems, internet security, web server or local area network security, electronic security keys, electronic identification tokens, electronic password authentication, and electronic clearinghouses.

## REQUEST FOR PRODUCTION NO. 38.

All documents provided by or to any consultant or expert Plaintiff has retained to provide testimony (whether live in court, or by affidavit, declaration, deposition, report, or disclosure) in this action.

## REQUEST FOR PRODUCTION NO. 39.

All documents referring to, relating to, concerning, or constituting business and technical activities of the Plaintiff, including organizational charts and other documents sufficient to identify its directors and officers, parents, and subsidiaries.

## REQUEST FOR PRODUCTION NO. 40.

All documents and things referring to, relating to, concerning or constituting Plaintiff's document retention policy.

Dated: September 15, 2005

*Of Counsel*

Edward F. Mannino
Jason A. Snyderman
AKIN GUMP STRAUSS HAUER & FELD LLP
One Commerce Square, Suite 2200
2005 Market Street
Philadelphia, PA 19103
Telephone: (215) 965-1200
Fax: (215) 965-1210


Frank C. Cimino
Jin-Suk Park
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, NW
Washington, DC 20036-1564
Telephone: (202) 887-4000
Fax: (202) 887-4288

By: _Patricia S. Rogowski_

Patricia Smink Rogowski
Delaware Bar ID 2632
The Nemours Building
1007 North Orange Street
PO Box 2207
Wilmington DE 19899
Telephone : (302) 658-9141
Fax: (302) 658-5614

*Attorneys for Defendant, VeriSign, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2005, a true and correct copy of the foregoing DEFENDANT VERISIGN, INC.'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFF PRISM TECHNOLOGIES LLC NOS. (1-40) was caused to be served on the following by Hand or via First Class Mail:

Richard D. Kirk (By Hand)
The Bayard Firm
22 Delaware Avenue
Suite 900
Wilmington, DE 19899

Dirk D. Thomas (First Class Mail)
Robins, Kaplan, Miller & Ciresi, LLP
1801 K Street, N.W.
Suite 1200
Washington, D.C. 20006-1307

Gregory P. Teran (First Class Mail)
Wilmer Cutler Pickering Hale & Dorr LLP
60 State Street
Boston, MA 02109

David M. Schlitz (First Class Mail)
Baker Botts LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2450

John DiMatteo (First Class Mail)
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019-6099

Frederick L. Cottrell, III (By Hand)
Richards Layton & Finger
One Rodney Square
920 North King Street,
Wilmington, DE 19801

Richard L. Horwitz (By Handl)
Potter Anderson & Corroon
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899.

Steven J. Balick (By Hand)
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899.

By: _Patricia S Rogowski_
Patricia Smink Rogowski
Bar ID 2632

# EXHIBIT 41

## Bahou, Andre J.

**From:**      Bahou, Andre J.
**Sent:**      Monday, January 29, 2007 5:24 PM
**To:**        'Cimino, Frank'; VeriSign - Prism
**Cc:**        PrismCounsel; Dick Kirk
**Subject:**   RE: Prism's Motion to Compel VeriSign's Source Code

Frank,

We appreciate your response, but under the new rules Judge Farnan enunciated in his December 15, 2006 Order we would not have been able to submit our reply brief in advance of the noticed hearing date for February 2. Perhaps you are considering his old rules that had a much shorter timeframe for the response and did not permit a reply brief.

Again, we appreciate your willingness to further discuss the pending issues. However, in light of our long-standing pending requests for the source code of the accused products, we feel that the parties have reached an impasse and need the Court's direction.

AJ


Andre J. Bahou
Attorney at Law
1875 Eye Street, N.W., Suite 300
Washington, D.C.  20006-5409
202-736-2707 (direct)
202-775-0725 (main)
202-223-8604 (fax)
E-mail address:  ajbahou@rkmc.com

**ROBINS, KAPLAN, MILLER & CIRESI** L.L.P.

---

**From:** Cimino, Frank [mailto:fcimino@AKINGUMP.com]
**Sent:** Thursday, January 25, 2007 12:39 PM
**To:** Bahou, Andre J.; VeriSign - Prism
**Cc:** PrismCounsel; Dick Kirk
**Subject:** RE: Prism's Motion to Compel VeriSign's Source Code

AJ --
We appreciate your professional courtesy, but it should be noted that you were still able to file your motion in time for a February 2 hearing, as you indicated in your email to us on Tuesday January 9th, 2007 ("Notwithstanding the above, we will give you until Thursday to confer with your client and respond to us in writing. Then, Friday, we will file the motion to compel as stated in my prior correspondence to you.") We provided you our response on Thursday, as you requested, so that you could file on Friday and be heard in February. But you chose not to file on Friday.

