## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PRISM TECHNOLOGIES LLC,  )
)
       Plaintiff,  )
)
    v.  )
)
                        )  C. A. No. 05-214-JJF
VERISIGN, INC., RSA SECURITY, INC.,  )
NETEGRITY, INC., COMPUTER ASSOCIATES  )  **REDACTED PUBLIC**
INTERNATIONAL, INC., and JOHNSON &  )  **VERSION**
JOHNSON SERVICES, INC.,  )
)
       Defendants.  )

## COMPUTER ASSOCIATES INTERNATIONAL, INC.'S FIRST AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL

Defendant Computer Associates International, Inc. ("Computer Associates"), files this Answer to Plaintiff's Second Amended Complaint for Patent Infringement and Demand For Jury Trial and Counterclaims ("the Second Amended Complaint"), along with its defenses, denying infringement of any valid and enforceable claim of U.S. Patent No. 6,516,416 ("the '416 Patent").

## I. ANSWER

1.      Admitted.

2.      Computer Associates lacks sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 2 of the Second Amended Complaint, and therefore denies them.

3.      The allegations in Paragraph 3 of the Second Amended Complaint are directed at a Defendant other than Computer Associates or Netegrity Inc. ("Netegrity"), and Computer Associates lacks sufficient information to form a belief as to the truth of

the allegations set forth in Paragraph 3 of the Second Amended Complaint, and therefore denies them.

4.    The allegations in Paragraph 4 of the Second Amended Complaint are directed at the activities of a Defendant other than Computer Associates or Netegrity, and Computer Associates lacks sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 4 of the Second Amended Complaint, and therefore denies them.

5.    The allegations in Paragraph 5 of the Second Amended Complaint are directed at a Defendant other than Computer Associates or Netegrity, and Computer Associates lacks sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 5 of the Second Amended Complaint, and therefore denies them.

6.    The allegations in Paragraph 6 of the Second Amended Complaint are directed at the activities of a Defendant other than Computer Associates or Netegrity, and Computer Associates lacks sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 6 of the Second Amended Complaint, and therefore denies them.

7.    Admitted that Netegrity is a Delaware corporation.  The remaining allegation in Paragraph 7 is denied.

8.    Admitted that Computer Associates is a Delaware corporation.  Computer Associates admits that it has a principal place of business at One Computer Associates Plaza, in the State of New York, but denies its principal place of business is in Central Islip.

9.    Admitted.

2

10.    Computer Associates denies that it is in the business of making, using, selling or offering for sale computer programming products and computer peripheral equipment.  Computer Associates further denies that it is in the business of making, using, selling or offering for sale "information retrieval products," as it understands that term, but admits that certain of its products include an information retrieval function as a part thereof.  Computer Associates denies that it sells or offers to sell prepackaged software products.  Computer Associates denies that it sells or offers to sell IAM products in Delaware and elsewhere in the United States.  Computer Associates admits that its IAM products include, but are not limited to, SiteMinder software solutions and related software products.  Computer Associates denies that its IAM products include hardware related to its SiteMinder software solutions.  Computer Associates denies all of the allegations in Paragraph 10 to the extent they allege that Netegrity is currently conducting business activities.

11.    The allegations in Paragraph 11 of the Second Amended Complaint are directed at a Defendant other than Computer Associates or Netegrity, and Computer Associates lacks sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 11 of the Second Amended Complaint, and therefore denies them.

12.    The allegations in Paragraph 12 of the Second Amended Complaint are directed at the activities of a Defendant other than Computer Associates or Netegrity, and Computer Associates lacks sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 12 of the Second Amended Complaint, and therefore denies them.

13.     Admitted that Computer Associates and Netegrity are incorporated in this judicial district. Computer Associates admits that within this district it has transacted and continues to transact business, contracted and continues to contract business, and solicited and continues to solicit business. It denies that it has or is selling or offering for sale prepackaged software products. Computer Associates admits that within this district it has transacted and continues to transact business, contracted and continues to contract business, and solicited and continues to solicit business for IAM products. Computer Associates denies that within this district it has transacted and continues to transact business, contracted and continues to contract business, and solicited and continues to solicit business with regard to computer programming products and computer peripheral equipment. Computer Associates further denies that within this district it has transacted and continues to transact business, contracted and continue to contract business, and solicited and continues to solicit business with regard to "information retrieval products," as it understands that term, but admits that certain of its products include an information retrieval function as a part thereof. Computer Associates admits that within this district Netegrity transacted business, contracted business and solicited business. Computer Associates denies that Netegrity has sold or offered for sale prepackaged software products. Computer Associates admits that within this district Netegrity transacted business, contracted business, and solicited business for IAM products. Computer Associates denies that within this district Netegrity transacted business, contracted business, and solicited business with regard to computer programming products, computer peripheral equipment or information retrieval products, as it understands that term. Computer Associates denies that Netegrity is continuing to conduct business in this

district. The remaining allegations in Paragraph 13 of the Second Amended Complaint are directed at the activities of Defendants other than Computer Associates or Netegrity, and Computer Associates lacks sufficient 4 information to form a belief as to the truth of the remaining allegations set forth in Paragraph 13 of the Second Amended Complaint, and therefore denies them.

14.     Admitted that this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). Computer Associates lacks sufficient information to form a belief as to the truth of the remaining allegation in Paragraph 14.

15.     Admitted that venue is proper under 28 U.S.C. § 1400(b) with regard to Computer Associates and Netegrity. Computer Associates lacks sufficient information regarding the residency and activities of the other Defendants to form a belief regarding whether or not venue under 28 U.S.C. § 1400(b) is proper with regard to the other Defendants, and therefore denies those allegations. Computer Associates admits that venue is proper under 28 U.S.C. § 1391 (c) with regard to Computer Associates and Netegrity. Computer Associates lacks sufficient information regarding the residency and activities of the other Defendants to form a belief regarding whether or not venue under 28 U.S.C. § 1391(c) is proper with regard to the other Defendants, and therefore denies those allegations. Computer Associates lacks sufficient information to form a belief as to the truth of the allegation that venue is proper under 28 U.S.C. § 1391(b), and therefore denies that allegation.

16.     Computer Associates admits that the United States Patent and Trademark Office issued the '416 Patent and admits that on its face the '416 Patent has an issue date of February 4,2003. Computer Associates denies that the '416 Patent is valid and

5

therefore denies that the United States Patent and Trademark Office legally issued the '416 Patent.

17.    Computer Associates incorporates by reference and thereby reasserts its responses to Paragraphs 1-16.

18.    Computer Associates denies all of the allegations in Paragraph 18 of the Second Amended Complaint to the extent they are directed to Computer Associates and/or Netegrity.  To the extent the allegations in Paragraph 18 of the Second Amended Complaint are directed to the activities of the Defendants other than Computer Associates and Netegrity, Computer Associates lacks information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

19.    The allegations in Paragraph 19 of the Second Amended Complaint are directed at the activities of a Defendant other than Computer Associates or Netegrity, and Computer Associates lacks sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 19 of the Second Amended Complaint, and therefore denies them.

20.    Prism only seeks equitable relief against Computer Associates and Netegrity and therefore has no right to a jury trial with regard to its claims against Computer Associates and Netegrity.  Computer Associates requests  a trial by judge.

## **PRAYER FOR RELIEF**

Computer Associates denies that Prism is entitled to be awarded any of the relief sought in its prayer for relief against Computer Associates and/or Netegrity.  Prism's prayer for relief with regard to Computer Associates and Netegrity should, therefore, be denied in its entirety and with prejudice, and Prism should take nothing therefore.  With

respect to the other Defendants, Computer Associates is without sufficient information to form a belief as to whether Prism is entitled to the relief sought or any relief whatsoever, and on that basis denies the same.

## II. DEFENSES

Computer Associates asserts the following defenses to the Second Amended Complaint:

21.    Prism has failed to state a claim upon which relief can be granted.

22.    Computer Associates has not infringed (literally or by equivalents), contributed to the infringement of, or induced infringement of the '416 Patent.

23.    The claims in the '416 Patent are invalid because they fail to satisfy one or more of the conditions for patentability specified in Title 3S of the United States Code, including, *inter alia*, §§ 101, 102, 103, and/or 112.

24.    The '416 patent is unenforceable for at least the reason that on information and belief, the applicants, and/or other individuals associated with the filing or prosecution of the '416 patent application, failed to disclose to the U.S. Patent and Trademark Office ("USPTO") non-cumulative information that was material to patentability under 37 C.F.R. § 1.56 with an intent to deceive.

a.    A patent applicant and its agents owe a duty of candor to the USPTO to disclose all non-cumulative information that is material to the patentability of its pending claims. 37 C.F.R. § 1.56; MPEP 2001.01 et seq. The duty to disclose continues until the patent issues.

b.    The '416 patent was filed on June 11, 1997, and issued on February 4, 2003.

***Open Market***

c.        During prosecution of the '416 Patent, one or more individuals

associated with the filing and prosecution of the '416 Patent, including at least the first-

named inventor, Richard L. Gregg, had knowledge of U.S. Patent Nos. 5,708,780 ("the

'780 patent"), 5,715,314 ("the '314 patent") and 5,724,424 ("the '424 patent"), which on

their face identify Open Market, Inc. as the assignee (collectively, the "Open Market

patents"), and also had other information relating to Open Market.  The Open Market

patents are attached at Exhibit A.

d.        During prosecution of the '416 Patent, Richard L. Gregg was in

regular communication with Open Market and also investigated the Open Market patents.

**REDACTED**

See Ex. B (P046018.173049).

e.        At his November 20, 2006 deposition, Mr. Gregg explained:

**REDACTED**

Richard L. Gregg Deposition (Nov. 20, 2006) at 349:6-13 (attached at Ex.C).  See also id.

at 345:21-346:14.

f.        Also, on or about March 1998, one or more individuals

associated with the filing and prosecution of the '416 Patent, including Mr. Gregg,

prepared a business plan for Prism that describes Open Market as a competitor.  See

Exhibit D at P 051169.  The Prism business plan further states,

**REDACTED**

8

**REDACTED**                              Id. at P 051170.  The

business plan describes                              Id.  According to

the business plan,                                        ' Id.

g.        The Open Market patents and other information relating to

Open Market known to one or more individuals associated with the filing and prosecution

of the '416 Patent were material to the patentability of the pending '416 patent claims.  In

an Office Action, dated July 12, 1999, the Patent Office examiner cited the '780 patent as

prior art.

h.        The other Open Market patents are also prior art to the '416

Patent under at least 35 U.S.C. § 102(e).  The '314 patent was filed on October 24, 1994,

and the '424 patent was filed on November 29, 1995.  Both were filed before the June 11,

1997 filing date of the '416 Patent and before the date of invention of the '416 patent.

The '424 and '314 patent are not cumulative of the '780 patent and the other prior art

cited during the '416 patent's prosecution.

i.        The '424 patent, for example, describes a "system for the

purchasing of goods or information over a computer network."  Ex. A at '424 patent,

Abstract.  This system may be used in "an untrusted network environment."  Id. at col. 2,

lns. 46-49.  The '424 patent further describes buyer computers, merchant computers, and

a payment computer:  "A user employs a buyer computer to retrieve advertisements from

the merchant computers, and to purchase goods of interest.  A payment computer is used

to authorize a purchase transaction."  Id. at col. 4, lns. 48-52.  The patent also describes

"external devices that are kept in the possession of users so that the users can authenticate

themselves when they use a buyer computer." <u>Id.</u> at col. 4, lns. 58-60; col. 8, lns. 9-11;
<u>see</u> <u>also</u> <u>id.</u> at col. 2, lns. 63-65. The '424 patent identifies a Smart-Card as an example
of an external device. <u>Id.</u> at col. 10, ln. 54 - col. 11, ln. 7.

    j.   One or more individuals associated with the filing and
prosecution of the '416 Patent, including at least Richard L. Gregg, acting with an intent
to deceive, failed to disclose U.S. Patent Nos. 5,715,314 and 5,724,424 and other material
information relating to Open Market to the U.S. Patent and Trademark Office.

   ***FORTEZZA***

    k.   During prosecution of the '416 Patent, one or more individuals
associated with the filing and prosecution of the '416 Patent, including at least Richard L.
Gregg, had knowledge of a security and authentication product known as FORTEZZA.

    l.   At his deposition, Richard L. Gregg testified that :

        **REDACTED**

Richard L. Gregg Deposition (Nov. 22, 2006) at 343:22-344:13, 346:4-5 (attached at Ex.
E).

    m.   According to Mr. Gregg, FORTEZZA is

        **REDACTED**    <u>Id.</u> at 346: 17-20.

    n.   Information relating to FORTEZZA that was known to one or
more individuals associated with the filing and prosecution of the '416 Patent was non-
cumulative and material to the patentability of the '416 patent claims.

    o.   One or more individuals associated with the filing and
prosecution of the '416 Patent, including at least Richard L. Gregg, acting with an intent

to deceive, failed to disclose material information relating to FORTEZZA to the U.S.

Patent and Trademark Office.


   ***CompuServ***

   p.  During prosecution of the '416 Patent, one or more individuals

associated with the filing and prosecution of the '416 Patent, including at least Richard L.

Gregg, had knowledge of the Remote Passphrase Authentication (RPA) technology

developed by CompuServ Incorporated for authenticating users and services

communicating over an insecure network.

   q.  In 1996, the year before filing the '416 Patent, Prism

documented a      **REDACTED**

   See Ex. F (P008990).  The ISA, or Internet Subscription Access,

system was Prism's first and only commercial embodiment of the invention claimed in

the '416 patent.

   r.  When deposed, Mr. Gregg admitted that

       **REDACTED**

  Richard L. Gregg Deposition (Nov. 21, 2006). at 266:12-22 (Ex. G).  Mr.

Gregg also testified that :

       **REDACTED**


   s.  CompuServ's RPA technology is also described in U.S. Patent

No. 5,740,361, which issued on April 14, 1998 from an application filed on June 3, 1996.

    t.        Information relating to CompuServ's RPA technology that was

known to one or more individuals associated with the filing and prosecution of the '416

Patent was non-cumulative and material to the patentability of the '416 patent claims.

    u.        One or more individuals associated with the filing and

prosecution of the '416 Patent, including at least Richard L. Gregg, acting with an intent

to deceive, failed to disclose material information relating to CompuServ's RPA

technology to the U.S. Patent and Trademark Office.

### RFC 1704

    v.        During prosecution of the '416 Patent, one or more individuals

associated with the filing and prosecution of the '416 Patent, including at least Sandeep

Giri, had knowledge of RFC (Request For Comment) 1704, entitled "On Internet

Authentication". RFC 1704 discloses the use of a hardware key, such as a smartcard, to

authenticate a user to a server via the Internet. <u>See</u> Ex. H at p. 12 (P046018.489833).

    w.        Mr. Giri, a named inventor of the '416 patent,

**REDACTED**        Sandeep

Giri Deposition (Oct. 30, 2006) at 284:10-285:19 (attached at Ex. I).

    x.        Information relating to RFC 1704 that was known to one or

more individuals associated with the filing and prosecution of the '416 Patent was non-

cumulative and material to the patentability of the '416 patent claims.

    y.        One or more individuals associated with the filing and

prosecution of the '416 Patent, including at least Sandeep Giri, acting with an intent to

deceive, failed to disclose material information relating to RFC 1704 to the U.S. Patent

and Trademark Office.

*Security Dynamics White Paper*

      z.      During prosecution of the '416 Patent, one or more individuals

associated with the filing and prosecution of the '416 Patent, including at least Richard

Gregg, had knowledge of a Security Dynamics white paper dated March 26, 1994 entitled

"Kerberos and Third Party Authentication" ("Security Dynamics White Paper").

      aa.

**REDACTED**

      <u>See</u> Ex. J (Gregg Ex. 12, P35264-270).

      bb.      The Security Dynamics White Paper discloses the use of a token

connected to a user machine by a swipe reader to authenticate a user to a server over an

unprotected network. <u>Id.</u> at P35264-65.

      cc.      Mr. Gregg testified that

**REDACTED**

      <u>See</u> Richard L. Gregg deposition (Nov. 21, 2006) at 223:14-21;

225:11-21 (Ex. G).

      dd.      The Security Dynamics White Paper was not submitted to the

Patent Office during the prosecution of the '416 Patent.

      ee.      Information relating to the Security Dynamics White Paper was

known to one or more individuals associated with the filing and prosecution of the '416

Patent and was non-cumulative and material to the patentability of the '416 patent claims.

      ff.      One or more individuals associated with the filing and

prosecution of the '416 Patent, including at least Richard Gregg, acting with an intent to

deceive, failed to disclose material information relating to the Security Dynamics White Paper to the U.S. Patent and Trademark Office.

25.    There may be additional defenses to the cause of action alleged by Prism that are currently unknown to Computer Associates. Therefore, Computer Associates reserves the right to amend this Answer to allege additional defenses in the event discovery of other information indicates they are appropriate.

## III. <u>COUNTERCLAIMS</u>[1]

### <u>Parties</u>

26.    Counterclaimant Computer Associates International, Inc. ("Computer Associates"), is a corporation organized under the laws of the State of Delaware, with an office and principal place of business located at One Computer Associates Plaza, Islandia, New York 11749.

27.    On information and belief, counterclaim defendant Prism Technologies LLC ("Prism") is a corporation organized and existing under the laws of Nebraska with its principal place of business at 14707 California Street, Suite 5, Omaha, Nebraska 68154.

### <u>Jurisdiction and Venue</u>

28.    The counterclaims include claims for declaratory judgment of patent non infringement and patent invalidity, and jurisdiction is proper under the Federal Declaratory Act, 28 U.S.C. §§2201 and 2202, the Patent Laws of the United States, 36

---

[1] Plaintiff is not entitled to a jury trial against Computer Associates, Inc., and, as such, Computer Associates International, Inc. has dropped the jury demand from its counterclaim.

U.S.C. § 100 *et seq.*, concerning actions related to patents, and 28 U.S.C. §§ 1331, 1332, and 1338.

29.     Venue is proper in this Court under 28 U.S.C. § 1400(a).

### Count One - Declaratory Relief Regarding Non-Infringement

30.     Based on the filing by Prism of this suit and Computer Associates' actual defenses, an actual controversy has arisen and now exists between the parties as to whether or not Computer Associates has directly and/or indirectly infringed any valid claim of U.S. Patent No. 6,516,416 ("the '416 Patent").

31.     Pursuant to Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, Computer Associates requests a declaration from the Court that Computer Associates has not infringed any valid claim of the '416 Patent, either directly, contributorily, or by inducement, or either literally or under the doctrine of equivalents.

### Count Two - Declaratory Relief Regarding Invalidity

32.     Based on the filing by Prism of this suit and Computer Associates' defenses, an actual controversy has arisen and now exists between the parties as to the validity of each of the claims of the '416 Patent.

33.     Pursuant to Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, Computer Associates requests a declaration from the Court that each of the claims of the '416 Patent are invalid for failure to comply with the provisions of the patent laws, 35 8 U.S.C. § 100 *et seq.*, including, but not limited to, one or more of 3S U.S.C. §§ 101, 102, 103, and/or 112.

**<u>Count Three - Declaratory Relief Regarding Unenforceability</u>**

34.     Based on the filing by Prism of this suit and Computer Associates'
defenses, an actual controversy has arisen and now exists between the parties as to the
enforceability of each of the claims of the '416 Patent.

35.     Pursuant to Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*,
Computer Associates requests a declaration from the Court that the '416 Patent is
unenforceable due to inequitable conduct for at least the reason that the applicants and/or
other individuals associated with the filing or prosecution of the '416 patent application,
acting with an intent to deceive, failed to disclose to the U.S. Patent and Trademark
Office ("USPTO") information that was material to patentability, as set forth above in the
Fourth Affirmative Defense numbered paragraphs 24(a)-(ff) incorporated herein by
reference.

## IV.  <u>EXCEPTIONAL CASE</u>

36.     This is an exceptional case under 35 U.S.C. § 285 and, as such, Computer
Associates is entitled to recover from Prism, Computer Associates' attorneys' fees and
costs incurred in connection with this action.

**Prayer for Relief**

WHEREFORE, Counterclaim Plaintiff Computer Associates requests entry of

judgment against Prism and relief to be granted as follows:

(a)    An order and decree declaring that Computer Associates has not

infringed any claim of U.S. Patent No. 6,516,416 (the '416 patent);

(b)    An order and decree declaring one or more claims of the '416

patent invalid;

(c)    An order and decree declaring the '416 patent unenforceable;

(d)    An order and decree declaring that this is an exceptional case

under 35 U.S.C. § 285 and awarding Computer Associates its attorneys' fees and costs of

this action; and

(e)    Such other and further relief to Computer Associates as this Court

deems just and proper.


OF COUNSEL:                          POTTER ANDERSON & CORROON LLP

David M. Schlitz
BAKER BOTTS L.L.P.                   By:  /s/ David E. Moore
1299 Pennsylvania Ave., N.W.              Richard L. Horwitz (#2246)
Washington, D.C. 20004-2400               David E. Moore (#3983)
Tel:  202-639-7700                        Hercules Plaza, 6th Floor
                                          1313 N. Market Street
Samir A. Bhavsar                          P.O. Box 951
Jeffery D. Baxter                         Wilmington, DE  19899-0951
BAKER BOTTS L.L.P.                        Tel:  302-984-6000
2001 Ross Avenue                          rhorwitz@potteranderson.com
Dallas, TX  75201-2980                    dmoore@potteranderson.com
Tel:  214-953-6500

                                     *Attorneys for Defendant*
Dated:  March 16, 2007               *Computer Associates International, Inc.*

# EXHIBIT A

US005724424A

# United States Patent [19]

## Gifford

[11] Patent Number: 5,724,424

[45] Date of Patent: Mar. 3, 1998

[54] **DIGITAL ACTIVE ADVERTISING**

[75] Inventor: **David K. Gifford**, Weston, Mass.

[73] Assignee: **Open Market, Inc.**, Cambridge, Mass.

[21] Appl. No.: **563,745**

[22] Filed: **Nov. 29, 1995**

### Related U.S. Application Data

[63] Continuation of Ser. No. 168,519, Dec. 16, 1993, abandoned.

[51] Int. Cl.$^6$ ........................................ **H04K 1/00**
[52] U.S. Cl. ...................... 380/24; 380/30; 364/401;
340/825.33; 902/2; 902/24
[58] Field of Search ............................ 380/24, 23, 25,
380/28, 30; 364/401, 406, 408; 340/825.33;
902/1, 2, 24

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,305,059 | 12/1981 | Benton | 340/825.33 |
| 4,578,530 | 3/1986 | Zeidler | 178/22.09 |
| 4,734,858 | 3/1988 | Schlafly | 364/408 |
| 4,755,940 | 7/1988 | Brachtl et al. | 364/408 |
| 4,775,935 | 10/1988 | Younick | 364/401 |
| 4,795,890 | 1/1989 | Goldman | 235/380 |
| 4,799,156 | 1/1989 | Shavit et al. | 364/401 |
| 4,812,628 | 3/1989 | Boston et al. | 235/380 |
| 4,827,508 | 5/1989 | Shear | 380/4 |
| 4,922,521 | 5/1990 | Krikke et al. | 379/95 |
| 4,935,870 | 6/1990 | Burk, Jr. et al. | 364/DIG. 1 |
| 4,947,028 | 8/1990 | Gorog | 235/381 |
| 4,977,595 | 12/1990 | Ohta et al. | 380/24 |
| 4,982,346 | 1/1991 | Girouard et al. | 364/401 X |
| 4,992,940 | 2/1991 | Dworkin | 364/401 |
| 5,023,373 | 6/1991 | Keyser, Jr. et al. | 364/408 |
| 5,060,153 | 10/1991 | Nakagawa | 364/405 |
| 5,077,607 | 12/1991 | Johnson et al. | 358/86 |
| 5,220,501 | 6/1993 | Lawlor | 364/408 |
| 5,247,575 | 9/1993 | Sprague et al. | 380/9 |
| 5,305,195 | 4/1994 | Murphy | 364/401 |
| 5,311,594 | 5/1994 | Penzias | 380/24 |

(List continued on next page.)

## FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| 0 542 298 A2 | 5/1993 | European Pat. Off. . |
| 2 102 606 | 2/1983 | United Kingdom . |
| WO 91/16691 | 10/1991 | WIPO . |

## OTHER PUBLICATIONS

Lampson, Butler; Abadi, Martin; Burrows, Michael; and Wobber, Edward; "Authentication in Distributed Systems: Theory and Practice"; ACM Transactions on Computer Systems; vol. 10, No. 4; Nov., 1992; pp. 265–310.

Needham, Roger M. and Schroeder, Michael D.; "Using Encryption for Authentication in Large Networks of Computers"; Communications of the ACM; vol. 21, No. 12; Dec., 1978; pp. 993–999.

(List continued on next page.)

*Primary Examiner*—David C. Cam
*Attorney, Agent, or Firm*—Fish & Richardson P.C.

[57] **ABSTRACT**

A complete system for the purchasing of goods or information over a computer network is presented. Merchant computers on the network maintain databases of digital advertisements that are accessed by buyer computers. In response to user inquiries, buyer computers retrieve and display digital advertisements from merchant computers. A digital advertisement can further include a program that is interpreted by a buyer's computer. The buyer computers include a means for a user to purchase the product described by a digital advertisement. If a user has not specified a means of payment at the time of purchase, it can be requested after a purchase transaction is initiated. A network payment system performs payment order authorization in a network with untrusted switching, transmission, and host components. Payment orders are backed by accounts in an external financial system network, and the payment system obtains account authorizations from this external network in real-time. Payment orders are signed with authenticators that can be based on any combination of a secret function of the payment order parameters, a single-use transaction identifier, or a specified network address.

**58 Claims, 16 Drawing Sheets**



US005708780A

# United States Patent [19]

## Levergood et al.

[11] Patent Number: 5,708,780

[45] Date of Patent: Jan. 13, 1998

[54] **INTERNET SERVER ACCESS CONTROL AND MONITORING SYSTEMS**

[75] Inventors: **Thomas Mark Levergood**, Hopkinton; **Lawrence C. Stewart**, Burlington; **Stephen Jeffrey Morris**, Westford; **Andrew C. Payne**, Lincoln; **George Winfield Treese**, Newton, all of Mass.

[73] Assignee: **Open Market, Inc.**, Cambridge, Mass.

[21] Appl. No.: **474,096**

[22] Filed: **Jun. 7, 1995**

[51] Int. Cl.[6] ................................................. G06F 15/56

[52] U.S. Cl. ................................. **395/200.12**; 395/200.15

[58] Field of Search ........................... 395/200.11, 200.12, 395/200.02, 200.05, 200.06, 200.09, 200.15; 380/23, 24, 25, 49; 340/825.34

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,347,632 | 9/1994 | Filepp et al. | 395/200 |
| 5,544,322 | 8/1996 | Cheng et al. | 395/200.12 |
| 5,560,008 | 9/1996 | Johnson et al. | 395/200.09 |
| 5,577,209 | 11/1996 | Boyle et al. | 395/200.06 |

### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 0 456 920 | 11/1991 | European Pat. Off. | |
| 0 645 688 | 3/1995 | European Pat. Off. | |
| WO 94/03859 | 2/1994 | WIPO | G06F 13/14 |
| WO 94/03959 | 2/1994 | WIPO | |

### OTHER PUBLICATIONS

Bina et al., Secure Access to Data over the Internet, 1994, pp. 99–102, IEEE.

Kiuchi et al., C–HTTP—the Development of a Secure, Closed HTTP based Network on the Internet, 1996, pp. 64–75, IEEE.

Ramanathan, Srinivas, et al., "Architectures for Personalized Multimedia," IEEE Multimedia, vol. 1, No. 1, Computer Society, pp. 37–46, 1994.

Choudhury, Abhijit K., et al., "Copyright Protection for Electronic Publishing Over Computer Networks," IEEE Network, The Magazine of Computer Communications, vol. 9, No. 3, pp. 12–20, May 1995.

Netscape Products, "Open and Secure Internet Software" Internet Sep. 18, 1995, pp. 1–2.

Merchant System: Overview, "Netscape Merchant System Data Sheet" Internet, Sep. 18, 1995, pp. 1–3.

Internet Applications Customer Showcase, "Customer Showcase" Internet, Sep. 18, 1995., pp. 1–2.

The Server–Application Function and Netscape Server API, "The Netscape Server API" Netscape Server Products Internet, Sep. 18, 1995, pp. 1–11.

The Object–Oriented Paradigm of Server Configuration, "The Object–Oriented Paradigm of Server Configuration" Internet, Sep. 18, 1995, p. 102.

Verisign Redirection Information, "Important Announcement" Internet, Sep. 18, 1995, p. 1.

(List continued on next page.)

*Primary Examiner*—William M. Treat
*Assistant Examiner*—Patrice L. Winder
*Attorney, Agent, or Firm*—Hamilton, Brook, Smith & Reynolds, P.C.

[57] **ABSTRACT**

This invention relates to methods for controlling and monitoring access to network servers. In particular, the process described in the invention includes client-server sessions over the Internet involving hypertext files. In the hypertext environment, a client views a document transmitted by a content server with a standard program known as the browser. Each hypertext document or page contains links to other hypertext pages which the user may select to traverse. When the user selects a link that is directed to an access-controlled file, the server subjects the request to a secondary server which determines whether the client has an authorization or valid account. Upon such verification, the user is provided with a session identification which allows the user to access to the requested file as well as any other files within the present protection domain.

**45 Claims, 7 Drawing Sheets**



**5,708,780**

Page 2

OTHER PUBLICATIONS

Lou Montulli, Electronic Mail to multiple recipients of the www–talk list (www–talk@www10.w3.org) on "Session Tracking" (omi.mail.www–talk, Apr. 18, 1995).

PR: Digital IDs for Open Market's Secure WebServer, "Press Release, VeriSign, Inc. to Provide Digital IDs for Open Market's Secure WebServer" Internet, Sep. 18, 1995, pp. 1–2.

PR: Online Security Solutions, "Verisign, Inc. Adds the Missing Component to Online Security Solutions" Internet, Sep. 18, 1995, pp. 1–2.

The SSL Protocol, Internet, Sep. 18, 1995, pp. 1–18.

IStore, "Netscape Istore Data Sheet" Internet, Sep. 18, 1995, pp. 1–2.



FIG. 1



FIG. 2A

FIG. 2B



FIG. 3



FIG. 4

Document View

*File*   *Options*   *Navigate*   *Annotate*   *Documents*                    *Help*

Title: | How to join |

URL: | http: //auth. com/service/nph- createacct .cgi |

1. First name | |

2. Last name | |

3. Choose a screen name (no more than 15 characters)
| |

4. Choose a password (no more than 15 characters)
Password:
| |

Re-enter password:
| |

5. E-mail address
| |

6. Your birthdate (MM /DD/ YY | |

7. U.S. zip code, or country code
Zip /postal code:
| |

ISO country code
| US |

FIG. 5



FIG. 6

5,708,780

# 1

## INTERNET SERVER ACCESS CONTROL AND MONITORING SYSTEMS

### REFERENCE TO APPENDIX

A portion of the disclosure of this patent document contains material which is subject to copyright protection. The copyright owner has no objection to the facsimile reproduction by any one of the patent disclosure, as it appears in the Patent and Trademark Office patent files or records, but otherwise reserves all copyright rights whatsoever.

### BACKGROUND OF THE INVENTION

The Internet, which started in the late 1960s, is a vast computer network consisting of many smaller networks that span the entire globe. The Internet has grown exponentially, and millions of users ranging from individuals to corporations now use permanent and dial-up connections to use the Internet on a daily basis worldwide. The computers or networks of computers connected within the Internet, known as "hosts", allow public access to databases featuring information in nearly every field of expertise and are supported by entities ranging from universities and government to many commercial organizations.

The information on the Internet is made available to the public through "servers". A server is a system running on an Internet host for making available files or documents contained within that host. Such files are typically stored on magnetic storage devices, such as tape drives or fixed disks, local to the host. An Internet server may distribute information to any computer that requests the files on a host. The computer making such a request is known as the "client", which may be an Internet-connected workstation, bulletin board system or home personal computer (PC).

TCP/IP (Transmission Control Protocol/Internet Protocol) is one networking protocol that permits full use of the Internet. All computers on a TCP/IP network need unique ID codes. Therefore, each computer or host on the Internet is identified by a unique number code, known as the IP (Internet Protocol) number or address, and corresponding network and computer names. In the past, an Internet user gained access to its resources only by identifying the host computer and a path through directories within the host's storage to locate a requested file. Although various navigating tools have helped users to search resources on the Internet without knowing specific host addresses, these tools still require a substantial technical knowledge of the Internet.

The World-Wide Web (Web) is a method of accessing information on the Internet which allows a user to navigate the Internet resources intuitively, without IP addresses or other technical knowledge. The Web dispenses with command-line utilities which typically require a user to transmit sets of commands to communicate with an Internet server. Instead, the Web is made up of hundreds of thousands of interconnected "pages", or documents, which can be displayed on a computer monitor. The Web pages are provided by hosts running special servers. Software which runs these Web servers is relatively simple and is available on a wide range of computer platforms including PC's. Equally available is a form of client software, known as a Web "browser", which is used to display Web pages as well as traditional non-Web files on the client system. Today, the Internet hosts which provide Web servers are increasing at a rate of more than 300 per month, en route to becoming the preferred method of Internet communication.

# 2

Created in 1991, the Web is based on the concept of "hypertext" and a transfer method known as "HTTP" (Hypertext Transfer Protocol). HTTP is designed to run primarily over TCP/IP and uses the standard Internet setup, where a server issues the data and a client displays or processes it. One format for information transfer is to create documents using Hypertext Markup Language (HTML). HTML pages are made up of standard text as well as formatting codes which indicate how the page should be displayed. The Web client, a browser, reads these codes in order to display the page. The hypertext conventions and related functions of the world wide web are described in the appendices of U.S. patent application Ser. No. 08/328,133, filed on Oct. 24, 1994, by Payne et al. which is incorporated herein by reference.

Each Web page may contain pictures and sounds in addition to text. Hidden behind certain text, pictures or sounds are connections, known as "hypertext links" ("links"), to other pages within the same server or even on other computers within the Internet. For example, links may be visually displayed as words or phrases that may be underlined or displayed in a second color. Each link is directed to a web page by using a special name called a URL (Uniform Resource Locator). URLs enable a Web browser to go directly to any file held on any Web server. A user may also specify a known URL by writing it directly into the command line on a Web page to jump to another Web page.

The URL naming system consists of three parts: the transfer format, the host name of the machine that holds the file, and the path to the file. An example of a URL may be:

http://www.college.univ.edu/Adir/Bdir/Cdir/page.html,

where "http" represents the transfer protocol; a colon and two forward slashes (://) are used to separate the transfer format from the host name; "www.college.univ.edu" is the host name in which "www" denotes that the file being requested is a Web page; "/Adir/Bdir/Cdir" is a set of directory names in a tree structure, or a path, on the host machine; and "page.html" is the file name with an indication that the file is written in HTML.

The Internet maintains an open structure in which exchanges of information are made cost-free without restriction. The free access format inherent to the Internet, however, presents difficulties for those information providers requiring control over their Internet servers. Consider for example, a research organization that may want to make certain technical information available on its Internet server to a large group of colleagues around the globe, but the information must be kept confidential. Without means for identifying each client, the organization would not be able to provide information on the network on a confidential or preferential basis. In another situation, a company may want to provide highly specific service tips over its Internet server only to customers having service contracts or accounts.

Access control by an Internet server is difficult for at least two reasons. First, when a client sends a request for a file on a remote Internet server, that message is routed or relayed by a web of computers connected through the Internet until it reaches its destination host. The client does not necessarily know how its message reaches the server. At the same time, the server makes responses without ever knowing exactly who the client is or what its IP address is. While the server may be programmed to trace its clients, the task of tracing is often difficult, if not impossible. Secondly, to prevent unwanted intrusion into private local area networks (LAN), system administrators implement various data-flow control

5,708,780

3

mechanisms, such as the Internet "firewalls", within their networks. An Internet firewall allows a user to reach the Internet anonymously while preventing intruders of the outside world from accessing the user's LAN.

## SUMMARY OF THE INVENTION

The present invention relates to methods of processing service requests from a client to a server through a network. In particular the present invention is applicable to processing client requests in an HTTP (Hypertext Transfer Protocol) environment, such as the World-Wide Web (Web). One aspect of the invention involves forwarding a service request from the client to the server and appending a session identification (SID) to the request and to subsequent service requests from the client to the server within a session of requests. In a preferred embodiment, the present method involves returning the SID from the server to the client upon an initial service request made by the client. A valid SID may include an authorization identifier to allow a user to access controlled files.

In a preferred embodiment, a client request is made with a Uniform Resource Locator (URL) from a Web browser. Where a client request is directed to a controlled file without an SID, the Internet server subjects the client to an authorization routine prior to issuing the SID, the SID being protected from forgery. A content server initiates the authorization routine by redirecting the client's request to an authentication server which may be at a different host. Upon receiving a redirected request, the authentication server returns a response to interrogate the client and then issues an SID to a qualified client. For a new client, the authentication server may open a new account and issue an SID thereafter. A valid SID typically comprises a user identifier, an accessible domain, a key identifier, an expiration time such as date, the IP address of the user computer, and an unforgettable digital signature such as a cryptographic hash of all of the other items in the SID encrypted with a secret key. The authentication server then forwards a new request consisting of the original URL appended by the SID to the client in a REDIRECT. The modified request formed by a new URL is automatically forwarded by the client browser to the content server.

When the content server receives a URL request accompanied by an SID, it logs the URL with the SID and the user IP address in a transaction log and proceeds to validate the SID. When the SID is so validated, the content server sends the requested document for display by the client's Web browser.

In the preferred embodiment, a valid SID allows the client to access all controlled files within a protection domain without requiring further authorization. A protection domain is defined by the service provider and is a collection of controlled files of common protection within one or more servers.

When a client accesses a controlled Web page with a valid SID, the user viewing the page may want to traverse a link to view another Web page. There are several possibilities. The user may traverse a link to another page in the same path. This is called a "relative link". A relative link may be made either within the same domain or to a different domain. The browser on the client computer executes a relative link by rewriting the current URL to replace the old controlled page name with a new one. The new URL retains all portions of the old, including the SID, except for the new page name. If the relative link points to a page in the same protection domain, the SID remains valid, and the request is honored.

4

However, if the relative link points to a controlled page in a different protection domain, the SID is no longer valid, and the client is automatically redirected to forward the rewritten URL to the authentication server to update the SID. The updated or new SID provides access to the new domain if the user is qualified.

The user may also elect to traverse a link to a document in a different path. This is called an "absolute link". In generating a new absolute link, the SID is overwritten by the browser. In the preferred embodiment, the content server, in each serving of a controlled Web page within the domain, filters the page to include the current SID in each absolute URL on the page. Hence, when the user elects to traverse an absolute URL which is directed with its SID to a page in a different path. In another embodiment, the content server may forego the filtering procedure as above-described and redirect an absolute URL to the authentication server for an update.

An absolute link may also be directed to a controlled file in a different domain. Again, such a request is redirected to the authentication server for processing of a new SID. An absolute link directed to an uncontrolled file is accorded an immediate access.

In another embodiment, a server access control may be maintained by programming the client browser to store an SID or a similar tag for use in each URL call to that particular server. This embodiment, however, requires a special browser which can handle such communications and is generally not suitable for the standard browser format common to the Web.

Another aspect of the invention is to monitor the frequency and duration of access to various pages both controlled and uncontrolled. A transaction log within a content server keeps a history of each client access to a page including the link sequence through which the page was accessed. Additionally, the content server may count the client requests exclusive of repeated requests from a common client. Such records provide important marketing feedback including user demand, access pattern, and relationships between customer demographics and accessed pages and access patterns.

The above and other features of the invention including various novel details of construction and combinations of parts will now be more particularly described with reference to the accompanying drawings and pointed out in the claims. It will be understood that the particular devices and methods embodying the invention are shown by way of illustration only and not as limitations of the invention. The principles and features of this invention may be employed in varied and numerous embodiments without departing from the scope of the invention.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a diagram illustrating the Internet operation.

FIG. 2A is a flowchart describing the preferred method of Internet server access control and monitoring.

FIG. 2B is a related flowchart describing the details of the authentication process.

FIG. 3 illustrates an example of a client-server exchange session involving the access control and monitoring method of the present invention.

FIG. 4 is an example of a World Wide Web page.

FIG. 5 is an example of an authorization form page.

FIG. 6 is a diagram describing the details of the translation of telephone numbers to URLs.

5,708,780

5

## DETAILED DESCRIPTION OF THE INVENTION

Referring now to the drawings, FIG. 1 is a graphical illustration of the Internet. The Internet 10 is a network of millions of interconnected computers 12 including systems owned by Internet providers 16 and information systems (BBS) 20 such as Compuserve or America Online. Individual or corporate users may establish connections to the Internet in several ways. A user on a home PC 14 may purchase an account through the Internet provider 16. Using a modem 22, the PC user can dial up the Internet provider to connect to a high speed modem 24 which, in turn, provides a full service connection to the Internet. A user 18 may also make a somewhat limited connection to the Internet through a BBS 20 that provides an Internet gateway connection to its customers.

FIG. 2A is a flowchart detailing the preferred process of the present invention and FIG. 4 illustrates a sample Web page displayed at a client by a browser. The page includes text 404 which includes underlined link text 412. The title bar 408 and URL bar 402 display the title and URL of the current web page, respectively. As shown in FIG. 4, the title of the page is "Content Home Page" and the corresponding URL is "http://content.com/homepage". When a cursor 414 is positioned over link text 412b, the page which would be retrieved by clicking a mouse is typically identified in a status bar 406 which shows the URL for that link. In this example the status bar 406 shows that the URL for the pointed link 412b is directed to a page called "advertisement", in a commercial content server called "content". By clicking on the link text, the user causes the browser to generate a URL GET request at 100 in FIG. 2A. The browser forwards the request to a content server 120, which processes the request by first determining whether the requested page is a controlled document 102. If the request is directed to an uncontrolled page, as in "advertisement" page in this example, the content server records the URL and the IP address, to the extent it is available, in the transaction log 114. The content server then sends the requested page to the browser 116 for display on the user computer 117.

If the request is directed to a controlled page, the content server determines whether the URL contains an SID 102. For example, a URL may be directed to a controlled page name "report", such as "http://content.com/report", that requires an SID. If no SID is present, as in this example, the content server sends a "REDIRECT" response 122 to the browser 100 to redirect the user's initial request to an authentication server 200 to obtain a valid SID. The details of the authentication process are described in FIG. 2B and will be discussed later, but the result of the process is an SID provided from the authentication server to the client. In the above example, a modified URL appended with an SID may be: "http://content.com/[SID]/report". The preferred SID is a sixteen character ASCII string that encodes 96 bits of SID data, 6 bits per character. It contains a 32-bit digital signature, a 16-bit expiration date with a granularity of one hour, a 2-bit key identifier used for key management, an 8-bit domain comprising a set of information files to which the current SID authorizes access, and a 22-bit user identifier. The remaining bits are reserved for expansion. The digital signature is a cryptographic hash of the remaining items in the SID and the authorized IP address which are encrypted with a secret key which is shared by the authentication and content servers.

If the initial GET URL contains a SID, the content server determines whether the request is directed to a page within

6

the current domain 106. If the request having a SID is directed to a controlled page of a different domain, the SID is no longer valid and, again, the user is redirected to the authentication server 122.

If the request is for a controlled page within the current domain, the content server proceeds to log the request URL, tagged with SID, and the user IP address in the transaction log 108. The content server then validates the SID 110. Such validation includes the following list of checks: (1) the SID's digital signature is compared against the digital signature computed from the remaining items in the SID and the user IP address using the secret key shared by the authentication and content servers; (2) the domain field of the SID is checked to verify that it is within the domain authorized; and (3) the EXP field of the SID is checked to verify that it is later than the current time.

If the validation passes, the content server searches the page to be forwarded for any absolute URL links contained therein 112, that is, any links directed to controlled documents in different content servers. The content server augments each absolute URL with the current SID to facilitate authenticated accesses across multiple content servers. The requested page as processed is then transmitted to the client browser for display 117. The user viewing the requested Web page may elect to traverse any link on that page to trigger the entire sequence again 100.

FIG. 2B describes the details of the authentication process. The content server may redirect the client to an authentication server. The REDIRECT URL might be: "http://auth.com/authenticate?domain=[domain]&URL= http://content.com/report". That URL requests authentication and specifies the domain and the initial URL. In response to the REDIRECT, the client browser automatically sends a GET request with the provided URL.

Whenever the content server redirects the client to the authentication server 200, the authentication server initiates the authorization process by validating that it is for an approved content server and determining the level of authentication required for the access requested 210. Depending on this level, the server may challenge the user 212 for credentials. If the request is for a low level document, the authentication may issue an appropriate SID immediately 228 and forego the credential check procedures. If the document requires credentials, the authentication server sends a "CHALLENGE" response which causes the client browser to prompt the user for credentials 214. A preferred credential query typically consists of a request for user name and password. If the user is unable to provide a password, the access is denied. The browser forms an authorization header 300 from the information provided, and resends a GET request to the authentication server using the last URL along with an authorization header. For example, a URL of such a GET request may be: "http://auth.com/ authenticate?domain=[domain]&URL=http://content.com/ report and the authorization header may be:"AUTHORIZE: [authorization]".

Upon receiving the GET request, the authentication server queries an account database 216 to determine whether the user is authorized 218 to access the requested document. A preferred account database may contain a user profile which includes information for identifying purposes, such as client IP address and password, as well as user demographic information, such as user age, home address, hobby, or occupation, for later use by the content server. If the user is authorized, an SID is generated 228 as previously described. If the user is not cleared for authorization, the authentication

5,708,780

7

server checks to see if the user qualifies for a new account 220. If the user is not qualified to open a new account, a page denying access 222 is transmitted to the client browser 100. If the user is qualified, the new user is sent a form page such as illustrated in FIG. 5 to initiate a real-time on-line registration 224. The form may, for example, require personal information and credit references from the user. The browser is able to transmit the data entered by the user in the blanks 502 as a "POST" message to the authentication server. A POST message causes form contents to be sent to the server in a data body other than as part of the URL. If the registration form filled out by the new user is valid 226, an appropriate SID is generated 228. If the registration is not valid, access is again denied 222.

An SID for an authorized user is appended ("tagged") 230 to the original URL directed to a controlled page on the content server. The authentication server then transmits a REDIRECT response 232 based on the tagged URL to the client browser 100. The modified URL, such as "http://content.com/[SID]/report" is automatically forwarded to the content server 120.

FIG. 3, illustrates a typical client-server exchange involving the access control and monitoring method of the present invention. In Step 1, the client 50 running a browser transmits a GET request through a network for an uncontrolled page (UCP). For example, the user may request an advertisement page by transmitting a URL "http://content.com/advertisement", where "content.com" is the server name and "advertisement" is the uncontrolled page name. In Step 2, the content server 52 processes the GET request and transmits the requested page, "advertisement". The content server also logs the GET request in the transaction database 56 by recording the URL, the client IP address, and the current time.

In Step 3, the user on the client machine may elect to traverse a link in the advertisement page directed to a controlled page (CP). For example, the advertisement page may contain a link to a controlled page called "report". Selecting this link causes the client browser 50 to forward a GET request through a URL which is associated with the report file "http://content.com/report". The content server 52 determines that the request is to a controlled page and that the URL does not contain an SID. In Step 4, the content server transmits a REDIRECT response to the client, and, in Step 5, the browser automatically sends the REDIRECT URL to the authentication server 54. The REDIRECT URL sent to the authentication server may contain the following string:

"http://auth.com/authenticate?domain=[domain]&URL= http://content.com/report".

The authentication server processes the REDIRECT and determines whether user credentials (CRED) are needed for authorization. In Step 6, the authentication server transmits a "CHALLENGE" response to the client. As previously described, typical credentials consist of user name and password. An authorization header based on the credential information is then forwarded by the client browser to the authentication server. For example, a GET URL having such an authorization header is:

"http://autho.com/authenticate?domain=[domain] &URL=http://content.com/report and the authorization header may be: "AUTHORIZE:[authorization]". The authentication server processes the GET request by checking the Account Database 58. If a valid account exists for the user, an SID is issued which authorizes access to the controlled page "report" and all the other pages within the domain.

8

As previously described, the preferred SID comprises a compact ASCII string that encodes a user identifier, the current domain, a key identifier, an expiration time, the client IP address, and an unforgeable digital signature. In Step 8, the authentication server redirects the client to the tagged URL, "http://content.com/[SID]/report", to the client. In Step 9, the tagged URL is automatically forwarded by the browser as a GET request to the content server. The content server logs the GET request in the Transaction database 56 by recording the tagged URL, the client IP address, and the current time. In Step 10, the content server, upon validating the SID, transmits the requested controlled page "report" for display on the client browser.

According to one aspect of the present invention, the content server periodically evaluates the record contained in the transaction log 56 to determine the frequency and duration of accesses to the associated content server. The server counts requests to particular pages exclusive of repeated requests from a common client in order to determine the merits of the information on different pages for ratings purposes. By excluding repeated calls, the system avoids distortions by users attempting to "stuff the ballot box." In one embodiment, the time intervals between repeated requests by a common client are measured to exclude those requests falling within a defined period of time.

Additionally, the server may, at any given time, track access history within a client-server session. Such a history profile informs the service provider about link transversal frequencies and link paths followed by users. This profile is produced by filtering transaction logs from one or more servers to select only transactions involving a particular user ID (UID). Two subsequent entries, A and B, corresponding to requests from a given user in these logs represent a link traversal from document A to document B made by the user in question. This information may be used to identify the most popular links to a specific page and to suggest where to insert new links to provide more direct access. In another embodiment, the access history is evaluated to determine traversed links leading to a purchase of a product made within commercial pages. This information may be used, for example, to charge for advertising based on the number of link traversals from an advertising page to a product page or based on the count of purchases resulting from a path including the advertisement. In this embodiment, the server can gauge the effectiveness of advertising by measuring the number of sales that resulted from a particular page, link, or path of links. The system can be configured to charge the merchant for an advertising page based on the number of sales that resulted from that page.

According to another aspect of the present invention, a secondary server, such as the authentication server 200 in FIG. 2B, may access a prearranged user profile from the account database 216 and include information based on such a profile in the user identifier field of the SID. In a preferred embodiment, the content server may use such an SID to customize user requested pages to include personalized content based on the user identifier field of the SID.

In another embodiment, the user may gain access to domain of servers containing journals or publications through a subscription. In such a situation, the user may purchase the subscription in advance to gain access to on-line documents through the Internet. The user gains access to a subscribed document over the Internet through the authorization procedure as described above where an authorization indicator is preferably embedded in a session identifier. In another embodiment, rather than relying on a

5,708,780

| 9 | 10 |

prepaid subscription, a user may be charged and billed each time he or she accesses a particular document through the Internet. In that case, authorization may not be required so long as the user is fully identified in order to be charged for the service. The user identification is most appropriately embedded in the session identifier described above.

In another aspect of the invention, facilities are provided to allow users to utilize conventional telephone numbers or other identifiers to access merchant services. These merchant services can optionally be protected using SIDs. In a preferred embodiment, as shown in FIG. 6, a Web browser client 601 provides a "dial" command to accept a telephone number from a user, as by clicking on a "dial" icon and inputting the telephone number through the keyboard. The browser then constructs a URL of the form "http://directory.net/NUMBER", where NUMBER is the telephone number or other identifier specified by the user. The browser then performs a GET of the document specified by this URL, and contacts directory server 602, sending the NUMBER requested in Message 1.

In another embodiment, implemented with a conventional browser, client 601 uses a form page provided by directory server 602 that prompts for a telephone number or other identifier in place of a "dial" command, and Message 1 is a POST message to a URL specified by this form page.

Once NUMBER is received by directory server 602, the directory server uses database 604 to translate the NUMBER to a target URL that describes the merchant server and document that implements the service corresponding to NUMBER. This translation can ignore the punctuation of the number, therefore embedded parenthesis or dashes are not significant.

In another embodiment an identifier other than a number may be provided. For example, a user may enter a company name or product name without exact spelling. In such a case a "soundex" or other phonetic mapping can be used to permit words that sound alike to map to the same target URL. Multiple identifiers can also be used, such as a telephone number in conjunction with a product name or extension.

In Message 2, Directory server 602 sends a REDIRECT to client 601, specifying the target URL for NUMBER as computed from database 604. The client browser 601 then automatically sends Message 3 to GET the contents of this URL. Merchant server 603 returns this information in Message 4. The server 602 might have returned a Web page to the client to provide an appropriate link to the required document. However, because server 602 makes a translation to a final URL and sends a REDIRECT rather than a page to client 601, the document of message 4 is obtained without any user action beyond the initial dial input.

The Target URL contained in Message 3 can be an ordinary URL to an uncontrolled page, or it can be a URL that describes a controlled page. If the Target URL describes a controlled page then authentication is performed as previously described. The Target URL can also describe a URL that includes an SID that provides a preauthorized means of accessing a controlled page.

Among benefits of the "dial" command and its implementation is an improved way of accessing the Internet that is compatible with conventional telephone numbers and other identifiers. Merchants do not need to alter their print or television advertising to provide an Internet specific form of contact information, and users do not need to learn about URLs.

In the approach a single merchant server can provide multiple services that correspond to different external "telephone numbers" or other identifiers. For example, if users dial the "flight arrival" number they could be directed to the URL for the arrival page, while, if they dial the "reservations" number, they would be directed to the URL for the reservations page. A "priority gold" number could be directed to a controlled page URL that would first authenticate the user as belonging to the gold users group, and then would provide access to the "priority gold" page. An unpublished "ambassador" number could be directed to a tagged URL that permits access to the "priority gold" page without user authentication.

Equivalents

Those skilled in the art will know, or be able to ascertain using no more than routine experimentation, many equivalents to the specific embodiments or the invention described herein. These and all other equivalents are intended to be encompassed by the following claims.

5,708,780

11                                      12

-30-

```
/
 * tclSidSup.c --
 *
 *      tcl SID pack/unpack/id routines
 *
 *  Steve Morris
 *  morris@openmarket.com
 */

/* #define debug 1 */

#include <stdio.h>
#include <sys/types.h>
#include <stdlib.h>
#include <unistd.h>
#ifdef __alpha
#include <sys/time.h>
#endif
#include <tcl.h>
#include "global.h"
#include "md5.h"


#ifdef debug
#define dbg_out(s) printf("%s\n", s);
#define dbg_outi(s,a) printf("%s %x\n", s,a);
#define dbg_outs(s,a) printf("%s %s\n", s,a);
#else
#define dbg_out(s)
#define dbg_outi(s,a)
#define dbg_outs(s,a)
#endif


/* external routines called
 */
        char * radix64decode_noslash(char *in, int len, int *output_len);
        char * radix64encode_noslash(char *in, int len);
        int compute_ihash(char *str);


#define        sid_rev_zero (0)


#define get_sid(lw,pos,mask)  ((bsid[lw]>>pos) & mask)
#define put_sid(lw,pos,mask,data) {bsid[lw] &= ~(0xffffffff & (mask<<pos)); \
                                bsid[lw] |= ((data & mask)<<pos); }

#define sig_lw        0
#define sig_pos       0
#define sig_mask      0xffffffff

#define kid_lw        1
#define kid_pos       0
#define kid_mask      0x3
#define rev_lw        1
#define rev_pos       2
#define rev_mask      0x3
#define uid_lw        1
```

2

5,708,780

13                                                          14

-31-

```
#define uid_pos      4
#define uid_mask     0x3fffff
#define rsrv1_lw     1
#define rsrv1_pos    26
#define rsrv1_mask   0x3f


#define dom_lw       2
#define dom_pos      0
#define dom_mask     0xff
#define rsrv2_lw     2
#define rsrv2_pos    8
#define rsrv2_mask   0x3f
#define uctx_lw      2
#define uctx_pos     14
#define uctx_mask    0x3
#define exp_lw       2
#define exp_pos      16
#define exp_mask     0xffff


#ifdef __sun__
#define fix_endian(i,o)    { ecp = (char *) i; \
                             eda  = (*ecp++)<<0; \
                             eda |= (*ecp++)<<8; \
                             eda |= (*ecp++)<<16; \
                             eda |= (*ecp)<<24; \
                             (int *) *o = eda;}
#else
/* #define fix_endian(i,o)    { (int *) *o = (int *) *i;} */
#define fix_endian(i,o)
#endif
```

5,708,780

15                                              16

-32-

```
/* TclUnpackSid[NoValidate]
 *    Converts a binary sid to the internal representation, and does minimal
 *    validation on the SID, the NoValidate version does even less.
 * Inputs:
 *    the sid          a sid, looks like "/@@u9GIg4QEAAAAABPn"
 * Returns:
 *    {%d %d %d %d}    on succes (dom uid keyid exp)
 * or ""               on failure
 *
 */




int TclUnpackSid(ClientData dummy, Tcl_Interp *interp,
                 int argc, char **argv)
    {
    char temp[512];
    int ret_status = 1;
    int i;
    int * bsid = NULL, act_hash;
    char ip_address[32]="", secret[200]="", *cp;
    unsigned char *ecp;
    unsigned int eda;
    char hash_buffer[512];

    struct sid_info
       {
       unsigned int sig;
       unsigned int kid;
       unsigned int uid;
       unsigned int rev;
       unsigned int dom;
       unsigned int exp;
       unsigned int uctx;
       } esid;

    if (argc != 2)
       {
       Tcl_AppendResult(interp, "wrong # args: should be \"", argv[0],
          " string\"", (char *) NULL);
       return TCL_ERROR;
       }
#ifdef test_ip
    strcpy(ip_address, test_ip);
#endif
#ifdef test_secret
    strcpy(secret, test_secret);
#endif

    cp = Tcl_GetVar(interp, "sidip", TCL_GLOBAL_ONLY|TCL_LEAVE_ERR_MSG);
    if (cp != NULL) strncpy(ip_address, cp, 31);

    cp = argv[1]+3;
    i = strlen(cp);
    if (i != 16) goto sid_bad;
```

5,708,780

17                                                    18

```
                              -33-
/* first convert the SID back to binary*/
bsid = (int *) radix64decode_noslash(cp, i, &i);
if (bsid == NULL) goto sid_bad;
if (i != 12) goto sid_bad;

fix_endian(&bsid[0], &bsid[0]);
fix_endian(&bsid[1], &bsid[1]);
fix_endian(&bsid[2], &bsid[2]);

dbg_outi("sid[0]=",bsid[0]);
dbg_outi("sid[1]=",bsid[1]);
dbg_outi("sid[2]=",bsid[2]);

dbg_outi("sig =",get_sid(sig_lw,sig_pos,sig_mask));
dbg_outi("kid =",get_sid(kid_lw,kid_pos,kid_mask));
dbg_outi("uid =",get_sid(uid_lw,uid_pos,uid_mask));
dbg_outi("rev =",get_sid(rev_lw,rev_pos,rev_mask));
dbg_outi("dom =",get_sid(dom_lw,dom_pos,dom_mask));
dbg_outi("exp =",get_sid(exp_lw,exp_pos,exp_mask));
dbg_outi("uctx =",get_sid(uctx_lw,uctx_pos,uctx_mask));
dbg_outi("rs1 =",get_sid(rsrv1_lw,rsrv1_pos,rsrv1_mask));
dbg_outi("rs2 =",get_sid(rsrv2_lw,rsrv2_pos,rsrv2_mask));


/* check the SID version field */
if (get_sid(rev_lw,rev_pos,rev_mask) != sid_rev_zero) goto sid_bad;
if (get_sid(rsrv1_lw,rsrv1_pos,rsrv1_mask) != 0) goto sid_bad;
if (get_sid(rsrv2_lw,rsrv2_pos,rsrv2_mask) != 0) goto sid_bad;

/* unpack the sid */
esid.sig = get_sid(sig_lw,sig_pos,sig_mask);
esid.kid = get_sid(kid_lw,kid_pos,kid_mask);
esid.uid = get_sid(uid_lw,uid_pos,uid_mask);
esid.rev = get_sid(rev_lw,rev_pos,rev_mask);
esid.dom = get_sid(dom_lw,dom_pos,dom_mask);
esid.exp = get_sid(exp_lw,exp_pos,exp_mask);
esid.uctx = get_sid(uctx_lw,uctx_pos,uctx_mask);

dbg_outi("sig =",esid.sig);
dbg_outi("kid =",esid.kid);
dbg_outi("uid =",esid.uid);
dbg_outi("rev =",esid.rev);
dbg_outi("dom =",esid.dom);
dbg_outi("exp =",esid.exp);
dbg_outi("uctx =",esid.uctx);

sprintf(temp,"secret(%d)",esid.kid);
cp = Tcl_GetVar(interp, temp, TCL_GLOBAL_ONLY);
if (cp != NULL) strncpy(secret, cp, 199);

/* hash the sid and check the signature */
sprintf(hash_buffer, "%s%s%08x%08x", secret,ip_address,bsid[2],bsid[1]);
dbg_outs("hashing ->",hash_buffer);
act_hash = compute_ihash(hash_buffer);
fix_endian(&act_hash, &act_hash);
dbg_outi("expected hash=",bsid[0]);
dbg_outi("actual   hash=",act_hash);
if (act_hash != esid.sig) goto  sid_bad;

rtn_exit:
```

5,708,780

19                                                                    20

-34-

```
   if (bsid != NULL) free(bsid);
   if (ret_status) sprintf(interp->result,"{%d %d %d %d %d}",
       esid.dom,esid.uid,esid.kid,esid.exp,esid.uctx);
   else sprintf(interp->result,"");
   return TCL_OK;


 sid_bad:
    ret_status = 0;
    goto rtn_exit;

 exp_bad:
    ret_status = 0;
    goto rtn_exit;


}
```

5,708,780

21                                                          22

-35-

```
int TclUnpackSidNoValidate(ClientData dummy, Tcl_Interp *interp,
                           int argc, char **argv)
    {
    char temp[512];
    int ret_status = 1;
    int i;
    int * bsid = NULL, act_hash;
    char ip_address[32]="", secret[200]="", *cp;
    unsigned char *ecp;
    unsigned int eda;
    char hash_buffer[512];

    struct sid_info
        {
        unsigned int sig;
        unsigned int kid;
        unsigned int uid;
        unsigned int rev;
        unsigned int dom;
        unsigned int exp;
        unsigned int uctx;
        } esid;

    if (argc != 2)
        {
        Tcl_AppendResult(interp, "wrong # args: should be \"", argv[0],
          " string\"", (char *) NULL);
        return TCL_ERROR;
        }
#ifdef test_ip
    strcpy(ip_address, test_ip);
#endif
#ifdef test_secret
    strcpy(secret, test_secret);
#endif

    cp = Tcl_GetVar(interp, "sidip", TCL_GLOBAL_ONLY|TCL_LEAVE_ERR_MSG);
    if (cp != NULL) strncpy(ip_address, cp, 31);

    cp = argv[1]+3;
    i = strlen(cp);
    if (i != 16) goto sid_bad;

    /* first convert the SID back to binary*/
    bsid = (int *) radix64decode_noslash(cp, i, &i);
    if (bsid == NULL) goto sid_bad;
    if (i != 12) goto sid_bad;

    fix_endian(&bsid[0], &bsid[0]);
    fix_endian(&bsid[1], &bsid[1]);
    fix_endian(&bsid[2], &bsid[2]);

    dbg_outi("sid[0]=",bsid[0]);
    dbg_outi("sid[1]=",bsid[1]);
    dbg_outi("sid[2]=",bsid[2]);

    dbg_outi("sig =",get_sid(sig_lw,sig_pos,sig_mask));
```

5,708,780

23         24

-36-

```
    dbg_outi("kid =",get_sid(kid_lw,kid_pos,kid_mask));
    dbg_outi("uid =",get_sid(uid_lw,uid_pos,uid_mask));
    dbg_outi("rev =",get_sid(rev_lw,rev_pos,rev_mask));
    dbg_outi("dom =",get_sid(dom_lw,dom_pos,dom_mask));
    dbg_outi("exp =",get_sid(exp_lw,exp_pos,exp_mask));
    dbg_outi("uctx =",get_sid(uctx_lw,uctx_pos,uctx_mask));
    dbg_outi("rs1 =",get_sid(rsrv1_lw,rsrv1_pos,rsrv1_mask));
    dbg_outi("rs2 =",get_sid(rsrv2_lw,rsrv2_pos,rsrv2_mask));


    /* check the SID version field */
    if (get_sid(rev_lw,rev_pos,rev_mask) != sid_rev_zero) goto sid_bad;
    if (get_sid(rsrv1_lw,rsrv1_pos,rsrv1_mask) != 0) goto sid_bad;
    if (get_sid(rsrv2_lw,rsrv2_pos,rsrv2_mask) != 0) goto sid_bad;


    /* unpack the sid */
    esid.sig = get_sid(sig_lw,sig_pos,sig_mask);
    esid.kid = get_sid(kid_lw,kid_pos,kid_mask);
    esid.uid = get_sid(uid_lw,uid_pos,uid_mask);
    esid.rev = get_sid(rev_lw,rev_pos,rev_mask);
    esid.dom = get_sid(dom_lw,dom_pos,dom_mask);
    esid.exp = get_sid(exp_lw,exp_pos,exp_mask);
    esid.uctx = get_sid(uctx_lw,uctx_pos,uctx_mask);


    dbg_outi("sig =",esid.sig);
    dbg_outi("kid =",esid.kid);
    dbg_outi("uid =",esid.uid);
    dbg_outi("rev =",esid.rev);
    dbg_outi("dom =",esid.dom);
    dbg_outi("exp =",esid.exp);
    dbg_outi("uctx =",esid.uctx);

#if (1 == 0) /* disable validation for the novalidate case */
    sprintf(temp,"secret{%d}",esid.kid);
    cp = Tcl_GetVar(interp, temp, TCL_GLOBAL_ONLY);
    if (cp != NULL) strncpy(secret, cp, 199);

    /* hash the sid and check the signature */
    sprintf(hash_buffer, "%s%s%08x%08x", secret,ip_address,bsid[2],bsid[1]);
    dbg_outs("hashing ->",hash_buffer);
    act_hash = compute_ihash(hash_buffer);
    fix_endian(&act_hash, &act_hash);
    dbg_outi("expected hash=",bsid[0]);
    dbg_outi("actual   hash=",act_hash);
    if (act_hash != esid.sig) goto  sid_bad;
#endif

  rtn_exit:
    if (bsid != NULL) free(bsid);
    if (ret_status) sprintf(interp->result,"{%d %d %d %d %d}",
        esid.dom,esid.uid,esid.kid,esid.exp, esid.uctx);
    else sprintf(interp->result,"");
    return TCL_OK;


  sid_bad:
    ret_status = 0;
    goto rtn_exit;

  exp_bad:
```

5,708,780

25                                                                    26

-37-

```
    ret_status = 0;
    goto rtn_exit;


}
```

5,708,780

27                                                    28

-38-

```
/* TclPackSid
 *      Creates the ascii representation of a binary sid
 * Inputs:
 *      "{%d %d %d %d [%d]}  Dom uid keyid exp [uctx]
 * Returns:
 *      ascii bin_sid like   "/@@u9GIg4QEAAAAABPn"
 *
 */


int TclPackSid(ClientData dummy, Tcl_Interp *interp,
                        int argc, char **argv)
    {
    char temp[512];
    int bsid[3] = {0,0,0}, i, act_hash;
    unsigned char *ecp;
    unsigned int eda;

    char ip_address[32], secret[200]="", *cp;
    int dom, uid, keyid, exp, uctx;
    char hash_buffer[512];

    struct sid_info
        {
        unsigned int sig;
        unsigned int kid;
        unsigned int uid;
        unsigned int rev;
        unsigned int dom;
        unsigned int exp;
        unsigned int uctx;
        } esid;

    if (argc != 2)
        {
        Tcl_AppendResult(interp, "wrong # args: should be \"", argv[0],
         " string\"", (char *) NULL);
        return TCL_ERROR;
        }


    i = sscanf(argv[1],"%d %d %d %d %d", &dom, &uid, &keyid, &exp, &uctx);
    dbg_outs("scanning...",argv[1]);
    dbg_outi("scan returned ",i);
    if (i == 4) {uctx = 0; i = 5;}
    if (i != 5) return TCL_ERROR;

    esid.kid = keyid;
    esid.uid = uid;
    esid.dom = dom;
    esid.exp = exp;
    esid.uctx = uctx;
    dbg_outi("kid=",esid.kid);
    dbg_outi("uid=",esid.uid);
    dbg_outi("dom=",esid.dom);
    dbg_outi("exp=",esid.exp);
    dbg_outi("uctx=",esid.uctx);
```

5,708,780

29                                                        30

-39-

```
#ifdef test_ip
    strcpy(ip_address, test_ip);
#endif
#ifdef test_secret
    strcpy(secret, test_secret);
#endif
        cp = Tcl_GetVar(interp, "sidip", TCL_GLOBAL_ONLY);
        if (cp != NULL) strncpy(ip_address, cp, 31);


        sprintf(temp,"secret(%d)",esid.kid);
        cp = Tcl_GetVar(interp, temp, TCL_GLOBAL_ONLY);
        if (cp != NULL) strncpy(secret, cp, 199);


        put_sid(kid_lw,    kid_pos,    kid_mask,    esid.kid);
        put_sid(uid_lw,    uid_pos,    uid_mask,    esid.uid);
        put_sid(rsrv1_lw, rsrv1_pos, rsrv1_mask,   0);
        put_sid(rev_lw,    rev_pos,    rev_mask,    sid_rev_zero);
        put_sid(dom_lw,    dom_pos,    dom_mask,    esid.dom);
        put_sid(rsrv2_lw, rsrv2_pos, rsrv2_mask,   0);
        put_sid(exp_lw,    exp_pos,    exp_mask,    esid.exp);
        put_sid(uctx_lw, uctx_pos,   uctx_mask,   esid.uctx);

        dbg_outi("sid[0]=",bsid[0]);
        dbg_outi("sid[1]=",bsid[1]);
        dbg_outi("sid[2]=",bsid[2]);

        sprintf(hash_buffer, "%s%s%08x%08x", secret,ip_address,bsid[2],bsid[1]);
        dbg_outs("ascii sid built ",hash_buffer);
        act_hash = compute_ihash(hash_buffer);
/*      fix_endian(&act_hash, &act_hash); */
        put_sid(sig_lw, sig_pos, sig_mask, act_hash);

/*      dbg_outi("sid[0]=",bsid[0]);
        dbg_outi("sid[1]=",bsid[1]);
        dbg_outi("sid[2]=",bsid[2]);    */


/*      fix_endian(&bsid[0], &bsid[0]); */
        fix_endian(&bsid[1], &bsid[1]);
        fix_endian(&bsid[2], &bsid[2]);

        dbg_outi("sid[0]=",bsid[0]);
        dbg_outi("sid[1]=",bsid[1]);
        dbg_outi("sid[2]=",bsid[2]);



        cp = radix64encode_noslash((char *) bsid, 12);
        if (cp == NULL) return TCL_ERROR;
        sprintf(temp,"/@@%s", cp);
        Tcl_SetResult(interp, temp, TCL_VOLATILE);
        if (cp != NULL) free(cp);
        return TCL_OK;

}
```

5,708,780

31                                               32

−40−

```
/* TclIdSid
 *    Scans an ascii line and finds an ascii SID. (no validation though)
 * Inputs:
 *    lineoftext
 * Returns:
 *    ascii bin_sid, if a sid is found it is returned.
 *
 */


int TclIdSid(ClientData dummy, Tcl_Interp *interp,
                       int argc, char **argv)
    {
    char *sidp, *cp;

    interp->result[0] = 0;


    if (argc != 2)
        {
        interp->result = "wrong # args";
        return TCL_ERROR;
        }
    sidp = (char *) strstr(argv[1], "/@@");
    if (sidp == NULL) return TCL_OK;
    cp = (char *) strstr(sidp+1,"/");
    if ((cp == NULL) && (strlen(sidp) != 19)) return TCL_OK;
    if ((cp - sidp) != 19) return TCL_OK;
    strncpy(interp->result, sidp,19);
    interp->result[19] = 0;
    return TCL_OK;
    }




/*
 * Register commands with interpreter.
 */
int SidSupInit(Tcl_Interp *interp)
    {
    Tcl_CreateCommand(interp, "packsid",    TclPackSid,    NULL, NULL);
    Tcl_CreateCommand(interp, "unpacksid", TclUnpackSid, NULL, NULL);
    Tcl_CreateCommand(interp, "unpacksidnovalidate", TclUnpackSidNoValidate, NULL,
    Tcl_CreateCommand(interp, "issid",      TclIdSid,      NULL, NULL);
    return TCL_OK;
    }
```

5,708,780

33                                                                              34

-41-

```
/*
 *-----------------------------------------------------------------------
 *
 * compute_ihash --
 *
 *  Compute the MD5 hash for the specified string, returning the hash as
 *  a 32b xor of the 4 hash longwords.
 *
 * Results:
 *       hash int.
 *
 * Side effects:
 *       None.
 *-----------------------------------------------------------------------
 */
int compute_ihash(char *str)
{
    MD5_CTX md5;
    unsigned char hash[16];
    unsigned int *p1;
    unsigned int hashi = 0;

    MD5Init(&md5);
    MD5Update(&md5, str, strlen(str));
    MD5Final(hash, &md5);
    p1 =  (unsigned int *) hash;

    hashi = *p1++;
    hashi ^= *p1++;
    hashi ^= *p1++;
    hashi ^= *p1++;
    return hashi;
}
```

5,708,780

35                                                          36

−42−

```
/*
 * ticket.c --
 *
 *       Commands for TICKET.
 *
 * Copyright 1995 by Open Market, Inc.
 * All rights reserved.
 *
 * This file contains proprietary and confidential information and
 * remains the unpublished property of Open Market, Inc. Use,
 * disclosure, or reproduction is prohibited except as permitted by
 * express written license agreement with Open Market, Inc.
 *
 * Steve Morris
 * morris@OpenMarket.com
 *
 * Created: Wed Mar 1 1995
 * $Source: /omi/proj/master/omhttpd/Attic/ticket.c,v $
 *
 */

#if !defined(lint)
static const char rcsid[]="$Header: /omi/proj/master/omhttpd/Attic/ticket.c,v 2.
#endif /*not lint*/

#include <stdio.h>
#include <sys/utsname.h>
#include "httpd.h"
#include "md5.h"
#include "ticket.h"


static TICKET_Server TicketServerData;
```

5,708,780

37                                                      38

43

```
/*
 * This file implements all the ticket/sid related functions for the server.
 *
 * The region commands RequireSID and xxxxx can be used to limit
 * access to groups of files based on the authentication of the requestor.
 * The two commands are very similar, and only differ in the method used to
 * present the authentication data (via the URL) and in handling of the
 * failing access case. For failing TICKET's, a "not authorized" message is
 * generated. For failing (or absent) SID's, a REDIRECT (either local or via
 * CGI script) is performed to forward the request to an authentication server.
 *
 * RequireSID domain1 [domain2 ... domainn]
 *
 *      This command denies access unless the specified properties are
 *      true of the request. Only one RequireSID or xxxxx command can
 *      be used for a given region, though it may specify multiple domains.
 *
 *
 */
```

5,708,780

39                                                                        40

4 3 (a)

```
static int    ProcessRequires(ClientData clientData, Tcl_Interp *interp,
                       int argc, char **argv, int flavor);
static int    DomainNameCmd(ClientData clientData, Tcl_Interp *interp,
                       int argc, char **argv);
static int    GetDomain(char *domname, int dflt);
static char *GetAsciiDomain(char *domname, char *dflt);
static int    compute_ihash(char *str);
static char *computeHash(char *str);
static char *GetSecret(int kid);
static int    GetKidByKeyID(char *keyID);
static char *CreateSid(HTTP_Request *reqPtr, int dom, int uid, int kid,
                       int exp, int uctx);
static void freeTicketReqData(void *dataPtr);
static void DumpStatus(HTTP_Request *reqPtr);
static void TICKET_DebugHooks(ClientData clientData, char *suffix,
                       HTTP_Request *reqPtr);
static int ParseSid(HTTP_Request *reqPtr);
static int ParseTicket(HTTP_Request *reqPtr);
static char *fieldParse(char *str, char sep, char **endptr);
void TICKET_ConfigCheck();
void DumpRusage(HTTP_Request *reqPtr);
```

5,708,780

41                                                          42

*4 *4*

```
/*
 *-------------------------------------------------------------------
 *
 * TICKET_RequireSidCmd --
 *
 *      Checks that the requested URL is authorized via SID to access this
 *      region. If the access is not authorized and we do not have a "remote
 *      authentication server" registered, then an "unauthorized message"
 *      is returned. If a "remote authentication server" has been
 *      declared, we REDIRECT to that server, passing the requested URL and
 *      required domain's as arguments.
 *
 * Results:
 *      Normal Tcl result, or a REDIRECT request.
 *
 * Side effects:
 *      Either an "unauthorized access" message or a REDIRECT in case of error.
 *
 *-------------------------------------------------------------------
 */
static int TICKET_RequireSidCmd(ClientData clientData, Tcl_Interp *interp,
                                int argc, char **argv)
    {
    if (TicketGlobalData(EnableSidEater)) return TCL_OK;
    return(ProcessRequires(clientData, interp,argc, argv, ticketSid));
    }
```

5,708,780

43                                              44

45

```
/*
*-------------------------------------------------------------------
*
* ProcessRequires --
*
*       Checks that the requested URL is authorized to access this
*       region. The error cases are treated differently for SID v.s. TICKET.
*       For Ticket's, an unauthorized access generates a returned error message.
*       For SID's, we first look to see if we are operating in "local authentica
*       mode", if we are, we generate a new SID, into the URL and re-process the
*       If not in "local" mode, we look for the presence of a remoteauthenticati
*       server, if we have one declared (in the conf file) we REDIRECT to it pas
*       the FULL url and a list of domains that would have been legal. If the
*       authentication server was not found we return an error message.
*
* Results:
*       Normal Tcl result, a local reprocess command, or a REDIRECT request.
*
* Side effects:
*       Either an "unauthorized access" message or a REDIRECT in case of error.
*
*-------------------------------------------------------------------
*/
static int ProcessRequires(ClientData clientData, Tcl_Interp *interp,
                           int argc, char **argv, int flavor)
    {
    HTTP_Request *reqPtr = (HTTP_Request *) clientData;
    HTTP_Server  *serverPtr;
    TICKET_Request *ticketPtr;
    DString targetUrl;
    DString escapeUrl;
    int i, required_dom;
    int firstLegalDom = -1;
    char *NewSid, *cp;

    DStringInit(&targetUrl);
    DStringInit(&escapeUrl);

    /* fetch the server private and ticket specific extension data */
    serverPtr = reqPtr->serverPtr;
    ticketPtr = (TICKET_Request *) HT_GetReqExtData(reqPtr, TicketServerData.tic
    ASSERT (ticketPtr != NULL);


    /* compare the requesting SID/Ticket<DOM> to authorized list of domains */
    /* a match OR any valid domain and a required domain of TicketFreeArea is su
    for (i = 1; i < argc; i++)
        {
        required_dom = GetDomain(argv[i],-1);
        if (required_dom != -1)
            {
            if (firstLegalDom == -1) firstLegalDom = required_dom;
            if ( (ticketPtr->sidDom == required_dom) ||
                 (ticketPtr->valid && (ticketPtr->sidDom != -1) &&
                  (required_dom == TicketGlobalData(FreeArea))) ||
                 ((ticketPtr->ticketDom == required_dom) &&
                  (time(0) <= ticketPtr->ticketExp) &&
                  ((DStringLength(&ticketPtr->ticketIP) == 0) ||
```

5,708,780

45                                                    46

```
        (strcmp(DStringValue(&ticketPtr->ticketIP), DStringValue(&reqPtr->r
    )
    {
    DStringFree(&targetUrl);
    DStringFree(&escapeUrl);
    return TCL_OK;
    }
  }
}


/* count the number of domain crossing that caused re-auth */
if ((flavor == ticketSid) && (ticketPtr->sidDom) != -1) IncTicketCounter(Cou

/* authorization failed, if this was a sid url, and local auth is enabled */
/* or this was an access to the free area */
/* insert a new sid in the url, and REDIRECT back to the client */
if (TicketGlobalData(EnableLocalAuth) ||
    ((firstLegalDom == TicketGlobalData(FreeArea))
    && (flavor == ticketSid) && (firstLegalDom != -1)))
  {
  if ((DStringLength(&reqPtr->url) != 0) &&
      (DStringValue(&reqPtr->url)[0] != '/'))
    {
    HTTP_Error(reqPtr, NOT_FOUND, "access denied due to poorly formed url");
    DStringFree(&targetUrl);
    DStringFree(&escapeUrl);
    if (!ticketPtr->valid)
      DStringFree(&ticketPtr->sid);
    return TCL_RETURN ;
    }
  NewSid =   CreateSid(reqPtr,
            firstLegalDom, ticketPtr->uid,
            TicketGlobalData(CurrentSecret), TicketGlobalData(LocalAuthExp),
            ticketPtr->uctx);
  DStringFree(&ticketPtr->sid);
  DStringAppend(&ticketPtr->sid, NewSid, -1);
  ComposeURL(reqPtr, DStringValue(&reqPtr->url), &targetUrl);
  IncTicketCounter(CountLocalRedirects);
  HTTP_Error(reqPtr, REDIRECT, DStringValue(&targetUrl));
  DStringFree(&targetUrl);
  DStringFree(&escapeUrl);
  if (!ticketPtr->valid)
    DStringFree(&ticketPtr->sid);
  return TCL_RETURN;
  }


/* authorization failed, build the REDIRECT URL arg's. */
/* If present, REDIRECT to authentication server */
if ((DStringLength(&TicketGlobalData(AuthServer)) != 0) && (flavor == ticket
  {
  if ((DStringLength(&reqPtr->url) != 0) &&
      (DStringValue(&reqPtr->url)[0] != '/'))
    {
    HTTP_Error(reqPtr, NOT_FOUND, "access denied due to poorly formed url");
    DStringFree(&targetUrl);
    DStringFree(&escapeUrl);
    if (!ticketPtr->valid)
      DStringFree(&ticketPtr->sid);
```

5,708,780

47                                                    48

*47*

```
   return TCL_RETURN ;
   }
DStringAppend(&targetUrl, DStringValue(&TicketGlobalData(AuthServer)), -1)
DStringAppend(&targetUrl, "?url=", -1);
ComposeURL(reqPtr, DStringValue(&reqPtr->url), &escapeUrl);
EscapeUrl(&escapeUrl);
DStringAppend(&targetUrl,DStringValue(&escapeUrl), -1);
DStringAppend(&targetUrl, "&domain=", -1);
DStringTrunc(&escapeUrl, 0);
DStringAppend(&escapeUrl, "{", -1);
for (i=1; i < argc; i++)
   {
   cp = GetAsciiDomain(argv[i], NULL);
   if (cp != NULL)
      {
      DStringAppend(&escapeUrl, cp, -1);
      DStringAppend(&escapeUrl, " ", -1);
      }
   }
DStringAppend(&escapeUrl, "}", -1);
EscapeUrl(&escapeUrl);
DStringAppend(&targetUrl,DStringValue(&escapeUrl), -1);
DStringFree(&escapeUrl);
HTTP_Error(reqPtr, REDIRECT, DStringValue(&targetUrl));
IncTicketCounter(CountRemoteRedirects);
DStringFree(&targetUrl);
if (!ticketPtr->valid)
   DStringFree(&ticketPtr->sid);
return TCL_RETURN;
}


/* authorization failed, if this is a ticket access, decode the */
/* reason and handle via a redirect to a handler, or punt a    */
/* no access message */
if ((flavor == ticketTicket) && (firstLegalDom != -1) && (ticketPtr->ticketD
   {
   /* check For IP address restrictions */
   if ((DStringLength(&ticketPtr->ticketIP) != 0) &&
      (DStringLength(&TicketGlobalData(TicketAdrHandler)) != 0) &&
      (strcmp(DStringValue(&ticketPtr->ticketIP), DStringValue(&reqPtr->remo
      {
      DStringAppend(&targetUrl, DStringValue(&TicketGlobalData(TicketAdrHandle
      DStringAppend(&targetUrl, DStringValue(&ticketPtr->fields), -1);
      DStringAppend(&targetUrl, "&url=", -1);
      DStringAppend(&targetUrl, DStringValue(&reqPtr->url), -1);
      IncTicketCounter(CountTicketAddr);
      HTTP_Error(reqPtr, REDIRECT, DStringValue(&targetUrl));
      DStringFree(&targetUrl);
      return TCL_RETURN;
      }

   /* check for expired tickets */
   if (time(0) > ticketPtr->ticketExp)
      {
      DStringAppend(&targetUrl, DStringValue(&TicketGlobalData(TicketExpHandle
      DStringAppend(&targetUrl, DStringValue(&ticketPtr->fields), -1);
      DStringAppend(&targetUrl, "&url=", -1);
      DStringAppend(&targetUrl, DStringValue(&reqPtr->url), -1);
      IncTicketCounter(CountExpiredTicket);
```

5,708,780

49                                                              50

48

```
    HTTP_Error(reqPtr, REDIRECT, DStringValue(&targetUrl));
    DStringFree(&targetUrl);
    return TCL_RETURN;
    }
}


/* no handler, punt a message */
HTTP_Error(reqPtr, FORBIDDEN, "access denied by Require ticket/sid region co
IncTicketCounter(CountNoRedirects);
if (!ticketPtr->valid)
DStringFree(&ticketPtr->sid);
DStringFree(&targetUrl);
DStringFree(&escapeUrl);
return TCL_RETURN;
}
```

5,708,780

51                                                          52

*49*

```
/*
 *-------------------------------------------------------------------
 *
 * Get[Ascii]Domain --
 *
 *      These routine performs an ascii to binary domain name lookup,
 *      indexed by 'key') from the server's domain name catalog.  Name/number
 *      pair's are loaded into the catalog at configuration time with the
 *      with the "Domain" configuration command. The Ascii version returns
 *      a pointer to a character string that represents the domain number.
 *      The non Ascii version returns an integer representing the domain number.
 *
 * Results:
 *      Integer value of domain.  If no domain is available, returns deflt.
 *
 * Side effects:
 *      None.
 *
 *-------------------------------------------------------------------
 */
static int GetDomain(char *domname, int deflt)
    {
    HashEntry *entryPtr;
    DString DomName;


    DStringInit(&DomName);
    DStringAppend(&DomName, domname, -1);
    strtolower(DStringValue(&DomName));


    entryPtr = FindHashEntry(&TicketServerData.Domains, DStringValue(&DomName));
    DStringFree(&DomName);
    if (entryPtr == NULL) return deflt;
    return (int) GetHashValue(entryPtr);
    }

static char * GetAsciiDomain(char *domname, char *deflt)
    {
    HashEntry *entryPtr;
    static char buffer[64];
    DString DomName;


    DStringInit(&DomName);
    DStringAppend(&DomName, domname, -1);
    strtolower(DStringValue(&DomName));

    entryPtr = FindHashEntry(&TicketServerData.Domains, DStringValue(&DomName));
    DStringFree(&DomName);
    if (entryPtr == NULL) return deflt;
    sprintf(buffer,"%d", (int) GetHashValue(entryPtr));
    return buffer;
    }
```

5,708,780

53                                                            54

*50*

```
/*
 *-----------------------------------------------------------------------
 *
 * TICKET_InsertLocalSid --
 *
 *       Given a URL, inspect it to see if it refers to the local server/port
 *       if it does, and it does not already contain a SID, insert one if
 *       the current request included one. Note, for port 80 access we look
 *       for a match with and without the port specifier.
 *
 * Results:
 *       None.
 *
 * Side effects:
 *       A SID may be inserted into the URL.
 *
 *-----------------------------------------------------------------------
 */
void TICKET_InsertLocalSid(HTTP_Request *reqPtr, DString *result)
    {
    HTTP_Server *serverPtr;
    TICKET_Request *ticketPtr;
    char tmp[32];
    DString pattern1;
    DString pattern2;
    DString tmp_url;
    DString *hitPattern = NULL;


    ticketPtr = (TICKET_Request *) HT_GetReqExtData(reqPtr, TicketServerData.tic
    if (ticketPtr == NULL) return;
    serverPtr = reqPtr->serverPtr;

    DStringInit(&pattern1);
    DStringInit(&pattern2);
    DStringInit(&tmp_url);


    DStringAppend(&pattern1, "http://", -1);
    DStringAppend(&pattern1, DStringValue(&serverPtr->serverName), -1);
    DStringAppend(&pattern2, DStringValue(&pattern1), -1);
    sprintf(tmp, ":%d", serverPtr->server_port);
    DStringAppend(&pattern1, tmp, -1);

    if ((DStringLength(result) >= DStringLength(&pattern1)) &&
         (strncasecmp(DStringValue(&pattern1), DStringValue(result), DStringLengt
        hitPattern = &pattern1;
    else
    if ((serverPtr->server_port == 80) &&
         (DStringLength(result) >= DStringLength(&pattern2)) &&
         (strncasecmp(DStringValue(&pattern2), DStringValue(result), DStringLengt
        hitPattern = &pattern2;

    if (hitPattern != NULL)
        {
        DStringAppend(&tmp_url, DStringValue(hitPattern), -1);
        DStringAppend(&tmp_url, DStringValue(&ticketPtr->sid), -1);
        DStringAppend(&tmp_url, &DStringValue(result)[DStringLength(hitPattern)],
        DStringFree(result);
```

5,708,780

55                                                      56

*51*

```
DStringAppend(result, DStringValue(&tmp_url), -1);
DStringFree(&tmp_url);
}
DStringFree(&pattern1);
DStringFree(&pattern2);
DStringFree(&tmp_url);
}
```

5,708,780

57                                                                          58

⌐⌐

```
/*
 *-------------------------------------------------------------------
 *
 * CreateSid --
 *
 *       This routine takes the passed arguments and creates a sid.
 *
 * Results:
 *       A sid.
 *
 * Side effects:
 *
 *-------------------------------------------------------------------
 */

char * CreateSid(HTTP_Request *reqPtr, int dom, int uid, int kid,
                 int exp, int uctx)

    {
    int bsid[3] = {0,0,0};
    char temp_str[512];
    DString hash;
    int act_hash;
    static char sid[64];
    unsigned int expire_time;
    char *secret;
    char *hashP;
    char *cp;
    unsigned char *ecp;
    unsigned int eda;
    int endian = 1;



    DStringInit(&hash);
    expire_time = time(0) + exp;

    put_sid(dom_lw,    dom_pos,    dom_mask,    dom);
    put_sid(uid_lw,    uid_pos,    uid_mask,    uid);
    put_sid(kid_lw,    kid_pos,    kid_mask,    kid);
    put_sid(exp_lw,    exp_pos,    exp_mask,    (expire_time>>exp_shft_amt))
    put_sid(uctx_lw,   uctx_pos,   uctx_mask,   uctx);
    put_sid(rev_lw,    rev_pos,    rev_mask,    sid_rev_zero);

    secret = GetSecret(kid);
    ASSERT (secret != NULL);
    DStringAppend(&hash, secret, -1);
    DStringAppend(&hash, DStringValue(&reqPtr->remoteAddr), -1);
    sprintf(temp_str, "%08x%08x", bsid[2],bsid[1]);
    DStringAppend(&hash, temp_str, -1);
    /* format of the hash string is %s%s%08x%08x", secret,ip_addr,bsid[2],bsid[1

    hashP = DStringValue(&hash);
    act_hash = compute_ihash(hashP);
    while (*hashP != 0) *hashP++ = 0;
    DStringFree(&hash);

/*  fix_endian(&act_hash, ecp, eda); */
```

5,708,780

*53*

```
    .put_sid(sig_lw, sig_pos, sig_mask, act_hash)

/*  fix_endian(&bsid[0], ecp, eda); */
    fix_endian(&bsid[1], ecp, eda);
    fix_endian(&bsid[2], ecp, eda);

#if (1 == 0)
    DumpSid();
#endif

    cp = radix64encode_noslash((char *) bsid, 12);
    strcpy(sid, SID_prefix);
    strcat(sid, cp);
    free(cp);
    return(sid);
    }
```

5,708,780

61                                                    62

5-4

```
/*
 *-----------------------------------------------------------------
 *
 * compute_ihash --
 *
 *  Compute the MD5 hash for the specified string, returning the hash as
 *  a 32b xor of the 4 hash longwords.
 *
 * Results:
 *       hash int.
 *
 * Side effects:
 *       None.
 *-----------------------------------------------------------------
 */
static int compute_ihash(char *str)
    {
    MD5_CTX md5;
    unsigned char hash[16];
    unsigned int *p1;
    unsigned int hashi = 0;

    MD5Init(&md5);
    MD5Update(&md5, (unsigned char *) str, strlen(str));
    MD5Final(hash, &md5);
    p1 =  (unsigned int *) hash;

    hashi = *p1++;
    hashi ^= *p1++;
    hashi ^= *p1++;
    hashi ^= *p1++;
    return hashi;
    }
```

5,708,780

63                                                          64

55

```
/*
 *-------------------------------------------------------------------
 *
 * computeHash --
 *
 * Compute the MD5 hash for the specified string, returning the hash as
 * a 32-character hex string.
 *
 * Results:
 *        Pointer to static hash string.
 *
 * Side effects:
 *        None.
 *-------------------------------------------------------------------
 */
static char *computeHash(char *str)
{
        int i;
        MD5_CTX md5;
        unsigned char hash[16];
        static char hashstr[33];
        char *q;

        MD5Init(&md5);
        MD5Update(&md5, (unsigned char *) str, strlen(str));
        MD5Final(hash, &md5);
        q = hashstr;
        for(i=0; i<16; i++) {
            sprintf(q, "%02x", hash[i]);
            q += 2;
        }
        *q = '\0';
        return hashstr;
}
```

5,708,780

65                                                    66

*56*

```
/*
 *------------------------------------------------------------------
 *
 * TICKET_ParseTicket --
 *
 *      Called by dorequest, before any region commands or mount handlers
 *      have run. We parse and handle incomeing sid's and tickets.
 *
 * Results:
 *      None.
 *
 * Side effects:
 *
 *------------------------------------------------------------------
 */

int TICKET_ParseTicket(HTTP_Request *reqPtr)
    {
    int status = HT_OK;

    IncTicketCounter(CountTotalUrl);

    status = ParseSid(reqPtr);
    if (TicketGlobalData(EnableTicket) && (status == HT_OK)) status = ParseTicke
    return status;
    }
```

5,708,780

67                                                             68

*5-7*

```
/*
 *-------------------------------------------------------------------
 *
 * ParseSid --
 *
 *       Called by TICKET_ParseTicket, before any region commands or mount handle
 *       have run. We parse and handle incomeing sid's.
 *
 * Results:
 *       None.
 *
 * Side effects:
 *
 *-------------------------------------------------------------------
 */

int ParseSid(HTTP_Request *reqPtr)
      {
      TICKET_Request *ticketPtr;
      HTTP_Server *serverPtr;
      DString hash;
      int i;
      char *cp, *cp1;
      int *bsid=NULL, act_hash;
      unsigned int cur_tim, tdif, exp_tim;
      char *secret;
      char temp_str[512];
      char *hashP;
      int sid_ok = 0;
      unsigned char *ecp;
      unsigned int eda;
      int endian = 1;
      int ip1,ip2,ip3,ip4;


      /* fetch the server private ticket extension data */
      /* note that this sets up a default ticket block for both SID's and Ticket a
      serverPtr = reqPtr->serverPtr;
      ticketPtr = (TICKET_Request *) HT_GetReqExtData(reqPtr, TicketServerData.tic
      ASSERT (ticketPtr == NULL);

      ticketPtr = (TICKET_Request *) Malloc(sizeof(TICKET_Request));
      HT_AddReqExtData(&reqPtr, TicketServerData.ticketExtensionId, ticketPtr, free
      DStringInit(&ticketPtr->rawUrl);
      DStringInit(&ticketPtr->sid);
      DStringInit(&ticketPtr->fields);
      DStringInit(&ticketPtr->signature);
      DStringInit(&ticketPtr->ticketIP);
      ticketPtr->valid      = 0;
      ticketPtr->sidDom     = -1;
      ticketPtr->ticketDom  = -1;
      ticketPtr->ticketExp  = -1;
      ticketPtr->uid        = 0;
      ticketPtr->uctx       = 0;
      sscanf(DStringValue(&reqPtr->remoteAddr), "%d.%d.%d.%d", &ip1, &ip2, &ip3, &
      ticketPtr->uid = (((ip1+ip2)<<24) | ((ip3+ip4)<<16) | (rand() & 0xFFFF));
      ticketPtr->uctx  = 1;
```

5,708,780

69                                                        70

*58*

```
/* we are done if sids are not enabled, or this url does not have a sid */
if (!(TicketGlobalData(EnableSid))) return HT_OK;
cp1 = DStringValue(&reqPtr->url);
if (strstr(cp1, SID_prefix) != cp1)
  return HT_OK;
if (strlen(cp1) == sidLength)
  {
  DStringAppend(&reqPtr->url, "/", -1);
  DStringAppend(&reqPtr->path, "/", -1);
  cp1 = DStringValue(&reqPtr->url);
  }
cp = strchr(cp1+sizeof(SID_prefix),'/');
if ((cp - cp1) != sidLength)
  return HT_OK;
IncTicketCounter(CountSidUrl);


DStringInit(&hash);

/* if sid eater is enabled, rewrite the url without the sid, and reprocess t
if (TicketGlobalData(EnableSidEater))
  {
  DStringAppend(&hash, DStringValue(&reqPtr->url), -1);
  DStringFree(&reqPtr->url);
  DStringAppend(&reqPtr->url, DStringValue(&hash)+sidLength, -1);
  DStringTrunc(&hash, 0);
  DStringAppend(&hash, DStringValue(&reqPtr->path), -1);
  DStringFree(&reqPtr->path);
  DStringAppend(&reqPtr->path, DStringValue(&hash)+sidLength, -1);
  DStringFree(&hash);
  IncTicketCounter(CountDiscardedSidUrl);
  return HT_OK;
  }


DStringAppend(&ticketPtr->sid, DStringValue(&reqPtr->url), sidLength);

/* first convert the SID back to binary*/
i = DStringLength(&ticketPtr->sid)-3;
bsid = (int *) radix64decode_noslash(DStringValue(&ticketPtr->sid)+3, i, &i)
if ((bsid == NULL) || (i != 12)) goto rtn_exit;

fix_endian(&bsid[0], ecp, eda);
fix_endian(&bsid[1], ecp, eda);
fix_endian(&bsid[2], ecp, eda);

/* check the SID version field */
if (get_sid(rev_lw,rev_pos,rev_mask) != sid_rev_zero) goto sid_bad;
if (get_sid(rsrv1_lw,rsrv1_pos,rsrv1_mask) != 0) goto sid_bad;
if (get_sid(rsrv2_lw,rsrv2_pos,rsrv2_mask) != 0) goto sid_bad;

/* Get a pointer to the secret */
secret = GetSecret(get_sid(kid_lw,kid_pos,kid_mask));
if (secret == NULL) goto sid_bad;

 /* hash the sid and check the signature */
DStringAppend(&hash, secret, -1);
```

5,708,780

71                                                72

```
.DStringAppend(&hash, DStringValue(&reqPtr->remoteAddr), -1);
sprintf(temp_str, "%08x%08x", bsid[2],bsid[1]);
DStringAppend(&hash, temp_str, -1);
/* format of the hash string is %s%s%08x%08x", secret,ip_addr,bsid[2],bsid[1

hashP = DStringValue(&hash);
act_hash = compute_ihash(hashP);
while (*hashP != 0) *hashP++ = 0;


fix_endian(&act_hash, ecp, eda);
if (act_hash != get_sid(sig_lw,sig_pos,sig_mask)) goto  sid_bad;


/* is is ok, may be expired, but good enough to id user */
ticketPtr->uid = get_sid(uid_lw,uid_pos,uid_mask);
ticketPtr->uctx = get_sid(uctx_lw,uctx_pos,uctx_mask);

/* do the SID experation processing */
cur_tim = (time(0)>>exp_shft_amt) & exp_mask;
exp_tim = get_sid(exp_lw,exp_pos,exp_mask);
tdif = (exp_tim - cur_tim) & 0xffff;
if (tdif > 0x7fff)
   {
   IncTicketCounter(CountExpSid);
   goto sid_exp;
   }

/* sid is fine, save the sid state, update the url's */
ticketPtr->sidDom = get_sid(dom_lw,dom_pos,dom_mask);
ticketPtr->valid = 1;
sid_ok = 1;
IncTicketCounter(CountValidSid);

sid_bad:
   if (!(sid_ok)) IncTicketCounter(CountInvalidSid);
sid_exp:
   DStringAppend(&ticketPtr->rawUrl, DStringValue(&reqPtr->path), -1);
   DStringTrunc(&reqPtr->path, 0);
   DStringAppend(&reqPtr->path, DStringValue(&ticketPtr->rawUrl)+sidLength, -1)

   DStringTrunc(&ticketPtr->rawUrl, 0);
   DStringAppend(&ticketPtr->rawUrl, DStringValue(&reqPtr->url), -1);
   DStringTrunc(&reqPtr->url, 0);
   DStringAppend(&reqPtr->url, DStringValue(&ticketPtr->rawUrl)+sidLength, -1);

rtn_exit:
   DStringFree(&hash);
   if (bsid != NULL) free(bsid);
   return HT_OK;
   }
```

5,708,780

73                                                    74

60

```
/*
 *-----------------------------------------------------------------
 *
 * freeTicketReqData
 *
 *        This routine frees the storage used by ticket specific request
 *        data.
 *
 * Results:
 *        None.
 *
 * Side effects:
 *        Memory freed.
 *
 *-----------------------------------------------------------------
 */

static void freeTicketReqData(void *dataPtr)
    {
    TICKET_Request *ticketPtr = dataPtr;
    DStringFree(&ticketPtr->rawUrl);
    DStringFree(&ticketPtr->sid);
    DStringFree(&ticketPtr->fields);
    DStringFree(&ticketPtr->signature);
    DStringFree(&ticketPtr->ticketIP);
    free(ticketPtr);
    }
```

5,708,780

75                                              76

6 /

```
/*
 *-----------------------------------------------------------------
 *
 * GetSecret --
 *
 *       Given a binary keyID, returns an ascii secret from the
 *       secrets store.
 *       for untranslatable names, return NULL.
 *
 * Results:
 *       "I've got a secret, now you do too"
 *
 * Side effects:
 *
 *
 *-----------------------------------------------------------------
 */

char *GetSecret(int kid)
    {
    HashEntry *entryPtr;

    entryPtr = FindHashEntry(&TicketServerData.SecretsKid, (void *) kid);
    if(entryPtr == NULL) return NULL;
    return DStringValue((DString *)GetHashValue(entryPtr));
    }
```

5,708,780

77                                                        78

```
/*
 *------------------------------------------------------------------------
 *
 * GetKidByKeyID --
 *
 *      Given an ascii  KeyID return the binary KeyID.
 *      for untranslatable names, return -1.
 *
 * Results:
 *      "I've got a secret, now you do too"
 *
 * Side effects:
 *
 *
 *------------------------------------------------------------------------
 */

int GetKidByKeyID(char *keyID)
        {
        HashEntry *entryPtr;

        entryPtr = FindHashEntry(&TicketServerData.KeyID, (void *) keyID);
        if(entryPtr == NULL) return -1;
        return (int) GetHashValue(entryPtr);
        }
```

5,708,780

79                                                                80

63

```
/*
 *-------------------------------------------------------------------
 *
 * fieldParse --
 *
 *      Given a string, a separator character, extracts a field up to the
 *      separator into the result string.
 *      Does substitution on '%XX' sequences, and returns the pointer to the
 *      character beyond last character in '*endptr'.
 *
 * Results:
 *      Returns a malloc'ed string (caller must free), or NULL if an
 *      error occurred during processing (such as an invalid '%' sequence).
 *
 * Side effects:
 *      None.
 *
 *-------------------------------------------------------------------
 */
#define SIZE_INC 200
static char *fieldParse(char *str, char sep, char **endptr)
{
        char buf[3];
        char c;
        char *end, *data, *p;
        int maxlen, len;

        len = 0;
        maxlen = SIZE_INC;
        p = data = malloc(maxlen);

    /*
     * Loop through string, until end of string or sep character.
     */
        while(*str && *str != sep) {

            if(*str == '%') {
                if(!isxdigit(str[1]) || !isxdigit(str[2])) {
                    free(data);
                    return NULL;
                }
                buf[0] = str[1];
                buf[1] = str[2];
                buf[2] = '\0';
                c = strtol(buf, &end, 16);
                str += 3;
            } else if(*str == '+') {
                c = ' ';
                str++;
            } else
                c = *str++;

            *p++ = c;
            len++;
            if(len >= maxlen) {
                maxlen += SIZE_INC;
                data = realloc(data, maxlen);
                p = data + len;
            }
```

5,708,780

81                                                      82

64

```
    }
  *p++ = '\0';
  *endptr = str;
  return data;
}
```

5,708,780

83                                                      84

65

```c
/*
 *-------------------------------------------------------------------
 *
 * DomainNameCmd --
 *
 *     A call to this routine, builds the ascii domain name
 *     to binary domain name maping structure for a numeric domain.
 *     Syntax is Domain number name1 name2 name3 name... name_last
 *     At least one name is required. The number is decimal and
 *     can be any value except -1. -1 is reserved as a marker
 *     for untranslatable names.
 *
 * Results:
 *     None.
 *
 * Side effects:
 *     Commands are validate, and entries added to the map
 *
 *-------------------------------------------------------------------
 */

static int DomainNameCmd(ClientData clientData, Tcl_Interp *interp,
                         int argc, char **argv)
    {
    int new,i;
    HashEntry *entryPtr;
    int DomNumber;
    DString DomName;


    if (argc <3)
        {
        Tcl_AppendResult(interp, argv[0], " directive:  wrong number of "
                "arguments, should be \"3\"",
                (char *) NULL);
        return TCL_ERROR;
        }

    DStringInit(&DomName);


    if (((sscanf(argv[1], "%d", &DomNumber) != 1) || (DomNumber == -1)))
        {
        Tcl_AppendResult(interp, argv[0], " directive: ",
                "Domain number must be an integer, and not equal to -1",
                ", value found was ",argv[1],
                (char *) NULL);
        return TCL_ERROR;
        }

    for (i = 2; i < argc; i++)
        {
        DStringFree(&DomName);
        DStringAppend(&DomName, argv[i], -1);
        strtolower(DStringValue(&DomName));
        entryPtr = CreateHashEntry(&TicketServerData.Domains, DStringValue(&DomNam
        if (new == 0)
            {
            Tcl_AppendResult(interp, argv[0], " directive:  ",
```