## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PRISM TECHNOLOGIES LLC

      Plaintiff,

      v.

VERISIGN, INC., RSA SECURITY, INC.,
NETEGRITY, INC., COMPUTER
ASSOCIATES INTERNATIONAL, INC., and
JOHNSON & JOHNSON SERVICES, INC.,

      Defendants.

**Civil Action No. CA 05-214 JJF
Jury Trial Demanded**

## DEFENDANT VERISIGN'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DECLARE THIS CASE EXCEPTIONAL  PURSUANT TO 35 U.S.C. § 285 AND FOR AN AWARD OF ATTORNEYS' FEES

Patricia Smink Rogowski
Del. Bar ID 2632
CONNOLLY BOVE LODGE & HUTZ LLP
P.O. Box 2207
1007 N. Orange Street
Wilmington, DE  19899
progowski@cblh.com
(302) 658-9141

Filed:  March 12, 2008

OF COUNSEL:

Edward F. Mannino
Akin Gump Strauss Hauer & Feld LLP
One Commerce Square, Suite 2200
2005 Market Street
Philadelphia, PA 19103
Telephone: (215) 965-1200

Daniel Yonan
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, NW
Washington, DC 20036-1564
Telephone: (202) 887-4000

# TABLE OF CONTENTS

I.      STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS...................1

II.     SUMMARY OF ARGUMENT ......................................................................................1

III.    STATEMENT OF FACTS .............................................................................................2

        A.      Prism's Own Theory of Infringement Requires the Use of OTP Tokens When
                Connected to a Client Computer Or PKI Tokens When Used With OCSP Service............3

        B.      Prism's Pre-Filing Investigation Failed to Identify Any Customer Who Used Any
                VeriSign Token In An Infringing Way ............................................................................4

        C.      Despite Almost 2 Years of Discovery, Prism Failed To Find A Direct Infringer ...4

IV.     ARGUMENT.................................................................................................................6

        A.      This Case is Exceptional Under 35 U.S.C. § 285 And Warrants the Award of
                Attorneys' Fees ..............................................................................................................6

                1.      Prism Filed Its Complaint Without Any Good Faith Basis To Do So.........7

                2.      Prism Aggressively Prosecuted This Case Knowing Full Well It Had No
                        Evidence Of A Direct Infringer ............................................................................8

V.      CONCLUSION..............................................................................................................11

## TABLE OF AUTHORITIES

### FEDERAL CASES

*ACCO Brands, Inc. v. ABA Locks Manufacturer Co., Ltd.*, 501 F.3d 1307
(Fed. Cir. 2007) ...................................................................................................6, 9, 10

*Brooks Furniture Mfg., Inc. v. Dutailer Int'l, Inc.,* 393 F.3d 1378 (Fed. Cir. 2005) .....6, 11

*DSU Med. Corp. v. JMS Co., Ltd.,* 471 F.3d 1293 (Fed. Cir. 2006) ....................................7

*Eltech Sys. Corp. v. PPG Indus., Inc.,* 903 F.2d 805 (Fed. Cir. 1990) ...............................6

*Judin v. United States,* 110 F.3d 780 (Fed. Cir. 1997) .......................................................8

*Minn. Mining & Mfg. Co. v. Chemque, Inc.,* 303 F.3d 1294 (Fed. Cir. 2002) ...............6, 7

*View Engineering, Inc. v. Robotic Vision Systems, Inc.,* 208 F.3d 981 ...............................8

### STATUTES

35 U.S.C. § 285 ...........................................................................................................1, 2, 6

FED. R. CIV. P. 11 ......................................................................................................2, 6, 7, 8

FED. R. CIV. P. 54(d)(2) ....................................................................................................1

## I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

On April 11, 2005, Plaintiff Prism Technologies LLC ("Prism") sued Defendant VeriSign Inc. ("VeriSign") for infringement of U.S. Patent No. 6,516,416 ("the '416 patent"). Following its *Markman* Order, in which the Court construed critical terms in Defendant VeriSign's favor, this Court entered Final Judgment of non-infringement on April 23, 2007. Prism appealed.

Last month, the Court of Appeals for the Federal Circuit affirmed this Court's decision under FED. CIR. R. 36 in a per curiam affirmance (the day after the hearing), and on February 27, 2008, issued its mandate back to this Court. Defendant VeriSign now moves the Court pursuant to 35 U.S.C. § 285 to declare this an exceptional case and to award reasonable attorneys' fees.

The Court's Final Judgment expressly permitted any party to move for recovery of attorneys' fees in accordance with the applicable statutes and rules after disposition of any appeal. In accordance with the Court's Order and FED. R. CIV. P. 54(d)(2), VeriSign files this Motion within 14 days after the Federal Circuit issued its mandate to this Court, which concluded the appeal. As a result, the instant Motion is timely.

## II.    SUMMARY OF ARGUMENT

In blatant disregard of its obligations, Prism filed this lawsuit against VeriSign and other industry leaders, not because it had any good-faith belief regarding infringement, but because Prism's newly devised business strategy was to try and extract settlements from corporate defendants to fund its business. Prism admitted its aim was to "scare" defendants like VeriSign in hopes of attaining this goal. Therefore, without ever buying or even possessing a single VeriSign product, and armed *only* with information gleaned from an e-mail that Prism's Vice President and Chief Technical Office admits he gained under false pretenses (which itself failed to identify any evidence of infringement), Prism nonetheless blindly filed suit.

Though it conceded its case against VeriSign was for indirect infringement, even after two years of aggressively litigating this case including forcing VeriSign to produce over 1.6 million pages of documents and source code and deposing no less than 7 VeriSign witnesses, Prism was unable to identify any evidence whatsoever of a direct infringer, despite VeriSign's repeated requests that it do so. Prism maintained its allegations without a good-faith basis because it continued to vigorously prosecute this indirect infringement case to judgment and through appeal without any evidence of a direct infringer, in contravention of well-settled Federal Circuit law. Prism's conduct ran afoul of its pre-suit and continuing investigation obligations under FED. R. CIV. P. 11, constitutes litigation misconduct, and warrants that this case be deemed exceptional under 35 U.S.C. § 285. As a result, VeriSign should be reimbursed for its reasonable attorneys' fees incurred in defending this baseless action, in an amount to be determined by the Court.[1]

## III.    STATEMENT OF FACTS

The facts relevant to this Motion are straightforward. First, the asserted claims of the '416 patent require a hardware key to be used *in* a computer system *in* a specific manner (*e.g.*, in combination with other services). Second, before filing this suit, Prism never formed a good-faith belief that any of VeriSign's customers used the hardware key in such a system in the required manner, which is the legally necessary act of direct infringement. Such an act is required by U.S. patent law to support a claim that VeriSign is liable for indirect infringement by contributing to or inducing its customer's direct infringement. Third, Prism tried and failed to find any such evidence in almost two years of discovery. Accordingly, Prism knew its indirect

---

[1] Attached to this Memorandum is a declaration of all fees VeriSign has paid in defense of this matter. *See* Ex. S, Declaration of D. Yonan.

infringement claims against VeriSign were frivolous because they lacked a supporting act of direct infringement, even under its own theory of infringement.

**A.    Prism's Own Theory of Infringement Requires the Use of OTP Tokens When Connected to a Client Computer Or PKI Tokens When Used With OCSP Service**

Prism's asserted patent claims require a computer system to authenticate a subscriber by connecting a "hardware key" to a "client computer" and sending information from the key to a "clearinghouse." Ex. A, *see generally* '416 patent claims 1 and 24. VeriSign sells a multipurpose token (also known as a hybrid token) that connects to a computer by a USB port. Prism accused this token of meeting the claimed "hardware key" limitation. Because VeriSign sells only the token, Prism accused VeriSign of contributing to or inducing infringement by its customers, who own client computers and computer systems but purchase VeriSign tokens.

VeriSign's multipurpose token includes two authentication related functions. First, the tokens can generate a one-time password ("OTP"). Prism asserted that the OTP function results in infringement if the token is connected to the computer so that the token's OTP can be read through the USB connection. Ex. B, Prism Second Supp. Res. to VeriSign Interrogatory No. 2. Second, the tokens can store and present digital certificates, which is referred to as a "PKI" function. Prism asserted that the PKI function results in infringement if the customer also uses an optional validation service called the online certificate status protocol or "OCSP." *Id.* No other use of VeriSign's hardware tokens was accused of infringement. Accordingly, to support its indirect infringement allegations against VeriSign, Prism must identify a customer that has actually used either an OTP token in connected mode or a PKI token with the optional OSCP service.

3

B.    **Prism's Pre-Filing Investigation Failed to Identify Any Customer Who Used Any VeriSign Token In An Infringing Way**

Prism's pre-filing investigation failed to uncover any customer that used VeriSign's tokens in the infringing manner described above.  Prism reviewed and evaluated publicly available documents regarding VeriSign's accused products.  Ex. C, Prism Res. to VeriSign Interrogatory No. 10.  None of those documents identified any customer as having used either an OTP token in connected mode or used a PKI token with OCSP service.

Prism then sought to identify a direct infringer by having Mr. Gregg, Prism's Vice-President and Chief Technology Officer, and lead inventor of the '416 patent, contact VeriSign's sales force as a "potential" VeriSign customer.[2]  Mr. Gregg was unable to find information that showed any of VeriSign's customers used its hardware keys in the manner Prism believes infringes.  Prism's complaint also fails to identify or allege that any VeriSign customer is a direct infringer.

In addition, Prism admitted it failed to purchase, test, set-up, or even operate any of the VeriSign products it accused of infringement prior to the filing of this litigation.  Ex. E, Prism's Res. to VeriSign's Reqs. for Admission Nos. 9-11 and 18.

C.    **Despite Almost 2 Years of Discovery, Prism Failed To Find A Direct Infringer**

After conducting extensive fact discovery, Prism still could not develop any evidence of a direct infringement.  Every VeriSign employee and corporate deposition taken by Prism failed to reveal any instances of direct infringement.[3]

---

[2] Mr. Gregg admitted this was conduct was not in "good-faith."  Ex. D, 11/22/06 R. Gregg Dep. at 427:2-5.

[3] Generally, the following VeriSign employees were deposed by Prism, and there is *no* evidence of any infringement, direct or otherwise, in any of these depositions.  11/14/06 Deposition of C. Gardner; 11/15/06 Deposition of M. Olsen; 11/28/06 Deposition of M. Shilts;

Specifically, Prism failed to find any customer that used an OTP token in a connected mode or that used a PKI token with OCSP service. To the contrary, the evidence confirmed that VeriSign's customers were using VeriSign's tokens in alternative, non-infringing ways. Ex. F, VeriSign Res. to Prism Interrogatory No. 13; *see also* Ex. G, VeriSign Res. to Prism Interrogatory No. 3.

During written discovery, VeriSign asked Prism to identify anyone who has actually implemented the accused VeriSign products in a manner consistent with Prism's direct infringement theory. Ex. H, Prism Res. to VeriSign Interrogatory No. 11; *see also* Ex. I, Prism Res. to VeriSign Interrogatory No. 14. Stating its information came from public documents (likely VeriSign's web site), Prism identified four VeriSign customers, U.S. Bancorp, Bank of America, Barclay's Bank, and Paypal. *Id.* The public information, however, merely established that those four entities were VeriSign customers, not that they had used the tokens in the specific manner that Prism believed resulted in infringement – an OTP token that is connected to the computer or a PKI token with OCSP service. Prism confirmed through fact discovery that none of these customers used VeriSign's tokens in those ways, and some are *not even using* any tokens altogether. *See, e.g.*, Ex. J, 2/6/07 Dep. of N. Popp at 235:13 – 236:6 ("[t]hey [Bank of America] have the ability to purchase tokens … [t]hey have not purchased any VeriSign tokens yet.").[4] Prism's final chance to disclose an instance of direct infringement came during its Rule 30(B)(6) deposition, however, it was still unable to identify a single example. *See generally* Ex. L, 2/7/07 Dep. of N. Popp.

---

11/30/06 Deposition of S. Bajaj; 11/30/06 Deposition of D. Lin; 12/20/06 Deposition of K. Loftus; and 02/06/07 – 02/07/07 Depositions of N. Popp.

[4] The only third-party deposition taken of a VeriSign customer was that of Election Systems & Software, which clearly established that it had never used or sold any VeriSign accused product. Ex. K, 01/31/07 Dep. of V. Williams at 22:7 – 23:5; 183:20 – 186:7.

Throughout the case, VeriSign conferred with and wrote to Prism's counsel, repeatedly asking Prism to identify an instance of direct infringement to support its indirect claim against VeriSign. Ex. M, 1/11/07 ltr. from D. Yonan to A. Bahou; Ex. N, 3/30/07 ltr. from D. Yonan to A. Bahou; Ex. O, 7/13/07 ltr. D. Yonan to A. Burgy; Ex. P, 10/02/07 ltr. from F. Cimino to R. Schutz. Those requests went unanswered, a tacit acknowledgment by Prism that it had no such evidence.

## IV.    ARGUMENT

### A.    This Case is Exceptional Under 35 U.S.C. § 285 And Warrants the Award of Attorneys' Fees

Under 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." A case may be deemed exceptional when there has been some material inappropriate conduct related to the matter in litigation, including misconduct during litigation, vexatious or unjustified litigation, or other conduct that violates FED. R. CIV. P. 11. *Brooks Furniture Mfg., Inc. v. Dutailer Int'l, Inc.,* 393 F.3d 1378, 1381 (Fed. Cir. 2005).

Prism blindly filed this case with no good-faith basis and continued to aggressively prosecute the case knowing there was no evidence of direct infringement. *Eltech Sys. Corp. v. PPG Indus., Inc.,* 903 F.2d 805, 811 (Fed. Cir. 1990) (where a patentee is "manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith, whether grounded or denominated wrongful intent, recklessness, or gross negligence.").

Prism conceded this was an indirect infringement case which required proof of a direct infringer. The Federal Circuit has made it clear that "[i]n order to prevail on an inducement claim, the patentee must establish 'first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage

another's infringement.'" *ACCO Brands, Inc. v. ABA Locks Manufacturer Co., Ltd.,* 501 F.3d 1307, 1312 (Fed. Cir. 2007) quoting *Minn. Mining & Mfg. Co. v. Chemque, Inc.,* 303 F.3d 1294, 1304-05 (Fed. Cir. 2002).  Further, specific intent requires a "showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements." *Id.* quoting *DSU Med. Corp. v. JMS Co., Ltd.,* 471 F.3d 1293, 1304 (Fed. Cir. 2006) (en banc in relevant part) (quoting *Manville Sales Corp. v. Paramount Sys., Inc.,* 917 F.2d 544, 554 (Fed. Cir. 1990).  In order to prove direct infringement, a patentee must either point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit.  *ACCO* citing *Dynacore Holdings Corp. v. U.S. Philips Corp.,* 363 F.3d 1263, 1275-76 (Fed. Cir. 2004).

Here, even under its own theory of infringement, Prism never had any evidence of direct infringement either before it filed its Complaint or at anytime during the more than two year prosecution of this case.  Because Prism knew it lacked such critical evidence yet aggressively prosecuted this case anyway, its conduct was vexatious and in bad faith.

### 1.    Prism Filed Its Complaint Without Any Good Faith Basis To Do So

By filing this case against VeriSign without evidence of a single customer that used VeriSign's tokens in the accused manner, Prism engaged in unjustified litigation and violated RULE 11.  At the time this case was filed, Prism was a patent holding company that feverishly tried to license its patent since 2003 – to no avail.  Its own President, Greg Duman, admitted that because it could not do so, Prism made a conscious choice to alter its business plan to one where Prism pursued litigation in hopes of raising revenue.  Prism's new business plan – by its own admission – was to pursue the "Stalin theory – kill one, scare a thousand." Ex. Q at P043740.  It was through the implementation of this new strategy that Prism filed suit against VeriSign, notwithstanding the lack of any evidence upon which to do so.

7

Because Prism was unaware of any instances of direct infringement before it filed its Complaint, it had no good-faith basis to sue VeriSign. Indeed, Prism's own 30(b)(6) witness, its Vice-President and Chief Technology Officer, Rick Gregg, admitted that Prism's pre-filing investigation consisted only of reviewing publicly available documents from VeriSign's website and his own unsuccessful attempt to pose as a potential customer and attempt to induce a VeriSign sales representative to admit infringing uses were known to the company.[5]  That sales representative did not take the bait and made no such admission. Thus, Prism had no basis whatsoever to believe any VeriSign customer used any VeriSign product in an infringing manner, at the time Prism first filed suit.

Because Prism filed its Complaint without any good-faith belief that a single customer used any VeriSign product in the manner Prism asserts infringes its patent, its filing runs afoul of its obligations under Rule 11. *View Eng'g, Inc.,* 208 F.3d at 984 ("[r]ule 11 of the Federal Rules of Civil Procedure imposes a duty on attorneys to certify by their signature that (1) they have read the pleadings or the motions they file and (2) the pleading or motion is 'well-grounded in fact,' has a colorable basis in law, and is not filed for an improper purpose.").

### 2.    Prism Aggressively Prosecuted This Case Knowing Full Well It Had No Evidence Of A Direct Infringer

For more than two years, Prism desperately searched for a direct infringer, but found no evidence that one existed. In the meantime, Prism forced VeriSign to produce over 1.6 million

---

[5]  Prism admitted that it never even looked at any VeriSign products prior to filing this case which, on its own, is sufficient evidence that a pre-filing investigation was inadequate. Ex. E. *See Judin v. United States,* 110 F.3d 780 (Fed. Cir. 1997) (the Federal Circuit reversed a district court's denial of a motion for Rule 11 sanctions for lack of an adequate pre-filing investigation and stated that "[n]o adequate explanation was offered for why they failed to obtain, or attempted to obtain, a sample of the accused device from [the accused infringer] or a vendor so that its actual design and functioning could be compared with the claims of the patent."); *see also View Engineering, Inc. v. Robotic Vision Systems, Inc.,* 208 F.3d 981. 983-86 (Fed. Cir. 2000).

pages of documents, its proprietary source code, and subjected seven VeriSign witnesses to lengthy depositions. In the end, all of this effort was futile as it only confirmed what VeriSign had told Prism all along – it had no customers that used VeriSign tokens in the manner that Prism asserted infringed its patent.

Prism has never argued that the mere use of an OTP or a PKI token, by itself, infringes the '416 patent. Instead, Prism asserted that an OTP token infringes if used in connected mode (something VeriSign's OTP tokens do not do) and the PKI token infringes if used with a premium OCSP service (which none of its PKI token customers subscribe to for cost and other reasons). Prism identified 4 customers that it alleged infringed, but it never developed any contentions against them that they used OTP in connected mode or PKI with the OCSP service. Moreover, after almost two years of taking fact discovery regarding these and other VeriSign customers, Prism still cannot verify a single customer who used the OTP token in connected mode or a PKI token with OCSP service. To the contrary, discovery has demonstrated that none of VeriSign's customers used systems in the manner Prism claimed infringed.

Prism's failure to find such evidence was also confirmed by its own corporate witness, Mr. Gregg, who himself was unable to identify any tangible evidence of infringement. All that Mr. Gregg confirmed was that Prism relied on its inadequate pre-filing materials, *e.g.*, publicly available materials from "Google" searches and surreptitiously gathered emails when he "posed" as a potential VeriSign customer, to maintain its allegations that VeriSign's accused products infringed. Ex. R, 11/21/06 Dep. of R. Gregg at 151:12 – 154:20. Counsel for VeriSign repeatedly brought this fact and the fact that VeriSign's products were not used in the manner asserted by Prism to the attention of Prism and its counsel. Exs. M – P. However, Prism continued to prosecute this case for over two years on the basis that VeriSign tokens could

9

potentially be used in an infringing manner but never had any evidence that they were actually used in such a way.

The *potential* for a direct infringement is not enough, Prism needs to show *actual* instances of direct infringement. *See ACCO Brands, Inc.*, 501 F.3d at 1312-13. In *ACCO Brands, Inc.*, the Federal Circuit overturned a jury's verdict of indirect infringement, noting that the patentee failed to point to specific instances of direct infringement. *Id.* at 1313. The Federal Circuit reiterated its well-settled body of law on indirect infringement by holding that "[b]ecause the accused device can be used at any given time in a non-infringing manner, the accused device does not necessarily infringe the [asserted] patent." *Id.* "Hypothetical instances of direct infringement are insufficient to establish vicarious liability or indirect infringement." *Id.*

Hypothetical instances of direct infringement are all that Prism was able to put forward in this litigation, because none of VeriSign's customers directly infringe Prism's patent in the manner Prism contends. This is precisely the type of conduct that the Federal Circuit has cautioned against and its perpetuation in this case cannot be condoned. As in *ACCO*, the present record lacks any evidence of actual infringement. Prism admits VeriSign's tokens can be used in non-infringing ways. Therefore, under *ACCO*, sales of VeriSign's tokens are not enough for Prism to maintain its suit against VeriSign. Prism was required to cite evidence showing that a customer actually used VeriSign's tokens in an infringing way. There was no such evidence in this case.

Even after repeated attempts to produce any evidence of direct infringement, Prism was unable to do so. Yet Prism continued to aggressively fight through judgment and appeal forcing VeriSign to incur substantial costs to defend this aggressively litigated case at every turn. Because Prism did this all without any sufficient evidence of infringement, its conduct was

vexatious. *Brooks Furniture Mfg., Inc. v. Dutailer Int'l, Inc.,* 393 F.3d 1378, 1381 (Fed. Cir. 2005).

## V.   CONCLUSION

Based on all the foregoing, VeriSign respectfully requests that this case be deemed exceptional thus warranting that VeriSign be compensated for its reasonable attorneys' fees in an amount to be determined by the Court.

VERISIGN INC.

Date: March 12, 2008                 By:

Patricia Smink Rogowski
Del. Bar ID 2632
CONNOLLY BOVE LODGE & HUTZ LLP
P.O. Box 2207
1007 N. Orange Street
Wilmington, DE  19899
progowski@cblh.com
(302) 658-9141

**OF COUNSEL:**

Edward F. Mannino
Akin Gump Strauss Hauer & Feld LLP
One Commerce Square, Suite 2200
2005 Market Street
Philadelphia, PA 19103
Telephone: (215) 965-1200


Daniel Yonan
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, NW
Washington, DC 20036-1564
Telephone: (202) 887-4000

## CERTIFICATE OF SERVICE

I, Patricia Smink Rogowski, hereby certify that on this 12th day of March, 2008, I electronically filed DEFENDANT VERISIGN'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DECLARE THIS CASE EXCEPTIONAL PURSUANT TO 35 U.S.C. §285 AND FOR AN AWARD OF ATTORNEYS' FEES with the Court Clerk using CM/ECF which will send notification of such filing(s) to::

Richard D. Kirk
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899-5130
rkirk@bayardfirm.com

Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza- Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
rhorwitz@potteranderson.com
dmoore@potteranderson.com

Frederick L. Cottrell, III
Steven J. Fineman
Richards Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE  19899-0551
cottrell@rlf.com
fineman@rlf.com

Steven J. Balick
John G. Day
Ashby & Geddes
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

I hereby further certify that on this 12th day of March, 2008, I have served this document on the attorneys of record at the following addresses as indicated:

## VIA ELECTRONIC MAIL

Ronald J. Schutz
David P. Swenson
Robins, Kaplan, Miller & Ciresi, LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
PrismCounsel@rkmc.com

John DiMatteo
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY  10019-6099
PrismLitigation-JJSI@willkie.com

David M. Schlitz
Baker Botts LLP
1299 Pennsylvania Avenue, NW
Washington, DC  20004-2400
DLDallasPrismLitigationCA-
Netegrity@BakerBotts.com

Gregory P. Teran
Wilmer Cutler Hale & Dorr LLP
60 State Street
Boston, MA  02109
RSAPrismLitigation@wilmerhale.com

Samir A. Bhavsar
Baker Botts LLP
2001 Ross Avenue
Dallas, TX  75201-2980
DLDallasPrismLitigationCA-
Netegrity@BakerBotts.com

By: _Patricia S Rogowski_

Patricia Smink Rogowski (DE Bar #2632)
Connolly Bove Lodge & Hutz LLP
P.O. Box 2207
1007 N. Orange Street
Wilmington, DE  19899
(302) 658-9141
progowski@cblh.com

484403_2