# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PRISM TECHNOLOGIES LLC

      Plaintiff,

      v.

VERISIGN, INC., RSA SECURITY, INC.,
NETEGRITY, INC., COMPUTER
ASSOCIATES INTERNATIONAL, INC.,
and JOHNSON & JOHNSON SERVICES, INC.,

      Defendants.

Civil Action No. 05-214 JJF

---

**MEMORANDUM OF PLAINTIFF PRISM TECHNOLOGIES LLC
IN OPPOSITION TO DEFENDANT VERISIGN INC.'S MOTION
TO DECLARE THIS CASE EXCEPTIONAL PURSUANT TO 35 U.S.C. § 285
AND FOR AN AWARD OF ATTORNEYS FEES**

Richard D. Kirk (rk0922)
BAYARD, P.A.
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899-5130
(302) 655-5000

ATTORNEYS FOR PLAINTIFF
PRISM TECHNOLOGIES LLC

OF COUNSEL:

David Swenson
ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
(612) 349-8500

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND .............................................................................................. 3

    A.    Prism Conducted an Extensive Investigation Before It Filed this Suit ......................... 4

    B.    Throughout this Litigation, Prism Repeatedly Provided Detailed Infringement
          Contentions to VeriSign, Including Direct Infringement ............................................. 5

ARGUMENT ...................................................................................................................... 8

I.     VERISIGN CANNOT AND HAS NOT ESTABLISHED THAT THIS CASE IS
       EXCEPTIONAL UNDER 35 U.S.C. § 285 .............................................................. 8

    A.    Prism Filed This Case In Good Faith .................................................................... 11

    B.    Prism Continued to Litigate This Case In Good Faith ............................................ 13

    C.    Prism Stipulated to Non-Infringement Immediately after This Court's Claim
          Construction Order Issued ..................................................................................... 15

CONCLUSION ................................................................................................................. 16

## TABLE OF AUTHORITIES

Page

**Cases**

*ACCO Brands, Inc. v. ABA Locks Mfg. Co. Ltd.*, 501 F.3d 1307 (Fed. Cir. 2007) ...................... 10

*Antonious v. Spalding,*
    275 F.3d 1066 (Fed. Cir. 2002) .................................................................................. 11, 12

*Aptix Corp. v. Quickturn Design Sys., Inc.*
    269 F.3d 1369 (Fed. Cir. 2001) .................................................................................... 9

*Computer Docking Station Corp. v. Dell, Inc.*
    -- F.3d. --, 2008 WL 752675, at *10 (Fed. Cir. Mar. 21, 2008) .............................. 15

*E.I. Dupont De Nemours & Co. v. Monsanto Co.*
    903 F.Supp. 680 (D.Del. 1995) .................................................................................. 13

*Fantasy Sports Prop., Inc. v. Sportsline.com, Inc.*
    287 F.3d 1108 (Fed. Cir. 2002) .................................................................................. 13

*Forest Labs., Inc. v. Abbott Labs.*
    339 F.3d 1324 (Fed. Cir. 2003) .................................................................................... 9

*Hoffman-La Roche Inc. v. Invamed Inc.*
    213 F.3d 1359 (Fed. Cir. 2000) .................................................................................. 12

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*
    398 F. Supp. 2d 305 (D. Del. 2005).......................................................................... 11

*Intamin, Ltd. v. Magnetar Techs, Corp.*
    483 F.3d 1328 (Fed. Cir. 2007) .................................................................................. 11

*KAO Corp. v. Unilever United States, Inc.*
    441 F.3d 963 (Fed. Cir. 2006) ...................................................................................... 9

*Q-Pharma, Inc. v. Andrew Jergens Co.*
    360 F.3d 1295 (Fed. Cir. 2004) .......................................................................... 5, 6, 11, 12

*Rohm and Haas Co. v. Brotech Corp.*
    127 F.3d 1089 (Fed. Cir. 1997) .................................................................................. 12

*Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp.*
    459 F.3d 1311 (Fed. Cir. 2006) .................................................................................... 9

*USA Video Tech. Corp. v. Movielink, LLC*
    2005 WL 3418407 (D. Del. 2005)............................................................................ 10

**Statutes**

35 U.S.C. § 285............................................................................................................ passim

Federal Rule of Civil Procedure 54 ................................................................................ 11

Rule 11 .................................................................................................................. 4, 5, 11, 12

## INTRODUCTION

Plaintiff Prism Technologies only filed suit on April 11, 2005 against VeriSign after Prism's counsel conducted an extensive pre-filing investigation of VeriSign's infringement of Prism's U.S. Patent No. 6,516,416. Prism would later produce and further update claims charts showing the work done prior to filing the complaint, which alleged direct and indirect infringement by VeriSign. By the time the stipulation was filed ending the case, Prism's claim chart for VeriSign was 60 pages long, and included 424 citations to the evidence.

For nearly two years, Prism continued to develop evidence of both direct and indirect infringement by VeriSign, including proof of what Prism believed showed VeriSign's own internal infringing use. And in February 2007, Prism saw for the first time a new exhibit from VeriSign witness Nicholas Popp that provided fresh information about likely predicate direct infringers to further Prism's indirect infringement contentions. In the meantime, Prism directed subpoenas to Bank of America, which were objected to, to try and secure further evidence of VeriSign's indirect infringement.[1] Before Prism completed potential additional third-party discovery to follow up on Mr. Popp's deposition, however, the Court issued its claim construction ruling on April 2, 2007.

Prism's response to this Court's construction is ample evidence in and of itself of the good faith with which Prism proceeded in this case. Prism recognized that the Court's adoption

---

[1] The timeline of the unresolved subpoenas to Bank of America is as follows:

(a) July 27, 2006 — Prism served subpoena duces tecum from the Eastern District of North Carolina;
(b) September 13, 2006 — Prism served an amended subpoena duces tecum from the Western District of North Carolina;
(c) September 21, 2006 — Bank of America served objections, refusing to produce any documents;
(d) November 15, 2006 — Prism moved to compel the production of documents;
(e) November 24, 2006 — Prism served another subpoena seeking testimony from Bank of America;
(f) December 4, 2006 — Bank of America moved to quash that subpoena and opposed the motion to compel;
(g) April 10, 2007 — Prism counsel wrote to one of defendants' attorneys stating Prism still awaited the North Carolina court's decision on Prism's subpoenas.

of defendants' constructions of key claim terms precluded Prism from maintaining its

infringement allegations. Prism immediately worked out a stipulation with VeriSign and the

other defendants to end the district court case, leading to dismissal on April 23, 2007, and to seek

review from the U.S. Court of Appeals for the Federal Circuit, which affirmed this Court on

February 27, 2008.

The basis for final judgment against Prism has nothing to do with any issue raised now by

VeriSign in its motion for attorneys' fees. Indeed, the dismissal occurred before the dispositive

motion deadline and prior to completion of expert reports or any expert discovery. The presence

of a third party direct infringer and the merits of Prism's direct infringement claims against

VeriSign itself were never reached by the Court, apart from the stipulation on the narrow issue

that VeriSign's products cannot infringe because they do not perform re-authentication under the

Court's construction.

VeriSign now accuses Prism both of failing to conduct an adequate pre-filing

investigation, and of pursuing the case against VeriSign without any reasonable basis for doing

so. Nothing could be further from the truth, as shown by, *inter alia*, the 60 pages of claim charts

served on VeriSign in September 2006. Indeed the premise of VeriSign's motion—that Prism

never identified a direct infringer—is blatantly false and contradicted by extensive evidence in

the record stretching from before filing and continuing until the parties stipulated to a dismissal

for appeal. Ultimately, Prism behaved in an extremely conscientious fashion and spared all

parties any ongoing effort and expense by quickly recognizing that the Court's construction

wiped out its infringement contentions, and pivoting to appeal that decision within a mere three

weeks. VeriSign cites no precedent that could possibly justify an award of fees on this record.

VeriSign flat out fails to meet the high standard for proving exceptional circumstances to justify an award of attorneys' fees in this case. A review of the factual record demonstrates that this case did not involve the vexatious, unjustified, frivolous, or bad-faith litigation necessary to support an award of the extreme sanction of attorneys' fees and expenses under 35 U.S.C. § 285. To the contrary, the record shows that Prism brought this lawsuit and litigated in good faith until the very end. Because VeriSign's arguments are ill-founded, rely on false premises, and fail to demonstrate by clear and convincing evidence that Prism's pre-suit investigation and prosecution of this case were objectively baseless, VeriSign's request for attorneys fees must be denied.

## FACTUAL BACKGROUND

By entirely omitting important evidence, VeriSign severely misrepresents the facts regarding Prism's pre-suit investigation and prosecution of this case. In truth, Prism properly prepared prior to filing, and diligently developed its case from 2005 till early 2007, as the parties continued to engage in discovery. Among the many misstatements in VeriSign's motion is the claim "VeriSign sells only the token" used in an infringing system, (D.I. # 464, VeriSign Motion at 3), when in reality VeriSign not only sells software too, but also hosts authentication services both for clients and for internal use by its employees. Presumably the Court will recall, for example, that it ordered VeriSign to produce to Prism the source code for this software, after VeriSign fought bitterly to withhold it. (D.I. #430, Oral Order, March 2, 2007.)

The record similarly belies VeriSign's mischaracterization of Prism's case as limited to indirect infringement. Prism continued to supplement its claim charts in support of its direct infringement allegations through September 2006. In November and December 2006, Prism deposed VeriSign employees who Prism would have asserted at trial engaged in acts of direct infringement. Then in February 2007, Prism took the deposition of Nicholas Popp, and learned

3

of additional VeriSign sales to third parties, which further substantiated Prism's indirect

infringement charges against VeriSign as well.  Prism would have sought additional discovery

from some of those third parties, and would have ultimately produced thorough expert reports

elaborating on both its direct and indirect infringement contentions, had the April 2, 2007 claim

construction order not effectively ended the case.  Prism immediately stipulated to non-

infringement, and timely appealed the Court's dispositive constructions.  VeriSign's allegation

that Prism vexatiously conducted this litigation is simply not supported by the facts.

### A.     Prism Conducted an Extensive Investigation Before It Filed this Suit.

VeriSign asserts in its motion for attorneys' fees that Prism launched this litigation

"armed *only* with information gleaned from an e-mail ...." (D.I. # 464, VeriSign Motion at 1

(emphasis in original)).  This is false.  With its attorneys, Prism collected abundant evidence and

developed detailed claim charts that analyzed VeriSign's infringing products on an element-by-

element basis, as required by Rule 11.  (Auchter Decl. at ¶ 4.)  Prism obtained and analyzed

several VeriSign guides, manuals, and other product documentation to develop these claim

charts.  (*Id.*)  As VeriSign is aware, Prism represented in verified interrogatory responses that the

claim charts provided to VeriSign on October 24, 2005 reflected this pre-filing investigation

effort.  (Slusser Decl., Ex. 1.)  This early claim chart included 23 footnotes citing documents

produced by Prism that counsel studied in its pre-filing investigation of VeriSign, and only three

of the 23 citations are to the e-mail from Mike Olsen that VeriSign alludes to in its motion.[2]  *Id.*

As discussed in the argument below, again contrary to VeriSign's motion, a would-be plaintiff

need not purchase and reverse engineer an actual product when sufficient information can be

---

[2] In addition, Prism's response to VeriSign Interrogatory No. 18, August 11, 2006, provided a table listing the pre-filing contacts Prism's Rick Gregg had with not only Mike Olsen, but also Bart Collida, which included six different calls or e-mails in which information was obtained about VeriSign's alleged direct and indirect infringement. (Slusser Decl., Ex. 2.)

obtained through product specifications or other such sources, as here. *See Q-Pharma, Inc. v. Andrew Jergens Co.,* 360 F.3d 1295,1302 (Fed. Cir. 2004).

The attached declaration from Prism counsel Robert Auchter further elaborates on how Prism's attorneys independently invested an enormous amount of time analyzing the '416 patent and developing a good faith belief that at least claims 1 and 24 read on potential defendants' implementations, including VeriSign's products. (Auchter Decl. at ¶ 2-4.) Prism's counsel applied claim 1 and 24 of the '416 patent to exemplary infringing products sold by VeriSign (including the VeriSign Go Secure! application and VeriSign Unified Authentication). (*Id.* at ¶ 4.) Additionally, Prism's counsel reviewed the prosecution history for the '416 patent, including the pertinent prior art. (*Id.* at ¶ 3.) In sum, Prism more than fully complied with Rule 11 before suing VeriSign.

**B.    Throughout this Litigation, Prism Repeatedly Provided Detailed Infringement Contentions to VeriSign, Including Direct Infringement.**

VeriSign continually asserts in its motion that Prism utterly lacked any direct infringement case (and therefore also could not sustain indirect infringement charges against VeriSign). This argument flies in the face of the entire record. Prism consistently asserted that both VeriSign and third parties it provided hardware and software to, or hosted authentication services for, directly infringed the '416 patent. Prism set this out in its complaint and amended complaint, and provided detailed claim charts throughout the litigation. In the original complaint, filed April 11, 2005, Prism described its allegations against VeriSign as follows:

> VeriSign is in the business of making, using, selling, or offering for sale computer programming products, information retrieval products, prepackaged software products and computer peripheral equipment, including identity and access management ("IAM") products in Delaware and elsewhere in the United States. Defendant VeriSign's IAM products include, but are not limited to, its Go Secure suite of applications and related hardware and

5

> software products and its Unified Authentication solution and
> related hardware and software products.

D.I. #1, Compl. at ¶ 4.  It cannot legitimately be disputed that Prism alleged both direct and

indirect infringement from the beginning, and throughout the course of this litigation.  *Id.* at ¶ 18.

Prism provided detailed claim charts alleging that VeriSign's Unified Authentication

Solution met all of the elements of at least claims 1 or 24 of the '416 patent.  (Slusser Decl., Ex.

1 at p. 6-10.)  On April 14, 2006, Prism provided a supplemental response to VeriSign's

interrogatories and submitted additional claim charts alleging that VeriSign's Unified

Authentication Solution, VeriSign's Go Secure Authentication Solution, and VeriSign's Identity

Protection Solution met all of the elements of at least claims 1 or 24 of the '416 patent.  (Slusser

Decl. Ex. 3, at 4-19.)  The April 14th claim charts for VeriSign had grown to 15 pages including

99 citations to the accumulating evidence of VeriSign's infringement.  The supporting material

relied on included numerous specification sheets, data sheets, manuals, and guides for the

accused VeriSign products—more than adequate evidence to establish how VeriSign's products

function, under *Q-Pharma*.  360 F.3d 1295,1302 (Fed. Cir. 2004).

On February 24, 2006, Prism provided responses to interrogatories and further identified

U.S. Bancorp and Bank of America as users of a fully infringing system.  At this time, Prism

alleged that U.S. Bancorp and Bank of America directly infringed the '416 patent because they

used VeriSign's Unified Authentication service, VeriSign's smartcards, or security tokens in an

infringing manner.  (Slusser Decl., Ex. 4 at 4-5.)  In that response, Prism also described pre-filing

evidence of third-party direct infringement in its possession going back to October 27, 2004,

including a telephone discussion with a VeriSign employee in February 2005.[3]  (*Id.*)

---

[3] This was one of the half-dozen pre-filing contacts Prism had with VeriSign employees identified in FN 2.

On June 15, 2006, Prism provided responses to VeriSign's Third Set of Interrogatories and alleged that "at least U.S. Bancorp has used USB tokens with VeriSign's Unified Authentication service, that at least Barclay's bank has used Smart Cards with VeriSign's Go Secure Solution, and that at least PayPal has used mass-storage and trusted flash devices with VeriSign's Identity Protection Solution." (Slusser Decl., Ex. 5 at 4.)

On September 20, 2006, Prism provided VeriSign with a 65-page supplemental response to its Interrogatory No. 2. In this massive compilation of evidence with 424 footnotes, Prism alleged that "VeriSign's Unified Authentication Solution, VeriSign's Go Secure Authentication Solution, VeriSign's Identity Protection Solution, and the related services meet all the elements of at least independent claims 1 and/or 24" and additional dependent claims. (Slusser Decl., Ex. 6 at 4.) Prism stated that "VeriSign has infringed, continues to infringe, induces others to infringe, and contributes to infringement by making, using, offering to sell, or selling the accused products and services." *Id.* This response contained 60 pages of explicit and detailed claim charts citing to documents VeriSign had produced in the litigation.

Despite VeriSign's self-serving and unsubstantiated claims to the contrary, Prism did adduce evidence of VeriSign's own direct infringement from the depositions of VeriSign employees. Kerry Loftus admitted at her deposition, for example, that she used a USB hybrid token in plugged-in mode with VeriSign's Unified Authentication to log in to VeriSign servers from her laptop at home. (Slusser Decl., Ex. 7, Loftus Dep. at 126:2-128:20.) Siddharth Bajaj likewise admitted to using either a hybrid token or a certificate stored on his laptop to log in remotely to VeriSign's network. (Slusser Decl. Ex. 8, Bajaj Dep. at 224:6-228:14.) Under Prism's proposed claim construction, an access key stored in a computer fell within the scope of the asserted claims, thus either the hybrid token or a certificate stored in a laptop would infringe

directly. (D.I. # 266, Prism's Opening Cl. Constr. Brf. at 27-28.) On the other hand, when it

became clear after Mr. Popp's deposition in early February 2007 that VeriSign's Go Secure

products did not infringe, Prism withdrew its claim of infringement for the entire product line.

(Slusser Decl., Ex. 9, Feb. 9, 2007 letter from A.J. Bahou to Frank Cimino.)

Discovery continued, however, and during Mr. Popp's deposition, Prism learned of

VeriSign sales to third parties that VeriSign had not previously disclosed. Prism requested

supplemental discovery related to these sales. (Slusser Decl., Ex. 10, Feb. 12, 2007 e-mail from

A.J. Bahou to Daniel Yonan.) Additionally, Prism had served multiple subpoenas on Bank of

America in mid- and late-2006 seeking discovery to confirm its belief that Bank of America was

using infringing tokens and VeriSign's Unified Authentication software based on a document

produced by VeriSign. (Slusser Decl., Ex. 11, VERI-1603565-66.) Mr. Popp testified that

certain connected tokens the documents indicated were sold to Bank of America were never

actually delivered. (Slusser Decl., Ex. 12, Feb. 6, 2007 Popp Dep at 236:1-7.) But when asked

follow up questions about other infringing tokens Prism believed Bank of America obtained to

use with VeriSign's accused system instead, Mr. Popp did not know the answer. (*Id.* at 236:8-

16.) Accordingly Prism continued to pursue direct evidence from Bank of America, before it

could reach a final conclusion on whether to proceed with this particular infringement charge.

All of these discovery efforts ceased when the Court issued its Markman Order on April 2, 2007,

and Prism quickly stipulated to non-infringement.

## ARGUMENT

### I.    VERISIGN CANNOT AND HAS NOT ESTABLISHED THAT THIS CASE IS EXCEPTIONAL UNDER 35 U.S.C. § 285.

Determining whether to award attorney fees under 35 U.S.C. § 285 is a two-step process:

first, the district court must determine whether an accused infringer seeking attorneys fees has

shown by clear and convincing evidence that the case is "exceptional"; then, if the court finds the case to be "exceptional," it must then determine whether an award of fees is appropriate. *Forest Labs., Inc. v. Abbott Labs.,* 339 F.3d 1324, 1327-28 (Fed. Cir. 2003).

Awards of attorneys' fees under § 285 are rare. Even the legislative history of this section emphasizes the expected rarity of such an award. As the Federal Circuit has noted, the Senate Report that accompanied the predecessor statute to § 285 stated that "'it is not contemplated that the recovery of attorney's fees will become an ordinary thing in patent suits.'" *Forest Labs. v. Abbott Labs.,* 339 F.3d 1324, 1328-29 (Fed. Cir. 2003) (internal citations omitted). In interpreting § 285, the Federal Circuit has "been mindful of the limited circumstances in which an award of attorney fees is appropriate." *Id.* at 1330. Such fees should be granted only to prevent a "gross injustice," *i.e.,* where a party pursues litigation in bad faith. *Id.; see also, e.g., Aptix Corp. v. Quickturn Design Sys., Inc.,* 269 F.3d 1369, 1375 (Fed. Cir. 2001) (affirming attorneys' fees award against patentee under § 285 for the "extreme litigation misconduct" of falsifying evidence). Under this bad-faith requirement, a party must have engaged in "vexatious, unjustified, or frivolous litigation." *Forest Labs.,* 339 F.3d at 1329-30.

The Federal Circuit has repeatedly recognized the absence of any general notion of cost-shifting in American litigation, and that a patentee's failure to win on the merits does not automatically warrant sanctions. *See, e.g., Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp.,* 459 F.3d 1311, 1322 (Fed. Cir. 2006) (affirming denial of attorney's fees against patentee where patentee obtained and relied on opinion of counsel before prosecuting its suit and court found that the infringement claims were not objectively baseless); *KAO Corp. v. Unilever United States, Inc.,* 441 F.3d 963, 975 (Fed. Cir. 2006) (affirming denial of fees against patentee and noting that "[a]lthough Kao's litigation position with respect to the infringement issue did not

9

prevail, it was not so lacking in merit as to warrant 'exceptional' status.  We conclude that the

district court's decision not to declare this case 'exceptional' was not clearly erroneous."); *see*

*also USA Video Tech. Corp. v. Movielink, LLC,* 2005 WL 3418407 (D. Del. 2005) (denying

motion for attorney's fees under § 285 because accused infringer failed to prove by clear and

convincing evidence that the patentee asserted its unsuccessful infringement claims in bad faith

and noting "[t]he fact that an argument fails does not make it baseless.").

      The *ACCO Brands* case, heavily relied upon by VeriSign, merely stands for the

unremarkable proposition that in order to prevail on an indirect infringement by inducement

claim, the patentee must first establish that a predicate act of direct infringement occurred.

*ACCO Brands, Inc. v. ABA Locks Mfg. Co., Ltd.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007)

(reversing jury determination of indirect infringement where record contained no evidence of

direct infringement).  At no time has Prism contested that a threshold showing of direct

infringement is necessary to prevail upon a claim of indirect infringement.  Unlike *ACCO*

*Brands*, in any event, Prism not only possessed evidence that VeriSign itself was *directly*

infringing the patent, which alone justified proceeding with the litigation, but Prism also

continued to develop evidence to establish that other end users were directly infringing the '416

patent, thus meeting the threshold requirement for an indirect infringement claim.  Prism's

subpoenas to Bank of America, for example, remained pending when the case concluded.

      VeriSign comes nowhere close to offering clear and convincing evidence that this case

could remotely be considered "exceptional" under § 285.  VeriSign cannot show that Prism

brought this suit in bad faith and that a gross injustice has occurred.  VeriSign attempts to build

its proof by distorting Prism's conduct in this litigation. Because the facts do not support an award of attorneys fees under § 285, VeriSign's motion should be denied.[4]

### A.    Prism Filed This Case In Good Faith

Prism's actions demonstrate that it properly investigated this case before filing suit. VeriSign's entire argument relies on the fact Prism did not purchase an accused product prior to filing this suit. Instead, Prism and its attorneys collected and studied product specifications, data sheets, manuals, and guides (as set forth in Prism's initial claim charts) to determine how VeriSign's products functioned. The Federal Circuit has held that if there is substantial public information to analyze a claim, a patentee need not obtain the accused device or reverse engineer the accused device prior to filing suit. *See Intamin, Ltd. v. Magnetar Techs, Corp.*, 483 F.3d 1328, 1338 (Fed. Cir. 2007); *Q-Pharma, Inc.,* 360 F.3d at 1302; *see also Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 398 F. Supp. 2d 305, 314 (D. Del. 2005) (holding that a reasonable investigation does not necessarily require reverse engineering to determine infringement if substantial public information is available). Rather, the most important requirement in filing a patent infringement suit is that the attorney performs an analysis of the claims, and that the suit is not based solely on the client's lay opinion of the accused device. *Q-Pharma, Inc.*, 360 F.3d at 1303; *Antonious v. Spalding*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) ("Although the attorney may consult with the client, Rule 11 requires that the attorney not rely solely on the client's claim interpretation, but instead perform an independent claim analysis.")

---

[4] VeriSign relies on a one-page attorney declaration based "on information and belief" to allege that it has paid "approximately $2,500,000 million dollars in fees in connection with the defense of this matter." Federal Rule of Civil Procedure 54(d)(2)(B)(iii) requires a party moving for attorneys fees to "state the amount sought or provide a fair estimate of it." Because VeriSign has not remotely met its obligation to provide evidence of its actual fees and has not indicated that it intends to supplement this declaration, the Court should not determine an award of attorneys' fees without additional information.

As explained above, Prism's pre-suit investigation was more than sufficient to bring suit against VeriSign. Prism gathered detailed documentation that explained the functions and features of the accused products. (Auchter Decl. at ¶ 4.) Prism and its attorneys then compared the information regarding the accused products to the asserted claims. (*Id.* at ¶ 2 and 4.) Prism's counsel independently analyzed the claims and rendered an opinion before bring suit. (*Id.* at ¶ 4.) Prism's counsel further analyzed the prosecution history and reviewed the prior art cited therein. (*Id.* at ¶ 3.) In doing so, Prism's counsel formed an objectively reasonable belief that the accused VeriSign products directly or indirectly infringed certain claims of the '416 patent. The record shows that Prism acted in good faith and does not support a finding that this case is "exceptional." *See Q-Pharma, Inc.,* 360 F.3d at 1303-04 (affirming denial of award of attorneys fees where patentee had conducted pre-filing investigation and had a reasonable belief that its patent was valid and infringed when it filed suit); *Hoffman-La Roche Inc. v. Invamed Inc.*, 213 F.3d 1359, 1365-66 (Fed. Cir. 2000) (finding the existence of a reasonable pre-filing inquiry as a basis for declining to find case exceptional); *Rohm and Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1093 (Fed. Cir. 1997) (denying request for fees because the patentee's "initial claim of infringement was not unreasonable in light of the available information at the time of filing" and since patentee cooperated in discovery).

Further, VeriSign is not entitled to employ hindsight to declare Prism's pre-suit investigation inadequate on the basis of the claim construction order. Prism had a good faith basis to analyze the claims according to its own reasonable claim construction. *Antonious*, 275 F.3d at 1073 (reversing and remanding district court's sanctions order under Rule 11(b)(2) where court rejected plaintiff's counsel proffered construction of the claim language and holding that there was not enough to conclude that the plaintiff's proposed construction was so clearly

12

incorrect as to be frivolous); *Fantasy Sports Prop., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1120 (Fed. Cir. 2002) (holding that despite unfavorable claim construction ruling, case was not exceptional because plaintiff performed adequate pre-filing investigation and defendant did not demonstrate that proposed construction was unreasonable); *E.I. Dupont De Nemours & Co. v. Monsanto Co.*, 903 F.Supp. 680, 719 (D.Del. 1995) (denying fees sought by defendant under § 285 because patentholder's construction of patent claims "was plausible"). VeriSign has proffered no evidence to show that Prism's claim constructions were objectively unreasonable. In ongoing good faith, Prism stipulated to a dismissal for appeal as soon as the Court ruled against it on key claim construction issues that Prism recognized would make its infringement contentions untenable.

### B.    Prism Continued to Litigate This Case In Good Faith.

VeriSign wrongly contends that, after filing suit, Prism continued this litigation in bad faith. VeriSign's entire argument boils down to its unsupported and incorrect assertion that Prism continued to litigate this case without any good faith belief that any act of direct infringement had occurred. In doing so, VeriSign inexplicably and without attribution insists that Prism conceded that this case was limited to a claim for indirect infringement.

Since the beginning of this case, however, Prism has accused VeriSign of directly infringed the asserted claims of the '416 patent, and the developing evidence showed that alleged direct infringement to include VeriSign's testing of the accused tokens as well as VeriSign's internal use of the tokens. Those contentions are fully supported by the testimony of VeriSign's employees—Nicholas Popp, Kerry Loftus, and Siddharth Bajaj—who confirmed that at least some VeriSign employees used the accused tokens with VeriSign hosted authentication services, and thereby directly and thus infringed the asserted '416 patent claims.

In addition, VeriSign produced documents, such as invoices and orders, which confirmed that substantial sales of connected tokens occurred for use in infringing systems. For example, VeriSign produced an itemized sales spreadsheet showing that Bank of America and other third parties bought VeriSign's USB hybrid tokens plus VeriSign's Unified Authentication Service. (Slusser Decl. Ex. 11, VERI-1603560-1603591.) As noted in VeriSign's brief, Prism alleged that Bank of America was a direct infringer. Moreover, despite the fact Prism had obtained evidence to support its infringement assertion, it bears emphasis that there was outstanding discovery when this Court issued its Markman Order, which effectively concluded the district court proceedings. At the time, Prism had two subpoenas and a related motion to compel pending in another court directed to Bank of America for discovery related to its alleged infringing use of VeriSign products and services. Had the case continued and Prism received the discovery, there could have been even more evidence to support Prism's infringement assertions. That outstanding discovery could have provided additional evidence in support of Prism's indirect infringement assertions after a successful appeal. Also, shortly before this Court issued its Markman ruling, at the deposition of Nicholas Popp, VeriSign provided new information about customers that very well could have been additional direct infringers.[5] (*See* Slusser Decl. Ex. 13, Feb. 7, 2007 Popp Dep. at 177:20-195:5.) Had this Court's Markman Order not issued, Prism would have sought additional discovery to follow up on the newly-provided evidence.

Finally, VeriSign prevented Prism from taking basic discovery in support of its infringement assertions. For example, VeriSign withheld information regarding its installation codes for its software and its source code, after the Court ordered production of the source code.

---

[5] Nicolas Popp prepared notes that summarized the content of VeriSign's sales sheets, produced as VERI-1603560-1603591. These notes were introduced as Exhibit 32 to his 30(b)(6) deposition on February 7, 2007. Although he testified in detail as to the content and conclusions in these notes, they were not produced to Prism and Mr. Popp retained Exhibit 32.

(D.I. #430, Oral Order dated March 2, 2007.) In doing so, VeriSign effectively prevented Prism from marshaling additional evidence to support its good faith allegations of infringement.

As shown above, there is more than adequate evidence to support Prism's infringement allegations prior to the Court's Markman ruling. As such, there is no basis on which VeriSign can assert that Prism litigated this case in bad faith.

### C.    Prism Stipulated to Non-Infringement Immediately after This Court's Claim Construction Order Issued.

VeriSign's brief implies that this case was resolved based on these false assertions that Prism had no evidence of direct or indirect infringement. Quite to the contrary, this case was resolved based on this Court's construction of the asserted claims and the very narrow issue that the accused products did not re-authenticate the presence of an access key. (Slusser Decl. Ex. 14.) As explained above, Prism's infringement allegations against VeriSign were absolutely in good faith throughout this proceeding. Once this Court found that the claim term "operating session" was not limited to a user's initial authorization, however, Prism no longer had a good faith basis to continue its suit. Notably, Prism stipulated at that time to noninfringement and appealed to the Court of Appeals for the Federal Circuit.

In a recent case, the Federal Circuit upheld a denial of attorneys fees and costs under § 285 where the district court found that plaintiff's decision to continue the litigation after the district court's claim construction did not make it an exceptional case. *Computer Docking Station Corp. v. Dell, Inc.*, -- F.3d. --, 2008 WL 752675, at *10 (Fed. Cir. Mar. 21, 2008). The Federal Circuit found that if it had reversed the district court's claim construction, the plaintiff may have been able to prevail on its claims, and therefore its decision to continue litigating was not exceptional. *Id.* Prism similarly might have prevailed on its claims, had the Federal Circuit reversed on claim construction, and discovery been completed. As such, this is not a case where

Prism "blindly" pursued a meritless case.  Indeed, the fact Prism stipulated to noninfringement after this Court's Markman Order is evidence of Prism's *good faith* in conducting this litigation.

## CONCLUSION

VeriSign cannot by any stretch of the imagination satisfy its high burden of proving by clear and convincing evidence that Prism filed suit or proceeded with the litigation without an objectively reasonable basis for accusing VeriSign of infringing the '416 patent, both directly and indirectly.  VeriSign's motion must be denied and no attorneys' fees awarded.

April 8, 2008                                    BAYARD, P.A.

                                                 /s/ Richard D. Kirk (rk0922)
                                                 Richard D. Kirk (rk0922)
                                                 Ashley B. Stitzer (as3891)
                                                 222 Delaware Avenue, Suite 900
                                                 Wilmington, Delaware 19899
                                                 (302) 655-5000
                                                 rkirk@bayardfirm.com
                                                 astitzer@bayardfirm.com

                                                 ATTORNEYS FOR PLAINTIFF PRISM
                                                 TECHNOLOGIES LLC

OF COUNSEL:

David Swenson
ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
(612) 349-8500

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on April 8, 2008, he electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send automatic notification of the filing to the following:

Frederick L. Cottrell, III, Esq.
Steven J. Fineman, Esq.
Richards Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19801

Richard L. Horwitz, Esq.
David E. Moore, Esq.
Potter Anderson & Corroon LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
P.O. Box 951
Wilmington, DE 19899

Patricia S. Rogowski, Esq.
Connolly, Bove, Lodge & Hutz, LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
222 Delaware Ave., 17th Fl.
Wilmington, DE 19801

The undersigned counsel further certifies that copies of the foregoing document were sent by hand on April 8, 2008 to the above counsel and by first-class mail or overnight delivery as indicated to the below counsel:

*Via Federal Express*

John DiMatteo, Esq.
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019-6099

William Lee, Esq.
Wilmer Cutler Hale & Dorr LLP
60 State Street
Boston, MA 02109

Jason Snyderman, Esq.
Akin Gump Strauss Hauer & Feld LLP
One Commerce Square, Suite 2200
2005 Market Street
Philadelphia, PA 19103

Frank C. Cimino, Jr., Esq.
Dickstein Shapiro LLP
1825 Eye Street, N.W.
Washington, D.C. 20006

David M. Schlitz
Baker Botts L.L.P.
1299 Pennsylvania Avenue, NW
Washington, DC  20004-2400

Samir A. Bhavsar
Jeffrey D. Baxter
Baker Botts L.L.P.
2001 Ross Avenue
Dallas, TX  75201-2980


/s/ Richard D. Kirk (rk0922)
Richard D. Kirk