## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PRISM TECHNOLOGIES LLC

      Plaintiff,

    v.

VERISIGN, INC., RSA SECURITY, INC.,
NETEGRITY, INC., COMPUTER
ASSOCIATES INTERNATIONAL, INC., and
JOHNSON & JOHNSON SERVICES, INC.,

      Defendants.

**Civil Action No. CA 05-214 JJF**
**Jury Trial Demanded**

## DEFENDANT VERISIGN'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DECLARE THIS CASE EXCEPTIONAL  PURSUANT TO 35 U.S.C. § 285 AND FOR AN AWARD OF ATTORNEYS' FEES

Patricia Smink Rogowski
Del. Bar ID 2632
CONNOLLY BOVE LODGE & HUTZ LLP
P.O. Box 2207
1007 N. Orange Street
Wilmington, DE  19899
progowski@cblh.com
(302) 658-9141

Filed:  April 21, 2008

OF COUNSEL:

Frank C. Cimino, Jr.
Dickstein Shapiro LLP
1825 Eye Street NW
Washington, DC  20006
Telephone:  (202) 420-2200

Edward F. Mannino
Akin Gump Strauss Hauer & Feld LLP
One Commerce Square, Suite 2200
2005 Market Street
Philadelphia, PA 19103
Telephone: (215) 965-1200

Daniel Yonan
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, NW
Washington, DC 20036-1564
Telephone: (202) 887-4000

## CONTAINS CONFIDENTIAL INFORMATION – FILED UNDER SEAL

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................. - 1 -

II.   ARGUMENT ................................................................................................... - 1 -

    A.    Prism Never Had Any Information On Which To Reasonably And In Good Faith Believe VeriSign's Tokens Were Used In The Manner It Alleged Results In Infringement ............................................................................................. - 1 -

        1.    No Allegations Or Evidence Of Direct Use By VeriSign ........................ - 2 -

        2.    No Evidence Of Third-Party User ......................................................... - 3 -

    B.    Prism's Remaining Arguments Are Illusory ......................................................... - 5 -

III.   CONCLUSION ................................................................................................. - 7 -

## I.    INTRODUCTION

Prism's own answering brief best illustrates why this case should be declared exceptional. There, Prism directly confirms that it never had any information or evidence from which it could have formed a good-faith basis that VeriSign infringed its patent. Despite such glaring legal deficiencies, Prism filed and maintained a wholly frivolous case against VeriSign for over two years – including through the close of fact discovery – causing VeriSign needlessly to incur substantial expense.

Importantly, Prism does not contest that VeriSign's tokens can be used in non-infringing ways. And while VeriSign has sold and used its tokens, Prism completely avoids addressing the relevant issue – were those tokens ever used in the manner alleged by Prism to be an infringement of its patent? This is precisely the problem and best illustrates the deficiencies in Prism's case.

In opposition to VeriSign's motion, Prism was required to cite evidence in the record from which it (or anyone) could have based a reasonable and in good-faith belief that there was infringement under at least one of Prism's theories of the case. By failing to do so, Prism's opposition effectively admits that Prism ***never had any basis*** on which to sue or maintain its accusations against VeriSign. VeriSign therefore should be awarded its reasonable attorneys' fees incurred in defending this baseless action.

## II.    ARGUMENT

### A.    Prism Never Had Any Information On Which To Reasonably And In Good Faith Believe VeriSign's Tokens Were Used In The Manner It Alleged Results In Infringement

Prism advances two arguments to persuade the Court that this case was brought and maintained in good faith. First, Prism argues that it accused and developed evidence that VeriSign's internal use of its tokens results in direct infringement (and therefore, it need not

identify any third-party user). Second, Prism suggests that if the case continued, it may have found evidence of third-party direct infringement. As set forth below, both arguments contradict the record and ignore that fact discovery closed two months before this case ended.

### 1.    No Allegations Or Evidence Of Direct Use By VeriSign

Prism argues that its case against VeriSign was not limited to indirect infringement because it contended that VeriSign's internal use of tokens directly infringed the patents. *See, e.g.,* Prism Br. at 4 (D.I. 468) ("[t]he record similarly belies VeriSign's mischaracterization of Prism's case as limited to indirect infringement."). This is wrong for several reasons.

First, Prism has never accused VeriSign's internal use of tokens of infringement.[1] Although Prism's opposition describes in detail the lengthy claim charts and written discovery it produced in support of its infringement contentions, those disclosures *never* identify VeriSign as an entity that uses token in the specifically accused manner (*e.g.,* with OCSP or with OTP in connected mode). *See, e.g.,* Prism's Br. at Ex. 1-6 (D.I. 468). In fact, in a letter supplementation, Prism affirmatively stated it was pursuing *only an indirect infringement case* against VeriSign:

> Pursuant to Fed. R. Civ. P. 26(e)(2), Prism hereby provides the following *supplement to its prior responses to interrogatories seeking Prism's contentions as to infringement* … Prism hereby notifies … VeriSign that it does and will contend that each of the products and/or services that Prism has accused of infringement in this matter by way of *inducement* under 35 U.S.C. § 271(b), is also being accused of *contributory infringement* under 35 U.S.C. § 271(c) … *Your clients promote their respective accused products for use with connected hardware tokens or keys in a manner that, when used as intended and as promoted by your clients, results in direct infringement of the asserted claims of the '416 patent-in-suit.* Such knowledge and promotion of a use of the accused

---

[1] The only tokens accused by Prism are those that (1) generate a one-time password ("OTP") when connected to the client computer so that the OTP can be read through the USB connection; or (2) store a digital certificate ("PKI") which is presented during an optional validation service called the online certificate status protocol ("OCSP"). *See* VeriSign's Opening Br. at Ex. B (D.I. 464). No other token uses have been accused, and any software VeriSign provides is for use in combination with these tokens.

products to directly infringe the asserted claims of the '416 patent results in liability for contributory infringement ....

Ex. T, 9/12/06 ltr. from D. Thomas to D. Yonan (emphasis added). Had Prism seriously contended VeriSign's internal token use was a direct infringement, Prism would have been required under the Federal Rules to explain that allegation here, or at least in some other contention.

Second, Prism is unable to cite any evidence that VeriSign internally used its tokens in the manner Prism alleged to infringe (*e.g.*, with the optional OCSP service). Although Prism cites the testimony of two VeriSign employees – Kerry Loftus and Siddharth Bajaj – that testimony fails to show either had used the tokens with the OCSP service. This is because VeriSign *does not use* OCSP with its own employees. Instead, VeriSign uses a service which Prism has never accused because it is an admitted non-infringing alternative, even under its theory of the case.[2] And Prism cannot cite any evidence to the contrary, despite its thorough discovery on this topic. *See, e.g.*, VeriSign Opening Br. at Ex. L at 75:15-90:3 (D.I. 464) (corporate deponent Mr. Popp was extensively questioned about VeriSign's internal usage of tokens but there is no evidence of any OCSP deployment).

### 2.    No Evidence Of Third-Party User

Prism also argues that it would have developed evidence that third-parties customers used VeriSign's tokens in a manner alleged to infringe, had this case not ended when it did. This also is wrong for several reasons.

First, the potential to develop evidence is irrelevant to the issue of whether Prism had a good-faith belief that a third party was using VeriSign's tokens in the manner Prism asserted

---

[2] Moreover, Prism has never asserted that alleged use by VeriSign was part of its pre-filing investigation. *See* Prism Br. at Ex. 1 (Res. to Interrogatory No. 10) (D.I. 468). Accordingly, Prism cannot rely on this argument to show it has a good-faith basis to file the suit.

infringed at the time its case was filed. At the time the case was filed, Prism admits that it had no basis on which to believe anyone was using VeriSign's tokens with OCSP or with OTP in connected mode. In fact, before filing suit, Prism's Vice President and Chief Technology Officer, Rick Gregg, posed as a potential customer and was told *no one* used VeriSign's tokens in an infringing manner.[3] Ex. U, 3/3/05 and 3/4/05 Pre-filing Emails between R. Gregg and VeriSign. However, Prism went ahead and filed its case anyway.

Second, Prism asserts that it would have received relevant evidence of infringement from Bank of America, pursuant to outstanding subpoenas. Yet Prism already knew that Bank of America did not purchase any VeriSign tokens, let alone use them in the manner Prism alleged infringed. To this end, Prism had in its possession:

- Written discovery early in the case that indicated VeriSign was "unaware of any entity [including Bank of America]" that has implemented or used the accused products as Prism contended in its claim charts (*see, e.g.*, VeriSign Opening Br. at Ex. H and I) (D.I. 464);

- Corporate deposition testimony on VeriSign's customers and their implementation of any accused products that confirmed Bank of America has "the ability to purchase tokens … [but] [t]hey have not purchased any VeriSign tokens yet" (*see, e.g.*, VeriSign Opening Br. at Ex. J) (D.I. 464); and

- Detailed sales spreadsheets that clearly showed Bank of America never purchased any tokens (*see* Prism Br., Ex. 11 at VERI-1603565-66, "USB Hybrid Token v.2.5: Actual Quantity Ordered: <blank>; Extended Selling Price: $0") (D.I. 464).

---

[3] During its pre-filing investigation, Mr. Gregg was explicitly told by VeriSign that all of the case study PKI authentication customers (*e.g.*, Barclays Bank) "DO NOT use smart cards or USB based tokens …". Ex. U. Mr. Gregg threatened to "move to another vendor" if VeriSign could not provide a reference using "USB tokens" (or smart cards, which to Prism are another form of tokens). VeriSign informed him that the only "deployment" was the University of Texas, which did not use OCSP and therefore was never identified by Prism as an infringing customer in its pre-filing investigation disclosures and never subsequently identified. However, despite learning direct evidence that no customer uses tokens in the alleged manner, Prism carelessly disregarded this and persisted that customers like Barclays Bank continued to infringe. *See* VeriSign's Opening Br. at Ex. H and I.

Accordingly, all the evidence of record negates any good-faith belief by Prism that Bank of America used VeriSign's tokens in the manner needed for direct infringement.[4]

Third, Prism suggests that it would have sought additional discovery from third-parties, based upon information it learned from the depositions of VeriSign's employees (had the Markman Order not effectively ended the case). *See* Prism Br. at 5 (D.I. 464). However, fact discovery ended on February 8, 2007, and Prism never sought any additional discovery from VeriSign as to its customers after this time. *Compare, e.g.*, Ex. V, 4/17/07 ltr. to F. Cimino from A. Bahou (Prism reserved the right to take additional discovery related to VeriSign's source code after the close of fact discovery). If Prism believed this potential discovery would have led to actual direct infringers, it would have (and should have) pursued it immediately. By not doing so, Prism confirmed that it never actually believed there were any other customers who used the tokens in an infringing manner.

## B.    Prism's Remaining Arguments Are Illusory

To persuade this Court that it acted reasonably, Prism argues that it "immediately" worked out a stipulation of non-infringement after this Court's Markman Order construed critical terms against it. However, as Prism correctly noted in its brief, "[t]he basis for final judgment against Prism [based upon the Markman Order] has *nothing to do with* any issue raised now by VeriSign in its motion for attorneys' fees." Prism Br. at 3 (D.I. 468) (emphasis added). Moreover, dropping the case after the issuance of the Markman Order cannot remedy other evidentiary failures or the duty to litigate in good faith.

---

[4] While Prism makes much to do about its lengthy and detailed claim charts that encompassed, e.g., 60 pages and 424 footnotes, the charts merely purport to describe how Prism believes VeriSign's tokens are capable of working. The charts do not identify any customer that actually used the accused products in the detailed way that Prism described.

Similarly, Prism argues that it was somehow prejudiced by VeriSign's reluctance to produce source code. However, this issue has nothing to do with the instant motion and cannot cure Prism's failure to provide any evidence of infringement at any time in this case.[5]

---

[5] Prism's argument that it first "learned" of additional VeriSign sales to third parties during the deposition of Mr. Popp in February 2007 is equally unpersuasive. *See* Prism Br. at 9 (D.I. 468). Prism was made aware of every VeriSign customer who purchased the accused products by customer lists produced in October 2006 – four months before the close of fact discovery.

## III.    CONCLUSION

It is for the foregoing reasons that VeriSign respectfully requests that this case be deemed exceptional thus warranting that VeriSign be compensated for its reasonable attorneys' fees as indicated in Ex. S of VeriSign's Opening Brief (D.I. 464).[6]

<strong>VERISIGN INC.</strong>

Date: April 21, 2008             By:   _Patricia S Rogowski_
                                        Patricia Smink Rogowski
                                        Del. Bar ID 2632
                                        CONNOLLY BOVE LODGE & HUTZ LLP
                                        P.O. Box 2207, 1007 N. Orange Street
                                        Wilmington, DE  19899
                                        progowski@cblh.com
                                        (302) 658-9141

**OF COUNSEL:**

Frank C. Cimino, Jr.
Dickstein Shapiro LLP
1825 Eye Street NW
Washington, DC  20006
Telephone.:  (202) 420-2200

Edward F. Mannino
Akin Gump Strauss Hauer & Feld LLP
One Commerce Square, Suite 2200
2005 Market Street
Philadelphia, PA 19103
Telephone: (215) 965-1200

Daniel Yonan
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building, 1333 New Hampshire Avenue, NW
Washington, DC 20036-1564
Telephone: (202) 887-4000

---

[6] VeriSign's declaration attached as Ex. S to its Opening Brief satisfies Fed. R. Civ. P. 54(d)(2)(B)(iii) and provides "the amount sought" of all fees incurred as result of defending this action. Detailed billing reports will be made available to corroborate the amount as necessary.

## CERTIFICATE OF SERVICE

I, Patricia Smink Rogowski, hereby certify that on this 21st day of April, 2008, I electronically filed DEFENDANT VERISIGN'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DECLARE THIS CASE EXCEPTIONAL PURSUANT TO 35 U.S.C. §285 AND FOR AN AWARD OF ATTORNEYS' FEES with the Court Clerk using CM/ECF which will send notification of such filing(s) to:

Richard D. Kirk
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130
rkirk@bayardfirm.com

Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza- Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
rhorwitz@potteranderson.com
dmoore@potteranderson.com

Frederick L. Cottrell, III
Steven J. Fineman
Richards Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899-0551
cottrell@rlf.com
fineman@rlf.com

Steven J. Balick
John G. Day
Ashby & Geddes
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

I hereby further certify that on this 21st day of April, 2008, I have served this document on the attorneys of record at the following addresses as indicated:

## VIA ELECTRONIC MAIL

Ronald J. Schutz
David P. Swenson
Robins, Kaplan, Miller & Ciresi, LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
PrismCounsel@rkmc.com

John DiMatteo
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019-6099
PrismLitigation-JJSI@willkie.com

David M. Schlitz
Baker Botts LLP
1299 Pennsylvania Avenue, NW
Washington, DC  20004-2400
DLDallasPrismLitigationCA-
Netegrity@BakerBotts.com

Gregory P. Teran
Wilmer Cutler Hale & Dorr LLP
60 State Street
Boston, MA  02109
RSAPrismLitigation@wilmerhale.com

Samir A. Bhavsar
Baker Botts LLP
2001 Ross Avenue
Dallas, TX  75201-2980
DLDallasPrismLitigationCA-
Netegrity@BakerBotts.com

By: _____
Patricia Smink Rogowski (DE Bar #2632)
Connolly Bove Lodge & Hutz LLP
P.O. Box 2207
1007 N. Orange Street
Wilmington, DE  19899
(302) 658-9141
progowski@cblh.com

484403_4