As we indicated in our response, we are willing to further discuss this issue with you to narrow the issues for the Court. In your letters, your requests have been overly broad and vague, and there has been no explanation as to why its not out of time. If you intend to address these issues in your memorandum, then while we are waiting, perhaps the best way to try and narrow the issues is for you to send us your memorandum, so we can consider

your position on these issues and determine whether we consent to your specifically requested relief or not.

Regards,
F.

---

**From:** Bahou, Andre J. [mailto:AJBahou@rkmc.com]
**Sent:** Wednesday, January 17, 2007 2:00 PM
**To:** VeriSign - Prism
**Cc:** PrismCounsel; Dick Kirk
**Subject:** Prism's Motion to Compel VeriSign's Source Code

>>>> Please read the confidentiality statement below <<<<

Danny:

In the spirit of professional courtesy, we gave you until the latter part of last week to respond to our prior requests regarding the production of VeriSign's source code for the accused products. Due to that courtesy and based on the Court's Order of December 15, 2006, we cannot file the motion to compel before February. The motion will be forthcoming at the appropriate time and will be noticed for the hearing date in March.

Regards,
AJ

Andre J. Bahou
Attorney at Law
1875 Eye Street, N.W., Suite 300
Washington, D.C. 20006-5409
202-736-2707 (direct)
202-775-0725 (main)
202-223-8604 (fax)
E-mail address: ajbahou@rkmc.com

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

---

Information contained in this e-mail transmission is privileged, confidential and covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521.

If you are not the intended recipient, do not read, distribute, or reproduce this transmission.

If you have received this e-mail transmission in error, please notify us immediately of the error by return email and please delete the message from your system.

Pursuant to requirements related to practice before the U. S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended

to be used, and cannot be used, for purposes of (i) avoiding
penalties imposed under the U. S. Internal Revenue Code
or (ii) promoting, marketing or recommending to another
person any tax-related matter.

Thank you in advance for your cooperation.

Robins, Kaplan, Miller & Ciresi L.L.P.
http://www.rkmc.com

_____

IRS Circular 230 Notice Requirement: This communication is not given in the form of

The information contained in this e-mail message is intended only for the personal a

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on February 28, 2007, he electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send automatic notification of the filing to the following:

Frederick L. Cottrell, III, Esq.
Steven J. Fineman, Esq.
Richards Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19801

Richard L. Horwitz, Esq.
David E. Moore, Esq.
Potter Anderson & Corroon LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
P.O. Box 951
Wilmington, DE 19899

Patricia S. Rogowski, Esq.
Connolly, Bove, Lodge & Hutz, LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
222 Delaware Ave., 17th Fl.
Wilmington, DE 19801

The undersigned counsel further certifies that copies of the foregoing document were sent by hand on February 28, 2007 to the above counsel and by first-class mail or overnight delivery as indicated to the below counsel:

*Via Federal Express*

John DiMatteo, Esq.
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019-6099

William Lee, Esq.
Wilmer Cutler Hale & Dorr LLP
60 State Street
Boston, MA 02109

Jason Snyderman, Esq.
Akin Gump Strauss Hauer & Feld LLP
One Commerce Square, Suite 2200
2005 Market Street
Philadelphia, PA 19103

Frank C. Cimino, Esq.
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, NW
Washington, DC 20036-1564

587422-1

David M. Schlitz
Baker Botts L.L.P.
1299 Pennsylvania Avenue, NW
Washington, DC 20004-2400

Samir A. Bhavsar
Jeffrey D. Baxter
Baker Botts L.L.P.
2001 Ross Avenue
Dallas, TX 75201-2980

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk